FILED
2023 JUL 26
CLERK
U.S. DISTRICT COURT

Michael E. Welsh (Massachusetts Bar No. 693537)
welshmi@sec.gov
Casey R. Fronk (Illinois Bar No. 6296535)
fronkc@sec.gov
Attorneys for Plaintiff
Securities and Exchange Commission
351 South West Temple, Suite 6.100
Salt Lake City, Utah 84101
Tel: (801) 524-5796



**SEALED**

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DIGITAL LICENSING INC. (d/b/a "DEBT BOX"), a Wyoming corporation; JASON R. ANDERSON, an individual; JACOB S. ANDERSON, an individual; SCHAD E. BRANNON, an individual; ROYDON B. NELSON, an individual; JAMES E. FRANKLIN, an individual; WESTERN OIL EXPLORATION COMPANY, INC., a Nevada corporation; RYAN BOWEN, an individual; IX GLOBAL, LLC, a Utah limited liability company; JOSEPH A. MARTINEZ, an individual; BENJAMIN F. DANIELS, an individual; MARK W. SCHULER, an individual; B & B INVESTMENT GROUP, LLC (d/b/a "CORE 1 CRYPTO"), a Utah limited liability company; TRAVIS A. FLAHERTY, an individual; ALTON O. PARKER, an individual; BW HOLDINGS, LLC (d/b/a the "FAIR PROJECT"), a Utah limited liability company; BRENDAN J. STANGIS, an individual; and MATTHEW D. FRITZSCHE, an individual,<br><br>Defendants, | Case No.: **Case: 2:23-cv-00482**<br>**Assigned To : Stewart, Ted**<br>**Assign. Date : 07/26/2023**<br>**Description: Securities and Exchange Commission v. Digital Licensing et al**<br><br>**COMPLAINT** |

ARCHER DRILLING, LLC, a Wyoming
limited liability company; BUSINESS
FUNDING SOLUTIONS, LLC, a Utah
limited liability company; BLOX LENDING,
LLC, a Utah limited liability company;
CALMFRITZ HOLDINGS, LLC, a Utah
limited liability company; CALMES & CO,
INC., a Utah corporation; FLAHERTY
ENTERPRISES, LLC, an Arizona limited
liability company; IX VENTURES FZCO,
a United Arab Emirates company; PURDY
OIL, LLC, a Nebraska limited liability
company; THE GOLD COLLECTIVE LLC,
a Utah limited liability company; and UIU
HOLDINGS, LLC, a Delaware limited
liability company,

Relief Defendants.

Plaintiff, Securities and Exchange Commission ("SEC" or the "Commission") alleges as follows:

## SUMMARY OF THE ACTION

1.      This Commission enforcement action concerns an ongoing, sprawling, fraudulent securities offering through which Defendants have defrauded thousands of investors of at least $49 million.

2.      Beginning in at least March 2021, and continuing through the present, Defendants have unlawfully promoted Defendant Digital Licensing Inc.'s (d/b/a "DEBT Box") (herein, "DEBT Box") unregistered, fraudulent offering of so-called "node software licenses," which, as alleged herein, are investment contracts and, accordingly, securities pursuant to federal law. Among other things, Defendants, through YouTube videos, websites, social media posts, and at live investor events, have promised investors that these "node software licenses" would allow investors to "mine" at least eleven separate crypto assets, and that those crypto assets, in turn, were supported by "*real projects* tied to *real assets*." *See, e.g.*, http://thedebtbox.com (visited July 24, 2023).  Defendants have represented that the value of each crypto asset is tied to profits generated

by various underlying businesses performing, *inter alia*, gold mining, oil drilling, satellite scanning, beverage sales, and other so-called "commodity projects."



3.      These representations are false.   In reality, the eleven digital asset tokens purportedly being "mined" by the node software licenses cannot be mined and never were mined. Each of the eleven DEBT Box tokens is a BEP-20 token created on the Binance Blockchain ("BNB Chain"), which—as here—allows a user to instantly create a specified number of tokens.  Each of the eleven categories of DEBT Box crypto assets were generated instantaneously by DEBT Box at the outset of the tokens' creation; the tokens were never generated through "mining" conducted by, or validated through, a "node" or "node license."

4.      Moreover, the "real projects" and "real assets" Defendants tout as supporting the value of these tokens are a sham.  Defendants have made numerous representations regarding the underlying businesses purportedly propping up the tokens' value, and those representations are false:  the businesses simply did not and do not have the capabilities or revenues Defendants repeatedly represented to investors.  And rather than use the investor funds generated from the sale of the node software licenses to support those underlying businesses, Defendants misappropriated

the funds for their own personal gain—buying luxury vehicles and homes, taking lavish vacations, and showering themselves and their friends with cash.

5.      This fraudulent, unregistered securities offering continues to expand.  Defendants have recently announced they will be offering at least two new node software licenses backed by new, presumably illusory, businesses.  In addition, certain defendants recently launched a spin-off offering, the FAIR Project, differing from DEBT Box only in name.

6.      In the past two months, certain defendants have taken steps to evade law enforcement.  DEBT Box has stated that it is in the process of moving its operations to the United Arab Emirates for the express purpose of evading the federal securities laws.  In a June 14, 2023, promotional video posted on YouTube, Defendant Jacob ("Jake") Anderson stated that "we have moved all of [DEBT Box's] operations to Abu Dhabi" and claimed that DEBT Box is "under the jurisdictional control of Abu Dhabi, not the SEC."  On June 26, 2023, Defendant iX Global, LLC— a multi-level-marketing entity through which the DEBT Box node software licenses are promoted—began closing its bank accounts in the United States and has since removed over $720,000 in investor funds from those bank accounts.

7.      The Commission brings this action to halt Defendant's ongoing violations of the federal securities laws, prevent further harm to investors, and to seek disgorgement and civil penalties stemming from Defendants' wrongdoing, among other remedies.

**<u>JURISDICTION AND VENUE</u>**

8.      The Commission brings this action pursuant to Sections 20(b) and 20(d) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77t(b) and (g)] and Sections 21(d) and (e) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78u(d) and (e)] to enjoin such acts, practices, and courses of business, and to obtain disgorgement, prejudgment interest, civil money penalties, and such other and further relief as this Court may deem just and appropriate.

9.     This Court has jurisdiction over this action pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v] and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

10.     Venue is proper in this Court pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa] because Defendants are located and reside in, and transacted business in, the District of Utah, and because one or more acts or transactions constituting the violations alleged herein occurred in the District of Utah.

11.     Defendants were, individually and collectively, involved in the offer and sale of the securities, as that term is defined under Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b(a)(1)] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c(a)(10)].

12.     Defendants, directly or indirectly, made use of the mails or the means or instrumentalities of interstate commerce in connection with the conduct alleged in this Complaint.

## DEFENDANTS

13.     **Digital Licensing Inc. (d/b/a "DEBT Box")** (herein, "DEBT Box") is a Wyoming corporation headquartered in Sheridan, Wyoming and operating out of Draper, Utah.  According to DEBT Box's marketing materials, Defendants Jason Anderson, Jacob Anderson, Schad Brannon, and Roydon Nelson (who call themselves the "DEBT Council") (referenced collectively herein as the "DEBT Council") together exercise sole control of DEBT Box.  Defendant Schad Brannon is currently listed as the President of DEBT Box, and Defendant Roydon Nelson is its Director, Secretary, and Treasurer.

14.     **Jason R. Anderson**, age 43, is a resident of Utah.  Jason Anderson has described himself to investors as the "co-founder" and "co-owner" of DEBT Box and, along with the other members of the DEBT Council, exercises control of DEBT Box.  Jason Anderson is also the Manager and/or sole Member of Relief Defendants UIU Holdings, LLC, Business Funding Solutions, LLC, and BLOX Lending, LLC.  Upon information and belief, Jason Anderson, along with Defendant Jacob Anderson, controls Relief Defendant IX Ventures FZCO.  Along with Defendant Ryan Bowen, Jason Anderson is a member, and the sole manager, of Lazy Magnolia Brewing Company, LLC ("Lazy Magnolia"), a Mississippi limited liability company

headquartered in Kiln, Mississippi, whose revenues purportedly supported DEBT Box's "BEV" token.

15.     **Jacob ("Jake") S. Anderson**, age 40, is a resident of Utah, and is Jason Anderson's brother.  Like his brother, Jake Anderson has represented himself to investors as the "co-founder" and "co-owner" of DEBT Box DEBT Box and, along with the other members of the DEBT Council, exercises control of DEBT Box.  Upon information and belief, Jake Anderson, along with Jason Anderson, controls Relief Defendant IX Ventures FZCO.

16.     **Schad E. Brannon**, age 50, is a resident of California.  Brannon is the current President of DEBT Box, and along with the other members of the DEBT Council, exercises control of DEBT Box.

17.     **Roydon B. Nelson**, age 50, resides in St. George, Utah. Nelson is the Director, Treasurer, and Secretary of DEBT Box, and along with the other members of the DEBT Council, exercises control of DEBT Box.  Nelson is also the Registered Agent and the Manager of Relief Defendant The Gold Collective, LLC.

18.     **James E. Franklin**, age 64, is a resident of California.  Franklin is the founder and President of Defendant Western Oil Exploration Company, Inc.  Franklin is a two-time SEC recidivist.  In 2004, the Commission obtained a civil judgment against Franklin for his involvement in a 1997 pump and dump scheme.  *See SEC v. Cavanagh, et al.*, Case No. 98 Civ. 1818 (SDNY 2004).  In 2005, following a jury trial, the Commission obtained a second civil judgment against Franklin for operating a microcap pump and dump scheme between 1997 and 1998.  *See SEC v. Franklin, et al.*, No. 02CV0084 (S.D. Cal. 2005).  Based on the 2005 district court injunctions, on October 12, 2007, the Commission issued a permanent penny stock bar against Franklin.  *See James E. Franklin*, Admin. Proc. File No. 3-12228 (Oct. 12, 2007).

19.     **Western Oil Exploration Company, Inc.** ("Western Oil") is a Nevada corporation headquartered in Las Vegas, Nevada.  Franklin is the President of the Western Oil.  Upon information and belief, DEBT Box owns a controlling interest in Western Oil, though Franklin and DEBT Box are in active litigation regarding ownership of the company.

20.     **Ryan Bowen,** age 46, is a resident of Utah.  Bowen is a member of Lazy Magnolia. Bowen solicited investors to purchase crypto asset securities offered by DEBT Box.

21.     **iX Global, LLC** ("iX Global") is a Utah limited liability company headquartered in North Salt Lake, Utah.  Defendant Joseph Martinez is its Registered Agent and, on information and belief, exercises full control of iX Global.  iX Global is a multi-level marketing company that has partnered with DEBT Box to market DEBT Box's crypto asset securities and which, through Martinez, has solicited and is presently soliciting investors to purchase crypto asset securities offered by DEBT Box.

22.     **Joseph Anthony Martinez**, age 36, is a resident of Utah.  Martinez is the Registered Agent and, on information and belief, the sole member of Defendant iX Global. Martinez solicited investors to purchase DEBT Box crypto asset securities.

23.     **Benjamin Frank Daniels**, age 48, is a resident of Utah.  Daniels purports to be an iX Global "Brand Ambassador" and, in connection with this role, has solicited investors to purchase DEBT Box crypto asset securities.  Daniels is also the co-founder and a Member of Defendant B & B Investment Group, LLC (d/b/a "Core 1 Crypto").  In addition, along with Defendants Mark Schuler and Alton Parker, Daniels is a co-founder of Defendant BW Holdings, LLC (the "FAIR Project") and has solicited investors to purchase crypto asset securities offered by the FAIR Project.

24.     **Mark Williams Schuler (a.k.a. "Billy Beach"),** age 45, is a resident of Utah.  In communications with DEBT Box investors, Schuler has used the alias "Billy Beach."  Schuler is an iX Global "Brand Ambassador" and, as such, has solicited investors to purchase DEBT Box crypto asset securities. Along with Defendant Benjamin Daniels, Schuler is the co-founder and a member of Defendant Core 1 Crypto, an entity that partnered with DEBT Box to solicit DEBT Box investors.  In addition, along with Defendants Alton Parker and Benjamin Daniels, Schuler is a co-founder of the FAIR Project, and has solicited investors to purchase crypto assets offered by the FAIR Project.

25.     **B & B Investment Group, LLC (d/b/a "Core 1 Crypto")** is a Utah limited liability company headquartered in South Jordan, Utah.  Defendants Mark Williams Schuler and Benjamin Daniels are listed as the two members of Core 1 Crypto and, upon information and belief, exercise control over the entity.  Through Core 1 Crypto, Schuler, Daniels, and Parker solicited investors to purchase crypto asset securities offered by DEBT Box.

26.     **Travis A. Flaherty,** age 46, is a resident of Arizona. Flaherty holds himself out to be an author, speaker and "life coach."  Flaherty is an iX Global "Brand Ambassador" and, as such, has solicited investors to purchase DEBT Box crypto asset securities.  Flaherty is also the Registered Agent for Relief Defendant Flaherty Enterprises, LLC.

27.     **Alton Oman Parker (a.k.a. "Dr. Buck Parker"),** age 49, is a resident of Utah.  Along with Defendants Mark Williams Schuler and Benjamin Daniels, Parker is a co-founder of the FAIR Project.  Parker has solicited investors to purchase crypto asset securities offered by DEBT Box and the FAIR Project.

28.     **BW Holdings, LLC (d/b/a the "FAIR Project")** is a Utah limited liability company headquartered in Salt Lake City, Utah.  The FAIR Project is a DEBT Box spin-off scheme created by Defendants Mark Schuler, Benjamin Daniels, and Alton Parker, and for which Defendant Jason Anderson purports to act as a "consultant."  Similar to the DEBT Box scheme, the FAIR Project offers investors node software licenses which purportedly "mine" crypto assets. FAIR Project principals claim these crypto assets will increase in value due to profits from its business partners.

29.     **Brendan John Stangis**, age 25, is a resident of Michigan. Stangis has solicited investors to purchase crypto asset securities offered by DEBT Box.

30.     **Matthew Dillon Fritzsche** age 30, is a resident of Utah.  Fritzche is the Registered Agent for Relief Defendant Calmfritz Holdings, LLC, and has solicited investors to purchase crypto asset securities offered by DEBT Box.

**RELIEF DEFENDANTS**

31.     **Archer Drilling, LLC** is a Wyoming limited liability company originally headquartered in Pine Bluff, Wyoming, and now headquartered in St. George, Utah.   Archer Drilling's corporate documents identify Defendant James Franklin as the entity's owner and Managing Director, although DEBT Box has publicly claimed to be the entity's rightful owner. Archer Drilling received at least $1,610,000 in investor funds to which it has no legitimate claim.

32.     **Business Funding Solutions, LLC** is a Utah limited liability company headquartered in Draper, Utah.   Defendant Jason Anderson is the sole member of, and the Registered Agent for, the entity.   Business Funding Solutions, LLC received at least $11,960,000 in investor funds to which it has no legitimate claim.

33.     **Blox Lending, LLC** is a Utah limited liability company headquartered in Draper, Utah.   Defendant Jason Anderson is the sole member of, and the Registered Agent for, the entity. BLOX Lending, LLC received at least $4,700,000 in investor funds to which it has no legitimate claim.

34.     **Calmfritz Holdings, LLC** is a Utah limited liability company headquartered in Sandy, Utah.   Defendant Matthew Fritzsche is the Registered Agent for the entity.   Calmfritz Holdings, LLC received at least $12,700,000 in investor funds to which it has no legitimate claim.

35.     **Calmes & Co, Inc.** is a Utah corporation with its principal place of business is Sandy, Utah.   Calmes & Co, Inc. received at least $300,000 in investor funds to which it has no legitimate claim.

36.     **Flaherty Enterprises, LLC** is an Arizona limited liability company with a principal place of business in Queen Creek, Arizona.   Defendant Travis Flaherty is a member and the Registered Agent for the entity.   Flaherty Enterprises, LLC received at least $260,000 in investor funds to which it has no legitimate claim.

37.     **IX Ventures FZCO** is a company headquartered Abu Dhabi, United Arab Emirates ("UAE") with a principal place of business in Draper, Utah.   Upon information and belief,

Defendants Jason and Jake Anderson control this entity.  IX Ventures FZCO received at least $1,350,000 in investor funds to which it has no legitimate claim.

38.     **Purdy Oil, LLC** is a Nebraska limited liability company with its principal place of business in Pine Bluffs, Wyoming.  Upon information and belief, Defendant James Franklin is a co-owner and exercises at least some control of the entity. Purdy Oil, LLC received at least $2,670,000 in investor funds to which it has no legitimate claim.

39.     **The Gold Collective LLC** is a Nevada limited liability company headquartered in Las Vegas, Nevada.  Defendant Roydon Nelson is the sole member of, and the Registered Agent for, the entity.  The Gold Collective, LLC received at least $3,980,000 in investor funds to which it has no legitimate claim.

40.     **UIU Holdings, LLC** is a Delaware limited liability company headquartered in Draper, Utah.  Defendant Jason Anderson is the sole member of, and the Registered Agent for, the entity.  UIU Holdings, LLC received at least $200,000 in investor funds to which it has no legitimate claim.

<u>**FACTS**</u>

**I.     Background on Digital Asset and Blockchain Technology.**

41.     A blockchain is a form of distributed ledger or peer-to-peer database that is spread across a network and records all transactions in the network in theoretically unchangeable, digitally recorded data packages called "blocks." Each block contains a batch of records of transactions, including a timestamp and a reference to the previous block, so that the blocks together form a chain. The system relies on cryptographic techniques for securely recording transactions. A blockchain can be shared and accessed by anyone with appropriate permissions.

42.     Certain blockchains can also record what are called "smart contracts," which are, essentially, computer programs designed as self-executing code when certain triggering conditions are met.  One such smart-contract provisioned blockchain is the BNB Chain.

43.    "BEP-20" is a protocol for the creation of new crypto assets on the BNB Blockchain.  The BEP-20 protocol allows for the creation of customizable tokens that operate on the BNB Blockchain.  Since BEP-20 tokens rely on an existing blockchain and its underlying technical architecture, new tokens can be created quickly by users with minimal technical expertise. To create a BEP-20 token, a person writes and deploys a smart contract that is recorded on the BNB Chain.

44.    A BEP-20 compliant smart contract defines a set of standard terms such as the name of the token, (significant to this matter) the number of tokens to be created, *i.e.*, the total supply of the token, and the BNB Chain address(es) into which that token supply will be initially distributed.  Once a BEP-20 smart contract is deployed on the BNB Chain, the token supply is generated and is deposited into the address(es) designated in the smart contract.  The owner of those addresses can then transfer the tokens to other addresses, which are recorded as transactions on the BNB Chain.

45.    Unlike BEP-20 tokens (such as the crypto assets offered by DEBT Box), certain blockchains, like Bitcoin, use a process called "mining" to generate new crypto assets.  The Bitcoin blockchain uses a "Proof of Work" consensus mechanism to secure the network and establish the validity of new blocks.  New bitcoins are awarded to "miners" when they win a race to correctly identify a random number selected by the network by repeatedly running a hashing algorithm.

## II.    Defendants Raised Money from Investors with False Representations of an Investment in Crypto Assets Backed by "Real World" Businesses.

46.    Starting in March 2021, and continuing through the present, Defendants have engaged in an offering of securities in the form of "node software licenses" to investors.  To purchase a DEBT Box node software license, Defendants require investors to sign up for an account with Defendant iX Global and pay a $145 initiation fee.  Once an investor obtains an account and pays that fee, the investor may purchase node software licenses from DEBT Box on the iX Global website for prices ranging from $1,000 to $12,000 per license.

47.     Depending upon which type(s) of node software license(s) the investors purchase, the investors become entitled to receive one (or more) of eleven DEBT Box crypto assets (which Defendants call "tokens"), the value of which, according to DEBT Box, is derived from a proportional allocation of the profits DEBT Box receives from business partnerships with various independent entities engaged in the production of, amongst other things, crude oil, gold, natural gas, bauxite, real estate, and agriculture.  For example, DEBT Box's Twitter account made the following representations regarding the DEBT Box "tokens":



48.     DEBT Box's marketing materials, which, as of the date of the filing of this Complaint, remain available on the DEBT Box website at http://thedebtbox.com, describe each of the eleven crypto assets and the value they purportedly derive from the purported DEBT Box business partnerships as follows:

| Crypto Asset (Token) | Description of Crypto Asset (Token) on DEBT Box's Website |
| --- | --- |
| BLGD | BLGD "is supported by the physical production and sale of crude oil and works with multiple oil exploration companies to support vetted and approved oil well projects." Through DEBT Box's proprietary satellite technology, BLGD "provides reduced mining cost and increase mining efficiency" for its partners. |
| GROW | GROW "is supported by high-yielding agriculture and has partnered with multiple agricultural companies to support vetted and approved farming operations." By combining its partners experience with DEBT Box's |

|      | technical innovations, GROW "provides reduced growing cost and increase efficiency" for its agricultural partners. |
| ---- | --- |
| NATG | BLGD "is supported by the physical production and sale of natural gas and works with multiple natural gas exploration companies to support vetted and approved natural gas industry projects." Through DEBT Box's proprietary satellite technology, NATG "provides reduced mining cost and increase mining efficiency" for its partners. |
| XLPR | XPLR "provides technology and services to various commodity suppliers around the world" through the use of "advanced proprietary remote sensing and satellite imagery technology." |
| DLG | DLG "is supported by the gold mining industry" and works with "geologists, mining engineers, and mine site operators to analyze mine data" and leverage DEBT Box's proprietary technology to "accurately create project feasibility reports." |
| ALUM | ALUM "is supported by the physical production and sale of bauxite ore" and works with multiple "mining engineers and mine site operators to offer efficiencies throughout the exploration, extraction, refining, and production process." Through DEBT Box's proprietary satellite technology, ALUM "provides lowered expenses" and "increased commodity production" for its bauxite ore mining partners. |
| BEV | BEV is "supported by the royalties generated from the bottling and distribution of multiple beverages and works closely with several retailers to provide distribution services and a digital approach to the process." |
| BLOX | BLOX is "supported by royalties generated by commercial real estate transaction fees and works closely with agents, title companies, brokers, and lenders to provide a digital approach to the process." |
| DRIP | DRIP is "supported by the physical production and sale of water products (retail packaged water, including purified, spring, sparkling, distilled, and flavored) and working with multiple companies within the water industry." |
| DCM | DCM is "supported by the physical action of confirming transactions and validating crypto mining activity, contributing to the processing power of more and faster transactions conducted across the blockchain networks." |
| DEBT | DEBT is described as "the central support and utility token" for the DEBT Box ecosystem. Owners of other DEBT Box crypto assets can exchange their crypto assets for DEBT, thereby generating "demand" for the other DEBT Box crypto assets. |

49.     In addition to sharing the profits of its various partnerships with so-called "commodities" production businesses, Defendants also told investors that DEBT Box would undertake efforts to develop the DEBT Box ecosystem (a term used by the DEBT Council to refer to the entire DEBT Box enterprise) and "increase the value" of the DEBT Box crypto assets "for all license and token holders."  As administrators of the purported DEBT ecosystem, members of the DEBT Council repeatedly represented to investors that DEBT Box and the DEBT Council would undertake efforts to reduce the circulating supply of each of the DEBT Box crypto assets. According to DEBT Box's marketing materials, these efforts would increase the "demand" for the DEBT Box crypto assets, thereby increasing the value of these crypto assets over time.   These representations led investors reasonably to believe that DEBT BOX and the DEBT Council would be taking steps to drive demand (by reducing supply) of each DEBT Box crypto asset, and thereby, increasing the price of these crypto assets (*i.e.*, making the DEBT Box enterprise, or "ecosystem", more profitable).

50.     Since at least March 2021, DEBT Box, the DEBT Council, Franklin, and Bowen have touted to investors potential (and fictitious) partnerships between DEBT Box and "independent companies with successful track records and decades of experience" in their respective industries.   For example, in marketing materials provided to investors for the BEV crypto asset, DEBT Box represented to investors that a "multi-million dollar contract has been awarded to our partner [Lazy Magnolia], providing distribution to retailers such as: 7-11, Aldis, Food Lion, Sam's Club, and more."  Investors reasonably understood that BEV crypto asset holders would share in the profits of that "multi-million dollar contract."

51.     Additionally, beginning in at least August 2022, and continuing to the present, DEBT Box's marketing materials, which were disseminated to investors by each of the individual Defendants, represented to investors that DEBT Box possessed proprietary satellite-imaging software.  According to Jason Anderson, DEBT Box independently developed this "satellite-imaging" technology in or around 2019.  Later, DEBT Box claimed that it had increased the effectiveness of its "proprietary" technology through a partnership with an Australian mining

exploration company named Fleet Space Technologies ("Fleet Space").  DEBT Box represented to investors that by leveraging its purported proprietary technology, DEBT Box could increase the profits of its "numerous" undisclosed partner companies, and DEBT Box's profits from these partnerships would be shared on a proportional basis with node software license purchasers and holders of the respective crypto asset.

52.     For example, since in or around July 2022, DEBT Box claims on its website that the XPLR crypto asset leverages "advanced proprietary remote sensing and satellite imagery technology" to reduce the costs incurred by its partners from the "exploration, extraction, refining and/or production processes of raw commodities."  Similarly, in the BLGD marketing materials, which remain available on the website, DEBT Box represents to investors that DEBT Box is "supporting the drilling" of oil wells in Nebraska and Nevada, and is evaluating approximately twenty "future" oil field projects in the United States and Africa.

53.     Investors had no involvement in how DEBT Box operated, the selection of business partnerships by the DEBT Council, the development of the DEBT Box ecosystem, or any business decisions made by Defendants.  Instead, investors relied on DEBT Box, Jason Anderson, Jake Anderson, Brannon, and Nelson to make all decisions that would affect the profitability of the investment.

### III.    Defendants Pooled Investor Funds to Finance the Scheme.

54.     To purchase node software licenses from DEBT Box, investors were and are required to pay crypto assets (such as ether or bitcoin) or to wire fiat currency to bank accounts controlled by iX Global or DEBT Box.  Defendants never asked investors to affirm their status as accredited investors, and DEBT Box has taken no steps to verify the accreditation of investors.

55.     Additionally, in order to finance the DEBT Council's purported efforts of developing the DEBT ecosystem and identifying profitable partnerships, DEBT Box told investors that each transfer or withdrawal of the DEBT Box crypto assets was subject to a 10% transaction fee, a portion of which would be pooled with the proceeds of the node software licenses sales, and would be used by DEBT Box to fund its operations.

56.     To date, Defendants have raised at least $49 million from investors in connection with their ongoing offering of node software licenses.

**IV.     Defendants Continue to Expand Their Offerings.**

57.     At present, Defendants continue to seek out additional avenues by which they can sell node software licenses for various additional crypto assets they intend to offer.  The DEBT Box website and various other media controlled by DEBT Box currently claim that DEBT Box will soon be offering node software licenses for at least two purported newly-developed crypto asset tokens whose value will allegedly be driven by partnerships with, *inter alia*, the Royal Bank of Scotland and American Express.

58.     In addition, as of June 2023, Jason and Jake Anderson have purportedly partnered with Schuler, Daniels, and Parker to promote a new node licensing venture similar to DEBT Box called the FAIR Project.  The Andersons, Schuler, Daniels, and Parker claim that the FAIR Project is a "synthetic software crypto mining project that is supported by the medical and the pharmaceutical industry by tokenizing new innovative drugs as they are introduced to the market." For example, through the purchase of the FAIR Project's "RX" node software license, investors are entitled to "mine" the FAIR Project's RX crypto asset, the value of which, according to the FAIR Project, is derived from a proportional allocation of the profits FAIR Project obtains from partnerships with pharmaceutical companies.  Recently, iX Global announced it would be partnering with the FAIR Project to promote its node software licenses.

59.     The Andersons, Schuler, Daniels, and Parker claim they are currently "preselling" node software licenses for a new crypto asset token offered by the FAIR Project and, according to the FAIR Project's website, the FAIR Project intends to offer seven additional varieties of crypto asset securities to the public in the near future.  Defendants Jason Anderson, Jake Anderson, Schuler, Daniels, and Parker have, in fact, received investor funds during these so-called "presales" of the purported node software licenses offered by the FAIR Project.

**V.      Defendants Offered and Sold Unregistered Securities to Investors.**

60.      Defendants offered and sold investment contracts and, thus, securities, when they offered and sold node software licenses for BLGD, GROW, NATG, XPLR, DLG, ALUM, BEV, BLOX, DRIP, DCM, and DEBT.  Similarly, the FAIR Project, Jake Anderson, Jason Anderson, Schuler, Daniels, and Parker offered and sold investment contracts when they offered and sold the FAIR Project's node software licenses for RX and other crypto assets.  An investment contract (a type of security pursuant to the federal securities laws) exists when individuals or entities (a) invest money or otherwise exchange value (including dollars, bitcoin, and ether); (b) in a common enterprise; (c) with a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others.

61.      Here, and as described in more detail above: individuals and entities purchased node software licenses in exchange for United States dollars, bitcoin and ether; the money raised by Defendants was pooled, and investors, whose collective fortunes were inextricably intertwined, shared in the profits and risks of the enterprise as the value collectively rose and fell for each the DEBT Box and FAIR Project crypto assets; and the investors made these purchases with a reasonable expectation of profit, in that the value of these crypto asserts (and the anticipated return on investment) was predicated on the development, growth, and success of the DEBT Box ecosystem due to DEBT Box's and the DEBT Council's efforts.  Defendants led investors to believe that the value of the DEBT Box and FAIR Project crypto assets would increase due to Defendants' efforts (a) creating scarcity; (b) increasing the production value of projects; (c) supplying liquidity to new markets; and (d) establishing an e-commerce marketplace on the DEBT website where the tokens may be used to purchase additional items.

62.      The offers and sales of securities by DEBT Box and the FAIR Project—directly and indirectly through Jason Anderson, Jake Anderson, Brannon, Nelson, Franklin, Western Oil, Bowen, iX Global, Martinez, Daniels, Schuler, Core 1 Crypto, Flaherty, Parker, Stangis, and Fritzsche—were not registered with the Commission.

63.     Defendants did not register the DEBT Box or FAIR Project offerings with the Commission, nor did they purport to give notice to the Commission or any other agency or person of any offering of securities exempt from the registration requirements of the federal securities laws and rules.

## VI.     DEBT Box, Jason Anderson, Jake Anderson, Brannon, Nelson, Western Oil, and Franklin Made Misrepresentations to Investors in Connection with the Securities Offerings.

64.     In connection with the offer and sale of the node software licenses, Defendants DEBT Box, Jason Anderson, Jake Anderson, Brannon, Nelson, Western Oil, and Franklin made multiple misrepresentations to investors about critical components of the offering that were materially false and misleading.

### A.     *Misrepresentations Concerning the Node Software Licenses*

65.     Beginning in or around March 2021, and continuing to the present, DEBT Box, Jason Anderson, Jake Anderson, Brannon, and Nelson represented to investors that DEBT Box's node software licenses mined crypto assets through a proof of work consensus mechanism.  This description of the node software's mining capabilities was repeated by Jason Anderson, Jake Anderson, Brannon, and Nelson in in numerous YouTube videos, emails to investors, and social media posts throughout the relevant time period.  For example, in an August 22, 2022 YouTube video, Jake Anderson and Jason Anderson represented that the DEBT Box crypto assets could only be generated through mining.  DEBT Box repeated these claims in a May 6, 2022 YouTube video.

66.     These statements were false and materially misleading at all times.  DEBT Box's node software licenses did not "mine" the crypto assets in the manner Defendants described.  In reality, each of the eleven DEBT Box crypto asset created and offered by Defendants is a BEP-20 token created through the execution of a smart contract on the BNB Chain, the first of which was created in December 2021—several months after the initial offering of node software licenses were offered to the public.  The total supply of each BEP-20 token created by DEBT Box is coded into the smart contract for each DEBT Box token at the time the smart contract is created.  Once the

DEBT Box BEP-20 creation smart contract was deployed on the BNB Chain, the total supply of that specific crypto asset token was created and deposited into a designated blockchain address, from which the token can be transferred by DEBT Box through transactions on the BNB Chain and without the need to run any form of validator node to create tokens. Therefore, the eleven crypto assets were not generated by the supposed "mining" process of the node software, which, upon information and belief, does not actually exist. Rather, upon information and belief, DEBT Box manually distributed a proportional allocation of the crypto assets to the wallets associated with each node software license.

67.     Jason Anderson, Jake Anderson, Brannon, and Nelson knew or were reckless in not knowing that the node software licenses did not mine DEBT Box crypto assets. As members of the DEBT Council, Jason Anderson, Jake Anderson, Brannon, and Nelson were heavily involved in the marketing of DEBT Box's offering of node software licenses and the development of the DEBT Box ecosystem. Jason Anderson, Jake Anderson, Brannon, and Nelson told investors that they were the creators of the DEBT Box node software licenses—DEBT Box's sole business throughout the relevant time period—and they were aware that the node software license software did not work in the way they represented to investors.

**B.     *Misrepresentations Concerning DEBT Box's Supposed Oil Drilling Operations***

68.     Beginning in or around March 2021 and continuing to the present, DEBT Box, Jason Anderson, Jake Anderson, Brannon, Nelson, Western Oil, and Franklin represented to investors that if investors purchased BGLD node software licenses, investors would share in the profits of Western Oil, which they represented was a revenue-generating crude oil business with at least two operational wells in Nevada and Nebraska. These representations were posted on DEBT Box's website and were repeated through a series of YouTube videos, in-person events, and emails to prospective investors. For example:

   a. In DEBT Box marketing materials, which were distributed to investors from approximately December 2021 through January 2023, DEBT Box represented to investors that Western Oil was conducting "vertical drilling" of oil wells in Nevada "which have the potential to recover +5,000 BO per day and + 20Mmbo per well."

b. In an August 22, 2022 YouTube video, Jake Anderson told investors that that DEBT Box had identified "sizable deposits" of oil at Western Oil's Nebraska well site. In that same video, Jake Anderson claimed that DEBT Box recently "hit [its] first payload" of oil at Western Oil's Nebraska well site, and that "all of the revenues that come off of this go into BLGD."

c. In a November 14, 2022 YouTube video, Brannon claimed that DEBT Box owned and operated four oil rigs in the United States.

d. In an October 2022 investor presentation at DEBT Box's supposed Nevada well site, Franklin told investors that Western Oil, DEBT Box's oil mining partner, was currently extracting oil from an "oil pool that is 100 billion barrels in size."

e. At a January 14, 2023 in-person event hosted by X Global in Salt Lake City, Utah, video of which was later posted to YouTube, Jason Anderson told hundreds of investors and potential investors in attendance that DEBT Box was receiving royalties from partnerships with "over 200 wells currently." Later in that same presentation, Jason Anderson told investors that from January 1, 2022 through March 31, 2022, DEBT Box obtained "34.7 million dollars" in profits from its oil partnerships.

f. On January 20, 2023, in a message sent to investors through the DEBT Box's app, DEBT Box represented to investors that it had obtained at least "$5,475,600.00 USD" in profits from its oil operations and was reinvesting those profits into the DEBT Box ecosystem.

g. In a July 2023 YouTube video, Nelson claimed that DEBT Box's oil wells were producing "100 barrels a day."

69. The foregoing representations regarding DEBT's Box's oil profits and partnerships with operational oil wells were materially false and misleading at the time they were made. DEBT Box did not have any agreements to share in the profits of operational oil wells. Contrary to Defendants' representations, Western Oil's well sites in Nevada and Nebraska were exploratory and have never produced any oil. Indeed, with respect to the Nevada well site, Western Oil has never drilled to the specified depth (the depth Western Oil claims it needs to drill in order to potentially extract oil).

70. The truth about Western Oil, the Nevada well, or the Nebraska was never disclosed to prospective or actual investors. To the contrary, Defendants continue to tout the fictitious revenues from these non-operative oil wells to investors. For example, on May 31, 2023, DEBT

Box's official Twitter account tweeted that BLGD's value was supported from "revenues generated from approved oil well projects."

71.    Jason Anderson, Jake Anderson, Brannon, Nelson, and Franklin knew or were reckless in not knowing that DEBT Box and Western Oil had never produced any oil or revenues. The DEBT Council members and Franklin knew or were reckless in not knowing that Western Oil's well in Nevada was exploratory and had been nonoperational since before the relevant time period, and that Western Oil's Nebraska well had been drilled and cased without successfully finding oil.  Franklin, the founder and President of Western Oil, was intimately involved in the Western Oil's business operations.  Franklin (along with each of the members of the DEBT Council) visited Western Oil's drilling sites in Nevada and Nebraska on multiple occasions, and posted multiple YouTube videos highlighting their inspection of the purportedly "successful' drilling operations occurring at these sites.

72.    During a January 3, 2023 interview with officials from the United States Bureau of Land Management, Brannon and Nelson admitted that they were aware the Nevada and Nebraska wells were nonoperational.  Upon information and belief, DEBT Box has not obtained any profits from partnerships with oil producing companies.

**C.    *Misrepresentations Concerning DEBT Box's Proprietary Satellite Technology***

73.    Beginning in July 2022 and continuing to the present, Defendants DEBT Box, Jason Anderson, Jake Anderson, Brannon, Nelson, Western Oil, and Franklin told investors DEBT Box had access to "proprietary satellite-scanning technology," which was further bolstered through DEBT Box's purported partnership with Fleet Space.  For example, in a July 2022 investor email update, DEBT Box told investors it possessed "advanced proprietary remote sensing and satellite imagery technology, offers suppliers of raw materials the ability to create efficiencies throughout the exploration, extraction, refining and/or production processes of raw commodities."

74.    These representations were repeated by Defendants DEBT Box, Jason Anderson, Jake Anderson, Brannon, Nelson, Western Oil, and Franklin in investor presentations, YouTube videos, emails to investors, and social media posts. For example, during an October 2022 investor

presentation in Nebraska, Jason Anderson told investors that DEBT Box's proprietary technology would allow DEBT Box, and its partners, to locate gold, oil, natural gas, and "any mineral on the periodic table" within a few feet of its actual location. During this same presentation, Franklin repeated these claims—comparing DEBT Box's purported technology to an "MRI" of the Earth, which allowed DEBT Box and Western Oil to target any mineral on the periodic table with pinpoint accuracy.  Similarly, in an October 26, 2022 YouTube video, Jason Anderson represented that DEBT Box had successfully used this technology to locate oil reserves in Africa since 2019.

75.    In a November 14, 2022 YouTube video, Brannon claimed that DEBT Box had used its technology to identify a large oil reserve, and the company had drilled a well nearly 10,000 feet deep.

76.    In a March 11, 2023 YouTube video, Nelson claimed that DEBT Box possessed the satellite technology to identify the precise location of oil deposits to drill for oil.  Jake Anderson repeated these claims in a June 14, 2023 YouTube video.

77.    Each of the foregoing statements was false and materially misleading at the time it was made.  Contrary to Defendants' representations, DEBT Box did not possess "remote sensing and satellite imagery technology" that could "scan the Earth" to locate "any mineral on the periodic table" within a few feet of its actual location.  In fact, no such technology existed.  Upon information and belief, DEBT Box's supposed "proprietary" satellite technology was merely a gross mischaracterization of Fleet Space's Exosphere product.

78.    Additionally, at no point did DEBT Box have a partnership with Fleet Space or access to its technology and products.  Nor has Fleet Space ever surveyed or otherwise provided services in connection with oil wells owned by Western Oil or DEBT Box.  Indeed, in or around January 31, 2023, Fleet Space sent an email to Brannon demanding that Brannon and DEBT Box cease using Fleet Space's promotional materials.

79.    Jason Anderson, Jake Anderson, Brannon, Nelson, and Franklin knew or were reckless in not knowing that DEBT Box did not possess "satellite imaging technology" and did not have a partnership with Fleet Space.  According to DEBT Box's marketing materials, each of

22

the members of the DEBT Council were directly involved in the selection of "independent companies" as partners for DEBT Box, and therefore, each of these Defendants would have been involved in the negotiation and approval of any partnership agreement with Fleet Space. Franklin, the President of Western Oil, knew or was reckless in not knowing that Western Oil had not located oil at its Nebraska well through the use of DEBT Box's technology.

### D. *Misrepresentations Concerning Lazy Magnolia and Fictitious Contracts*

80.     Beginning in or around December 2022 and continuing to present, in promotional videos and social media posts, DEBT Box and the members of the DEBT Council have claimed that Lazy Magnolia secured "multi-million-dollar" bottling contracts, including with retailers such as "7-11, Aldis, Food Lion, Sam's Club and more" that are currently generating over "12 million dollars a month in revenue." As recently as January 15, 2023, Jason Anderson, Jake Anderson, Brannon, Nelson, and Bowen continued to claim that its bottling partners are generating millions in monthly revenue, and that DEBT Box's share of these would be proportionally allocated amongst BEV token holders.

81.     The foregoing claims regarding Lazy Magnolia were false and misleading. At no point did Lazy Magnolia or any other purported DEBT Box partner have contracts with "7-11, Aldis, Food Lion, Sam's Club," or any other bottling distributors or retailers. Nor has Lazy Magnolia generated over "12 million dollars a month in revenue" at any point during the relevant time period. Indeed, Lazy Magnolia's net income in 2022 was only about $100,000.

82.     DEBT Box, Jason Anderson, Jake Anderson, Brannon, Nelson, and Bowen each knew, or were reckless in not knowing, that these representations regarding Lazy Magnolia's revenues and bottling contracts with top retailers were false and misleading. Jason Anderson, Jake Anderson, Brannon, and Nelson are members of the DEBT Council and, according to DEBT Box's marketing materials, were intimately involved in the selection of each DEBT Box partner, including Lazy Magnolia in December 2022. As a result, Bowen and Jason Anderson (along with the rest of the DEBT Council) had access to Lazy Magnolia's books and records and knew that Lazy Magnolia was not profitable. Additionally, as owners of Lazy Magnolia, Jason Anderson

23

and Bowen could have easily ascertained that Lazy Magnolia did not have any contracts with "7-11, Aldis, Food Lion," or "Sam's Club."

## VII.   Defendants DEBT Box, Jason Anderson, Jake Anderson, Brannon, Nelson, and Bowen Engaged in Deceptive Acts to Defraud Node Software License Investors.

83.    In addition to the misstatements described above, DEBT Box, Jason Anderson, Jake Anderson, Brannon, Nelson, and Bowen also engaged in deceptive acts in furtherance of the scheme to defraud the DEBT Box node software license purchasers.

84.    Beginning in March 2021, and continuing to present, DEBT Box and the DEBT Council (Jason Anderson, Jake Anderson, Brannon, and Nelson) deceived investors into believing that the node software licenses they purchased were actually mining crypto assets and that the businesses underlying the DEBT Box crypto assets were generating significant revenue to drive the value of those assets.

85.    By creating and using the DEBT Box accounts to falsely represent to investors that their node software licenses were purportedly mining crypto assets backed by underlying business revenues, DEBT Box and the DEBT Council members created the deceptive appearance of both mining activities and profitable underlying business activities, and deceived investors into believing they were earning returns on their investments.

86.    To create the appearance of a successful partnership with an independent company, Jason Anderson, Jake Anderson, and Bowen misappropriated investors' monies, commingled them with other DEBT Box operating accounts, and used those monies to fund DEBT Box's purchase of Lazy Magnolia in or around December of 2022.  Bowen and the Andersons concealed from investors that proceeds of the DEBT Box node software license sales were used to finance the purchase of Lazy Magnolia.

87.    Jason Anderson, Jake Anderson, Brannon, Nelson, and Franklin all took steps to conceal DEBT Box's fictitious business partnerships.  For example, Franklin and members of the DEBT Council invited investors to tour Western Oil's Nebraska and Nevada wells to lend credence to their claims that Western Oil had successful oil and natural gas drilling operation,

24

88.     In or around January 31, 2023, Jason Anderson, Jake Anderson, Brannon, and Nelson learned that investors had contacted Fleet Space regarding the company's purported partnership with DEBT Box.  Rather than disclosing to investors that DEBT Box never had a partnership with Fleet Space, DEBT Box announced in a February 10, 2023 message to investors that it had "terminated" its partnership with Fleet Space.  To conceal their prior misstatements about Fleet Space, Brannon and each of the members of the DEBT Council claimed that its relationship with Fleet Space was terminated due to "harassment" of Fleet Space by competitors and other third parties.  Since at least February 10, 2023, members of the DEBT Council have discouraged users from contacting companies to verify DEBT Box's claims that those entities have partnered with DEBT Box.

89.     Since February 10, 2023, Jason Anderson, Jake Anderson, Brannon, and Nelson have concealed the names of supposed business partnerships. In response to questions from investors about these partnerships, the DEBT Council members have described their partnership agreements as "proprietary" and, at other times, have claimed that certain partners have requested DEBT Box keep the relationship confidential.

### VIII.   Defendants Jason and Jake Anderson, Brannon, Nelson, Bowen, iX Global, Martinez, Daniels, Schuler, Core 1 Crypto, Flaherty, Stangis, and Fritzche Violated the Federal Securities Laws by Acting as Unregistered Brokers.

90.     Beginning in or around March 2021 and continuing to present, Defendants Jason Anderson, Jake Anderson, Brannon, Nelson, Bowen, iX Global, Martinez, Daniels, Schuler, Core 1 Crypto, Flaherty, Stangis, and Fritzche solicited investors to purchase DEBT Box node software licenses in exchange for transaction-based compensation.  At all relevant times, none of these defendants were registered with the Commission as a broker or dealer, nor were they associated with a broker or dealer registered with the Commission.

91.     From in or around March 2021 to October 2022, DEBT Box managed its own marketing and sales of node software licenses to investors.  Throughout this time period, Jake

Anderson, Jason Anderson, Brannon, Nelson, Stangis, and Fritzche promoted the offering primarily through posts on social media sites, including YouTube and Instagram.

92.     Starting in or around October 2022, and according to representations made by Jason Anderson and Jake Anderson in various social media posts, DEBT Box partnered with iX Global, a preexisting multi-level marketing ("MLM") company, to market the sale of the node software licenses. In videos posted to the DEBT Box YouTube channel from January 2023 to July 2023, Jason Anderson and Jake Anderson represented that iX Global leverages its preexisting MLM network to target not only U.S. investors, but also foreign investors in South America and Asia.

93.     In connection with their roles for iX Global, Martinez, Flaherty, Schuler, and Daniels have actively promoted the DEBT Box node software licenses via iX Global's websites, iX Global's pre-existing MLM network, and hundreds of promotional videos posted on YouTube, Instagram, Facebook and other social media outlets.

94.     In addition, Schuler and Daniels formed an entity named "Core 1 Crypto" to partner with DEBT Box to solicit DEBT Box investors.  Schuler and Daniels instructed investors to create subscription accounts with Core 1 Crypto and guided them on how to create accounts with DEBT Box and iX Global. DEBT Box and iX Global would compensate Schuler and Daniels for the number of investors brought into the node software license scheme.

95.     Martinez, Flaherty, Schuler, and Daniels all received commission payments on the investments they secured—a fact that each of these defendants has acknowledged in various social media videos and posts.  For example, in a recent social media post, Schuler claimed that he personally made $250,000 in 2022 from his solicitations of DEBT Box investors.

96.     Martinez, Flaherty, Schuler, Daniels, Bowen, Stangis, Fritzsche, iX Global, Core 1 Crypto, Jason Anderson, Jake Anderson, Brannon, and Nelson each solicited dozens of investors to invest in the node software license scheme and received transaction-based compensation.  These defendants each used the internet to solicit investors, handled investor funds, transferred cash through wire transfers, and used email and telephone to negotiate and effect sales transactions.

97.     Jason Anderson, Jake Anderson, Brannon, and Nelson, Martinez, Flaherty, Schuler, Daniels, Bowen, Stangis, Fritzsche, iX Global, and Core 1 Crypto each handled investor funds. In the beginning of the scheme, most of the money flowed into accounts held and controlled by Jason Anderson, Jake Anderson, Brannon, and Nelson, with the assistance of Schuler, Daniels, Bowen, Stangis, Fritzsche, and Core 1 Crypto. In or around October, 2022, investor monies began to flow through accounts controlled by iX Global, Martinez, and Flaherty. Jason Anderson, Jake Anderson, Brannon, and Nelson, Martinez, Flaherty, Schuler, Daniels, Bowen, Stangis, Fritzsche, iX Global, and Core 1 Crypto also instructed investors to wire their investment money directly to the accounts in the names of the entities they controlled, DEBT Box, or iX Global.

98.     On different occasions, each of Jason Anderson, Jake Anderson, Brannon, Nelson Martinez, Flaherty, Schuler, Daniels, Bowen, Stangis, Fritzsche, iX Global, and Core 1 Crypto, stated to at least one current or prospective investor that they had been soliciting investors for DEBT Box. Jason Anderson, Jake Anderson, Brannon, Nelson Martinez, Flaherty, Schuler, Daniels, Bowen, Stangis, Fritzsche, iX Global, and Core 1 Crypto also each discussed with investors and negotiated compensation payments or rewards that would be paid out for the number of investors brought into the DEBT Box scheme.

99.     Jason Anderson, Jake Anderson, Brannon, Nelson Martinez, Flaherty, Schuler, Daniels, Bowen, Stangis, Fritzsche, iX Global, and Core 1 Crypto, also received commission payments for their investor solicitations in the accounts of those entities that they controlled. For example, Flaherty used accounts in the name of Flaherty Enterprise, an entity under his control, to receive commission payments and transfer investor funds to DEBT Box.  Fritzsche used accounts in the name of entities under his control, such as Calmfritz Holdings, for the same conduct.

100.     Stangis and Fritzsche raised U.S. dollars and bitcoin for node software license purchases from investors. Additionally, Stangis and Fritzsche transferred investor funds to DEBT Box bank accounts and assisted investors in setting up wallets that would allow them to track their DEBT Box investments.  As compensation for their efforts, DEBT Box paid Stangis and Fritzsche

commissions based on the investments they solicited.  In total, Stangis and Fritzsche have raised at least $12 million in investor funds for DEBT Box.

## FIRST CLAIM FOR RELIEF

### Violations of Section 5(a) and (c) of the Securities Act [15 U.S.C. § 77e(a) and (c)]

### (*Against All Defendants*)

101.    The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1–100, inclusive, as if they were fully set forth herein.

102.    Defendants, by engaging in the conduct described above, directly or indirectly, through use of the means or instruments of transportation or communication in interstate commerce or the mails, offered to sell or sold securities or, directly or indirectly, carried such securities through the mails or in interstate commerce, for the purpose of sale or delivery after sale.

103.    No registration statement has been filed with the Commission or has been in effect with respect to these securities.

104.    By reason of the foregoing, Defendants directly or indirectly violated, and unless enjoined with continue to violate, Sections 5(a) and (c) of the Securities Act [15 U.S.C. § 77 e(a) and (c)].

## SECOND CLAIM FOR RELIEF

### Violations of Section 17(a)(1) and (3) of the Securities Act [15 U.S.C. § 77q(a)(1), (3)]

### (*Against DEBT Box, Jason Anderson, Jake Anderson, Brannon, Nelson, and Bowen*)

105.    The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1–100, inclusive, as if they were fully set forth herein.

106.    By engaging in the conduct described above, DEBT Box, Jason Anderson, Jake Anderson, Brannon, Nelson, and Bowen directly or indirectly, individually or in concert with others, in the offer and sale of securities, by use of the means and instruments of transportation and communication in interstate commerce or by use of the mails has employed devices, schemes,

or artifices to defraud and has engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit.

107.    With respect to the violations of Section 17(a)(1), DEBT Box, Jason Anderson, Jake Anderson, Brannon, Nelson, and Bowen engaged in the above-referenced conduct knowingly or with severe recklessness.

108.    With respect to the violations of Section 17(a)(3), DEBT Box, Jason Anderson, Jake Anderson, Brannon, Nelson, and Bowen engaged in the above-referenced conduct at least negligently.

109.    By reason of the foregoing, DEBT Box, Jason Anderson, Jake Anderson, Brannon, Nelson, and Bowen violated and, unless enjoined, will continue to violate Section 17(a)(1) and (3) of the Securities Act [15 U.S.C. § 77q(a)(1), ].

### THIRD CLAIM FOR RELIEF

**Violations of Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)]**

**(*Against DEBT Box, Jason Anderson, Jake Anderson, Brannon,
Nelson, Western Oil, and Franklin*)**

110.    The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1–100, inclusive, as if they were fully set forth herein.

111.    By engaging in the conduct described above, DEBT Box, Jason Anderson, Jake Anderson, Brannon, Nelson, Western Oil, and Franklin, directly or indirectly, individually or in concert with others, in the offer and sale of securities, by use of the means and instruments of transportation and communication in interstate commerce or by use of the mails have obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

112.    DEBT Box, Jason Anderson, Jake Anderson, Brannon, Nelson, Western Oil, and Franklin were at least negligent in their conduct and in the untrue and misleading statements alleged herein.

113.     By reason of the foregoing, DEBT Box, Jason Anderson, Jake Anderson, Brannon, Nelson, Western Oil, and Franklin violated and, unless enjoined, will continue to violate Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

## FOURTH CLAIM FOR RELIEF

**Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5(a) and (c) [17 C.F.R. § 240.10b-5(a) and (c)]**

***(Against DEBT Box, Jason Anderson, Jake Anderson, Brannon, Nelson, and Bowen)***

114.     The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1–100, inclusive, as if they were fully set forth herein.

115.     By engaging in the conduct described above, DEBT Box, Jason Anderson, Jake Anderson, Brannon, Nelson, and Bowen, directly or indirectly, individually or in concert with others, in connection with the purchase or sale of securities, by use of the means and instrumentalities of interstate commerce or by use of the mails has (a) employed devices, schemes, and artifices to defraud; and (b) engaged in acts, practices, and course of business which operated as a fraud and deceit upon purchasers, prospective purchasers, and other persons.

116.     DEBT Box, Jason Anderson, Jake Anderson, Brannon, Nelson, and Bowen engaged in the above-referenced conduct knowingly or with severe recklessness.

117.     By reason of the foregoing, DEBT Box, Jason Anderson, Jake Anderson, Brannon, Nelson, and Bowen violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5].

## FIFTH CLAIM FOR RELIEF

**Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5(b) [17 C.F.R. § 240.10b-5(b)]**

***(Against DEBT Box, Jason Anderson, Jake Anderson, Brannon, Nelson, Western Oil, and Franklin)***

118.     The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1–100, inclusive, as if they were fully set forth herein.

119.    By engaging in the conduct described above, DEBT Box, Jason Anderson, Jake Anderson, Brannon, Nelson, Western Oil, and Franklin, directly or indirectly, individually or in concert with others, in connection with the purchase or sale of securities, by use of the means and instrumentalities of interstate commerce or by use of the mails has made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

120.    DEBT Box, Jason Anderson, Jake Anderson, Brannon, Nelson, Western Oil, and Franklin engaged in the above-referenced conduct knowingly or with severe recklessness.

121.    By reason of the foregoing DEBT Box, Jason Anderson, Jake Anderson, Brannon, Nelson, Western Oil, and Franklin violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5].

## SIXTH CLAIM FOR RELIEF

### Violations of Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)]

***(Against Jason Anderson, Jake Anderson, Nelson, Brannon, Martinez, Flaherty, Schuler, Daniels, Bowen, Stangis, Fritzsche, iX Global, and Core 1 Crypto)***

122.    The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1–100, inclusive, as if they were fully set forth herein.

123.    By engaging in the conduct described above, Jason Anderson, Jake Anderson, Nelson, Brannon, Martinez, Flaherty, Schuler, Daniels, Bowen, Stangis, Fritzsche, iX Global, and Core 1 Crypto made use of the mails or other means or instrumentalities of interstate commerce to effect transactions in, to induce, and to attempt to induce, the purchase and sale of securities for the accounts of others while not registered with the SEC a broker and when they were not associated with an entity registered with the SEC as a broker.

124.    By reason of the foregoing Jason Anderson, Jake Anderson, Nelson, Brannon, Martinez, Flaherty, Schuler, Daniels, Bowen, Stangis, Fritzsche, iX Global, and Core 1 Crypto

violated, and unless enjoined will likely again violate, Section 15(a)(1) of the Exchange Act [15 U.S.C. §78o(a)(1)].

## SEVENTH CLAIM FOR RELIEF

### Equitable Disgorgement

### (*Against All Relief Defendants*)

125.     The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1–100, inclusive, as if they were fully set forth herein.

126.     Archer Drilling, LLC, Business Funding Solutions, LLC, Blox Lending, LLC, Calmfritz Holdings, Calmes & Co, Flaherty Enterprises, IX Ventures FZCO, Purdy Oil, LLC, The Gold Collective, LLC, and UIU Holdings, LLC obtained money, property, and assets as a result of the violations of the securities laws by the Defendants, to which they have no legitimate claim.

127.     Archer Drilling, LLC, Business Funding Solutions, LLC, Blox Lending, LLC, Calmfritz Holdings, Calmes & Co, Flaherty Enterprises, IX Ventures FZCO, Purdy Oil, LLC, The Gold Collective, LLC, and UIU Holdings, LLC should be required to disgorge all ill-gotten gains which inured to their benefit under the equitable doctrines of disgorgement, unjust enrichment and constructive trust.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court enter a final judgment:

### I.

Permanently restraining and enjoining Defendants from, directly or indirectly, engaging in conduct in violation of Sections 5 of the Securities Act [15 U.S.C. § 77e];

## II.

Permanently restraining and enjoining DEBT Box, Jason Anderson, Jake Anderson, Brannon, Nelson, Western Oil, Franklin, and Bowen from, directly or indirectly, engaging in conduct in violation of Section 17(a) of the Securities Act [15 U.S.C. §§ 77q(a)];

## III.

Permanently restraining and enjoining DEBT Box, Jason Anderson, Jake Anderson, Brannon, Nelson, Western Oil, Franklin, and Bowen from, directly or indirectly, engaging in conduct in violation of Sections 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b–5 [17 C.F.R. § 240.10b–5];

## IV.

Permanently restraining and enjoining Jason Anderson, Jake Anderson, Brannon, Nelson, Martinez, Flaherty, Schuler, Daniels, Bowen, Stangis, Fritzsche, iX Global, and Core 1 Crypto from, directly or indirectly, engaging in conduct in violation of Section 15(a)(1) of the Exchange Act [15 U.S.C. §78o(a)(1)];

## V.

Permanently restraining and enjoining each of the Defendants from, directly or indirectly, participating in any offering of securities, including any crypto asset security; provided, however, that such injunction shall not prevent the individual Defendants from purchasing or selling securities for their own personal accounts;

## VI.

Permanently restraining and enjoining each of the Defendants from, directly or indirectly, soliciting any person or entity to purchase or sell any security, including any crypto asset security; provided, however, that such injunction shall not prevent the individual Defendants from purchasing or selling securities for their own personal accounts;

## VII.

Ordering Defendants and Relief Defendants to disgorge all ill-gotten gains or unjust enrichment derived from the activities set forth in this Complaint, together with prejudgment interest thereon;

## VIII.

Ordering Defendants to pay a civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

## IX.

Retaining jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court; and,

## X.

Granting such other and further relief as this Court may deem just and proper.


Dated: July 26, 2023.

Respectfully submitted,


**SECURITIES AND EXCHANGE COMMISSION**


 */s/ Michael E. Welsh*
Michael E. Welsh
Casey R. Fronk
Attorneys for Plaintiff
Securities and Exchange Commission

34