# Holland & Knight

701 Brickell Avenue Suite 3300 Miami, FL 33131 | T 305.274.8500 | F 305.789.7799
Holland & Knight LLP | www.hklaw.com

Josias N. Dewey
(305) 789-7746
Josias.Dewey@hklaw.com

Tracy S. Combs, Esq.
Director, Salt Lake City Regional Office
U.S. Securities and Exchange Commission
351 S. West Temple Street, Suite 6.100
Salt Lake City, UT 48101

July 24, 2023

**VIA E-MAIL**

    Re:    Application for Consideration as Receiver in *The Matter of Digital Licensing Inc.*

Dear Ms. Combs:

Thank you for the opportunity to apply for consideration as the SEC's proposed Receiver candidate in *The Matter of Digital Licensing Inc.* (SL-02891) (the "Matter").[1] This letter describes, among other things:

- My own qualifications and those of the core team of attorneys I intend to work with if selected by the SEC for recommendation and appointed by the Court in this Matter;

- Our prior relevant prior experience in other digital asset enforcement actions;

- Some of our team's unique capabilities that will be useful in this Matter;

- Proposed fee arrangements and rates; and

- Initial near-term and long-term action plans.

Accompanying this letter are (i) a completed Application for Consideration as Receiver; and (ii) a PowerPoint deck providing supplemental details of Holland & Knight's receivership experience and my receivership plan (the "Deck").

## I.    Candidate and Team

Members of the Holland & Knight team, detailed below, have successfully served as, represented, and worked closely with, Receivers and Distribution Agents in multiple SEC enforcement

---

[1] Neither I, nor Holland & Knight, have any conflicts in connection with this Matter, and we agree to disclose any conflicts that may arise during this Matter.

actions, including several related to digital assets. We are all active members of our firm's Digital Assets and Blockchain Technology Team, of which I am also Chair.

Josias ("Joe") Dewey – Partner
I am a nationally recognized thought leader on blockchain and distributed ledger technology. I co-authored the book *The Blockchain: A Guide for Legal and Business Professionals*. As further detailed below and in the attached, I was previously appointed Receiver by the SEC in the *TBIS* matter and served as counsel to the Distribution Agent in the *Middleton* matter where I oversaw the first-of-its-kind return of millions of dollars to defrauded investors related to initial coin offerings. I am also an experienced software developer and have created workflow applications designed to reduce transaction costs, decrease the risks of human error, and improve communication—all applications necessary for the successful operation of a crypto-related receivership. Outside of the digital assets space, I have significant experience as a finance and real estate attorney, and my practice encompasses a broad range of asset classes and transaction structures, including real estate financing, asset based lending, and syndicated transactions.

Jessica Magee – Partner
Jessica Magee is a Chambers-ranked trial attorney, a former SEC enforcement senior officer, and co-Chair of Holland & Knight LLP's Securities Enforcement Team. As detailed further below, while at the SEC, Ms. Magee was deeply involved in two first-of-their-kind enforcement actions based on misconduct involving cryptocurrencies. As an Assistant Director, Regional Trial Counsel, and later as Associate Regional Director for Enforcement, Ms. Magee was one of the early members of the Enforcement Division's management group who focused enforcement resources to prioritize her team's understanding and investigation of crypto- and digital asset-related matters. In addition, Ms. Magee has significant experience working with and advising court-appointed Receivers and leading investigations and trial teams.

Scott Mascianica – Partner
Scott Mascianica is an experienced investigative and litigation attorney and co-chair of Holland & Knight's Securities Enforcement Team. Mr. Mascianica served for nearly a decade at the SEC in various supervisory roles, including as Assistant Regional Director for the SEC's Division of Enforcement for the Fort Worth Region and Assistant Director of the Enforcement Division's Asset Management Unit. In these roles, as further detailed below, Mr. Mascianica oversaw the appointment of several Receivers in SEC enforcement actions and supervised many of the SEC's digital asset and cybersecurity investigations in the Fort Worth region, including one of the agency's first enforcement actions involving an unregistered exchange offering digital asset securities. Prior to his time at the SEC, Mr. Mascianica's practice included representing trustees and Receivers. He has also worked as a financial forensic consultant at a Big Four accounting firm.

Andrew Balthazor – Associate Attorney
Andrew Balthazor is a former United States Army military intelligence offer who now applies his wartime intel skills to investigating cryptocurrency malfeasance. Mr. Balthazor has a broad understanding of the legal nuances relating to all forms of digital assets. Mr. Balthazor has been recognized for his development and implementation of the world's first service of legal notice via non-fungible token. Mr. Balthazor has significant experience on receiverships and fair fund distributions, having previously handled integral roles on both the *TBIS* and *Middleton* matters detailed herein. Mr. Balthazor holds a Bachelor of Science in Computer Science from the United States Military Academy, West Point.

Alex Englander – Associate Attorney
Alex Englander is a former engineer who uses his technical and programming skills to identity, understand, and overcome the novel obstacles presented by complex digital asset businesses, including the increased use of smart contracts. Mr. Englander holds Bachelor and Master of Science degrees in Nuclear Engineering from the University of Florida and, prior to becoming an attorney, he directed operations and training onboard moored naval nuclear submarines. In *TBIS* and *Middleton*, Mr. Englander evaluated over a thousand investor claims and wrote code to validate the putative loss amounts. The output of Mr. Englander's computer scripts was recently validated via an independent third-party review. Mr. Englander can code in a variety of computer languages, including Python and Solidity—the primary languages utilized in crypto-related applications.

Dennis González - Associate Attorney
Dennis González holds a Bachelor of Science degree in Finance and a minor in Spanish from the University of Miami. Prior to becoming an attorney, Mr. González worked as a financial advisor for a multinational bank and as an investment analyst for a large New York City developer. Additionally, Mr. González co-founded three software companies spanning from mobile applications to biometric capturing hardware devices, one of which was granted a USPTO approved patent. As an attorney, Mr. González has extensive experience investigating complex networks of financial fraud on various blockchains. In the *TBIS* matter, Mr. González administered and enhanced a claim validation system deployed on the Ethereum blockchain, independently calculated complex claims, and distributed more than $3.5 million worth of ether to hundreds of claimants around the world.

## II. Relevant Experience Serving as Digital Assets Receiver and Distribution Agent

### a. *SEC v. Titanium Blockchain Infrastructure Servs., Inc.*, Case No. 18-cv-4315 (C.D. Cal. 2018) ("*TBIS*")

In *TBIS*, defendants fraudulently raised over $21 million in digital asset securities through an initial coin offering. The SEC filed claims for, among other things, the offer and sale of unregistered securities in violation of Section 5 of the Securities Act of 1933 ("Securities Act") and violations of the antifraud provisions under the Securities Act and Securities and Exchange Act of 1934 ("Exchange Act").

At the SEC's recommendation, the *TBIS* court appointed me as Receiver over the corporate defendants. As Receiver, I was responsible for investigating the defendants' activities, tracing stolen digital assets, and facilitating their recovery on a global scale. My team and I managed an estate of over $6 million, largely comprised of cryptocurrencies such as Ether ("ETH") and Bitcoin ("BTC"). In connection with the receivership, my team and I developed plans and methodologies for evaluating victims' claims and loss amounts, apprised the SEC and the court of key updates, distributed assets, and efficiently wound up of the estate.

This matter highlighted our team's technical acumen, creativity, and efficiency within an SEC receivership. The *TBIS* claims were exceedingly difficult to assess, given the nature of the fraud and the defendants' inconsistent and haphazard issuance of two tokens (BAR and TBAR). The team developed a proprietary process to not only automatically validate over 1,000 claims for Ethereum protocol conformity, but also to sort out illegitimate claims. Additionally, the team applied its technological skills to develop an algorithm to calculate losses, using a combination of blockchain ledger information, pricing data, and associated claimant information to calculate cost basis and loss information for each

claimant.[2] The team also executed the first multi-million dollar distribution of claim payouts via cryptocurrency by coding a program to execute ETH distributions, which involved reading claim files, interacting with Coinbase's API, and issuing payments over the blockchain.[3]

As a result of the Receivership's efforts, all eligible claimants received a pro-rata return of approximately *91%* of their losses.

   b.   *SEC v. Middleton*, Case No. 19-cv-4625 (E.D.N.Y. 2019) ("*Middleton*")

In *Middleton*, the SEC filed claims against entity defendants Veritaseum, Inc. and Veritaseum, LLC, and their owner for violating Section 5 of the Securities Act and the antifraud provisions of the Securities Act and Exchange Act. The court ultimately entered a final judgment ordering the defendants to pay disgorgement and civil penalties totaling approximately $9.5 million. The SEC established a Fair Fund in order to return collected funds to the victims of the defendants' scheme.

At the SEC's recommendation, the *Middleton* court appointed Holland & Knight as the Fair Fund Distribution Agent. As Distribution Agent, the firm was responsible for, among other things, overseeing the administration and distribution of the Fair Fund to harmed investors.

In this matter, our team overcame significant obstacles to validate claims by investors and determine claimants' losses. The claims contained a confounding mix of ICO transactions, secondary market transactions, centralized and decentralized exchange transactions, and off-chain agreements and sales. The team developed efficient protocols for validating the claims in connection with these different transactions and created a fair loss calculation methodology. Notably, the team's careful review identified several claimants with apparent connections to the defendants, preserving over $8 million in additional assets for the true victims of the fraud. EisnerAmper Group conducted a third-party review of the *Middleton* Fair Fund and concluded the Holland & Knight team executed procedures in conformity with the court-ordered claims and distribution plans.

The team's diligence and efficient data-driven protocols resulted in all eligible claimants receiving back *100%* of their losses plus reasonable interest.

   c.   **Other Relevant Work**

Prior to joining the SEC, Ms. Magee represented the SEC's court-appointed Receiver in *SEC v. Millennium Bank*, Case No. 09-CV-050 (N.D. Tex. 2009), where she was responsible for leading the Receiver's efforts to identify and secure assets, investigate and pursue claims, and distribute proceeds to harmed investors and creditors. Ms. Magee also worked on the attorney team for the court-appointed

---

[2] The team analyzed relevant addresses for eligible BAR or TBAR transactions. For claimants who provided addresses with eligible transactions, our automated process delivered to them purpose-built control tokens to verify their control over the claimed addresses. This novel, scalable process effectively overcame the unique challenges of dealing with claimants—and sorting out illegitimate claimants as needed—through the veil of blockchain pseudonymity.

[3] Specifically, the team provided claimants with the opportunity to receive their claim payments via USD check or ETH. USD checks were available as an option for claimants who preferred fiat currency—and checks served as a backup distribution channel when the team was unable to verify the claimant's continued control of a valid Ethereum address. However, a significant portion of claimants elected to receive their distribution in ETH. Distributing ETH reduced transaction costs, particularly because the estate's assets were largely held in ETH. Further, payout via the blockchain was less expensive than the issuance of paper checks in USD—reducing administrative overhead—and instantly reached the class of globally-situated claimants.

Receiver in *SEC v. Stanford International Bank, Ltd.*, Case No. 3-09CV0298 (N.D. Tex. 2009). While on staff in the SEC's Division of Enforcement, Ms. Magee served as trial counsel in *SEC v. Shavers*, Case No. 13-CV-416 (E.D. Tex. 2013), the first enforcement action in which the court concluded that the SEC established the existence of an investment contract in connection with transactions involving digital assets and granted summary judgment in favor of the SEC. Ms. Magee also supervised the investigation and early enforcement action efforts in *SEC v. AriseBank*, Case No. 3-18-cv-0186 (N.D. Tex. 2018), the first enforcement action in which the SEC sought and obtained appointment of a Receiver in a digital assets enforcement action. That action, like this Matter, involved the potential loss or dissipation of digital assets, and Ms. Magee and the team worked collaboratively with the Receiver, FBI, and others to mitigate that risk of further harm to defrauded investors.

Additionally, prior to joining the SEC, Mr. Mascianica represented the SEC's court-appointed Receiver in *SEC v. PrivateFX Global One*, Case No. 09-CV-1540 (S.D. Tex. 2009), an $85 million offering fraud. Moreover, while at the SEC, Mr. Mascianica investigated, served as trial attorney and later supervised the agency's enforcement action *SEC v. Faulkner*, Case No. 16-cv-01735-D) (N.D. Tex. 2016), a large-scale oil and gas offering and disclosure fraud involving more than $80 million in investor losses. The matter involved the rare-contested appointment of a Receiver in the middle of litigation, where the SEC prevailed. Furthermore, Mr. Mascianica served as trial attorney for the SEC's appointment of a Receiver in *SEC v. Howard*, Case No. 17-cv-00420 (N.D. Tex. 2017), an offering fraud involving more than $13 million in investor losses. Concerning digital asset-related frauds, Mr. Mascianica has extensive experience investigating and supervising investigations into the type of misconduct which may have occurred in this Matter. *See, e.g.*, *SEC v. Chiang*, Case No. 22-cv-0600 (S.D. Cal. 2022); *SEC v. Bitqyck, Inc.*, Case No. 3:19-cv-2059 (N.D. Tex. 2019); *SEC v. 1Pool Ltd. a.k.a. 1Broker,* Case No. 18-cv-02244 (D.D.C. 2018).

### III. Unique Capabilities

Our team is uniquely qualified to serve as counsel to the Receiver in this Matter. We have developed practices and methodologies we intend to leverage in this Matter if proposed to, and appointed by, the court.

Validated Programs: As detailed above, Holland & Knight has developed proprietary protocols adaptable to a variety of crypto- and digital asset-related claim evaluations. The use of these programs and protocols in future engagements will result in reduced administrative overhead without sacrificing reliability of claim validations or loss calculations. The team has since applied versions of these protocols in other contexts involving digital assets, including financial fraud, crypto theft, cross-border insolvencies, and internal investigations.

Digital Asset Recovery: Holland & Knight's digital assets team has experience locating and recovering a variety of digital assets. Our team accomplishes this task using both legal and practical solutions, including smart contract analysis, blockchain tracing, locating control-entities susceptible to court orders, and managing off-chain asset repositories, such as cold storage and paper wallets. The firm has successfully recovered digital assets on a variety of blockchains.

Traditional Asset Recovery: Our Asset Recovery group is one of the most recognized and active asset recovery teams practicing in the United States, and includes experienced lawyers and professionals dedicated to recovering assets for liquidators, trustees, receivers, judgment and award creditors, and victims of financial fraud. Using novel approaches, the firm has traced and recovered billions of dollars

in connection with claw-backs and fraudulent conveyance claims, cross-border insolvencies, cybercrimes, and other causes of action.

Dedicated Oil and Gas Practice: Unlike many global law firms, Holland & Knight has a dedicated oil and gas practice group that includes subject matter expertise throughout the up, mid, and down-stream business cycle as well as on matters of regulatory compliance, investigations, and litigation. Given the appearance that this Matter will require analysis of facts and law at the intersection of digital assets and the oil and gas and related mining industries, we can draw upon existing in-house expertise and third-party relationships on an efficient, as-needed basis.

Diversity of Talent: Holland & Knight's workforce is spread across 31 domestic and international offices, and we cover all major markets in the United States. Our firm's attorneys speak over 30 languages, work in over 300 practice areas, and have a joint commitment to delivering the best results possible for our clients. The firm is committed to recruiting diverse talent, recognizing that diverse and inclusive teams produce better results. We are structured in a manner that allows attorneys and professionals to work in tandem, regardless of geographic location, ensuring the best specialized talent is available for each matter.

Database Management: Holland & Knight's internal development team creates efficient systems and has demonstrated experience and success establishing bespoke and proprietary tools and methods for addressing tracing, claims assessment, service of process, and other challenges that arise in connection with digital asset-related investigations and litigation. The firm's in-house database management system is customizable and can meet the needs of virtually any project. Database connections can be established securely through several methods, permitting collaboration with other vendors, if necessary. By minimizing the need to outsource data management to outside vendors, Holland & Knight's technical dexterity allows it to offer services at a competitive rate and with greater alacrity—resulting in greatly reduced friction points.

Knowledge of Asset Classes: Holland & Knight has extensive regulatory and technical experience across all aspects of the digital asset and distributed ledger space. First and foremost, our firm has particular expertise and *Chambers*-ranked professionals who specialize in SEC, investigative, white-collar, and regulatory enforcement matters and related litigation. Additionally, our firm's attorneys have expertise across the range of regulations potentially applicable to digital asset service providers, exchanges, ATSs, broker-dealers, banks, custodians, and financial institutions, including BSA and AML compliance, OCC guidance, OFAC concerns, FinCEN obligations, and state-specific money transmission and digital asset licensing requirements.

Technical Acumen: Holland & Knight's professional expertise is uniquely supplemented by our technical acumen. In support of our team's receivership and distribution agent work, we have, among other things 1) audited, written, and deployed smart contracts; 2) issued proprietary purpose-built tokens; and 3) written programs to scrape blockchain transactional data. As detailed in the *TBIS* and *Middleton* matters detailed above, we have applied these skillsets to prevent asset dissipation or loss, develop proprietary methodologies for blockchain-related loss calculations, trace and marshal assets, and distribute claim payments via blockchain.

Distribution Plan Drafting: Holland & Knight has first-hand experience drafting and executing claim and distribution plans involving digital assets. As evidenced by our firm's work in *TBIS* and *Middleton,* we can draft and execute a distribution plan uniquely customized to the engagement's specific requirements while avoiding the many pitfalls present with blockchain technologies.

Bankruptcy: Holland & Knight insolvency attorneys represent clients both in litigation and out-of-court restructurings and transactions. Members of Holland & Knight's bankruptcy practice are adept at restructuring debtors and preserving the interests of equity holders. The group's experience extends to representing asset acquirers, parties to fiduciary duty litigation, and foreign representatives seeking U.S. recognition and pursuing enforcement actions. Our lawyers have acted as trustees, examiners, and receivers, and we have strong international relationships with foreign liquidators in connection with our cross-border Asset Recovery practice. As part of our Chapter 15 practice, we identify and trace digital assets and assist liquidators in assembling a comprehensive financial picture of insolvent digital asset businesses.

Industry Relationships: Whether it be liquidation of an estate's digital asset holdings, on-chain distribution, or claimant communication, Holland & Knight leverages its strong relationships with key firms in the claims administration and digital asset industries. For instance, we have extensive experience working with claims administration firms like Kroll, accounting firms with digital asset experience, such as EisnerAmper Group, digital asset tracing firms like CipherTrace, and all of the major digital asset exchanges. In addition, we have long-standing relationships with accounting, forensics, and professional practice teams at the major accounting and consultancy firms including each of the Big Four, Stroz Friedberg, FTI, Ankura, and Alix Partners.

Fee Flexibility: Our team members have the skills, resources, and actual experience needed to serve as Receiver, Distribution Agent, and counsel thereto in the SEC's digital asset enforcement actions, and the firm has highly competitive rates relative to comparable firms. Although the facts and circumstances of each case are unique, Holland & Knight will always consider material rate reductions and offer rate flexibility. The firm has entered into creative fee arrangements including phased scope-of-work, fee caps, significantly discounted travel rates, and other contingency or alternative fee arrangements.

## IV. Overview of Receivership Plan

As a fiduciary to the court, investors, and other stakeholders in the estate, the proposed team and I understand the importance of promptly, efficiently, and credibly executing a phased scope of work designed at the outset to (i) minimize risk—primarily including the loss of assets or information—and (ii) maximize assets in the estate. As reflected in detail in the attached Deck, my team and I have developed a dynamic and multi-faceted framework to accomplish key Receivership objectives concerning the necessary investigative, administrative, and legal steps to maximize recovery for the investor victims. We have used the time since our initial correspondence to conduct necessary investigative benchmarking and preparation activities to immediately engage in necessary steps following appointment, with a particular focus on the critical 48-72 hours following appointment to limit asset and evidence dissipation. Moreover, based on the team's extensive experience with Receiverships, we will be able to adjust and modify, as necessary, our proposed approach as we learn more information about the Matter from you and your team.

## V. Fee Structure

As Receiver, I will supervise all work performed and will be ultimately responsible for the conduct of the Receivership. I will be aided by my colleagues, Ms. Magee and Mr. Mascianica, who will perform supervisory and strategic roles in the Receivership. The well qualified and experience-tested

core team of associates, listed above, aided by paralegals and support staff, will perform much of the day-to-day work of the Receivership.

We are aware that Receivership legal expenses can have a significant impact on victim recovery. As a result, although Holland & Knight's partner rates are already 6% below standard peer firm rates and our associate rates are 13% below peer firms, we are offering additional and significant rate reductions to handle this work, along with other flexibility in connection with this Matter to minimize the impact on the Receivership estate. Please note that, given the limited information we currently have concerning the Matter, we remain open to modifying the proposed structure below.

| Name | Title (Role) | Current Hourly Billing Rate | Proposed Discounted Hourly Billing Rate |
| --- | --- | --- | --- |
| Josias Dewey | Partner (Receiver Candidate) | $980 | $750 |
| Jessica Magee | Partner (Counsel to Receiver) | $1115 | $750 |
| Scott Mascianica | Partner (Counsel to Receiver) | $1025 | $750 |
| Andrew Balthazor | Associate (Counsel to Receiver) | $555 | $450 |
| Dennis González | Associate (Counsel to Receiver) | $560 | $450 |
| Alex Englander | Associate (Counsel to Receiver) | $540 | $450 |
| Variety | Paralegal (Counsel to Receiver) | $325 | $195 |

Moreover, our proposal includes several additional components to minimize legal spend, enhance flexibility, and incentivize my team to maximize recovery for the benefit of the victim investors:

- During the most critical phase of the engagement—the first 30 days—we are willing to cap our fees at $200,000 regardless of the amount of time spent to execute the necessary tasks.

- We are willing to provide a 20% holdback on all subsequent quarterly fee applications, reserving such amounts until the final fee application.

- For ancillary litigation related to the recovery of Receivership assets, we are willing to engage in contingency and success fee arrangements. Although such details will need to be discussed further once we have more information about the Matter, we are confident that this approach will limit the legal spend and align the incentives of the Holland & Knight team with the victims in this matter.

- We are also willing to engage in a quarterly rate re-assessment with your team to evaluate whether the proposed rate structure is continuing to serve its purposes.

I know the SEC has its choice of qualified, capable professionals to serve as court-appointed fiduciaries when the stakes are high, and time is of the essence to halt ongoing fraud and protect investor interests. I am proud to present our firm's capabilities and for our professionals to be considered for appointment as a Receiver in the SEC's digital asset enforcement actions.

Respectfully,
HOLLAND & KNIGHT LLP

Josias N. Dewey
Partner
Chair, Digital Assets and Blockchain Technology