Michael E. Welsh (Massachusetts Bar No. 693537)
welshmi@sec.gov
Casey R. Fronk (Illinois Bar No. 6296535)
fronkc@sec.gov
Attorneys for Plaintiff
Securities and Exchange Commission
351 South West Temple, Suite 6.100
Salt Lake City, Utah 84101
Tel: (801) 524-5796

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DIGITAL LICENSING INC. (d/b/a "DEBT Box"), a Wyoming corporation; JASON R. ANDERSON, an individual; JACOB S. ANDERSON, an individual; SCHAD E. BRANNON, an individual; ROYDON B. NELSON, an individual; JAMES E. FRANKLIN, an individual; WESTERN OIL EXPLORATION COMPANY, INC., a Nevada corporation; RYAN BOWEN, an individual; IX GLOBAL, LLC, a Utah limited liability company; JOSEPH A. MARTINEZ, an individual; BENJAMIN F. DANIELS, an individual; MARK W. SCHULER, an individual; B & B INVESTMENT GROUP, LLC (d/b/a "CORE 1 CRYPTO"), a Utah limited liability company; TRAVIS A. FLAHERTY, an individual; ALTON O. PARKER, an individual; BW HOLDINGS, LLC (d/b/a the "FAIR PROJECT"), a Utah limited liability company; BRENDAN J. STANGIS, an individual; and MATTHEW D. FRITZSCHE, an individual;<br><br>Defendants, | Case No. 2:23-cv-00482-RJS<br><br>**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION TO CLARIFY RECEIVERSHIP ORDER, AND MEMORANDUM IN SUPPORT**<br><br>Chief Judge Robert J. Shelby |

ARCHER DRILLING, LLC, a Wyoming limited liability company; BUSINESS FUNDING SOLUTIONS, LLC, a Utah limited liability company; BLOX LENDING, LLC, a Utah limited liability company; CALMFRITZ HOLDING, LLC, a Utah limited liability company; CALMES & CO, INC., a Utah corporation; FLAHERTY ENTERPRISES, LLC, an Arizona limited liability company; IX VENTURES FZCO, a United Arab Emirates company; PURDY OIL, LLC, a Nebraska limited liability company; THE GOLD COLLECTIVE LLC, a Utah limited liability company; and UIU HOLDINGS, LLC, a Delaware limited liability company,

        Relief Defendants.

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

FACTUAL BACKGROUND .......................................................................................................... 1

ARGUMENT .................................................................................................................................. 6

    I.    The Affiliates Are "Affiliates" of DLI under the Receivership Order. ............................... 7

    II.   The DCH Entities Are Subject to the Receivership Order. ............................................... 9

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**

*In re Motorola Sec. Litig.*,

   644 F.3d 511 (7th Cir. 2011) ................................................................................................. 7

*In re San Vicente Med. Partners, Ltd.*,

   962 F.2d 1402 (9th Cir. 1992) ............................................................................................... 9

*SEC v. Francisco*,

   No. SACV 16-02257, 2017 WL 5952169 (C.D. Cal. July 6, 2017) ...................................... 7, 8

*SEC v. Platforms Wireless Int'l Corp.*,

   617 F.3d 1072 (9th Cir. 2010) ............................................................................................... 7

*SEC v. Private Equity Mgmt. Grp.*,

   No. CV 09-2901, 2009 WL 3074604 (C.D. Cal. Sept. 21, 2009) ................................ 7, 8, 9, 10

*SEC v. Torchia*,

   No. 1:15-cv-3904, 2016 WL 6212002 (N.D. Ga. Oct. 25, 2016) .............................................. 8

*U.S. v. RaPower-3, LLC*,

   No. 2:15-cv-00828-DN, 2019 WL 2195409 (D. Utah May 3, 2019) ............................ 6, 7, 8, 9

**Rules**

Rule 12b-2 of Regulation 12B,

   17 C.F.R. § 240.12b-2 ............................................................................................................ 6

Rule 144 of the Securities Act of 1933,

   17 C.F.R. § 230.144(a)(1) ...................................................................................................... 6

Plaintiff Securities and Exchange Commission ("SEC") moves for clarification of the Court's July 28, 2023 Temporary Receivership Order (Dkt. No. 10, "Receivership Order"). The Receiver has attempted to marshal and preserve assets of Relief Defendants Blox Lending, LLC ("Blox"), Business Funding Solutions, LLC ("BFS"), The Gold Collective LLC ("Gold Collective"), UIU Holdings, LLC ("UIU") and certain third-party entities under the "Digital Commodity House" brand. The evidence obtained by the Receiver demonstrates that each of these entities (collectively, the "Affiliates") are owned, managed, operated, and controlled by the same Defendants (Jason Anderson, Jacob Anderson, Schad Brannon, and Roydon Nelson) that operated and controlled the entity in now in receivership, Defendant Digital Licensing Inc. (herein, "DLI"), and that the financial accounts of the Affiliates were used, interchangeably with DLI's, in furtherance of the fraudulent investment scheme alleged in the SEC's Complaint.

Counsel for these Defendants has refused to allow the Receiver access to the Affiliates' assets and files, claiming they do not fall within the Receivership Estate because the Affiliates are not explicitly named in the Receivership Order. Moreover, the Receiver has determined that there is ongoing (and time-sensitive) litigation associated with the Affiliates. As such, the SEC moves to clarify that the Receivership Order, which provides the Receiver authority over both DLI and its "affiliates and subsidiaries," (*see* Dkt. No. 10) extends to the Affiliates.

## FACTUAL BACKGROUND

The SEC's Complaint alleges that DLI, through its principals Jason Anderson, Jacob Anderson, Brannon, and Nelson, created and perpetuated a sprawling, fraudulent securities offering through which Defendants defrauded investors of at least $49 million dollars. (*See* Dkt. No. 1, Compl. ¶¶ 1–4, 13–17.) The Receiver's investigation has revealed this to be a significant underestimate: in addition to fiat, Defendants obtained at least $110 million in crypto assets from investors. (*See* Ex. A, Declaration of Receiver Josias N. Dewey ("Dewey Decl.") ¶ 20.)

1

As alleged, and as the SEC's and Receiver's investigation has now shown, the fraudulent scheme was primarily operated through a set of entities—the Affiliates—owned and controlled by the Andersons, Brannon, and Nelson, who also owned and controlled DLI. (*See* Dkt. No. 1, Compl. ¶¶ 13–17; Dkt. No. 3-4, Declaration of Joseph D. Watkins ("Watkins Decl.") ¶¶ 15, 15d & Exs. 15–26; Ex. A, Dewey Decl. ¶¶ 4–5.) Prior to being placed in receivership, business entity information obtained by the SEC showed that **Digital Licensing Inc.** ("**DLI**"), a Wyoming corporation, was controlled by Brannon (as President) and Nelson (as its Secretary, Treasurer, and sole Director). (*See* Dkt. 3-4, Watkins Decl. ¶ 45.) Following the filing of this action, the SEC learned that DLI's primary place of business is 13894 South Bangerter Parkway, Suite 100, Draper, UT 84020. (*See* Ex. A, Dewey Decl. ¶ 68.) According to DLI's service provider, DLI controls various websites and email accounts associated with the scheme, including those for "digitalcommodityhouse.com," but some unidentified entity (possibly one of the Affiliates) owns and controls the primary website used to solicit investors, "thedebtbox.com." (*See id.* ¶¶ 12, 16.)

**Blox Lending, LLC** is a Nevada limited liability company whose corporate documents show that it, like DLI, is headquartered at 13894 S. Bangerter Parkway in Draper. (*See* Dkt. No. 3-4, Watkins Decl. ¶ 53 & Ex. 43; *see also* Ex. A, Dewey Decl. ¶¶ 48–49 & Ex. 4.) Blox's sole manager and member is Jason Anderson. (*See id.*) Jason is an authorized signatory for all five of Blox's bank accounts, and Jacob Anderson is the only other authorized signatory. (Ex. A, Dewey Decl. ¶ 48 & Ex. 4.) An analysis of Blox's bank accounts demonstrates that the vast majority of deposits into Blox's bank accounts between August 2020 and June 2023 came from the bank accounts of other Defendants and Relief Defendants, including DLI, iX Global, LLC and UIU. (*Id.* ¶¶ 50–51.) These transactions include purchases by iX Global (for subsequent resale to investors) of the node license securities at issue, and significant transactions regarding

2

the underlying business operations purportedly generating profits to increase the value of those securities.  (*Id.* ¶¶ 51–53.)  In addition, the Receiver's analysis of certain digital wallets associated with Blox shows that Blox's digital wallets received at least $22.4 million in digital cryptocurrency assets from investors, and used those funds to purchase digital asset tokens on behalf of Defendants' investment scheme.  (*See id.* ¶¶ 56–62.)

**Business Funding Solutions, LLC** ("**BFS**") is a Utah limited liability company whose business registration expired on August 24, 2022.  (Dkt. No. 3-4, Watkins Decl. ¶ 52 & Ex. 42.)  Jason Anderson is BFS's sole registered agent and managing member.  (*Id*; Ex. A, Dewey Decl. ¶ 66 & Exs. 13–14.)  BFS operates from the same Bangerter Road location in Draper as DLI, Blox, and UIU.  (Ex. A, Dewey Decl. ¶ 69.)  Jason Anderson is also the authorized signatory for BFS's bank account.  (*Id.* ¶ 66.)  As with Blox, bank records show that the vast majority of transactions in BFS's bank account were made in connection with the node license investment scheme.  (*See id.* ¶¶ 70–75.)

**The Gold Collective, LLC** is a Nevada limited liability company managed by Nelson and Brannon.  (Ex. 3-4, Watkins Decl. ¶ 59 & Ex. 49; Ex. A, Dewey Decl. ¶ 77 & Ex. 18.)  Its corporate documents, which list "The Mineral Collective, LLC" as the entity's name and "The Gold Collective, LLC" as its business name, list Nelson as its sole manager and registered agent.  (*Id.*)  On July 6, 2023, Brannon, as the representative of both DLI and The Gold Collective, filed a lawsuit in Nevada state court, in which Brannon verified, under penalty of perjury, allegations that he and Nelson managed both DLI and The Gold Collective, and alleged that DLI and The Gold Collective together engaged in business including "digital currency projects" and "mining business."  (Ex. A, Dewey Decl. ¶ 78 & Ex. 21.)  Account records for five bank accounts associated with The Gold Collective show that between March 2019 and February 2023, a large

3

percentage of the business's transactions were directly related to the node license investment scheme. (*See id*. ¶¶ 78–82.) Furthermore, internal communications between Defendants asserted that The Gold Collective's interests in purported gold and silver projects supporting the node license securities were to be assigned to DLI. (*Id*. ¶ 81 & Ex. 22.)

**UIU Holdings, LLC** is a Delaware limited liability company that assisted DLI in facilitating financial transactions associated with the node license investment scheme. (*See* Dkt. No. 3-4, Watkins Decl. ¶ 60 & Ex. 50; Ex. A, Dewey Decl. ¶ 83–84 & Exs. 23–25.) Jason Anderson is UIU's sole manager, member, and registered agent. (Ex. 3-4, Watkins Decl. ¶ 60 & Ex. 50.) While its corporate documents list its principal place of business at 16192 Coastal Hwy, Lewes, DE (*see id*.), in fact—and according to documentation filed with the IRS—its operating address is the same Bangerter Parkway location as DLI, Blox, and BFS. (Ex. A, Dewey Decl. ¶ 85 & Ex. 23.) According to UIU's organizational documents, Jason Anderson owns 100 percent of UIU, and along with Jacob Anderson is the sole signatory on UIU's bank accounts. (*Id*. ¶ 84.) The Receiver's analysis of UIU's account records shows substantial transactions directly associated with the node license scheme. (*See id*. ¶¶ 86–88.)

**Digital Commodity House, LLC**, **Digital Commodity Software House, FZCO**, and **Digital Commodity House, FZCO** (collectively herein, the "DCH Entities") are entities Defendants used to facilitate the operations of DLI and the node license investment scheme.[1] (*See* Ex. A, Dewey Decl. ¶ 89.) Each of these entities appears to have been created as part of

---

[1] Although Defendants have used the name "Digital Commodity House, LLC" in social media, and previously registered Digital Commodity Software House, FZCO as a foreign entity, it appears that Digital Commodity House, FZCO is the only currently registered and operating DCH Entity. (*See* Ex. A, Dewey Decl. ¶¶ 89, 97.)

4

Defendants' effort to move the operations of DLI overseas to avoid SEC regulation.  (*See* Dkt. No. 3-4, Watkins Decl. ¶ 27a; Ex. A, Dewey Decl. ¶ 92.)  While, nominally, Digital Commodity Software House FZCO and Digital Commodity House, FZCO are foreign entities in the United Arab Emirates (*see* Ex. A, Dewey Decl. ¶ 89), they operate in the United States in conjunction with, and in support of, DLI and the node license investment scheme.  For example, the "digitalcommodityhouse.com" domain name is under the control of DLI's service provider at the Bangerter Parkway address, and all emails sent to that domain are consolidated for DLI's principals.  (*Id*. ¶ 90 & Ex. 1.)  The creation of these companies was directly funded by transfers from DLI's bank accounts (*id*. ¶ 91), and an announcement posted on DLI's website "www.digitallicensinginc.com" stated that "Digital Licensing, Inc. is now "Digital Commodity House, LLC."  (*Id*. ¶ 97 & Ex. 30.)  Internal corporate documents provide that Nelson and Brannon control the DCH Entities (*id*. ¶ 100), and that the DCH Entities act as a holding company for projects related to the node license investment scheme.  (*Id*. ¶ 101.)

   Counsel for the "DEBT Council" Defendants (the Andersons, Brannon, and Nelson) have refused to allow the Receiver to take possession of significant assets associated with the Affiliates, arguing that because the Affiliates are not explicitly named in the Receivership Order, the Receiver does not have the authority to marshal and preserve those assets.  For example, the Receiver's team has now traced at least $2.5 million in digital crypto assets to wallets controlled by the DCH Entities, but counsel has refused to provide access to the Receiver, claiming that they "belong to DCG and not DLI."  (Ex. A, Dewey Decl. ¶ 99 & Ex. 32.)  Nonetheless, counsel has claimed that certain of the Affiliates have ongoing business expenses that must be approved by the SEC to preserve their operations.  For example, on August 23, counsel claimed Blox was

incurring various "ordinary-course business" expense payments and demanded the SEC approve those payments. (*See* Ex. B.)

The Receiver has also now identified several ongoing and time-sensitive litigations in which Affiliates and other parties are named. (*See* Ex. A, Dewey Decl. ¶ 9.) While the Receivership Order permits the Receiver to stay litigation involving DLI, litigation involving the Affiliates may proceed and create liabilities that may ultimately reduce the funds available to disgorge to investors. (*See id.* ¶¶ 39–40.) In addition, the Receiver has been limited in his ability to assess the impact of this litigation and collect all of DLI's legal files and communications related to these ongoing matters. (*Id.* ¶¶ 41–46.) Thus, absent clarification of the Receivership Order, it is likely that investor funds will be dissipated through ongoing litigation, business expenses, and potential transfer of significant cryptocurrency assets.

## ARGUMENT

"It is generally recognized that district courts have broad powers and wide discretion to determine relief in a receivership." *U.S. v. RaPower-3, LLC*, No. 2:15-cv-00828-DN, 2019 WL 2195409, *2 (D. Utah May 3, 2019) (unpublished). As such, "to accomplish the purpose of a receivership, courts frequently include all subsidiaries and affiliates of receivership defendants in the receivership, regardless of where they may be located." *Id.* (citing cases).

Under the securities laws, an "affiliate" is defined to include entities "under common control" with the subject entity. *See, e.g.*, Rule 144 of the Securities Act of 1933, 17 C.F.R. § 230.144(a)(1) (defining "affiliate" as "a person that directly or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such issuer"); Rule 12b-2 of Regulation 12B, 17 C.F.R. § 240.12b-2 (defining "affiliate" as "a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under

common control with, the person specified."); *see also In re Motorola Sec. Litig.*, 644 F.3d 511, 518 n.1 (7th Cir. 2011) ("This focus on control is important for purposes of securities law and is the dispositive inquiry in determining whether or not an entity is an affiliate."). Thus, in determining whether entities are "affiliates" for purposes of a receivership in SEC actions, courts have considered "the nature of the relationship between entities, the degree of control and influence (including common control by another company or individual), and the financial interests between the entities and individuals involved." *SEC v. Francisco*, No. SACV 16-02257, 2017 WL 5952169, *2 (C.D. Cal. July 6, 2017) (unpublished), citing *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1087 (9th Cir. 2010); *see also SEC v. Private Equity Mgmt. Grp.*, No. CV 09-2901, 2009 WL 3074604, *2 (C.D. Cal. Sept. 21, 2009) (unpublished).

Here, the extensive evidence obtained by the Receiver demonstrates that the same four individual Defendants—the so-called "DEBT Council"—own and control the Affiliates; that a primary purpose of the Affiliates was to support Defendants' node license investment scheme; that the Affiliates and DLI commingled assets; and that the Affiliates were managed out of the same location. As such, they are "affiliates" of DLI subject to the Receivership Order.

I. **The Affiliates Are "Affiliates" of DLI under the Receivership Order.**

Each of the Affiliates is an "affiliate" of DLI pursuant to the Receivership Order. First, each of the Affiliates is owned and controlled by one or more of Jason Anderson, Jacob Anderson, Brannon, and Nelson—who are the officers, members, manager, registered agents, and account signatories for the Affiliates. (*See* Ex. A, Dewey Decl. ¶¶ 48, 66, 77, 84, 100.) There is no indication any person or entity other than these Defendants has an ownership or management interest in the Affiliates, and thus they are under "common control" with DLI. *See RaPower-3, LLC*, 2019 WL 2195409, at *3 (entities are "affiliates" for purpose of receivership

where they had "common officers, directors, members, and managers"); *Francisco*, 2017 WL 5952169, at *3 (similar); *Private Equity Mgmt. Grp.*, 2009 WL 3074604, at *3–5 (similar).

In addition, significant transactions in the bank accounts and digital asset wallets of the Affiliates—indeed, as to Blox and BFS, the vast majority of transactions in their accounts—were in service of the node license investment scheme that is the subject of this action. (*See*, *e.g.*, Ex. A, Dewey Decl. ¶¶ 50–53, 56–62, 70–75, 79–82, 86–88, 91, 99.) Between March 2021 and May 2023, DLI transferred over $17 million in fiat currency alone to accounts controlled by the Affiliates. (*See* Ex. A, Dewey Decl. ¶ 21.) Millions of dollars of transactions between and among DLI and Affiliates involved the purchase and sale of the node license securities, and most of the other significant transactions between DLI and the Affiliates involved the underlying commodity businesses purportedly "backing" those securities. (*See*, *e.g.*, *id.* ¶¶ 22, 51–62, 75, 79–81, 91, 99.) Furthermore, the bank account and digital tracing analysis reveals that there was extensive commingling of funds between and among DLI and the Affiliates. (*See id*. ¶¶ 102–113.) Courts have found such "transference of funds" as strong evidence that companies are "affiliates" for purposes of enforcing a receivership. *See*, *e.g.*, *RaPower-3, LLC*, 2019 WL 2195409, at *3 (finding entities to be affiliates where "there have been numerous and substantial financial transactions between them"); *Private Equity Mgmt. Grp.*, 2009 WL 3074604, at *4 (entities are affiliates where they "commingled funds" and "collected . . . profits" associated with a security offering); *SEC v. Torchia*, No. 1:15-cv-3904, 2016 WL 6212002, *3 (N.D. Ga. Oct. 25, 2016) (unpublished) ("Receiverships have been expanded by use of the alter ego doctrine to include entities related to defendants where funds have been commingled.").

Finally, the evidence shows the Affiliates operated almost as a conglomerate for the purposes of supporting the fraudulent node license scheme. For example, they shared and

8

interchangeably used legal counsel (*see* Ex. A, Dewey Decl. ¶¶ 43–46) and websites and e-mail domains (*see id*. ¶¶ 11–15); and, despite certain representations in corporate documents, operated out of the same building in Draper that was DLI's primary place of business (*see id*. ¶¶ 68–69). Indeed, Defendants admitted—both in publicly filed documents and in public announcements to investors—that the Affiliates were supporting the node license investment scheme. (*See, e.g.*, *id*. ¶¶ 55, 67, 78, 92–98, 101.) The Affiliates cannot now hide behind their separate corporate registrations when the evidence makes clear they shared a common corporate purpose. *See RaPower-3, LLC*, 2019 WL 2195409, at *3 (finding entities to be "affiliates" for purposes of receivership where "[t]heir corporate purposes are similar"); *Private Equity Mgmt. Grp.*, 2009 WL 3074604, at *4 (finding entities to be affiliates where, *inter alia*, they "used the same address" and one entity "generally collected [the other's] profits"); *id*. at 5 (finding an entity to be an affiliate where it transferred "substantial sums of money" to another entity at the direction of the other entity's control persons).

## II.   The DCH Entities Are Subject to the Receivership Order.

Furthermore, that the DCH Entities are not parties to this action does not permit them to avoid the Receivership Order. The property of a non-party is subject to a receivership where "the non-party meets the minimum contacts standard set out in *International Shoe* and receives actual notice and an opportunity for a hearing." *Private Equity Mgmt. Grp.*, 2009 WL 3074604, at *5, quoting *In re San Vicente Med. Partners, Ltd.*, 962 F.2d 1402, 1406–08 (9th Cir. 1992); *see, e.g.*, *RaPower-3, LLC*, 2019 WL 2195409, at *1 (extending receivership to affiliated entities that "received timely and sufficient notice of the Motion and [were] afforded an adequate opportunity to be heard with respect to it"). Moreover, such "notice is satisfied when the parties are so closely related in their business operations or other activities that the institution of an

9

action against one serves to provide notice of the litigation to the other." *Private Equity Mgmt. Grp.*, 2009 WL 3074604, at *6 (quotation omitted).

Here, the DCH Entities, by Defendants' own admission, were created as part of a plan to move DLI's operations overseas to avoid SEC regulation. (*See* Dkt. No. 3-4, Watkins Decl. ¶ 27b; Ex. A, Dewey Decl. ¶ 92.) The funds for the formation of the DCH Entities came from DLI (Ex. A, Dewey Decl. ¶ 91), and the website for those entities is operated by DLI's service provider (*id*. ¶ 12.) The corporate documents associated with the DCH Entities state that Nelson is their Chairman; that Brannon is a director; and that the purpose of the DCH Entities is to act as a *de facto* holding company for various DLI projects. (*Id*. at 100–01.) Furthermore, the Privacy Policy on "thedebtbox.com" website, purportedly owned, as of May 8, 2023, by "Digital Commodity House, FZCO," states that "[o]ur services are hosted in the United States and intended for visitors located within the United States." (*Id*. ¶ 98 & Ex. 31.) In short, the DCH Entities are controlled and operated (from Draper, Utah) by named and served Defendants—and indeed were specifically created to perpetuate DLI's node license investment scheme that is the subject of this action. This is more than sufficient to satisfy the "minimum contacts" test of *International Shoe* and the due process requirements of notice and an opportunity to be heard. *See Private Equity Mgmt. Grp.*, 2009 WL 3074604, at *5–6.

## **CONCLUSION**

For these reasons, the SEC respectfully requests that the Court clarify that the language in the Receivership Order referring to DLI's "affiliates and subsidiaries" includes the Affiliates, and issue such order in the form proposed and attached hereto as Exhibit C, which would amend the Court's Receivership Order to specifically name the Affiliates as DLI's "affiliates and subsidiaries."

10

Dated: September 1, 2023.

                    Respectfully submitted,

                    **SECURITIES AND EXCHANGE COMMISSION**

                    */s/ Michael E. Welsh*
                    Michael E. Welsh
                    Casey R. Fronk
                    Attorneys for Plaintiff
                    Securities and Exchange Commission

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of September, 2023, I caused the foregoing **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION TO CLARIFY RECEIVERSHIP ORDER, AND MEMORANDUM IN SUPPORT** to be served to all parties entitled to service through the Court's ECF system.

*/s/ Michael E. Welsh*
Michael E. Welsh