# Exhibit 18

**Morrison**Cohen LLP

David E. Ross
Partner
(212) 735-8841
dross@morrisoncohen.com

August 17, 2023

**VIA E-MAIL & FEDEX**
Jessica Magee, Esq.
Scott Mascianica, Esq.
Holland & Knight LLP
One Arts Plaza, 1722 Routh Street
Suite 1500
Dallas, Texas 75201

Re:     *SEC v. DLI, et al.,* **Case No: 23-CIV-482 (D. Utah)**

Dear Scott and Jessica,

As you know, we represent Jason Anderson, Jacob Anderson, Schad Brannon, and Roydon Nelson in the above-captioned matter. As you also know, from the inception, to wit, the very first time that we learned of the *ex parte* Temporary Receivership Order (the "TRO"), we have have been cooperating with the greatest of diligence with the Receiver. Indeed, as you know from our many calls and e-mails, in accordance with the TRO, we have been ready, willing and able to, among other things, provide the Receiver with all relevant information related to and control of, *inter alia,* all of our clients' "digital assets" preserve same, ensure they are not dissipated and otherwise maintain the *status quo*. Notwithstanding same, as of the date of this letter, we are still awaiting the Receiver's written instructions and protocol as to how you wish to accomplish the "handoff" of those assets.

 Separately, while we have every intention of continuing our diligent cooperation, we are also constrained to raise concerns about the adverse effects of the Receivership, including serious business interruptions, affecting employees and contractors, security issues and environmental concerns. To that end, as discussed at length below, we initially outline major concerns that we have with three (3) of our clients' existing businesses.

**DLI'S FOUR OIL DRILLING RIGS**

As we showed you on Monday, August 14, 2023, DLI owns four (4) oil drilling rigs in Nebraska, Nevada, and Oklahoma. And we provided you the GPS coordinates to locate the rigs.

Our clients have advised us that these four drilling rigs are worth approximately $6 million. These rigs rent for $18,000 -$26,000 per day each, depending upon location. And prior to the imposition of the Receivership, DLI was in negotiations for a contract to provide rigs for the drilling of 11 third-party wells, which would have generated a significant revenue. The Receivership quashed any chance of realizing such revenue.

**Morrison**Cohen LLP

August 17, 2023
Page 2

In addition, because DLI's accounts are frozen and could no longer operate to pay its personnel, including its security detail, they unsurprisingly decided to leave the work sites; thus, the rigs are no longer being monitored and are exposed to theft.  As we discussed in our Monday's email regarding the oil rigs, a reported theft and recovery has already occurred last month in Nevada (see incident report from White Pine County Sheriff's Department, see Exhibit 1). Because security was available to report the theft early, however, the Sheriff's Department was able to recover the equipment. That is no longer the case.  Again, we respectfully ask that the Receiver take all necessary actions to secure and protect DLI's rigs.

**OKLAHOMA OIL AND GAS ASSETS OF IGNIS ENERGY**

One of our clients, Roy Nelson, through Relief Defendant The Gold Collective LLC, had operated Ignis Energy LLC ("Ignis Energy") in Oklahoma.  The SEC does not mention Ignis Energy anywhere in its Complaint.

Through a purchase of several gas systems in Kay County, Oklahoma (the Kay gas system, the Frantze gas system, the Coronado gas system and their associated easements and gas wells), Ignis Energy was assigned these oil and gas assets.  See Oklahoma, Kay County Recorder's Office, Book 1933, pages 0894-0963 (record of assignment); see also Book 1620, pages 0244-0339 (record of purchase of the foregoing gas systems, easements and gas wells).  These gas systems (including the tanks and pipelines) and their associated easements and gas wells span the majority of Kay County (estimated to be just over 127 miles).

These assets need to be immediately managed and maintained to ensure safety and security--not only of the assets but also for the community. Theft in this area is very high, due to the fact that many roughnecks who live in the area and work in the industry have access and ability to move equipment easily. We have already received open and consistent threats of equipment theft and vandalism. Beyond theft and vandalism, these assets, if not regularly maintained, pose a potential environmental hazard; for example, the pipelines or wells could have a leakage and could adversely affect their surrounding areas and cause a public health issue.

Ignis Energy's current workforce of more than ten workers left the job site after learning of the SEC's lawsuit.  Thus, the pipeline, tanks and wells are now exposed to unrectified maintenance issues and oil and gas reserves are extremely vulnerable to theft.  We note that due to the loss of workforce, many of these wells are being "shut-in" to mitigate loss, safety and environmental concerns.  However, having the wells shut-in could cause also significant problems, as saline intrusion to the formations occurs when wells are shut-in.

In light of the TRO and the Temporary Receivership Order, Ignis Energy, in excess of caution, has not operated, managed, or maintained the oil and gas assets.  We believe that the Receiver needs to quickly resume maintenance and operation of these assets, as well as transport and

**Morrison**Cohen LLP

August 17, 2023
Page 3

ensure the delivery of natural gas and oil from these sites to avoid contamination, oil spills, theft or other environmental hazards.   Please advise us forthwith what the Receiver plans to do regarding operating, managing, or maintaining these oil and gas assets in Oklahoma.

## DLI's ECOSYSTEM / TOKENOMICS

In compliance with the TRO, our clients have done nothing to affect the status quo in DLI's ecosystem/tokenomics.  Contrary to the suggestion that the Receiver made recently, there has been no transfer or dissipation of any crypto assets that our clients possess or control.  However, we also want to advise you that DLI is contractually obligated to purchase tokens out of the ecosystem with any revenues.  Under the lite papers available on the DEBT Box website, the tokens purchased must then be burned.

In addition, as we discussed, our clients, once the receiver provides the protocol for transfer of crypto assets, will, in turn, provide the Receiver with the keys to the treasury wallets. The tokens in the treasury, however, are not intended to ever be released. The release of any of these tokens into the open market could result in catastrophic loss for node holders, by diluting the market.  Please be mindful of the potential deleterious market impact that an error could cause.

In closing, we respectfully submit that as the Receiver is stepping into the shoes of DLI, the Receiver must take all necessary actions to maintain the ongoing businesses discussed above. In our view, any failure to do so would constitute an act of gross negligence by the Receiver.

We are happy to discuss further or answer any questions.

Sincerely,

/s David E. Ross
David E. Ross