# Exhibit 2

```
 1                IN THE UNITED STATES DISTRICT COURT

 2             FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

 3

 4
        SECURITIES AND EXCHANGE      )
 5      COMMISSION,                  )
                                     )
 6              Plaintiff,           )
                                     )
 7          vs.                      )
                                     )  Case No:  2:23cv482
 8      DIGITAL LICENSING, a         )
        Wyoming corporation doing    )
 9      business as Debt Box, et     )
        al,                          )
10                                   )
                Defendants.          )
11      _____

12

13

14

15

16

17            BEFORE THE HONORABLE ROBERT J. SHELBY

18                       July 28, 2023

19                  ZOOM STATUS CONFERENCE

20

21

22

23                       Reported by:
                  KELLY BROWN HICKEN, RPR, RMR
24                       801-521-7238

25
```

```
 1                      APPEARANCES OF COUNSEL

 2

 3   FOR THE PLAINTIFF:        SECURITIES AND EXCHANGE COMMISSION

 4                             BY:  MICHAEL EDWARD WELSH

 5                                  CASEY FRONK

 6                                  Attorneys at Law

 7                             351 S WEST TEMPLE STE 6.100

 8                             SALT LAKE CITY, UTAH  84101

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1            SALT LAKE CITY, UTAH, FRIDAY, JULY 28, 2023

2                          *   *   *   *   *

3            THE COURT:  Let's go ahead and call the case.

4    We'll call Case Number 2:23-CV-482, it's Securities and

5    Exchange Commission vs. Digital Licensing and others.  This is

6    a sealed hearing in a sealed case with the Securities and

7    Exchange Commission.  This is a hearing set on an application

8    for a temporary restraining order filed by the Commission

9    Docket Number 3.  I think we also noticed probably Docket

10   Number 4, which is the ex-parte application of an appointment

11   for a receiver in the case.  That's Docket Number 4.  Both of

12   these motions filed the same day the Commission initiated this

13   action, July 26th, with the filing of its complaint, which is

14   Docket Number 1.

15           Mr. Welsh, let me invite you to make your

16   appearance for the Commission and along with anyone else you

17   would like to announce today.

18           MR. WELSH:  Thank you, Your Honor.  And thank you

19   for making the time for us in such short notice.  Michael

20   Welsh on behalf of the Securities and Exchange Commission.

21   With me is my co-counsel Casey Fronk.  Also in the room is

22   members of the investigative staff.  They're off camera as we

23   are using our laptop.  They are here if you have questions

24   about the investigation that I was unable to answer.

25           THE COURT:  All right.  Well, thank you.  And let

 1    me just say at the outset that I apologize I don't -- I'm sure

 2    my staff knows, I was at a speaking engagement out of state

 3    yesterday, but I know that this case was initially errantly

 4    assigned to one of my colleagues.  We have a protocol for

 5    assigning, randomly assigning temporary restraining orders or

 6    motions for temporary restraining order that get filed, and

 7    for some reason our clerk's office stepped out of that

 8    protocol accidentally, and the case was assigned for a moment

 9    I think to Judge Nielson.  I think that's reflected on the

10    record.  I just wanted to make a record about why you're

11    seeing me and not Judge Nielson.  I was the judge in the queue

12    that was next to receive a TRO.  So I know there's been a

13    little bit of delay getting here.

14         Let me just say, in preparation for our hearing we

15    studied your complaint, your application for the TRO, your

16    motion seeking appointment of a receiver.  We've reviewed a

17    lot of the material that you've submitted.  And I appreciate

18    you having the investigative staff ready.  I actually think

19    I'm high-centered on a legal question.  So in the interest of

20    transparency, and I do this almost every time I have a

21    hearing, let me just paint the target for you so you know

22    where you're aiming.

23         The Commission relies in this case, and I think

24    I've seen this before in other emergency TRO type situations

25    with the Commission on the Unifund decision from the Second

                                                                    4

1    Circuit for the proposition that a lower burden exists when

2    the Commission is seeking relief under Rule 65.  I'll note as

3    I have I think previously, it's a 1990 decision from the

4    Second Circuit.  It predates Winter.  More importantly for me

5    sitting in Utah in the 10th Circuit I'm bound by 10th Circuit

6    authority.

7              Following the Winter decision, there was a decision

8    in the 10th Circuit in 2016, nobody knows how to pronounce it.

9    I call it Diné Citizens.  You may have found it in your

10   research for this case.  Diné was the 10th Circuit's response

11   to the Supreme Court's Winter decision.  And at least as I

12   read Winter I think the Supreme Court left to the circuits

13   some breadth, some width to decide what standards each circuit

14   was going to adopt for the requirements of Rule 65.  You may

15   remember, and maybe I'm jumping ahead of you here, Winter was

16   the decision where the Supreme Court said, this business of

17   some circuits reducing the burden required for a TRO or in

18   some instances saying you don't even need to establish all

19   four elements is incorrect.  And the Supreme Court reversed.

20             So I'll just tell you Diné doesn't involve an

21   application for a TRO by an administrative agency.  But the

22   language of Diné is clear, and I'll just cite a passage from

23   Diné, which is binding of course on me.  There the

24   10th Circuit said following Winter that:  Any modified test

25   which relaxes one of the prongs for preliminary relief and

1    thus deviates from the standard test is impermissible, end

2    quote.

3              There may be a district judge somewhere in the

4    10th Circuit -- well, I know there are.  In fact, there's one

5    on my court.  You all got an injunction I think from one of my

6    colleagues applying the Second Circuit standard from Unifund.

7              I don't think I'm permitted to do that.  So let me

8    just say I think you've made a robust showing, factual showing

9    tethered to the Securities and Exchange Act, both the 33 act

10   and the 34 act.  I think you've most likely satisfied your

11   obligation to show a likelihood of success on the merits.  But

12   in reviewing your materials, I don't think you've addressed

13   let alone made arguments drawn to some of the other Rule 65

14   factors.  I want to be sure -- I want to allow you to be heard

15   on this point, but let me tell you before you start what I've

16   done and what I'm anticipating, and then you can convince me

17   that it's crazy and we should do something different.

18             I've prepared a short oral ruling that I think lays

19   out what I think the standard is and why I think that is the

20   standard that governs, what I think is missing in the

21   application.  And then with the intent that the oral ruling at

22   least denies the motion without prejudice to re-file it, and

23   what I was going to propose is that we set a time for a

24   hearing Monday morning to take up the matter again if you wish

25   to address my ruling in any way that you think might be

1    helpful or necessary.

2              But that's just my orientation coming to the bench.

3    Mr. Welsh, why is that all wrong?  Or how do you think we

4    should proceed?

5              MR. WELSH:  Your Honor, I appreciate you putting

6    the bulls eye in front of us.  I would say if you could point

7    me to particularly which of the elements of facts that you

8    consider that you believe that we did not adequately address

9    in the hearing, we did rely on the Second Circuit opinion, but

10   I would submit that the factors are still there to the extent

11   that there are additional considerations that Your Honor

12   thought were lacking.  And I'd be happy to address those.

13             THE COURT:  I appreciate that.  Thank you.  I'll

14   say there's one other element that I think -- there's one

15   other part of 10th Circuit law that I think we hadn't

16   accounted for in this application, and that is in the

17   10th Circuit certain injunctions, requested injunctions are

18   disfavored, either mandatory injunctions which require

19   affirmative action on behalf of someone who's being enjoined

20   or certain other kinds of injunctions including injunctions

21   that change the status quo.  And I think some of the relief

22   that the Commission is seeking here does both.  There's

23   affirmative obligation in your request for the repatriation of

24   funds, and that's both an affirmative act that defendant would

25   have to, at least some of the defendants would have to

```
 1    perform, and also arguably changes the status quo if the funds
 2    are somewhere else at the time that you seek for relief or at
 3    the time the dispute became live at least.
 4              So give me just a moment.  Let me turn back to the
 5    merits argument.  And I'll just say, I want to be completely
 6    transparent.  I think there's information in your application
 7    from which the Court could fashion arguments about why each of
 8    the four elements mandatory -- or excuse me -- required
 9    elements of a Rule 65 TRO are satisfied.  I just don't believe
10    that's the proper function for a court and especially in an
11    ex-parte context.  So just one moment, I'll be more specific.
12              MR. WELSH:  Thank you, Your Honor.
13              (Time lapse.)
14              THE COURT:  So here one of the elements that I
15    think you stepped over I think in reliance on Unifund is the
16    obligation to show a risk of irreparable harm -- or
17    irreparable injury, and the other -- oh, let's see.  Yeah,
18    that's right.  I'm embarrassed now to tell you that I
19    didn't -- just noticing that your briefing relied on the two
20    elements that Unifund highlights, I sort of stopped after
21    that.  But what I can tell you is that, you know, the four
22    elements are substantial likelihood of prevailing on the
23    merits, I think you've adequately maybe even robustly
24    addressed that.  I don't know if you've shown irreparable
25    harm, though as I say I think could read that -- I could infer
```

8

1    that showing from the papers, I could craft an argument why

2    that's been made, why you've satisfied that prong.

3              I don't know if you engaged in an analysis about

4    how the threatened injury outweighs the harm that the

5    defendants may suffer.  And then, of course, you're required

6    to show that the injunction that was at issue would not

7    adversely affect the public interest.

8              I don't think there was much discussion about the

9    last three elements, at least not framed in the context of

10   Rule 65.  But did I miss them, Mr. Welsh?

11             MR. WELSH:  No, Your Honor.  I think you've

12   accurately described our pleadings.  I would say that there

13   are, as you indicated there are facts in there in our

14   briefings that do address those issues.  I'm happy to address

15   those now.  From your proposed order, if you would prefer us

16   to brief them in full in an amended brief, we'd be happy to do

17   so.

18             But to the irreparable harm, I would submit, Your

19   Honor, that from briefings that we pointed out defendants are

20   moving assets overseas.  They have said in videos that the

21   reason they are doing this is to avoid SEC jurisdiction.  They

22   have dissipated funds both in closing known accounts and using

23   those funds to purchase exorbitant gifts for themselves and

24   posting videos as part of their promotion activity of those --

25   for purchasing Lamborghini, new real estate, and recently on

1     more of an evidentiary side, our investigative staff has

2     noticed they have started to take down videos, started to

3     remove evidence that we would need to rely upon in discovery.

4               And so I would submit for the irreparable harm is

5     that -- taking a step back, Your Honor, if I may.  At this

6     point as you've seen probably from our TRO briefings we've

7     been covert up to this point.  We are not able to access

8     additional documents through subpoena without notifying them

9     for fear that that would alert them in proceeding this way.

10    Should we not receive the TRO, we're fearful for the same

11    reasons that us serving them with a complaint and moving for

12    preliminary injunction would have that same circumstance.

13              And one particular fact about this case that makes

14    it unique, which I'm sure Your Honor has seen in other cases

15    recently is becoming more and more prevalent, is a substantial

16    amount of the funds in this case were cryptocurrency

17    transactions.  Now, why that matters is in this circumstance

18    with assets being moved not only will it be difficult to trace

19    funds if they are in cold storage wallets or moved to third

20    parties or liquidated on trading pools, there's also a

21    circumstance that we may never even know that they exist if we

22    were not able to provide an accounting and determine in that

23    way.  So I submit respectfully, Your Honor, that that is the

24    reason why we believe the irreparable harm is here.

25              As for affecting the public interest, this is an

```
 1    ongoing and widespread fraudulent offering that is currently
 2    in the process of being franchised out to additional offerings
 3    and currently at the website for Debt Box is announcing three
 4    new securities offerings, and their promoters are now offering
 5    seven new securities offerings related to pharmaceutical drugs
 6    for the same scheme.  That is what we refer to in the
 7    complaint as FAIR projects.  And those are continuing to
 8    spread and expand through the use of MLMs, not only in
 9    America, but now they're showing it much more and more in
10    YouTube videos in India as well as Africa.
11            And so I submit the public interest there, until we
12    have a preliminary injunction hearing to maintain the status
13    quo to allow us to get additional information and then address
14    those issues, Your Honor, in a full briefing at Your Honor's
15    convenience.
16            THE COURT:  Yeah.  Mr. Welsh, I wonder if I've
17    not -- maybe I've been imprecise, and I apologize.  I
18    appreciate what you just said.  Understanding and appreciating
19    that we're here in an ex-parte posture that the defendants
20    don't have notice, they're not here, and I haven't heard
21    anything from them yet and we will in time, I'm not suggesting
22    that we move to a preliminary injunction.  In my preliminary
23    comments what I meant to propose is if the TRO was re-filed
24    addressing the other factors under Rule 65 that I could take
25    it up as early as Monday.
```

 1          I fully appreciate from the papers the urgency,

 2     which I think is why I started with an apology.  I think we

 3     lost a day with an errant assignment, though I was out of town

 4     and couldn't have heard this yesterday, but the errant

 5     assignment to another court.  I will move as quickly as the

 6     Commission wants to move.  I didn't say this in my preliminary

 7     comments, but I will emphasize it now.

 8          I'll just tell you every time I sign one of these

 9     orders it takes my breath away.  It is a profound and

10     extraordinary invocation of the power of the federal

11     judiciary.  And it affects citizens in a direct way without

12     any notice or opportunity to be heard.

13          So there are the -- that's the reason, of course,

14     for all these safeguards.  It's the reason you do all the work

15     and your staff does all the work that they do to prepare such

16     complete filings before you file them.  This is an area of law

17     where I'm not prepared to -- to say cut corners sounds a

18     little, that's probably too strong a word.

19          But the 10th Circuit requires a clear showing of

20     entitlement to this relief because of the nature of the relief

21     that's sought.  There may be judges who would be willing to

22     basically amend the TRO application based on an oral argument

23     addressing factors that weren't addressed.  And I'll just say

24     I'm struggling in my own mind even as you're speaking trying

25     to figure out whether this is just frivolity to require the

1    Commission to re-file an application that identifies and

2    addresses the elements individually as opposed to just making

3    a showing in oral argument because nobody is going to be

4    responding to this paper.  I mean, I think they will in time.

5    It will be limited to 10 days under the rule, and then there

6    would be an opportunity to renew.  But eventually the

7    defendants will be here responding.  If they're responding to

8    the brief you filed, I think they would be making righteous

9    arguments and saying I applied the wrong standard and didn't

10   adequately consider the factors.

11         What I'm going to propose what we do now actually I

12   probably need to pause and reflect on this for a few minutes

13   before I'm prepared to decide whether I'm going to give the

14   oral ruling I had in mind or whether I'm going to entertain

15   further argument on the factors that weren't addressed, at

16   least directly addressed in the papers.

17         Is there anything more you would like to say?  I'm

18   going to propose we recess for 10 or 15 minutes.  I'm going to

19   ask you and your team to stay where you are.  I think you're

20   calling from the East Coast.  I've already caught you at 5:30

21   on a Friday night.  I'm sorry about that.  And you may be

22   working over the weekend, and I'm sorry about that.

23         MR. WELSH:  No worries.  I believe we're in the

24   same building right now.  We're in Salt Lake City.

25         THE COURT:  You're in Salt Lake City.

1            MR. WELSH:  We're in the regional office in Salt

2    Lake City, so no worries about that had.

3            THE COURT:  Terrific.  Had we known that we would

4    have scheduled this in person instead of by Zoom.  I thought

5    we were trying to accommodate you and your staff.

6            Let me add one other thing before we recess, and

7    that is I think the application for the appointment of the

8    receiver is well supported.  I think there's a basis for that.

9    If I don't rule -- if I don't enter the TRO today I'm going to

10   reserve on that motion until we get a TRO in place assuming

11   one is forthcoming.  But just in the interest of transparency,

12   I don't think there's any more work to do there.  The receiver

13   you proposed I think under the specific circumstances of this

14   case is probably an acceptable selection.  I resist

15   out-of-state receivers even in situations like this where they

16   agree not to bill for their travel, but we still have

17   additional expenses.  And of course, there's an estate that

18   we're trying to protect.  But under the circumstances I think

19   you persuaded me this is the right selection for this case.

20           But is there anything more you would like to say

21   about where we are procedurally before I recess and visit with

22   my law clerks and give this some more thought?

23           MR. WELSH:  No, Your Honor.  I would just add the

24   fact that your point is well taken, and we do not mean in any

25   way to being cut corners in these circumstances.  I take your

                                                              14

1    point regarding the 10th Circuit application of the law.  We

2    are happy to re-file if that is your court's -- Your Honor's

3    preference.

4           I will say if it provides some comfort to Your

5    Honor we would be happy to go through each of the prongs and

6    discuss them, though I don't want to start doing this right

7    now because the fact that you already told me you don't want

8    to do it right now, I don't want to spend your time and waste

9    it.  So I'm happy to wait for you to reflect and come back.

10   But I do appreciate you laying out the law and your concerns.

11   And if there's particular questions after that upon reflection

12   you want me to address, we'll be happy to do so.  But I don't

13   want to sit here and pontificate on things you've already

14   foreshadowed.

15          THE COURT:  Well, I may change my mind.  And if I

16   do then that's the argument I hope to receive from you.  I'm

17   just going to ask your patience for a few minutes.

18          To my law clerks watching this on Zoom, let me ask

19   you to come down to the courtroom and join me in a discussion

20   here.

21          Mr. Welsh, I'm going to take myself off camera and

22   mute myself.  Please do the same there.  And I'll be back with

23   you as quickly as I can, and we'll see how we proceed.  But

24   for now at least we'll be in recess for a few minutes.  Thank

25   you.

1          MR. WELSH:  Very good.  Thank you, Your Honor.

2          (Recess.)

3          THE COURT:  Mr. Welsh, let's go back on the record.

4     Let me just continue to be as transparent as I know how to be.

5     Well, let me give you the punch line first and then work

6     backwards.

7          I think it's elevating form over function to

8     require the Commission to revise your, submit a revised or

9     amended motion tonight, say, with what are basically two pages

10    of argument just aligning the information that's already in

11    your papers with the elements that you thought you weren't

12    required to address rather than just do it in oral argument

13    now.  I mean, the standard will be the same.  We are in an

14    instance where because of the procedural posture and the

15    reason I wouldn't ordinarily allow it is it's unfair to the

16    responding party because without notice, you know, in their

17    papers they would respond to what you wrote in your opening

18    brief.  But we don't have that problem today.  We will

19    eventually, perhaps.

20         I think the transcript -- I guess what I'm saying

21    is I think the Commission has made a sufficient showing that

22    it be unfair to the Commission and to -- and potentially to

23    the investors in the case if we get to that point and we

24    establish on the merits that there's been violations and

25    there's been loss to require the Commission to lose additional

1    time providing information that could be provided on the

2    record today so long as we're meeting the standard.

3         I'm going to probably pause here for a minute and

4    just read into the record a part of my oral ruling that sets

5    out the standards that I think are required to be satisfied

6    today.  And then, Mr. Welsh, I'll just listen and see where we

7    get.

8         So under Rule 65 of the Federal Rules of Civil

9    Procedure a court may issue a temporary restraining order

10   without written or oral notice to an adverse party.  That's

11   Rule 65(b)(1).  The parties seeking Rule 65 relief in the

12   10th Circuit must establish four elements.  They are these:

13   First, a substantial likelihood of prevailing on the merits;

14   second, irreparable harm unless the injunction issues; third,

15   that the threatened injury to the movant outweighs the harm

16   that the preliminary injunction may cause the opposing party;

17   and fourth, that the injunction if issued will not adversely

18   affect the public interest.  I cite the <u>Diné Citizens Against</u>

19   <u>Ruining Our Environment vs. Jewell</u> case, that 2016 decision

20   from the 10th Circuit.

21        In the same case, the 10th Circuit made clear that

22   a preliminary injunction is an extraordinary remedy, so the

23   movant's right to relief must be clear and unequivocal.  And

24   as I signalled before our recess in the 10th Circuit certain

25   types of preliminary injunctions are disfavored and require

17

1    the movant to satisfy a heightened standard.  That's a quote

2    from Colorado vs. EPA, a 10th Circuit decision from 2021.

3    That heightened standard requires a movant to make, quote, a

4    strong showing both on the likelihood of success on the merits

5    and on the balance of harms, end quote.  That's from the

6    Colorado vs. EPA decision.

7         Disfavored injunctions include mandatory

8    preliminary injunctions as well as preliminary injunctions

9    that change the status quo.  This also is described in

10   Colorado vs. EPA.  Mandatory injunctions are those that

11   require the nonmoving party to take some affirmative action.

12   I cite here RoDa Drilling Company vs. Siegal, a 10th Circuit

13   decision from 2009.  And I'm told by the 10th Circuit that an

14   injunction changes the status quo when it alters the last

15   peaceable uncontested status existing before -- between the

16   parties before the dispute developed.  That's language from

17   Beltronics vs. -- excuse me -- Beltronics, USA vs. Midwest

18   Inventory Distribution, 2009.

19        So that the record is clear, and I may be wrong

20   about this some day, but I think under binding precedent in

21   the 10th Circuit in view of the language that I cited earlier

22   from Diné Citizens, I think I'm not permitted to apply the

23   relaxed standard that the Second Circuit articulated in

24   SEC vs. Unifund SAL notwithstanding that some of my colleagues

25   in this circuit and indeed in this court in recent years have

1    applied this standard in the injunction context.  You all cite

2    in your papers and I'm aware of SEC vs. Traffic Monsoon,

3    Judge Parrish's decision from 2017.

4            Just so it's all clear in the same part of the

5    transcript in the event that the defendants are some day

6    reading this and trying to figure out how they wish to

7    respond, I'll just say that I've observed that Second Circuit

8    case law is not binding on the Court and neither the SEC nor

9    or research has yielded any Supreme Court or 10th Circuit case

10   law that suggests a reduced or lightened burden for the

11   Commission when seeking injunctive relief under Rule 65, which

12   brings me back to that language from Diné Citizens at

13   Page 1282 of that decision where the 10th Circuit held any

14   modified test which relaxes one of the prongs of preliminary

15   relief and thus deviates from the standard test is

16   impermissible, end quote.  I acknowledged earlier and I'll say

17   again that, took case did not involve an application for

18   relief under Rule 65 by an administrative agency or the

19   Commission.  But that language seems clearly and unequivocal,

20   and in the absence of the circuit saying that there is a

21   reduced or lightened standard for the Commission or

22   administrative agencies, I don't think there's a lawful basis

23   for me to deviate.

24           So here I've been carrying on at some length,

25   mainly because I want to ensure that we have a sufficient and

1    adequate record.  So having said all that, let me I guess

2    further say I am satisfied that in the papers the Commission

3    has made a robust showing, a strong showing in the language of

4    the 10th Circuit for disfavored injunctions on the likelihood

5    of prevailing on the merits.  So I don't think we need to

6    spend much time on that element.

7              But I'm eager to hear what else if anything you

8    would like to add, Mr. Welsh, on the remaining elements?

9              MR. WELSH:  Thank you, Your Honor.  At the outset,

10   I appreciate Your Honor's candor with respect to the concerns

11   regarding reaching each of the elements.  This is -- the

12   decision to bring this TRO is not a decision we take lightly,

13   either.  Just as we were on break I was reminded by

14   investigative staff with respect to the investigation which

15   remains ongoing that even in the last 48 hours defendants have

16   closed additional bank accounts, and I believe the number, I

17   don't have it in front of me, was around 33 bank accounts have

18   been closed.

19             And so with respect to the suffered irreparable

20   harm if the injunction is denied, second requirement,

21   investors that the SEC is here to protect would suffer

22   irreparable harm by the fact of their assets not being able to

23   be returned if this is determined on the merits to be another

24   security violation and securities fraud.  As we discussed

25   earlier, the defendants have made clear that their intentions

1    are to move assets overseas and to dissipate funds.

2              This next point rolls into the third requirement.

3    To take a step back, this is not -- it's not a circumstance

4    where we're perpetrating funds from a business ongoing

5    overseas.  All the defendants and/or operations remain in

6    Utah.  They are moving funds into an account in Dubai, but

7    they still remain in Utah and are having chosen Utah, podcast

8    in Utah, and by their own words this is solely to avoid our

9    jurisdiction.  And so weighing the harm against -- of the

10   injunction versus the harm to the defendants, we submit that

11   the harm to the public far outweighs the harm to the

12   defendants, and all that would be, is to if we were lose on

13   the merits would delay their decision to move to Abu Dhabi

14   rather than remain in the United States where they are

15   citizens, where they have bank accounts, where they continue

16   to have homes and where they continue to host podcasts from.

17             With respect to the fourth prong if an issue of

18   injunction would not adversely affect the public interest, as

19   Your Honor knows we are here on behalf of the investing public

20   of the United States to maintain integrity of the capital

21   markets.  And the actions of defendants is an attack on

22   integrity of the public markets.  They are using robust

23   marketing schemes to advertise a successful business operation

24   where all funds come from what is essentially equivalent of

25   the stock buyback based on their purported funds.

21

1           Now, we have been covert, and in a short time where

2      our investigation teams ongoing, even in that short time we

3      have had affidavits verifying multiple instances where the key

4      businesses underlying their operations are fraudulent.

5      Unfortunately we don't have because we're on video, we would

6      have liked to show you some of these YouTube videos that we

7      referenced in the declarations attached to our motion.  I

8      don't know if you've had the opportunity to view them, but

9      they include circumstances in which defendants are standing in

10     front of a nonoperating oil well in Nevada saying that they've

11     hit pay dirt and they're starting to send out that thought.

12     And in another video a promoter says he just touched oil and

13     loves the smell of it and can't wait to get it off his hands.

14          These are the type of things they are preying on

15     individuals to access these funds.  And based off of our

16     understanding of the technology in this circumstance, all they

17     are creating is a fake back office to create the -- to create

18     the appearance of a mining operation where all that is

19     happening is they created a smart contract, something that

20     even someone with limited intelligence as me could create in a

21     couple hours with a tutorial video.  And they're distributing

22     those to these individuals claiming that they are investing in

23     a global sprawling operation that has innovative satellite

24     technology that even companies in those spaces say it's not

25     possible.

1          So bringing it back to the problems, Your Honor, if

2     issued the injunction wouldn't adversely affect the public

3     interest.  I think that even allowing this to continue as it

4     is and continue to operate and expand since it is continuing

5     to grow for an additional week or two would greatly harm

6     individuals and for investors that have already put their

7     capital into this project increases the risk that they want to

8     be able to recoup any of their funds.

9          With that, I don't want to keep speaking over and

10    over, but if there's any particular prong that you believe

11    that you have more questions about I'm happy to address them.

12    But I believe going back to the Unifund, I understand that's

13    not the precedence in this circumstance, I would submit the

14    position of the SEC in this circumstance is what makes it kind

15    of different for those second two prongs is that we are here

16    by statutory requirement to represent the public, and that's

17    kind of what's in our mission by driven by undertaking these

18    actions.  So I understand Your Honor's position, and I'm well

19    aware of the case law.  But I point back to that as further

20    support as to why our position here and why maintaining the

21    status quo allowing us to obtain additional documents to get a

22    better understanding of what assets these defendants have and

23    what they are using those assets for would be in the public

24    interest.

25          THE COURT:  Thank you, Mr. Welsh.  And I think it's

1    been the position of the Commission for sometime, and not just

2    the Securities and Exchange Commission, the Federal Trade

3    Commission regularly makes similar arguments based on out of

4    circuit authority when they come seeking emergency relief.

5    And I don't fault anyone for it.  I just know that I'm bound

6    to follow the law as best I understand it in the circuit.  And

7    I may be wrong.  Judge Parrish thinks that there's room still

8    to grant relief under the standard you briefed.

9         But in any event, look, having carefully and

10   thoroughly considered the factual and legal support submitted

11   by the Commission in support of its request application for a

12   temporary restraining order and taking into account this

13   argument that the Commission has provided today during this

14   hearing, organizing the information that's really already in

15   the Commission's application under the four elements that the

16   Commission didn't believe they were required to satisfy, but

17   having been told I was going to require it today, I think they

18   have now addressed all four factors, I'm satisfied that the

19   Commission has not only shown its entitlement to relief under

20   Rule 65 and the four required elements of the 10th Circuit, I

21   further find that the requested injunction is a disfavored

22   injunction in the 10th Circuit by definition, but that the

23   Commission has satisfied its obligation to make a strong

24   showing on both the likelihood of success on the merits and on

25   the balance of harms prong.

1            So I'm satisfied that the Commission has shown its

2    entitlement to relief.  It's shown that that right to relief

3    is clear and unequivocal under the circumstances.

4            I will grant for those reasons and the reasons

5    stated in the Commission's submission the proposed temporary

6    restraining order submitted by the Commission with a few

7    modifications.  First, I'm required to place the time of the

8    TRO, not just the date, but my law clerk and I think we see a

9    few places in the draft order where it appears that the Court

10   would be ordering relief a little more broad than the relief

11   requested in the motion.  So I'm going to tailor the order a

12   little bit, and make sure you look at it carefully.  If you

13   think that I've done something that is incorrect you're

14   welcome to seek leave to amend the temporary restraining order

15   if you wish.

16           I'm going to include the standard language that I

17   include in a lot of my TROs, well, most of them, maybe all of

18   them, that the temporary restraining order will expire under

19   Rule 65, 10 days after issuance.  But I'm going to include

20   language in the order saying that it will automatically renew

21   unless I've received prior to that time some opposition to the

22   motion by one of the affected parties.

23           I'll just tell you it's my practice and I'll tell

24   the defendants if and when they appear, I ordinarily do that

25   two or three times, but at some point it will be time to

1    convert the TRO to a preliminary injunction.  But I'll try to

2    signal that in my orders that I issue.

3              I'll just say to you while I have the benefit --

4    I'm happy to entertain additional briefing on this question

5    when you file your motion for preliminary injunction assuming

6    that's worth coming at some point after you've had a chance to

7    obtain some expedited discovery.  I'm open-minded that I'm

8    applying the wrong standard, and if you want to put forward

9    some law trying to convince me otherwise, I'll consider it.

10   But you know what I think about the law at least after our

11   preliminary research.

12             I'll enter the order approving the appointment of a

13   receiver.  I'm just going to add just so this is on your radar

14   screen as we go forward, in my last SEC, I think it was an SEC

15   case, we had an out-of-state receiver.  And at some point

16   travel became an issue.  I'm just going to keep an eye on it

17   here.  We may appoint a co-receiver locally at some point if

18   it seems to be appropriate and a way to meaningfully save

19   money.  But one step at a time.  We'll start with what you

20   proposed.

21             I find that the receiver you proposed is qualified

22   and a suitable and adequate is probably too -- he's

23   impressive.  But I'm going to leave it at adequate.  A

24   selection to serve as a receiver in the case and as an officer

25   of the Court.

 1                    Mr. Welsh, what else -- what have I forgotten, or

 2        what more do you think we should take up while we're together

 3        today?

 4                    MR. WELSH:  Nothing comes to mind, Your Honor.

 5                    THE COURT:  Just one moment.  Let me check with the

 6        smarter person in our courtroom.

 7                    MR. WELSH:  Very good.

 8                    THE COURT:  Let me just look at my notes one more

 9        time.

10                    (Time lapse.)

11                    THE COURT:  Okay.  A written order will follow.

12                    Mr. Welsh, did your colleagues come up with

13        something else we should take up?

14                    MR. WELSH:  Just an administrative thing.  Your

15        Honor, we put draft Word versions of the proposed orders on

16        the USB drive.  I just want to make sure you had it.  We can

17        e-mail it to your clerk if that's helpful.  I just wanted to

18        double check on that.

19                    THE COURT:  I appreciate you asking.  Thank you.

20        My clerk especially appreciates you asking.  We have the

21        drive, so we have the Word documents.  Thank you.  And in the

22        future please feel free to e-mail them to our chambers.  And

23        to help expedite this a little bit, you'll see, on the court

24        website, you'll see the names of my clerks and which clerk is

25        assigned to which case.  By terminal digit Carissa is the law

                                                                    27

1   clerk assigned to this case.  If you need to contact our

2   chambers you should coordinate through her.

3            All right.  Thanks for your time.  Thanks for your

4   patience with us.  It took us a day to get this hearing set

5   and to have it.  Good luck going forward.  I'm sure we'll be

6   in touch.  We'll be in recess.  Thank you.

7            MR. WELSH:  Thank you very much.

8            (The court proceedings were concluded.)

9                    *   *   *   *   *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1     STATE OF UTAH         )

 2                           ) ss.

 3     COUNTY OF SALT LAKE   )

 4              I, KELLY BROWN HICKEN, do hereby certify that I am

 5     a certified court reporter for the State of Utah;

 6              That as such reporter, I attended the hearing of

 7     the foregoing matter on July 28,2023, and thereat reported in

 8     Stenotype all of the testimony and proceedings had, and caused

 9     said notes to be transcribed into typewriting; and the

10     foregoing pages number from 3 through 28 constitute a full,

11     true and correct report of the same.

12              That I am not of kin to any of the parties and have

13     no interest in the outcome of the matter;

14              And hereby set my hand and seal, this ____ day of

15     _____ 2023.

16

17

18

19

20                         _____

                                    KELLY BROWN HICKEN, CSR, RPR, RMR
21

22

23

24

25
```

29