Jason A. McNeill (9711)
  mcneill@mvmlegal.com
Eric K. Schnibbe (8463)
  schnibbe@mvmlegal.com
**MCNEILL | VON MAACK**
236 South 300 East
Salt Lake City, Utah 84111
Telephone: 801.823.6464

Jessica B. Magee *(admitted pro hac vice)*
  jessica.magee@hklaw.com
Scott F. Mascianica *(admitted pro hac vice)*
  scott.mascianica@hklaw.com
Andrew W. Balthazor *(admitted pro hac vice)*
  andrew.balthazor@hklaw.com
**HOLLAND & KNIGHT**
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone: 214.969.1700

Attorneys for Josias N. Dewey,
Court-Appointed Temporary Receiver

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>  Plaintiff,<br><br>v.<br><br>DIGITAL LICENSING INC. (d/b/a "DEBT Box"), a Wyoming corporation; JASON R. ANDERSON, an individual; JACOB S. ANDERSON, an individual; SCHAD E. BRANNON, an individual; ROYDON B. NELSON, an individual; JAMES E. FRANKLIN, an individual; WESTERN OIL EXPLORATION COMPANY, INC., a Nevada corporation; RYAN BOWEN, an individual; IX GLOBAL, LLC, a Utah limited liability company; JOSEPH A. MARTINEZ, an individual; BENJAMIN F. DANIELS, an individual; MARK W. SCHULER, an individual; B & B INVESTMENT GROUP, LLC (d/b/a "CORE 1 CRYPTO"), a Utah limited liability company; TRAVIS A. FLAHERTY, an individual; ALTON O. PARKER, an individual; BW HOLDINGS, LLC (d/b/a the "FAIR PROJECT"), a Utah limited | **MOTION FOR CONTEMPT AND FOR SANCTIONS TO BE ENTERED AGAINST DEFENDANTS JASON R. ANDERSON, JACOB S. ANDERSON, SCHAD E. BRANNON, AND ROYDON B. NELSON**<br><br>Case No. 2:23-cv-00482-RJS-DBP<br>Judge Robert J. Shelby<br>Magistrate Judge Dustin B. Pead |

| | |
|---|---|
| liability company; BRENDAN J. STANGIS, an individual; and MATTHEW D. FRITZSCHE, an individual,<br><br>    Defendants,<br><br>ARCHER DRILLING, LLC, a Wyoming limited liability company; BUSINESS FUNDING SOLUTIONS, LLC, a Utah limited liability company; BLOX LENDING, LLC, a Utah limited liability company; CALMFRITZ HOLDINGS, LLC, a Utah limited liability company; CALMES & CO, INC., a Utah corporation; FLAHERTY ENTERPRISES, LLC, an Arizona limited liability company; IX VENTURES FZCO, a United Arab Emirates company; PURDY OIL, LLC, a Nebraska limited liability company; THE GOLD COLLECTIVE LLC, a Utah limited liability company; and UIU HOLDINGS, LLC, a Delaware limited liability company,<br><br>    Relief Defendants. | |

Josias N. Dewey, the Court-appointed Temporary Receiver (the "Receiver") for Defendant Digital Licensing Inc. ("DLI") and its subsidiaries and affiliates (collectively, the "Receivership Entities"), respectfully moves this Court for an order holding Defendants Jason R. Anderson, Jacob S. Anderson, Schad E. Brannon, and Roydon B. Nelson (collectively, "DEBT Council Defendants") in contempt and to enter sanctions against them.

## RELIEF SOUGHT

The Receiver seeks an order from this Court holding the DEBT Council Defendants in contempt of its July 28, 2023 Temporary Restraining Order ("TRO") [ECF No. 9][1] and Temporary Receivership Order (the "Receivership Order") [ECF No. 10] (together, the "Orders"), and sanctioning them as outlined below, based on their failures to cooperate with the

---

[1] The Court renewed the TRO on August 7, 2023 [ECF No. 33]; August 17, 2023 [ECF No. 78]; August 29, 2023 [ECF 121]; and September 12, 2023 [ECF No. 136].

1

Receiver, to turn books and records over to the Receiver, and attempts to foreclose on and sell assets subject to the Orders.

## BACKGROUND

On July 26, 2023, the Securities and Exchange Commission ("SEC") filed a Complaint against numerous Defendants (including the DEBT Council Defendants) and Relief Defendants, bringing claims under the Securities Act of 1933 and Exchange Act of 1934, and for equitable disgorgement. [ECF No. 1]. The Court issued the TRO and Receivership Order on July 28, 2023. Since his appointment, the Receiver and his team of attorneys and professionals have undertaken extensive efforts to identify, marshal, and secure information and assets belonging to the Receivership Entities. The scope of work has been expansive, encompassing: (i) real-world and digital assets located in multiple jurisdictions within and outside of the United States; (ii) related parties purportedly involved in varying industries; and (iii) nearly twenty ancillary actions involving Receivership Entities or their assets. However, as detailed more herein, the DEBT Council Defendants have failed to cooperate with the Receivership Team's efforts, or have violated the TRO or Receivership Order in multiple respects.

## ARGUMENT AND AUTHORITIES

**I.    Relevant Provisions of the Orders**

The Receivership Order outlines the authority vested in the Receiver and several court-ordered obligations of the DEBT Council Defendants. The Receiver has "full power over all funds, assets, collateral, premises (whether owned, leased, occupied, or otherwise controlled), choses in action, books, records, papers and other property belonging to, being managed by or in the possession of or control of" the Receivership Entities (collectively, the "Assets"). (Receivership Order, Section II). As Receiver, upon entry of the Receivership Order, Mr. Dewey was "immediately authorized, empowered and directed" to, among other things, acquire access to and

collect books, records, papers, and other real or personal property of or managed by the Receivership Entities. (*Id.* at Section II.A).

The Receivership Order imposes obligations on several persons—including the DEBT Council Defendants—concerning, among other things, turning over books and records to the Receiver. Specifically, the Receivership Entities "and their officers, agents, servants, employees and attorneys, and any other persons who are in custody, possession or control of any assets…collateral, books, records, papers or other property of or managed by any of the entities in receivership, **shall forthwith give access to and control of such property to the receiver**." (*Id.* at Section III, hereinafter "Turnover Provision") (emphasis added).

Furthermore, any person who receives actual notice of the Receivership Order who holds, possesses, or controls, among other things, any account passwords pertaining in any manner to any assets of any of the Defendants had five days to turnover such information to the Receiver. (*Id.* at Section IV, hereinafter "Password Provision").

Moreover, the Receivership Order specifically limits parties from engaging in any process "for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any property or property interests owned by or in the possession of [DLI]." (*Id.* at Section VI.B, hereinafter "Lien Provision"). Similarly, the TRO specifically enjoins and restrains, among others, the DEBT Council Defendants, Relief Defendant Blox, and those parties' respective owners and attorneys from otherwise encumbering or disposing of any asset, whether such asset is specifically enumerated in the TRO or not. (TRO at Sections VIII and IX).

The Receivership Order also mandates that the Receivership Entities and their "officers, agents, servants, employees, and attorneys, shall cooperate with and assist the [R]eceiver, and shall take no action, directly or indirectly, to hinder, obstruct, or otherwise interfere with the receiver or

his attorneys, accountants, employees, or agents, in the conduct of the receiver's duties or to interfere in any manner, directly or indirectly, with the custody, possession, management, or control by the receiver of the funds, assets, collateral, premises, and choses in action described above." (Receivership Order, Section VII, hereinafter "Cooperation Provision").

**II.     Applicable Law and Contempt in SEC Enforcement Actions Involving Receivers**

The primary purpose of civil contempt is "to compel obedience of the court order or to compensate the litigant for injuries sustained from the disobedience." *Ager v. Jane C. Stormont Hosp. & Training Sch. for Nurses*, 622 F.2d 496, 499–500 (10th Cir. 1980). 18 U.S.C. § 401 provides, in relevant part, that federal courts "shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." *See also S.E.C. v. Bliss*, No. 15-cv-00098, 2015 WL 4877332, at *6 (D. Utah Aug. 14, 2015) (Shelby, J.) ("[It is] well established that federal courts have the power to punish contemnors."). Indeed, the court's "interest in ensuring a party's compliance with its orders is a great one." *United States v. Rapower-3, LLC*, 470 F. Supp. 3d 1232, 1248 (D. Utah 2020) (citation omitted). Furthermore, courts possess "inherent authority" to "manage their own affairs," including the power to impose contempt sanctions. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–44 (1991). The "power to punish for contempt[]" applies to "both conduct before the court and that beyond the court's confines[.]" *Id.* at 43 (citation omitted).

"It is well-settled that a district court has broad discretion in using its contempt power to require adherence to court orders." *S.E.C. v. Novus Techs., LLC*, No. 07-CV-00235, 2008 WL 623765, at *2 (D. Utah Mar. 4, 2008) (quoting *Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.*¸ 84 F.3d 367, 370 (10th Cir. 1986)). Courts routinely issue civil contempt sanctions for violations of orders issued in SEC equity receivership proceedings, including the initial order

4

appointing a receiver. *See Rapower-3*, 470 F. Supp. 3d at 1248–51 (issuing civil contempt sanctions for individuals' failure to provide documents and information to the receiver); *S.E.C. v. Faulkner*¸ No. 16-CV-1735, 2018 WL 888910, at *9 (N.D. Tex. Feb. 13, 2018) (issuing civil contempt sanctions for failure to "turn over all documents related to the Receivership Assets and to cooperate with the Receiver in the performance of his duties"); *Bliss*, 2015 WL 4877332, at *7–8 (issuing civil contempt sanctions against defendant who violated an order appointing receiver by failing to disclose assets); *Novus Techs.*, 2008 WL 623765, at *5–7 (contempt sanctions proper for violation of order requiring disgorgement of funds of the receivership estate).

In a civil-contempt proceeding, the movant "has the burden by proving, by clear and convincing evidence, that a valid court order existed, that the defendant had knowledge of the order, and that the defendant disobeyed the order."[2] *Reliance Ins. Co. v. Mast Constr. Co.*, 159 F.3d 1311, 1315 (10th Cir. 1998). If a movant succeeds, the burden shifts to the defendant to provide evidence showing "categorically and in detail" either compliance with the court order or an inability to comply. *United States v. Rylander*, 460 U.S. 752, 755 (1983); *United States v. Ford*, 514 F.3d 1047, 1051 (10th Cir. 2008). As detailed below, the Receiver satisfies his burden for this court to hold the DEBT Council Defendants in contempt.

### III. The Orders are Valid and the DEBT Council Defendants Knew About Them Before Violating Them

The Receiver satisfies the first two elements for contempt because the Orders are valid and enforceable, and the DEBT Council Defendants knew they had been entered when they violated them. The Orders each explain the legal basis for the relief granted (*inter alia*, 15 U.S.C. § 77t(b)

---

[2] Willfulness is not an element of civil contempt. *See, e.g.*, *Rapower-3*, 470 F. Supp. 3d at 1248. Similarly, although subjective intent is not always irrelevant, "parties cannot be insulated from a finding of civil contempt based on their subjective good faith, [which] … relies too heavily on difficult-to-prove states of mind." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802-03 (2019).

and 15 U.S.C. § 78u(b)). The TRO concludes that good cause exists to believe that, unless restrained, Defendants and Relief Defendants will dissipate, conceal, or transfer assets which could be the subject to an order directing disgorgement or the payment of civil money penalties in this action. The Receivership Order concludes that the SEC established "good cause" to appoint the Receiver. *See* Receivership Order at pp. 2-3(B), (C).[3]

In addition, the DEBT Council Defendants knew about the Orders before violating them. On August 2, 2023, the SEC served the Orders on the DEBT Council Defendants by personal service via process server. [ECF Nos. 37-50]. Furthermore, the Court unsealed the Orders on August 2, 2023. [ECF No. 14]. Finally, counsel for the DEBT Council Defendants appeared in this action August 16, 2023. [ECF Nos. 68–69].

## IV. The DEBT Council Defendants Violated—and Continue to Violate—the Orders

### A. *Failure to Comply with Turnover, Password, and Cooperation Provisions*

The Receivership Order's Turnover Provisions specifically note that the Receiver has power and authority over, among other things, all of the Receivership Entities' books and records. (Receivership Order, Section II.A). Furthermore, the Turnover Provisions are unambiguous that the DEBT Council Defendants must turnover "forthwith" all books and records (among other things). (*Id.*, Section III). Although the Receiver has discovery authority (*Id.*, Section II.D), the Receiver has undertaken good faith attempts to secure the DEBT Council Defendants' compliance with the Orders without the need for formal discovery. They have refused.

---

[3] Furthermore, this Court has personal and subject matter jurisdiction over this Action. See Receivership Order at p. 2(A); *see also Auto Owners Ins. Co. v. Summit Park Townhome Ass'n*, 886 F.3d 863, 867 (10th Cir. 2018) ("There is impressive authority for the proposition that an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.") (citation and internal quotations omitted); see also *Bliss*, 2015 WL 4877332, at *7 (noting that the validity of an Order Appointing Receiver was "undisputed").

Between August 7, 2023 and August 29, 2023, counsel for the Receiver made no less than eight requests for compliance with the Orders. *See* **Exhibits 1-8**. Furthermore, on August 19, 2023, the Receiver sent a detailed list of outstanding information to counsel for the DEBT Council Defendants, outlining a sample of the outstanding information, including financial statements, assets and liabilities, employees, service providers, communications channels, and lists of law firms and outstanding litigation related to the Receivership Entities.[4] **Exhibit 4** ("August 19 Letter"). Despite several self-serving claims of diligent information and document collection, the DEBT Council Defendants have not turned over any books and records or other requested information covered by the Receiver's August 19 Letter.

More broadly, the Receiver has collected over 15,000 documents from several sources, many of which were identified without the aid of any information from the DEBT Council Defendants, the most knowledgeable parties about the operations of the Receivership Entities. The total number of documents produced by the DEBT Council Defendants to date: less than 20. The DEBT Council Defendants have further impeded the Receiver's ability to carry out his obligations by not only refusing to comply with the Turnover provisions, but also by not agreeing to sit for interviews.

Furthermore, the DEBT Council Defendants have refused to turn over critical passwords for the Receiver to operate the Receivership Entities. Among other things, the DEBT Council Defendants have refused to turn over passwords to DLI's primary website (www.thedebtbox.com)

---

[4] Notably, among the numerous misleading and inaccurate statements in the Motion to Dissolve TRO and Modify Receivership Order to Appoint a New Receiver [ECF 132] the DEBT Council Defendants claim that the Receiver has failed to secure certain oil-and-gas assets. As reflected in FN 2 to our August 19, 2023 correspondence: "Notwithstanding your production of select limited materials and iterative correspondence this week, your clients cannot unilaterally direct, allow, authorize, or require the Receiver to take any action with regard to purported DLI oil and gas interests or those purportedly belonging to any other entity or individual. This is especially true in light of pending litigation relating to the ownership and control of such interests." The DEBT Council Defendants did not produce any additional evidence or documents on purported oil-and-gas assets after August 18, 2023.

and have not provided any passwords for relevant email and other communication accounts they continue to use.

### B.  *Violations of the Lien Provision and TRO*

DEBT Council Defendant Jason Anderson is Blox's registered agent, sole managing member, and authorized signatory for all five of Blox's bank accounts (with his brother Defendant Jacob Anderson being the only other authorized signatory). *See* Dewey Dec. at ¶ 48; Ex. 4 [ECF No. 125]. Blox's principal place of business is in the same building as Digital Licensing, Inc. *See id.* at ¶ 49.

The DEBT Council Defendants and Blox have asserted in this action and elsewhere that DLI owns a majority interest in Relief Defendant Archer Drilling, LLC ("Archer") and, by extension, that DLI owns Archer's assets. For example, in pre-Receivership litigation against Archer still pending in Nebraska (the "Nebraska Litigation")[5], DLI argues that a "renegotiated" Operating Agreement, executed on August 18, 2022, granted DLI a 51% ownership interest in Archer. *See* **Exhibit 9**. In that action, DLI also claims an ownership interest in certain of Archer's oil and gas rigs because they were "purchased 100% with funds provided, directly, or indirectly, by DLI." *See id.* at ¶7. In fact, bank records demonstrate that DLI funds were indeed utilized directly or indirectly to purchase oil and gas rigs.

On May 12, 2022, Blox sent $454,410 to a title insurance company, with the transaction description "6179 Road 206 Pine Bluffs, WY 82082 File # 4521-3902122." *See* **Exhibit 10**. On May 12, 2022, Archer signed a promissory note to Blox for $504,900, in connection with the purchase of property at 6179 Road 206 in Pine Bluffs, Wyoming (the "Property"). *See id*. On May

---

[5] The Nebraska Litigation is captioned *Purdy Oil, LLC, et al. v. Digital Licensing, Inc., et al.*, Case No. 23-01 and is pending the District Court of Kimball County, Nebraska. On August 14, 2023, former counsel for DLI filed a Notice of Appointment of the Temporary Receiver and on September 1, 2023, the Temporary Receiver moved to stay the Nebraska Litigation pending further Order of this Court. The motion is pending.

12, 2022, Archer resolved to purchase the Property. *See* **Ex. 11**. Blox is mortgagor of the Property, and Archer is mortgagee. *See* **Ex. 12**.

The Property—an asset owned by a Relief Defendant (Archer) and subject to a mortgage held by another Relief Defendant (Blox)—is subject to the TRO's asset freeze and cannot be sold, transferred, encumbered, or otherwise changed. Moreover, the Lien Provision of the Receivership Order specifically prohibits any party from enforcing a lien upon any property or property interests owned by or in the possession of DLI. Notably, the DEBT Council Defendants own correspondence advocates that property owned by Archer is synonymous with property owned by DLI. *See* **Ex. 13.**

Nevertheless, on August 22, 2023, after being served with the Orders and appearing in this action, Blox delivered a Notice of Default and Intent to Foreclose (the "Foreclosure Notice") on the Property to Archer, care of Debt Council Defendant Schad Brannon. *See* **Ex. 14**. The Receiver learned of this event, and the underlying attempts to violate the TRO and the Lien Provision—attempts that may be ongoing—because the Foreclosure Notice was provided as part of DLI's registered agent materials. The Receiver has attempted, unsuccessfully, to determine who is causing Blox to foreclose on, and attempt to sell, the Property.

## **CONCLUSION**

For the foregoing reasons, the Receiver respectfully requests that the Court enter an Order holding: (i) the DEBT Council Defendants, Jason R. Anderson, Jacob S. Anderson, Schad E. Brannon, and Roydon B. Nelson, in contempt of this Court's July 28, 2023 TRO and Receivership Order; (ii) ordering each of the DEBT Council Defendants to comply with the TRO and Receivership Order within no more than 14 calendar days of entry of the requested Order; (iii) ordering the Receiver to report the status of each of the DEBT Council Defendants' compliance

9

with the TRO and Receivership Order 15 calendar days from entry of the requested Order; (iv) ordering the DEBT Council Defendants, jointly and severally, to pay the Receiver's attorneys' fees and costs incurred in preparing and filing this Motion; and (v) issuing any other relief it finds just and proper.

DATED this 13th day of September 13, 2023.

        **MCNEILL | VON MAACK**

        /s/ Jason A. McNeill
        Jason A. McNeill
        Eric K. Schnibbe

        **HOLLAND & KNIGHT**

        Jessica B. Magee
        Scott F. Mascianica
        Andrew W. Balthazor

        *Attorneys for Josias N. Dewey,*
        *Court-Appointed Temporary Receiver*

## CERTIFICATE OF SERVICE

I hereby certify that I am employed by the law firm of MCNEILL VON MAACK and that pursuant to Rule 5(b), Federal Rules of Civil Procedure, a true and correct copy of the foregoing **MOTION FOR CONTEMPT AND FOR SANCTIONS TO BE ENTERED AGAINST DEFENDANTS JASON R. ANDERSON, JACOB S. ANDERSON, SCHAD E. BRANNON, AND ROYDON B. NELSON** was delivered to counsel of record this 13th day of September, 2023, by filing of the same through the Court's CM/ECF System.

[ ]   Hand Delivery

[ ]   Depositing the same in the U.S. Mail, postage prepaid

[ ]   Electronic Mail

[X]   Submission to the U.S. District Court Electronic Case Filing System

/s/ Camille Coley