Romaine C. Marshall (9654)
Jose A. Abarca (12762)
Jonathan E. Schmalfeld (admitted *pro hac vice*)
POLSINELLI PC
2825 E Cottonwood Pkwy, Suite 500
Salt Lake City, UT 84121
Telephone: (801) 999-3504
rmarshall@polsinelli.com
jabarca@polsinelli.com
jschmalfeld@polsinelli.com

*Attorneys for Defendants iX Global, LLC, Joseph A. Martinez and Travis Flaherty*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>DIGITAL LICENSING INC. (d/b/a "DEBT Box"), a Wyoming corporation; JASON R. ANDERSON, an individual; JACOB S. ANDERSON, an individual; SCHAD E. BRANNON, an individual; ROYDON B. NELSON, an individual; JAMES E. FRANKLIN, an individual; WESTERN OIL EXPLORATION COMPANY, INC., a Nevada corporation; RYAN BOWEN, an individual; IX GLOBAL, LLC, a Utah limited liability company; JOSEPH A. MARTINEZ, an individual; BENJAMIN F. DANIELS, an individual; MARK W. SCHULER, an individual; B & B INVESTMENT GROUP, LLC (d/b/a "CORE 1 CRYPTO"), a Utah limited liability company; TRAVIS A. FLAHERTY, an individual; ALTON O. PARKER, an individual; BW HOLDINGS, LLC (d/b/a the "FAIR PROJECT"), a Utah | **DEFENDANTS IX GLOBAL, LLC, JOSEPH A. MARTINEZ, AND TRAVIS FLAHERTY'S RULE 65(b)(4) MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER**<br><br>Case No. 2:23-cv-00482-RJS<br>Chief Judge Robert J. Shelby |

| |
|---|
| limited liability company; BRENDAN J. STANGIS, an individual; and MATTHEW D. FRITZSCHE, an individual, |
|      Defendants, |
| ARCHER. DRILLING, LLC, a Wyoming limited liability company; BUSINESS FUNDING SOLUTIONS, LLC, a Utah limited liability company; BLOX LENDING, LLC, a Utah limited liability company; CALMFRITZ HOLDINGS, LLC, a Utah limited liability company; CALMES & CO, INC., a Utah corporation; FLAHERTY ENTERPRISES, LLC, an Arizona limited liability company; IX VENTURES FZCO, a United Arab Emirates company; PURDY OIL, LLC, a Nebraska limited liability company; THE GOLD COLLECTIVE LLC, a Utah limited liability company; and UIU HOLDINGS, LLC, a Delaware limited liability company, |
|      Relief Defendants. |

Pursuant to DUCivR 7-1(a)(7), Defendants iX Global, LLC ("iX Global"), Joseph A. Martinez ("Mr. Martinez"), and Travis Flaherty (together, the "iX Global Defendants") incorporate by reference certain points and authorities by Defendant Jason R. Anderson *et al.* in their Motion to Dissolve the Temporary Restraining Order ("TRO") (Anderson Mot., Dkt. 132) insofar as they apply to them, as set forth herein.

## INTRODUCTION

The iX Global Defendants have not been accused of fraud. The claims against them relate to the sale of software licenses only, which licenses the SEC alleges are securities and which the SEC further alleges were sold by the iX Global Defendants "while not registered with the SEC as broker[s]." The iX Global Defendants reserve their factual and legal positions refuting these misnomers. For now, it is enough to say that by alleging its unregistered securities claims the SEC is continuing its aggressive 'regulation by enforcement' approach to digital assets. So be it.[1]

But it's not okay to convince the Court to grant rare and extraordinary TRO relief – relief that *has and will* negatively impact the lives of thousands globally – based on materially misleading information about the iX Global Defendants. It was also unnecessary for the Court to grant TRO relief against the iX Global Defendants by seemingly lumping them altogether with the other fifteen defendants and ten relief defendants, as if they are all a single party committing the same alleged wrongs, in relation to the alleged same bad acts.

To be sure, this case is complex. But the SEC's evidence regarding the closing of iX Global bank accounts, characterized as evidence of the movement of investor funds is not. Bank of America initiated the closing of iX Global's bank accounts. iX Global did not close them and iX Global did not move investor funds overseas. Instead, the funds from the Bank of America accounts were deposited into iX Global's Mountain America Credit Union ("MACU") account. MACU is headquartered in Sandy, Utah, not in Abu Dhabi or anywhere else in the United Arab Emirates.

---

[1] For a timeline of various SEC actions and events involving digital assets since 2017, the Court may take judicial notice of this resource: https://www.virtualcurrencyreport.com/wp-content/uploads/sites/35/2023/01/Digital-Asset-SEC-Timeline-Update-1.2023.pdf

## FACTUAL BACKGROUND

**I.     The iX Global Defendants**

Mr. Martinez is a decorated veteran having served for five years of active duty with three tours of duty in Iraq. (Declaration of Joseph A. Martinez ("Martinez Decl.") ¶ 4, Ex. 1). Gunnery Sergeant Eric Tovar (retired) served as Mr. Martinez's supervising officer from 2004-2007 and has submitted a letter for this Court's consideration attesting to Mr. Martinez's character, honor, pride, and loyalty that Mr. Martinez has to his country. (Martinez Decl. ¶ 5). When Mr. Martinez left the military, he searched for how he could use his experiences to help others. He uses the Mark Twain quote "[t]he two most important days of your life are the day you are born and the day you find out why" to describe his search for purpose after the military. (Martinez Decl. ¶ 6).

This search led him to Utah, where he has made his home and found purposes in educating others in lessons he learned in the military and elsewhere on how to succeed through adversity. (Martinez Decl. ¶ 7). In 2010, during a trip to Peru, Mr. Martinez met his soon-to-be wife, Rosemery. (Martinez Decl. ¶ 8). They were married in 2012 and have three children. (*Id.*). The Martinez family resides in Utah, where they have established a connection to their community and where they intend to spend the rest of their lives. (Martinez Decl. ¶ 9).

In late 2019, Mr. Martinez founded iX Global to impact the lives of those who endeavor to be more while revolutionizing the global education system by emphasizing transformational and personal growth. (Martinez Decl. ¶ 10). Mr. Martinez's ideas and lessons clearly resonated with many and resulted in over $4 million in revenue from memberships and associated product sales in 2020, the first year of iX Global's operations. (Martinez Decl. ¶ 13). He continued this success in 2021, growing his revenue over 500% to reach a revenue of over $20.5 million. (Martinez Decl.

4

¶ 14). As of September 2022, iX Global had reached its 2022 sales goal of $100 million three months earlier than projected. (Martinez Decl. ¶ 15). iX Global has assisted thousands of independent business owners ("IBOs") in delivering quality products and services to their customers, and those thousands of IBOs depend on iX Global for their livelihoods. (Martinez Decl. ¶ 11). The IBOs which iX Global serves are primarily in emerging markets, such as India, Peru, Mexico, and Ecuador. (*Id.*). A vast majority of iX Global's revenue is paid to the IBOs it supports. (Martinez Decl. ¶ 16).

On March 2, 2023, "Bank of America made the decision to close the business accounts ending in 8630, 8656, ad 8643" belonging to iX Global without prior notice to, or consent from, Mr. Martinez or iX Global. (Martinez Decl. ¶ 17). The SEC alleged that "[iX Global]…closed its accounts with Bank of America and cashed out over $720,00 in putative investor funds." (SEC *Ex Parte* Appl. For TRO, Dkt. 3, pg. 1). The SEC was wrong. iX Global deposited the funds into its MACU account, also in the company's name and also based in the United States. (*See* Decl. of Karaz S. Zaki, Dkt. 3-10, at Ex. 9 (showing the applicable Bank of America cashier checks being deposited in Mountain America Credit Union account for iX Global)).

## ARGUMENT

I. **The SEC Cannot Meet the Tenth Circuit's High Standard for Disfavored Temporary or Preliminary Injunctive Relief**

   A. **Standard for Disfavored Injunctive Relief**

As this Court aptly stated, an *ex parte* TRO is "a profound and extraordinary invocation of the power of the federal judiciary. And it affects citizens in a direct way without any notice or

5

opportunity to be heard."[2]  A party seeking to extend a TRO must show "good cause" as to why the court should extend the TRO rather than holding a hearing for a preliminary injunction.  "The essence of a temporary restraining order is its brevity, its *ex parte* character, and (related to the second element) its informality."  *Flying Cross Check, L.L.C. v. Cent. Hockey League*., 153 F. Supp. 2d 1253, 1258 (D. Kan. 2001) (quoting *Geneva Assur. Syndicate, Inc. v. Medical Emergency Services Associates*, 964 F.2d 599, 600 (7th Cir. 1992)).

To receive an injunction, a party must establish the following factors: (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest." *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002).  Additionally, the Tenth Circuit has refused to provide for a modified test for the SEC.  "Under *Winter*'s rationale, any modified test which relaxes one of the prongs for preliminary relief and thus deviates from the standard test is impermissible." *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (referencing *Winter v. Natural Resources Defense Council*, 555 U.S. 7, (2008)).

Further, a disfavored injunction is one that "(1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win."  *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.,* 916 F.3d 792, 797 (10th Cir. 2019).  "To get a disfavored injunction, the moving party faces a heavier burden on the

---

[2] *SEC v. Digital Licensing, Inc*., 2:23-cv-00482, TRO Hearing Transcript at 12:8-12 (D.Utah July 28, 2023).

likelihood-of-success-on-the-merits and the balance-of-harms factors: She must make a 'strong showing' that these tilt in her favor." *Id.* (citations omitted).

The SEC, as a party seeking to enjoin iX Global Defendants, bears the burden of establishing every element of its claim by sufficient, competent evidence. *See* Fed.R.Civ.P. 56(e).

**B.      There is No Risk of Irreparable Harm; Sales of Products at Issue Have Stopped and Preventing Unrelated Business to Continue Does Not Preserve Assets for a Speculative Judgment**

The SEC cannot meet its required showing because there is no likelihood of future violations and there is no risk of irreparable harm. The iX Global Defendants have ceased all sales of node software licenses. (Martinez Decl. ¶ 19); (Decl. of Joseph Watkins, Dkt. 3-4, ¶ 12 (saying website for purchase taken down)).

Where the iX Global Defendants voluntarily agree to preliminary injunctive relief requested by the SEC in the interest of expeditiously addressing the merits of the case on a full record, the Court should simply deny the application for preliminary relief as moot. *See, e.g., New England Anti-Vivisection Soc'y v. Fish & Wildlife Serv.*, 208 F. Supp. 3d 142, 153 (D.D.C. 2016) ("This Court held a hearing on Plaintiffs' [preliminary injunction] motion on May 24, 2016 . . . , after which the Court denied the motion as moot in light of [defendant's] agreement [to comply with the relief requested in the injunction] in order to permit the matter to be briefed as cross-motions for summary judgment and decided with the benefit of a full administrative record."); *Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1257 (10th Cir. 2004) (plaintiff's request for TRO was moot, but the case as a whole remained alive).

Additionally, the primary evidence that the SEC submitted regarding their fear of the iX Global Defendants dissipating assets, the closure of certain Bank of America accounts, is

7

demonstratively misleading. That closure was instituted by the bank, not the iX Global Defendants. (Martinez Decl. Ex. B). Certainly, it cannot be evidence of asset dissipation for a business to have its domestic bank account involuntarily closed, and for those funds to be moved to another domestic bank account in the same entity's name.

Finally, iX Global was a quickly growing business well before October 2022, which is when the SEC alleges iX Global first began selling the node licenses at issue in this litigation. (Compl., Dkt. 1, ¶ 92). If the SEC's goal was to protect the ability of buyers of software licenses from the iX Global Defendants to be repaid for those purchases, the SEC should be aligned with the iX Global Defendants in wanting the iX Global Defendants to continue doing business unrelated to the software licenses and continue to raise funds through those unrelated operations to pay any potential judgment issued in this case.

### C. The Balance-of-Harm Factors Are Not Met for Disfavored Injunction

The Tenth Circuit has identified three types of specifically disfavored injunctions. "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 977 (10th Cir.2004) (en banc) (internal citations and quotations omitted), *cert. granted sub nom on other grounds*, *Gonzales v. O Centro Espirita Beneficiente Uniao Do Vegetal*, 544 U.S. 973, 125 S.Ct. 1846, 161 L.Ed.2d 723 (2005). At the *ex parte* hearing regarding the TRO against the iX Global Defendants, the SEC did not dispute that the injunction sought against the

iX Global Defendants is a specifically disfavored injunction.[3]  The SEC "has a heightened burden of showing that the traditional four factors weigh heavily and compellingly in its favor before obtaining a preliminary injunction." *Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne*, 698 F.3d 1295, 1301 (10th Cir. 2012) (internal citations and quotations omitted).

The SEC stated, accurately, that "many of the [purchaser] funds in this action were [paid] through cryptocurrency" but then falsely stated "that is not readily traceable through third-party subpoenas." (SEC *Ex Parte* Appl. For TRO, Dkt. 3, pg. 24).  Government agencies routinely issue third party subpoenas to trace digital asset transactions.[4]  Additionally, as the SEC is aware and as other courts have noted, the public nature of the blockchain makes it exponentially easier to follow the flow of cryptocurrency as opposed to tracing fiat funds.  *See United States v. Gratkowski*, 964 F.3d 307, 312 (5th Cir. 2020) ("Bitcoin users are unlikely to expect that the information published on the Bitcoin blockchain will be kept private, thus undercutting their claim of a legitimate expectation of privacy.").

Finally, it is unclear why the iX Global Defendants, who are accused of simply failing to register, represent more of a risk than other domestic and international digital asset defendants that the SEC did not seek to subject to a disfavored injunction.  The SEC has recently brought multiple cases against digital asset businesses and has not sought any preliminary injunction even approaching the TRO requested in this matter.  In this very same District, the same SEC attorneys brought substantially similar allegations regarding the sale crypto asset mining products.  *See SEC v. Green United*, LLC, Case No. 2:23-CV-00159 (D. Utah March 3, 2023).  In *Green United* all

---

[3] *SEC v. Digital Licensing, Inc.*, 2:23-cv-00482, TRO Hearing Transcript at 7:13-8:12 (D.Utah July 28, 2023).

[4] *United States v. Payment Ventures, Inc.*, 3:23-mc-80029, Dkt. 34 (N.D.Cal. Jun 30, 2023).

defendants were accused of fraud.  Despite these allegations of fraud, the SEC filed against the *Green United* defendants publicly and did not request an *ex parte* and complete freezing of all assets.

Similarly, in a case currently pending in the District of Columbia, the SEC accused Binance Holding Limited of "enrich[ing] themselves by billions of U.S. dollars while placing investors' assets at significant risk." *Id*. at Dkt. 1 ¶ 1.  In the *Binance* case, the SEC agreed to a Consent Order which was substantially less draconian than the expansive TRO the SEC had entered in this matter.  *See SEC v. Binance Holdings Limited, et al.*, Case No. 23-1599, Dkt. 71 (D. D.C. June 17, 2023).  Even with allegations of fraud and billions of dollars in investor harm, the SEC agreed it was appropriate for Binance Holdings to "dispose, transfer, pledge, encumber, or assign assets presently owned by BAM Management or BAM Trading, in whatever form such assets may exist and wherever located, solely to make payments for expenses or to satisfy obligations incurred in the ordinary course of business." *Id*. at Dkt. 71 ¶ 3.

The SEC has not, and cannot, explain why a decorated veteran with deep connections to his community who has been merely accused of failure to register, Mr. Martinez, somehow represents a greater risk of asset dissipation than the defendants in *Green United* or *Binance* that were accused of fraud.  The SEC has not, and cannot, explain why a foreign entity accused of committing billions of dollars of securities frauds against U.S. individuals can continue to conduct ordinary business during its proceedings but the iX Global Defendants cannot.  The SEC's expansive TRO effectively bans the iX Global Defendants from conducting business completely unrelated to the SEC's allegations.

## CONCLUSION

For the foregoing reasons, the Court should dissolve the *ex parte* TRO as to the iX Global Defendants and grant any and all further relief which this Court deems just and proper.

Dated: September 14, 2023

                                              POLSINELLI PC

                                              /s/ *Jose A. Abarca*
                                              Romaine C. Marshall
                                              Jose A. Abarca
                                              Jonathan E. Schmalfeld

                                              *Attorneys for Defendants iX Global, LLC,*
                                              *Joseph A. Martinez, and Travis Flaherty*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of September, 2023, the foregoing document was served via CM/ECF to all counsel of record.

*/s/ Kaitlin Morgan*