Jason A. McNeill (9711)
 mcneill@mvmlegal.com
Eric K. Schnibbe (8463)
 schnibbe@mvmlegal.com
**MCNEILL | VON MAACK**
236 South 300 East
Salt Lake City, Utah 84111
Telephone: 801.823.6464

Jessica B. Magee (*admitted pro hac vice*)
 jessica.magee@hklaw.com
Scott F. Mascianica (*admitted pro hac vice*)
 scott.mascianica@hklaw.com
Andrew W. Balthazor (*admitted pro hac vice*)
 andrew.balthazor@hklaw.com
**HOLLAND & KNIGHT**
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone: 214.969.1700

Attorneys for Josias N. Dewey, Court-Appointed Temporary Receiver

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH, NORTHERN DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　Plaintiff,<br><br>v.<br><br>DIGITAL LICENSING INC. (d/b/a "DEBT Box"), a Wyoming corporation; JASON R. ANDERSON, an individual; JACOB S. ANDERSON, an individual; SCHAD E. BRANNON, an individual; ROYDON B. NELSON, an individual; JAMES E. FRANKLIN, an individual; WESTERN OIL EXPLORATION COMPANY, INC., a Nevada corporation; RYAN BOWEN, an individual; IX GLOBAL, LLC, a Utah limited liability company; JOSEPH A. MARTINEZ, an individual; BENJAMIN F. DANIELS, an individual; MARK W. SCHULER, an individual; B & B INVESTMENT GROUP, LLC (d/b/a "CORE 1 CRYPTO"), a Utah limited liability company; TRAVIS A. FLAHERTY, an individual; ALTON O. PARKER, an individual; BW HOLDINGS, LLC (d/b/a | **TEMPORARY RECEIVER'S RESPONSE TO MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER AND MODIFY TEMPORARY RECEIVERSHIP ORDER TO APPOINT A NEW RECEIVER**<br><br>Case No. 2:23-cv-00482-RJS<br><br>Judge Robert J. Shelby<br><br>Magistrate Judge Dustin B. Pead |

| | |
|---|---|
| the "FAIR PROJECT"), a Utah limited liability company; BRENDAN J. STANGIS, an individual; and MATTHEW D. FRITZSCHE, an individual,<br><br>    Defendants,<br><br>ARCHER DRILLING, LLC, a Wyoming limited liability company; BUSINESS FUNDING SOLUTIONS, LLC, a Utah limited liability company; BLOX LENDING, LLC, a Utah limited liability company; CALMFRITZ HOLDINGS, LLC, a Utah limited liability company; CALMES & CO, INC., a Utah corporation; FLAHERTY ENTERPRISES, LLC, an Arizona limited liability company; IX VENTURES FZCO, a United Arab Emirates company; PURDY OIL, LLC, a Nebraska limited liability company; THE GOLD COLLECTIVE LLC, a Utah limited liability company; and UIU HOLDINGS, LLC, a Delaware limited liability company,<br><br>    Relief Defendants. | |

Temporary Receiver Josias N. Dewey ("Receiver") for Digital Licensing, Inc. and its subsidiaries and affiliates[1] responds, in relevant part, to certain Defendants'[2] Motion to Dissolve Temporary Restraining Order and Modify Temporary Receivership Order to Appoint a New Receiver ("Motion") [ECF No. 132], and respectfully shows the following:

---

[1] Herein, Digital Licensing, Inc. is referred to as "DLI" and with its subsidiaries and affiliates as the "Receivership Entities."

[2] Jason Anderson, Jacob Anderson, Roydon Nelson, and Schad Brannon (the "DEBT Council") and entities they control Blox Lending, LLC, Business Funding Solutions, LLC, UIU Holdings, LLC, and The Gold Collective, LLC (collectively, with the DEBT Council herein, "Defendants").

## INTRODUCTION AND RELIEF SOUGHT

Defendants' Motion is the latest of many attempts to disrupt the Receiver's efforts to discharge the duties outlined in the Temporary Receivership Order ("Receivership Order") [ECF No. 10]. The Motion packages baseless accusations in an effort to dislodge the Receiver from continuing to marshal information and assets for the benefit of investors. The Motion should be denied.

First, Defendants' suggestion of the mere possibility of some shadowy conflict is without merit, a fact fully explained to them weeks ago. Second, as detailed in status reports and other filings before this Court, the Receiver has discharged his duties effectively, thoroughly, and in good faith.[3] Unlike the Motion's unsupported allegations, the Receiver has presented actual evidence detailing the thorough, multi-faceted, and multi-jurisdictional work accomplished in this complex matter in the span of only eight weeks. The Receiver has accomplished this despite Defendants' blatant disregard for this Court's orders to, among other things, provide basic information to the Receiver and otherwise comply with this Court's Temporary Restraining Order ("TRO") [ECF No. 165] and Receivership Order. *See* Receiver's Motion for Contempt and Sanctions [ECF No. 138]. Despite these repeated roadblocks, the Receiver continues to seek Defendants' compliance with TRO and Receivership Order. *See* **Exhibit A** (August 19, 2023 Letter); **Exhibit B** (September 21, 2023 Letter).

---

[3] Including in connection with the various blockchain and digital asset-related issues raised in this matter, which—notwithstanding Defendants' swipe at his acumen—the Receiver is, as noted by this Court, eminently qualified to do based on his significant, relevant expertise and prior experience as a court-appointed Receiver. *See* Motion at p. 24; Motion Ex. 1 [ECF No. 132-1] at p. 26; *see also* Motion., Ex. 2 [ECF No. 132-2] at 26:21–25.

For this and other reasons detailed herein, the Court should deny the Motion and order all other relief it deems appropriate.[4]

## ARGUMENT AND AUTHORITIES

**A.      The Record Establishes the Receiver's Discharge of His Fiduciary Duties.**

The Motion should be denied because Defendants do not present any evidence that the Receiver has acted with anything less than good faith or outside the scope of authority granted by the Court. In overseeing this receivership, the court sits in equity and its decisions are reviewed under an abuse of discretion standard. *See SEC v. Vescor Cap. Corp.*, 599 F.3d 1189, 1194 (10th Cir. 2010) ("It is generally recognized 'that the district court has broad powers and wide discretion to determine ... relief in an equity receivership.' " (alteration in original) (citation omitted); *SEC v. Bliss*, No. 2:15-CV-00098-RJS, 2015 WL 7013631, at *1 (D. Utah Nov. 12, 2015) ("District courts derive this discretion from the inherent powers of an equity court to fashion relief.") (internal quotations omitted) (*citing Vescor*, 599 F.3d at 1194)); *SEC v. Am. Pension Servs., Inc.*, No. 2:14-cv-00309-RJS, 2014 WL 12629700, at *2 n.1 (D. Utah Oct. 21, 2014) (citation omitted) ("A district judge simply cannot effectively and successfully supervise a receivership and protect the interests of its beneficiaries absent broad discretionary power.").

As detailed in the Receiver's August 25, 2023 Declaration [ECF No. 125-1], First Status Report [ECF No. 139], and Interim Status Report [ECF No. 161], he and the Receivership Team[5] have been diligent and effective in their efforts to marshal information, books and records, and

---

[4] The Receiver does not address Defendants' request to dissolve the TRO, because the TRO was applied for and obtained by the SEC.

[5] "Receivership Team" means the Receiver's counsel Holland & Knight, LLP and its vendors.

assets of the Receivership Entities. This work has included, among other things: conducting more than 30 interviews; collecting a growing volume of documents and information from parties other than the Defendants;[6] searching for and collecting (or attempting to collect) fiat, digital, and personal and real property assets; and analyzing facts and information to understand the full scope of DEBT Box's operations and activities—including identifying no fewer than six DLI affiliates—all in accordance with terms of the Receivership Order.[7] *See* Receivership Order at §§II–IV. The Receiver has accomplished these tasks and others in spite of the Defendants' failure to comply with this Court's Receivership Order. *See* Receiver's Motion for Contempt and Sanctions [ECF No. 138].

---

[6] The Receiver has "full power over all . . . books, records, papers, and other property" of the Receivership Entities and to "assume full control" over them. *See* Receivership Order at § II.A–B., IIB. Further, "all . . . attorneys and other persons . . . in custody, possession, or control of any . . . books, records, [or] papers" of the Receivership Entities are required to turn such items over to the Receiver. *Id*. at § III. The Receiver is in the process of collecting documents and communications between DLI and its attorneys identified under specific DLI client number(s). And, despite Defendants' contrary implication (Motion, p. 25) the Receiver is not required to enter into a clawback agreement for DLI's own books and records; moreover, Defendants have not identified any materials therein that are or possibly could be subject to another party's (or non-party's) privilege.

[7] By Defendants' own evidence, DLI and the DEBT Box ecosystem involves 300,000 users, many of whom reside in more than 130 countries outside the United States. *See* Motion, Ex. 4 ¶ 2. Defendants also acknowledge that DLI's operations and assets extend beyond the United States—including in the United Arab Emirates. *See id*. ¶¶ 1, 3; *see also* Motion, Ex. 5. Notably, while Defendants acknowledge that DLI moved its operations to the UAE, they falsely claim "the transfer of DLI's operations to the UAE . . .had been completed as of May 31, 2022." *Id*. Motion, Ex. 4 ¶ 2. This claim is contradicted by evidence gathered by the Receivership Team. For example, after May 31, 2022, the thedebtbox.com website continued to offer direct services to U.S. investors. Furthermore, the Receiver has identified nearly $16.82 million was deposited into three DLI U.S. bank accounts after May 31, 2022, and more than $17 million was withdrawn after May 31, 2022, all in connection with selling node licenses, receiving wires from other Defendants and Relief Defendants for their own license sales, and transfers to DEBT Council Defendants and certain Relief Defendants.

### B. There is No Potential Conflict of Interest.

Defendants argue the Receiver "may" have a "potential" conflict of interest. Motion, p. 25. This incendiary implication is unjustified, a fact the Receivership Team explained to Defendants weeks ago. *See* **Exhibit C**, August 24–25 Email Correspondence between Counsel. Prior to his appointment, the Receiver utilized his firm's standardized process for business intake and conflicts research. This process involved searches for any firm representation of any parties in this matter, a process that has been repeated as additional parties and related entities have been identified during the course of the representation. To date, that process has revealed that the Receiver's firm *has never represented any party named in this action*.

That process showed that the firm previously represented a client who was *adverse to* Defendant Western Oil Exploration. The document upon which Defendants rely does not suggest, much less evidence, any conflict. *See* Motion, Ex. 21. Rather, as is facially evident from a superficial review of the document itself, the document merely demonstrates that the firm's former client *was an adverse counterparty* in a prior transaction with certain Defendants in this case. The fact that the county-recorded copy of the document was to be sent to the firm is not surprising, as the firm represented an adverse party in the transaction. For avoidance of doubt: the Receiver and his retained counsel do not represent—and have not represented—any party in this case. There is no conflict.

### C. The Receiver is Effectively Managing the Receivership Entities in Compliance with the Receivership Order.

Defendants argue the Receiver has "grossly mismanaged DLI's valuable assets," "neither acted in good faith nor [with] reasonable diligence," and "engag[ed] in a calculated effort to extinguish Defendants' legitimate, operating businesses[.]" *See* Motion, p. 25. Although

5

suggesting serious malfeasance, Defendants' accusations ring hollow as they are unsupported by any actual evidence. In fact, the Defendants' allegations are, at times, self-defeating.

### 1. *Defendants Complain That The Receiver is Not Paying Expenses For Entities They Contend the Receiver Does Not and Should Not Control.*

The Defendants demand that the Court hold the Receiver accountable for purportedly not managing entities the Defendants simultaneously claim are not part of the Receivership Estate. *Compare* Motion, p. 24 (arguing mismanagement of Relief Defendant Blox Lending, LLC ("Blox") and non-party Ignis Energy, LLC ("Ignis")) *with* ECF No. 162 (arguing, *inter alia,* that Blox and Ignis are not Receivership Entities). The sole support for Defendants' argument that the Receiver is failing to pay ordinary course expenses is a letter Defendants sent the SEC—not the Receiver ("Expenses Letter"). *See* Motion Ex. 11 [ECF No. 132-11].[8] Importantly, the Expenses Letter focuses on Blox and Ignis—DEBT Council-controlled entities Defendants contend in the Expenses Letter "do not appear to be a 'subsidiary or affiliate' " of DLI. *Id.* Thus, Defendants' argument collapses on itself—they complain that the Receiver is failing to pay expenses of entities they contend the Receiver does not and should not control. *See also* ECF No. 162, at 6. By Defendants' own argument, the Receiver has no obligation—and no right—to pay those expenses.[9]

---

[8] Consistent with Defendants' ongoing failure to cooperate in this matter, the Receiver saw the Expenses Letter for the first time when it received it as an attachment to the Motion.

[9] In earlier correspondence to the Receiver on August 18, 2022, Defendants contended the Receiver should pay the expenses of non-party Ignis, but again without (a) providing the basis for concluding that Ignis is, or should become, a Receivership Entity; or (b) turning over any of its books, records, or assets. Until the Court clarifies that Ignis is an affiliate and thus a Receivership Entity, the Receiver cannot take any action on its behalf. Upon a determination by the Court that Blox, Ignis, and other entities are Receivership Entities, the Receiver will have clear authority to control those entities, including through the appropriate handling of expenses and other liabilities.

Two motions are pending before this Court to determine whether Blox, Ignis, and other entities are part of the Receivership Estate due to their status as affiliates in a DEBT Box common enterprise [ECF Nos. 125 and 144]. The Receiver contends they <u>should be</u> considered part of the Receivership Estate. But, unless and until the Court clarifies the Receivership Order and orders that they—and other identified entities—are DLI affiliates, the Receiver <u>cannot</u> act on their behalf.

More broadly, any argument that the Receiver has failed to pay any expenses or otherwise failed to accomplish some task related to the Receivership Estate cannot be divorced from the Defendants' near total failure to comply with this Court's order to turn over Receivership Entities' books and records. For example, the Receiver has had outstanding requests to the Defendants for basic information such as assets, recuring liabilities, employee lists, and the like for several weeks. *See generally* ECF No. 138; *see also* **Exs. A** and **B**. The Receiver is not aware of pending expenses that have not been addressed but—to the extent they exists for the Receivership Entities—this is a problem of Defendants' own creation.

### *2. The Receiver is Identifying and Securing Assets, Including Four Oil Rigs.*

Defendants falsely state that the Receiver has "dismissed as a sham" four oil drilling rig assets belonging to DLI and, as a result, valuable Receivership assets have been left by the wayside and unsecured. Motion, p. 24. To the contrary, the uncontroverted evidence before this Court establishes the Receiver's extensive efforts to secure these assets despite ongoing litigation and questions concerning their ownership.

As described in detail in the Receiver's Interim Status Report [ECF No. 161], and despite paltry information from Defendants themselves, the Receiver has validated and assessed the location, condition, status, and security options for all four rigs. *See* ECF No. 161, at pp. 7–13.

This work has involved investigating, identifying, and interviewing sellers of the rigs, landowners where the rigs (or portions of them) are located, and officials from the Bureau of Land Management on which one of the rigs is located. It has also included analysis of pleadings, operating agreements, correspondence, and other materials relating to the purchase—and ownership—of the rigs, as well as engagement of a consultant to advise the Receivership Team in helping assess the security of these assets as well as economic and prudent options for the handling of the rigs.[10] *See* First Status Report [ECF No. 139], at pp. 12–13; *see also* ECF No. 161 at 7–13.[11] The Receiver is taking steps to assess the feasibility and expense associated with securing, moving, operating, or possibly recommending a sale of the rigs—despite Defendants' silence on this issue outside of their Motion. *See* ECF Nos. 138 and 161.

### 3. *The Receiver Exercised His Authority to Dismiss Employees.*

Defendants' claim that the Receiver failed to manage the Receivership Entities by terminating key employees of "ongoing operating business." Motion, p. 24. As a threshold matter, this claim is undermined by the Defendants refusal to turnover, among many things, a list of employees. Simply put, the Receiver still does not have a list of employees—for DLI or any other entity. *See* Receiver's Motion for Contempt and Sanctions [ECF No. 138].

---

[10] *See generally* Interim Status Report [ECF No. 161] summarizing questions regarding the direct ownership of three of the four rigs and ongoing litigation in Nebraska state court over the right to control Archer Drilling. A hearing is scheduled for October 3, 2023 in the Nebraska state court matter to address the Receiver's pending Motion to Stay.

[11] *See* Receiver's August 25, 2023 Declaration [ECF No. 125-1], First Status Report [ECF No. 139], and Interim Status Report [ECF No. 161] and exhibits thereto.

Without condition, the Receivership Order directs the Receiver to "assume full control of defendant Digital Licensing Inc. by removing, as the receiver deems necessary or advisable, any director, officer, attorney, independent contractor, employee, or agent of any of defendant. . ." *See* Receivership Order at Sec. II.B. Pursuant to this authority, the Receiver exercised his discretion to terminate the DEBT Council Defendants: four individuals charged with fraud whom the Court determined in its TRO were likely to dissipate assets and information of the Receivership Entities unless restrained, and who have continually refused to comply with this Court's orders.

The Receiver has terminated only *two* other employees. The first—an accounting and financial services consultant—does not provide services necessary to the Receivership in light of the Receiver's retained vendors. Furthermore, retaining him would cost the Receivership $6,000 per month. The second, Mr. Saetrum, worked as a manager of DEBT Box "commodity projects," including oil and gas operations. *See* **Exhibit E**, August 23, 2023 Jason Saetrum LinkedIn Profile. Based on financial records, Mr. Saetrum also received $6,000 per month for these services. Because the Receiver is working with retained professionals and cooperating witnesses, Mr. Saetrum's services, and the cost associated with them, are not necessary at this time.[12]

## **CONCLUSION**

For the foregoing reasons, the Receiver respectfully requests that the Court deny the Motion and order all other relief it deems appropriate.

---

[12] The Receiver has requested information from, and an opportunity to speak with, Mr. Saetrum but he has not yet engaged with the Receiver, as he endeavors to obtain counsel in this matter. The Receiver has also proposed to retain certain providers when appropriate. For example, a service provider who hosted several domains, websites, and data for numerous entities, including DLI ("Provider") was voluntary, helpful, and cooperative with the Receiver. The Receiver offered to retain the Provider to provide continuing services, but the Provider preferred to resign.

DATED this 27th day of September, 2023.

**MCNEILL | VON MAACK**

/s/ Jason A. McNeill
Jason A. McNeill
Eric K. Schnibbe

**HOLLAND & KNIGHT**

Jessica B. Magee
Scott F. Mascianica
Andrew W. Balthazor

*Attorneys for Josias N. Dewey, Court-Appointed Temporary Receiver*

## CERTIFICATE OF SERVICE

I hereby certify that I am employed by the law firm of MCNEILL VON MAACK and that pursuant to Rule 5(b), Federal Rules of Civil Procedure, a true and correct copy of the foregoing **TEMPORARY RECEIVER'S RESPONSE TO MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER AND MODIFY TEMPORARY RECEIVERSHIP ORDER TO APPOINT A NEW RECEIVER** was delivered to counsel of record this 27th day of September, 2023, by filing of the same through the Court's CM/ECF System.

[ ]   Hand Delivery

[ ]   Depositing the same in the U.S. Mail, postage prepaid

[ ]   Electronic Mail

[X]   Submission to the U.S. District Court Electronic Case Filing System

/s/ Camille Coley