1

2                    IN THE UNITED STATES DISTRICT COURT

3               FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

4

5

     SECURITIES AND EXCHANGE        )
6    COMMISSION,                    )
                                    )
7            Plaintiff,             )
                                    )
8         vs.                       )
                                    )   Case No:   2:23cv482
9    DIGITAL LICENSING, a           )
     Wyoming corporation doing      )
10   business as Debt Box, et       )
     al,                            )
11                                  )
             Defendants.            )
12   _____

13

14

15

16

17

18             <u>BEFORE THE HONORABLE ROBERT J. SHELBY</u>

19                       SEPTEMBER 18, 2023

20                     ZOOM STATUS CONFERENCE

21

22

23

24                         Reported by:
                    KELLY BROWN HICKEN, RPR, RMR
25                         801-521-7238

                                                                    1

```
 1                          APPEARANCES OF COUNSEL

 2    FOR THE PLAINTIFF:        SECURITIES AND EXCHANGE COMMISSION
                                BY:  CASEY FRONK
 3                                   Attorneys at Law
                                351 S WEST TEMPLE STE 6.100
 4                              SALT LAKE CITY, UTAH  84101

 5
      FOR ANDERSON, BRANNON, NELSON, BUSINESS FUNDING SOLUTIONS
 6        BLOX LENDING, GOLD COLLECTIVE, UIU HOLDINGS:

 7                              MORRISON COHEN LLP
                                BY:  JEFFREY D. BROOKS
 8                                   Attorney at Law
                                909 THIRD AVE 27TH FL
 9                              NEW YORK, NY 10022

10    FOR BOWEN:               RAY QUINNEY & NEBEKER PC
                                BY:  EMILY BRINN NUVAN
11                                   Attorney at Law
                                36 S STATE ST STE 1400
12                              SALT LAKE CITY, UT 84145

13    FOR IX GLOBAL, MARTINEZ, FLAHERTY:

14                              POLSINELLI PC
                                BY:  ROMAINE C. MARSHALL
15                                   JOSE A. ABARCA
                                     Attorneys at Law
16                              2825 E COTTONWOOD PKWY STE 500
                                SALT LAKE CITY, UT  84121
17
      FOR DANIELS, SCHULER, B&B INVESTMENT, FLAHERTY, PARKER,
18        BW HOLDINGS:
                                CLYDE SNOW & SESSIONS
19                              BY:  KEITH M. WOODWELL
                                     Attorney at Law
20                              201 S MAIN ST, STE 2200
                                SALT LAKE CITY, UTAH  84111
21
      FOR STANGIS:             PARSONS BEHLE & LATIMER
22                              BY:  BRENNAN CURTIS
                                     Attorney at Law
23                              201 S MAIN ST, STE 1800
                                SALT LAKE CITY, UTAH  84145
24

25
                                APPEARANCES CONTINUED....
```

```
 1                              APPEARANCES CONTINUED

 2      FOR FRITZSCHE:          KESLER & RUST
                                BY:  ADAM LEE GRUNDVIG
 3                                   Attorney at Law
                                68 S MAIN ST 2ND FL
 4                              SALT LAKE CITY, UTAH 84101

 5
        FOR RECEIVER:           MCNEILL VON MAACK
 6                              BY:  JASON A. McNEILL
                                     Attorney at Law
 7                              236 S 300 E
                                SALT LAKE CITY, UTAH  84111
 8
                                HOLLAND & KNIGHT LLP
 9                              BY:  JESSICA B. MAGEE
                                     Attorney at Law
10                              1722 ROUTH ST STE 1500
                                DALLAS, TX 75201
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                SALT LAKE CITY, UTAH, MONDAY, SEPTEMBER 18, 2023

2                          *    *    *    *    *

3                THE COURT:  Let's go on the record and call Case

4      Number 2:23-CV-482.  It's our SEC vs. Digital Licensing, and

5      others case.  This is the time set for our -- I don't know

6      what to call it -- just a working meeting, I guess.  A

7      hearing.  We'll call it a status update.  I have some other I

8      think matters to cover with everybody.

9                There's one person on who just joined us.  Please

10     place yourself on mute so we don't accidentally get some

11     feedback while we're on the hearing.

12               Let me start where I started last time by just

13     reminding everybody that this is a hearing that's designated

14     for parties and lawyers only who are our SEC case that we just

15     called, and that it's unlawful to make any recording of the

16     proceedings in the United States District Court by audio or

17     video or any other means.

18               Let's go ahead and make our appearances.  I think

19     I'll just try to work through in the same order as we did last

20     time.  For the Commission?

21               MR. FRONK:  Your Honor, this is Casey Fronk for the

22     Commission.

23               THE COURT:  Great.  Thank you.

24               For the receiver.

25               MS. MAGEE:  Good afternoon.  Jessica Magee joined

1    by local counsel Jason McNeill for the receiver.

2          THE COURT:  Welcome back.

3          For the Gottlieb defendants, is how I'm going to

4    refer to them today.  That's where we were at the end of our

5    last hearing.

6          MR. BROOKS:  Your Honor, my name is Jeff Brooks.

7    I'm filling in for Mr. Gottlieb.  I'll be making his

8    appearance with your permission, if you will.  I have

9    submitted a motion for admission pro hoc vici this afternoon,

10    but I believe it's still pending.  Mr. Gottlieb was out

11    teaching a law class at Fordham Law I believe, this evening,

12    so he asked me to step in, and with your permission I will do

13    so.

14          THE COURT:  Mr. Brooks, it's good to have you with

15    us.  And we'll turn to your -- your motion is granted.  We'll

16    respond to it tomorrow more formally.

17          MR. BROOKS:  Thank you, Your Honor.

18          THE COURT:  Mr. Marshall, I see you.

19          MR. MARSHALL:  Yes.  Thank you, Your Honor.  And

20    I'm here with Mr. Jose Abarca for IX Global, Joseph Martinez

21    and Travis Flaherty.

22          THE COURT:  Mr. Baker, are you with us?

23          MR. CURTIS:  No, Your Honor.  But Brennan Curtis of

24    Parsons Behle for defendant Brendan Stangis for

25    Brent Baker, as well, today.

1          THE COURT:  All right.  Welcome.  Thank you.

2          MR. CURTIS:  Thank you.

3          THE COURT:  Sorry?

4          MR. CURTIS:  I just said thank you.

5          THE COURT:  Mr. Grundvig?

6          MR. GRUNDVIG:  Your Honor, good afternoon.  Adam

7    Grundvig on behalf of Matthew Fritzsche.

8          THE COURT:  Welcome back.

9          Ms. Nuvan, I see you.

10          MS. NUVAN:  Yes, Your Honor; on behalf of defendant

11    Ryan Bowen.

12          THE COURT:  Let's see.  Someone else is here for

13    Mr. Brady, I think.

14          MR. WOODWELL:  Yes, Your Honor.  Keith Woodwell for

15    defendants Daniels, Schuler and Dr. Parker and for B&B

16    Investment Group and for BW Holdings.

17          THE COURT:  Great.  Welcome.  And let's see.  Let

18    me ask, Mr. Fronk, has Mr. Franklin been served yet?

19          MR. FRONK:  No, Your Honor, Mr. Franklin has not

20    yet been served.

21          THE COURT:  Okay.  So I have a couple things I'd

22    like to cover that we didn't go through on Friday when we were

23    together, and then I've spent some time looking at the motions

24    to dissolve.

25          Let's begin with -- how are we doing on our running

1    meet and confer, Mr. Fronk?

2              MR. FRONK:  Yes, Your Honor.  So we've been in

3    communication with the defendants regarding responses, and we

4    currently don't see any issues or disagreements with regard to

5    the large majority of defendants.  With respect to what you

6    call the Gottlieb defendants we had a meet and confer earlier

7    today to discuss both our RFPs as to those defendants and some

8    RFPs that they served on us late last week.

9              So, Your Honor, as to our RFPs as to those

10   defendants we served six RFPs on them.  At the meet and confer

11   we agreed to withdraw one and potentially withdraw a second to

12   the extent they would agree to authentication of the documents

13   that we attached and cited in the Watkins declaration.  And

14   then we agreed to limit a third of those RFPs.  At that point,

15   defendants' counsel agreed to revert and get back to us on

16   whether that would resolve any disagreements as to our RFPs.

17             As to their RFPs last week as I said, and I

18   apologize, it was on Tuesday last week that they served these

19   on us, there were 27 RFPs that they served.  And we feel those

20   are extremely broad.  And while they might have relevance to

21   the case as a whole, a lot of them don't have any relevance as

22   to the specific issues that would be before the Court on the

23   PI hearing.

24             So today on the meet and confer we discussed that

25   and asked defendants to review the RFPs that they served on us

```
 1    and to the extent they could agree to narrow or withdraw some
 2    of those that may not be relevant to the PI hearing, to get
 3    back to us.  We left it at that, and we are trying to schedule
 4    right now a second meet and confer for tomorrow to try to
 5    bring all of these to resolution.
 6              THE COURT:  Thank you.  I appreciate that update.
 7    It sounds to me like from the Commission's view at least you
 8    don't need anything from me today.
 9              MR. FRONK:  That's right, Your Honor.  I expect
10    that we may bring something to you later to the extent we
11    can't agree tomorrow or on a subsequent day.  But we think
12    that things are moving towards potential resolution.
13              THE COURT:  All right.  Thank you.
14              Let's see.  Why don't we -- Mr. Brooks, is there
15    anything you would like to add to that on behalf of the
16    Gottlieb defendants?
17              MR. BROOKS:  No, Your Honor.  I think Mr. Fronk's
18    summary was accurate.  And we are also hopeful that we'll be
19    able to reach a full agreement with the SEC on their requests
20    either tomorrow morning or shortly thereafter.
21              THE COURT:  Outstanding.
22              Mr. Marshall, anything you would like to add as
23    coordinating counsel for the non-Gottlieb defendants?
24              MR. MARSHALL:  No.  No thank you, Your Honor.  I
25    will say I have not coordinated yet with all counsel on issues
```

1    that we'll likely bring to the Court throughout the remainder

2    of this week.  Maybe not.  I plan to do that for those on the

3    call within the next 24 hours.

4               THE COURT:  All right.  Excellent.

5               Let me ask you, Mr. Fronk -- well, no, let me

6    complicate your life first -- no.  I'm going to forget to ask

7    this question if I don't ask it now.

8               Do you -- should we schedule a 5 o'clock meeting

9    for tomorrow, or should we wait and hear back from all of you

10   by e-mail or something?

11              MR. FRONK:  Your Honor, I think letting us get back

12   to you by e-mail tomorrow might work.  And to the extent there

13   are still outstanding issues, we could then schedule a

14   hearing.  But I believe that we're going to have a meet and

15   confer tomorrow, and hopefully if everything goes well we'll

16   be resolved.  If not, we can let you or your clerk know in an

17   e-mail and go from there.

18              THE COURT:  Past experience tells me that just

19   having a hearing scheduled often changes the tenor of a meet

20   and confer because everybody knows they're going to be

21   visiting with me.  But let's try this for a day and see how it

22   goes.  We're going to run out of time later in the week, and

23   so if we seem to lose our momentum tomorrow in your meet and

24   confer we'll start daily again Wednesday.  Or anybody e-mail

25   me if you think you're running into some hurdles and we need

1    some help.  All right.  I appreciate your efforts, counsel.

2    Thank you.

3            Let me first provide some information I should have

4    provided when we spoke on Friday about the Court's, my

5    practice for TRO and preliminary injunction hearings.  In

6    connection with the deadlines and the briefing that we sent

7    out last week I just want to explain that it's my expectation

8    that the parties will submit direct evidence -- direct

9    testimony, rather, of witnesses by way of affidavit and

10   declaration in connection with their briefs.  And so that will

11   begin with the Commission.  And I know we're on a tight

12   timeline.  If we think about this as an evidentiary hearing,

13   submit all of your direct testimony by affidavit or

14   declaration.  The same then with the defendants in their

15   opposition.  And then under some circumstances it might be

16   appropriate to receive something more by way of affirmative

17   evidence from the Commission, but usually we ought to have

18   your affirmative evidence with your opening brief.

19           And then I'm going to require counsel to meet and

20   confer after we get at least past the opposition briefing from

21   the defendants.  It's common for issues to narrow and the

22   scope of disagreement to become more precise and for us to get

23   a better idea once the opposition is filed what are the live

24   issues and which witnesses are essential to proceed.  And then

25   we need to start working on ensuring the availability of those

 1   witnesses at the preliminary injunction hearing.  And we'll

 2   begin with cross-examination.  I will have read all of the

 3   affirmative evidence, all the affidavits and declarations, so

 4   we'll just start calling witnesses for cross-examination and

 5   then redirect by way of taking testimony.  I just wanted to

 6   familiarize everybody with that practice.  It's just trying to

 7   be as efficient as we can be at the hearing.  Rather than go

 8   around the horn, if anyone has any question about that, now is

 9   the time to raise your hand and we can have some further

10   discussion.

11           Terrific.  I see skilled and experienced counsel,

12   so this is all familiar to you.

13           I said at the outset we've taken some time to

14   review the motions to dissolve the TRO that were previously

15   filed.  We received the Gottlieb defendants' motion to

16   dissolve.  Docket 132 was filed on September 12th.

17   Mr. Marshall filed on behalf of his clients a motion to

18   dissolve Docket 145 on September 14th.  The following day on

19   the 15th I suspended briefing on those motions, and I'm now

20   going to impose a briefing deadline and set a hearing on those

21   motions.  And I know that it complicates what is already a

22   busy and full plate for all of you, especially at the

23   Commission.

24           I'm just going to think out loud for a second about

25   the effect of this, but let me give you the punch line first.

1    I'm going to order that the Commission respond to both motions

2    to dissolve no later than September 27th.  And so that's next

3    Wednesday.  That's a day before the briefing would ordinarily

4    had been due on the Gottlieb defendants' motion recognizing

5    I've stolen two or three days from the Commission by

6    suspending briefing on Friday and probably leaving you with

7    the feeling that you didn't have to be working on those.  But

8    we're going to resume briefing on that motion.  It does leave

9    you short several days on Mr. Marshall's motion, though it was

10   noticeably shorter I think and probably less complicated to

11   respond to.

12        Any parties who wish to file replies in response to

13   those motions, and I mean filing parties.  We're not going to

14   have replies now coming in from people who didn't file the

15   briefs in the first instance.  But reply briefs if any will be

16   due no later than October 3rd.  And what I'm going to propose

17   pending what I read in the papers, and I suspect, I'm just

18   going to guess, that the Commission will reach some agreement

19   with some probably of the non-Gottlieb defendants, but I'm not

20   requiring that.  I'm going to propose we have a hearing on the

21   motions to dissolve at 1 o'clock Mountain Time on October 6th.

22   That's a Friday.  I'm not going to ask everybody's

23   availability because we're just going to keep with this

24   calendar.  We've got to get through these motions here and

25   decide them.  They're urgent.

1          I do want to ask the receiver to -- one of the

2     issues raised in the Gottlieb defendants' motion to dissolve

3     was an argument that there may be a potential conflict of

4     interest if she were the receiver.  I'm going to ask that the

5     receiver address that in its own filing, his own filing on or

6     about September 27th, the same date for oppositions to the

7     motions to dissolve.

8          I strongly prefer in-person hearings where that's

9     feasible.  I think that would be unfair in this case given we

10    have so many counsel from out of state working on this and so

11    many counsel involved, and I want all of you to be able to

12    attend if you want without incurring significant attorney's

13    fees and costs for your clients including those of you who are

14    with us today who did not file one of these notions.

15         So I think we'll set -- well, not I think.  We

16    will set that hearing for a Zoom hearing.  I don't think it's

17    going to be an evidentiary hearing, but we'll see what we get

18    by way of oppositions.

19         Questions about the timetable I've just set up, put

20    in place or how we're going to proceed, Mr. Fronk?

21         I'll get to you in a moment, Mr. Grundvig.  Thank

22    you.

23              MR. FRONK:  No questions from the SEC, Your Honor.

24              THE COURT:  Miss Magee?

25              MS. MAGEE:  I just want to make sure that I'm

                                                                   13

1    following Your Honor.  You only want a response on the issue

2    of the alleged conflict of interest, not on the other issues

3    raised?

4              THE COURT:  Let's talk about that for a moment.

5    It's the Commission that's -- well, let me think about it.  Do

6    you think there are other issues that pertain to the receiver

7    that were raised in either of the motions to dissolve?

8              MS. MAGEE:  Only in the Gottlieb defendants' motion

9    to dissolve.

10              Mr. Marshall, correct me if I'm wrong.  Waive a

11    hand.  But I don't think that that motion raises any points

12    with regard to the receivership or the work of the receiver.

13    I think that the Gottlieb defendants' motion to dissolve and

14    I'll say substitute receiver, that's not the technical title

15    of the document, also issues around failure to pay ordinary

16    expenses in what I would call negligence or fiduciary issues.

17              THE COURT:  Yes.

18              MS. MAGEE:  So if the Court would like to hear from

19    us about those issues we're happy to address them all.

20              THE COURT:  I would like to hear from the receiver

21    on those issues, save for one.  As I remember there was a

22    request, and I think it was embedded in the same motion, to

23    substitute a new local receiver.  We're not going to do that

24    at this stage.  We'll talk about that if, and or when we need

25    to talk about it.

14

1                But the other issues raised by the Gottlieb

2    defendants, and thank you for reminding me about that,

3    Miss Magee, let's have a complete response from the receiver

4    so we can set the table for replies, if there are any.

5                MS. MAGEE:  Yes, Your Honor.

6                THE COURT:  Mr. Brooks, anything from you with

7    respect to this plan?

8                MR. BROOKS:  No.  I think it makes sense, Your

9    Honor.  I would just note that we have filed today, again a

10   few hours ago, a notice of supplemental authority addressing

11   one of the questions that you had asked on Friday.

12               THE COURT:  I saw that, and I appreciate that.  We

13   haven't had a chance to vet that yet.  I'm going to continue

14   to be focusing on this, on the legal standard that I assume

15   but don't know that the receiver is going to submit additional

16   evidence in support of an opposition to the motion to

17   dissolve.  And I hope that the receiver will also address this

18   question.

19               I'm just going to -- I think I can frame this

20   question better today than I did last week.  Suppose if the

21   receiver submits new evidence and new argument that would

22   otherwise support the issuance of an injunction on

23   October 6th, it really poses this question.  Would a court

24   dissolve on Friday a TRO that issued on Monday because the

25   evidence that supported the TRO initially was proven to be

1    incorrect or incomplete?  But it's shown that there was

2    evidence on Monday, just not known to the receiver or

3    presented to the Court that would support the issuance of the

4    injunction.

5             It seems -- legally it just seems odd to me that I

6    would be presented with evidence and argument that would

7    support the issuance of an injunction, and I would dissolve

8    the one that was in place, anyway.  But that may be where we

9    land.  It is conceivable in my mind that we would be

10   dissolving the injunction and going forward with the

11   preliminary injunction that we have scheduled on the schedule

12   that we have in place.  But we'll see.  One step at a time.

13            Anyway, I think you all understood that issue.  I

14   just wanted to recite it again.  Anything more, Mr. Brooks?

15            MR. BROOKS:  No, Your Honor.

16            THE COURT:  Mr. Grundvig, you wanted to weigh in

17   into the thicket.

18            MR. GRUNDVIG:  Yes, please, Your Honor.  Just a

19   quick question about whether the Court would appreciate or

20   even allow if not appreciate, a filing respecting the Gottlieb

21   or Marshall motions, as Your Honor has called them.  To be

22   more clear, Mr. Fritzsche does believe that he is similarly

23   situated to Mr. Marshall's clients and did plan on filing a

24   joinder, would that be allowed?

25            THE COURT:  I'm glad you raised that question,

1    because I don't want the -- especially in the midst of what is

2    already expedited briefing now and a handful of other things,

3    I don't want the receiver or the Commission having,

4    continuously being distracted by new motions raising similar

5    issues or what have you.

6         So I think it will be permissible for other

7    non-Gottlieb defendants to join if they wish in the motion

8    filed by Mr. Marshall.  But what I'm not going to do now is

9    receive new arguments, new authority, new request for relief

10   related to the same issues raised by Mr. Marshall.  You could

11   file those briefs, but we're not going to brief them and

12   decide them on the timeline that I've just imposed for these

13   motions that have already been filed.  Is that clear enough?

14        MR. GRUNDVIG:  Yes, Your Honor.  Thank you so much.

15        THE COURT:  Terrific.  But we should set a deadline

16   for those joinders so we know who's in and who's not in.  I'm

17   going to propose Wednesday, unless there's anyone who thinks

18   you can't consult with your client and file a mere joinder

19   before the end of the day on Wednesday.  If there's anyone who

20   feels that way this is a good time to raise your hand.

21        Terrific.  So any non-Gottlieb defendants who wish

22   to join in Mr. Marshall's filing without raising new

23   arguments, new facts, new law, you're welcome to do that no

24   later than Wednesday.  Mr. Grundvig, yes.

25        MR. GRUNDVIG:  A little clarification, Your Honor.

1    Thank you.  I suppose the Court would also permit joinder by a
2    non-Gottlieb defendants or situated party in portions of the
3    Gottlieb filing.
4             THE COURT:  I'm not sure.  I need to think about
5    that.  But let me respond to that in a moment.  I said no new
6    facts a moment ago.  I think non-Gottlieb defendants who think
7    they are similarly situated to Mr. Marshall's clients ought to
8    at least be able to explain why they believe that's the case.
9    So we'll receive what facts we need in those joinders, just no
10   arguments, no law and no request for different relief.
11            Now with respect to the Gottlieb motion, if you
12   think, Mr. Grundvig, you might be inclined to do that if your
13   lawyer consents -- or your client consents, I think I'd like
14   to understand what that might look like.  I don't want to
15   sidetrack and I don't want to impede the Commission's ability
16   to focus on what's in front of us and resolve it.
17            MR. GRUNDVIG:  I can provide an example if you
18   wish, Your Honor, at this point.
19            THE COURT:  Yes.
20            MR. GRUNDVIG:  Mr. Gottlieb's team has identified a
21   variety of problems in resolving the TRO including the
22   issuance of several hundred subpoenas in an enforcement
23   action.  And I think that that is something that Mr. Fritzsche
24   having just responded to such a subpoena last Friday that he
25   believes was improper that he would like the Court to

1    understand that position, not just from the Gottlieb

2    defendants' perspective, but from his as well.

3              THE COURT:  So the question about the propriety of

4    the subpoenas I think is squarely before the Court.  I think

5    if I'm understanding what you're saying, you wish to reserve

6    the opportunity to make an argument about how some of the

7    recipients of those subpoenas are affected by the subpoenas,

8    which is a separate question on whether they were the correct

9    vehicle to utilize in this case.

10             MR. GRUNDVIG:  The bigger point, Your Honor, is to

11   let the Court know that it's not just the Gottlieb defendants,

12   pardon me, that are affected by these subpoenas.  It is

13   somewhat of a me-too position, Your Honor, but Mr. Fritzsche

14   has been affected and would like the Court to know it.

15             THE COURT:  Well, of course you can provide

16   information to educate the Court and so that your client feels

17   that your client's position is being understood.  So of

18   course.  And so long as it's not raising new questions, new

19   legal authority that might encumber the receiver, that can be

20   done by this Wednesday in the same manner that we've just

21   described.

22             And I'll read everything that's submitted.  I'll

23   understand what you all have said.  I will say, this probably

24   goes without saying -- well, in fact, I'm not going to say it

25   for fear some of you might understand it as an invitation to

1     file more stuff.  But you file what you need to file.  So I'll

2     just pull up here.

3             Who else has any questions that they would like to

4     raise or logistical issues that you think we should take up?

5             Okay.  I'm going to take that to mean that we've

6     covered everything that we need to cover today.  I'm going to

7     hold time at 5 o'clock tomorrow just in case, and I'm going to

8     keep my fingers crossed that we make steady progress under the

9     threat that I might be grumpy tomorrow at 5 o'clock if we're

10    on a call with one another arguing about stuff.  But I

11    understand that that may happen.

12            I wish you all well.  I appreciate the work you've

13    put into this.  And I think we'll go a day at a time for a

14    little bit this week and just see where we get.

15            Thank you, counsel, for your patience and for

16    joining us a hearing late.  I didn't know how else we could

17    get this scheduled and make sure that everybody was likely

18    available.

19            Mr. Grundvig, something more from you before we

20    stop?  You just came off mute?  No?

21            Thanks, everyone.  We'll be in recess.

22            (The court proceedings were concluded.)

23                        *   *   *   *   *

24

25

```
 1    STATE OF UTAH          )

 2                           ) ss.

 3    COUNTY OF SALT LAKE   )

 4               I, KELLY BROWN HICKEN, do hereby certify that I am

 5    a certified court reporter for the State of Utah;

 6               That as such reporter, I attended the hearing of

 7    the foregoing matter on September 18, 2023, and thereat

 8    reported in Stenotype all of the testimony and proceedings

 9    had, and caused said notes to be transcribed into typewriting;

10    and the foregoing pages number from 4 through 20 constitute a

11    full, true and correct report of the same.

12               That I am not of kin to any of the parties and have

13    no interest in the outcome of the matter;

14               And hereby set my hand and seal, this ____ day of

15    _____ 2023.

16

17

18

19

20               _____
                      KELLY BROWN HICKEN, CSR, RPR, RMR
21

22

23

24

25
```