Brent R. Baker (5247)
Brennan J. Curtis (16433)
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
bbaker@parsonsbehle.com
bcurtis@parsonsbehle.com
ecf@parsonsbehle.com

*Attorneys for Defendants Brendan J. Stangis*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DIGITAL LICENSING INC., *et al.*,<br><br>Defendants. | **DEFENDANT BRENDAN J. STANGIS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Case No. 2:23-cv-00482-RJS<br><br>Judge Robert J. Shelby |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. ii

TABLE OF AUTHORITIES ...................................................................................................... iii

MOTION TO DISMISS ................................................................................................................1

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS ....................................................1

INTRODUCTION .........................................................................................................................1

LEGAL STANDARD....................................................................................................................3

ARGUMENT .................................................................................................................................4

    I.   THE SEC HAS FAILED TO SHOW AN "INVESTMENT CONTRACT".......................4

    II.  THE SEC'S CLAIMS AGAINST STANGIS VIOLATE NOTIONS OF FAIR PLAY AND THE DUE PROCESS CLAUSE OF THE CONSTITUTION..................................7

    III. THE SEC'S ATTEMPTS TO REGULATE THE DIGITAL ASSET INDUSTRY THROUGH ENFORCEMENT ACTIONS VIOLATES THE MAJOR QUESTIONS DOCTRINE ..........................................................................................................................9

CONCLUSION ..............................................................................................................................9

**MOTION TO DISMISS**

Defendant Brendan J. Stangis ("Defendant" or "Stangis"), by and through counsel of record, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FCRP") and Rule 7-1(a)(7) of the District Court's Local Rules ("DUCivR"), hereby moves to dismiss the Complaint filed by the Securities and Exchange Commission ("SEC" or the "Commission") for failure to state a claim for relief.

Stangis moves to dismiss the SEC's claims asserted against him based on the following grounds: (1) the SEC has failed to allege that the sales of software constitute securities in this matter; (2) the SEC's claims violate due process and fair notice requirements; and (3) the SEC's claims are precluded under the Major Questions Doctrine.

Stangis respectfully requests that this Court dismiss the SEC's claims against him in their entirety with prejudice.

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

**INTRODUCTION**

Pursuant to DUCivR 7-1(a)(7), to avoid repetition and duplication, Stangis joins "iX Global Defendants'" (comprised of Defendants iX Global, LLC, Joseph A. Martinez, and Travis Flaherty) Introduction and Factual Background sections in their Motion to Dismiss, at pp. 1-6 [Dkt. 182].

The SEC's Complaint contains very little information or allegations regarding Stangis and no information or allegations that are specific only to Stangis. First, the Complaint states that "Stangis, age 25, is a resident of Michigan. Stangis has solicited investors to purchase crypto asset securities offered by DEBT Box." Compl., ¶ 29 [Dkt. 1]. Stangis is then listed with the other Defendants regarding an allegation that the Defendants "offer[ed] and "s[old] securities." Compl.,

1

¶ 62 [Dkt. 1]. Next, Stangis is listed with another set of Defendants in a header alleging that these Defendants "violated the federal Securities laws by acting as unregistered brokers." Compl., at p. 25 (VII Header) [Dkt. 1]. In paragraph 90, Stangis is listed with another set of Defendants where the Commission alleges that he "solicited investors to purchase DEBT Box node software licenses in exchange for transaction-based compensation. At all relevant times, none of these defendants were registered with the Commission as a broker or dealer, nor were they associated with a broker or dealer registered with the Commission." Compl., ¶ 90 [Dkt. 1]. Next, paragraph 91 again names Stangis with a group of Defendants and alleges that "[f]rom in or around March 2021 to October 2022" the listed Defendants, including Stangis, "promoted the offering primarily through posts on social media sites, including YouTube and Instagram." Compl., ¶ 91 Dkt. 1].

Following this same pattern, and through the remainder of the SEC's allegations, Stangis is only identified among other Defendants regarding the selling software. *See* Compl., ¶¶ 96-100 [Dkt. 1]. There are no allegations in the SEC Complaint that are specific to any action or inaction of Stangis. The only allegation in the SEC Complaint that could be specifically about Stangis is the final allegation – paragraph 100, which alleges: "Stangis and Fritzsche raised U.S. dollars and bitcoin for node software license purchases from investors. Additionally, Stangis and Fritzsche transferred investor funds to DEBT Box bank accounts and assisted investors in setting up wallets that would allow them to track their DEBT Box investments. As compensation for their efforts, DEBT Box paid Stangis and Fritzsche commissions based on the investments they solicited. In total, Stangis and Fritzsche have raised at least $12 million in investor funds for DEBT Box." Compl., ¶ 100 [Dkt. 1].

There are no allegations or claims of fraud against Stangis. Based only on the bare, nonspecific, and generic allegations above, the SEC asserts the following non-scienter registration

claims against Stangis: Claim One for violations of Section 5(a) and (c) of the Securities Act; Claim Six for violations of Section 15(a)(1) of the Exchange Act; and Claim Seven for Equitable Disgorgement. In summary, as pertaining only to Stangis, the SEC has brought an enforcement action in federal court against Stangis for offering or selling unregistered securities and for himself not being registered with the Commission. Again, there are no allegations of any misstatements or omissions with the alleged offering or sale, only that the software licenses were sold.

In order to maintain a claim in this action, the SEC must clearly show the purchase, offer or sale of a security. Unfortunately, the SEC's assertions are anything but clear. There is no actual security involved but only a software product. The SEC's position as to what is considered a security in the digital asset industry, is riddled with uncertainty and is anything but clear. Stangis, who only sold products and received commissions, is now forced to defend himself in federal court and weigh in on the current debate about what should actually be considered a security. This debate ought to be left to Congress to decide, or at least the SEC should engage in rulemaking and notice and comment.

## LEGAL STANDARD

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim should be dismissed where there is a "failure to state a claim upon which relief can be granted." The United States Court of Appeals for the Tenth Circuit requires courts to analyze "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added). However, courts "need not accept [Plaintiff's] conclusory allegations as true." *Southern Disposal, Inc. v. Texas Waste Magmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998) (additional citations omitted). Consequently, Plaintiff must allege "more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp*, 550 U.S. at 555.

Therefore, "the court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Gianz*, 948 F.2d 1562, 1565 (10th Cir. 1991). Plaintiff must "'nudge his claims across the line from conceivable to plausible' [making] the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk*, *supra,* at 1177, citing *Bell Atl. Corp., supra,* at 563 (emphasis in the original).

## ARGUMENT

### I. THE SEC HAS FAILED TO SHOW AN "INVESTMENT CONTRACT."

Pursuant to DUCivR 7-1(a)(7), to avoid repetition and duplication, Stangis joins iX Global Defendants' Point II of their Argument that "Software Licenses Are Not Investment Contract," in their Motion to Dismiss, at pp. 7-16 [Dkt. 182]. Stangis adds the following additional arguments below.

The SEC's Section 5 and 15 registration claims against Stangis each require the existence of a security. The Securities Act and the Exchange Act contain near-identical definitions of "security," and both Acts include the term "investment contract" as part of their definitions of "security." 15 U.S.C. § 77b(a)(1); 15 U.S.C. § 78c(10). The Acts do not, however, specifically define the term "investment contract." Accordingly, the term "investment contract" should be given its "ordinary meaning at the time Congress enacted the statute." *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 539 (2019) (citation and alterations omitted).

4

The Supreme Court in *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298 (1946) (hereinafter, "*Howey*"), incorporated the blue sky laws that had been developed in the states and established the following elements to show the existence of an "investment contract." A plaintiff must prove that people were "[1] led to invest money [2] in a common enterprise [3] with the expectation that they would earn a profit solely through the efforts of the promoter or of someone other than themselves." *Id.*

The Tenth Circuit stated that a "common enterprise" exists when "a transaction is in reality an investment (that is, a transaction of the type in which stock is often given)." *McGill v. Am. Land & Exploration Co.*, 776 F.2d 923, 925 (10th Cir. 1985); *see also McVay v. W. Plains Serv. Corp.*, 823 F.2d 1395, 1399 (10th Cir. 1987) (holding that certificates at issue were not securities because they "lack any of the basic attributes of true stock" including the right to "receive dividends" or "apportionment of profits of a business enterprise"); *Arnson v. My Investing Place L.L.C.*, 2012 WL 2922683, at *5 (D. Utah June 7, 2012) ("The investments in this case do not constitute a 'common enterprise' under the 'economic reality' test. Clearly, they were not the type of investments in which stock is often given. Plaintiffs did not purchase shares in Defendants' enterprise.").

The distinguishing feature of an investment contract is that it requires "something more than fee simple interests." *Howey*, 328 U.S. at 299. The iX Global Defendants argue that the securities laws do not cover all types of investments. *See* iX Global Defendants' Mot. to Dis., pp. 14-15 [Dkt. 182]. In other words, while all securities are investments, not all investments are securities subject to the SEC jurisdiction and enforcement. If a person purchases in "fee simple interest" any item of personal property or real property with the hope to make money in the future from that personal property or real property, even through the efforts of others, it is an investment

but it is not necessarily a security. In order to be a security, or investment contract under the Howey Test, it requires one more critical step – a common enterprise. This critical element entails the purchaser to receive something more than personal property or real property in fee simple, the purchasers also receive, in the language of the 10th Circuit, "a transaction of the type in which stock is often given." *McGill*, 776 F.2d at 925. That type of transaction shows the existence of future contractual rights in the enterprise and profits from that enterprise. This is the ongoing contractual right discussed in iX Global Defendants' Motion to Dismiss at pages 14-15 [Dkt. 182].

As a further analogous example, consider the scenario when an individual purchases a real property in fee simple as an investment with the expectation to earn money from the potential future resale of that property based on other developments in the neighborhood. This example meets two of the three Howey Test elements. It is an investment of money with the exception to earn a profit from that investment by the efforts of others (in this scenario, other home developments in the area). Common sense and practice tells us that federal securities laws have not been triggered by that transaction and that the seller of the home does not need be registered with the Commission as a broker-dealer. Homes are sold by individuals in fee simple like this everyday in this county.

Now, what if the same home is being sold but in this scenario the purchaser is not an individual but an LLC, formed for the very purpose to acquire this home with the expectation of profit from the same expected developments in the area. In order to purchase the home, the LLC is funded by five individuals who each contribute equal amounts and receive membership units in the LLC. These individuals will be paid in the future pursuant to their membership units in the company based on the success or failure of the future resale. This scenario has the same investment, the same expectation of future profits from the efforts of others, but also has a common enterprise where the investment is governed by the interest in the enterprise (the LLC) and profits or losses will be shared

and governed by their membership units. The SEC has and will continue to exercise jurisdiction over that type of transaction, not simply an investment in fee simple, but an investment contract satisfying *all three* of the elements of the Howey Test.

Here, the SEC is not analyzing the details of the transaction, only that it involves the digital currency market which the SEC wishes to regulate. The SEC's focus on the investment and expected profits are not enough to show an investment contract without a common enterprise. Because the SEC cannot show an "investment contract" in this matter, it lacks jurisdiction to bring their claims and all claims should be dismissed with prejudice.

## II.   THE SEC'S CLAIMS AGAINST STANGIS VIOLATE NOTIONS OF FAIR PLAY AND THE DUE PROCESS CLAUSE OF THE CONSTITUTION.

Pursuant to DUCivR 7-1(a)(7), to avoid repetition and duplication, Stangis joins iX Global Defendants' Point IV of their Argument that "Punishing the iX Defendants for Failing to Register with the SEC Products Which Have Never Been Require to be Registered Before Violates Fair Play and Due Process," in their Motion to Dismiss, at pp. 22-23 [Dkt. 182]. Stangis adds the following additional argument below.

The SEC has failed to establish clear standards for the circumstances in which digital assets may be considered securities under federal laws. Instead, the SEC has engaged in "regulation by enforcement," which leaves market participants to guess as to whether they are participating in a regulated market or committing securities violations. The Supreme Court stated, "It is one thing to expect regulated parties to conform their conduct to an agency's interpretations once the agency announces them; it is quite another to require regulated parties to divine the agency's interpretations in advance or else be held liable when the agency announces its interpretations for the first time in an enforcement proceeding and demands deference." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 158-59 (2012). On January 20, 2023, SEC Commissioner Hester

Peirce spoke at the Duke Conference and was sharply critical of the SEC's current "regulation-by-enforcement approach" to digital assets, rather than setting out "a coherent legal framework."

The SEC could and should either wait for Congress to act or develop clear guidelines through rulemaking including notice and comment. This Court should reject the SEC's desire to use the judiciary to establish the guidelines and rules for this continuously -evolving industry against participants who never knew they were participating in an industry regulated by the SEC. As Justice Gorsuch recently stated, "When the law's meaning is never liquidated by a final independent judicial decision, when executive agents can at any time replace one reasonable interpretation with another, individuals can never be sure of their legal rights and duties. Instead, they are left to guess what some executive official might 'reasonably' decree the law to be today, tomorrow, next year, or after the next election. . . . Fair notice gives way to vast uncertainty." *Buffington v. McDonough*, 143 S. Ct. 14, 20 (2022) (Gorsuch, J., dissenting from denial of writ of certiorari).

Stangis is an individual, he is not an owner of any of the entities named as Defendants in this action. Stangis sold products, software licenses, and made commissions. He should not be named in a securities enforcement action for failure to register unless he clearly was engaged in securities and had knowledge that he should have been registered. As the debate is raging throughout the county, and in Congress, on the proper regulatory metes and bounds of the digital asset industry, it is patently unfair for a Government agency to bring an enforcement action against an *individual* for *only non-scienter registration claims* when the SEC's position is not clear and obvious to both Stangis and this Court. The SEC's strategy of using Courts throughout the country to attempt to create those regulatory metes and bounds is an unfair position to take, especially against an individual for non-scienter registration claims.

8

**III.    THE SEC'S ATTEMPTS TO REGULATE THE DIGITAL ASSET INDUSTRY THROUGH ENFORCEMENT ACTIONS VIOLATES THE MAJOR QUESTIONS DOCTRINE.**

Pursuant to DUCivR 7-1(a)(7), to avoid repetition and duplication, Stangis joins iX Global Defendants' Point III of their Argument that "The Major Question Doctrine Forecloses the SEC's Newfound Attempt to Regulate Through Enforcement the Digital Asset Industry Using 1930's Securities Law Language," in their Motion to Dismiss, at pp. 16-21 [Dkt. 182].

## CONCLUSION

For the foregoing reasons, the Court should dismiss the SEC's claims in their entirety with prejudice against Stangis.

DATED this 13th day of October, 2023.

                        **PARSONS BEHLE AND LATIMER**

                        /s/ *Brent R. Baker*
                        Brent R. Baker
                        Brennan J. Curtis

                        *Attorneys for Defendant Brendan J. Stangis*

## CERTIFICATE OF SERVICE

On this 13th day of October 2023, I hereby certify that I electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification and service to all counsel of record.

/s/ Brent R. Baker