Matthew R. Lewis (7919)
Taylor J. Smith (17537)
**KUNZLER BEAN & ADAMSON, PC**
50 W. Broadway, 10th Floor
Salt Lake City, Utah 84101
Telephone: (801) 994-4646
mlewis@kba.law
tsmith@kba.law

Jason P. Gottlieb (admitted *pro hac vice*)
David E. Ross (admitted *pro hac vice*)
Jeffrey D. Brooks (admitted pro hac vice)
Alexander R. Yarm (admitted *pro hac vice*)
**MORRISON COHEN LLP**
909 Third Avenue, 27th Floor
New York, New York 10022
Telephone: (212) 735-8600
jgottlieb@morrisoncohen.com
dross@morrisoncohen.com
ayarm@morrisoncohen.com

*Attorneys for Defendants Digital Licensing Inc., Jason R. Anderson, Jacob S. Anderson, Schad E. Brannon, Roydon B. Nelson, and Relief Defendants Business Funding Solutions, LLC; Blox Lending, LLC; The Gold Collective LLC; and UIU Holdings, LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DIGITAL LICENSING INC. (d/b/a "DEBT Box"), a Wyoming corporation; JASON R. ANDERSON, an individual; JACOB S. ANDERSON, an individual; SCHAD E. BRANNON, an individual; ROYDON B. NELSON, an individual; JAMES E. FRANKLIN, an individual; WESTERN OIL | **DEFENDANTS DIGITAL LICENSING INC., JASON R. ANDERSON, JACOB S. ANDERSON, SCHAD E. BRANNON, AND ROYDON B. NELSON AND RELIEF DEFENDANTS BUSINESS FUNDING SOLUTIONS, LLC, BLOX LENDING, LLC, THE GOLD COLLECTIVE LLC, AND UIU HOLDINGS, LLC'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6); MEMORANDUM OF LAW IN SUPPORT THEREOF** |

| | |
|---|---|
| EXPLORATION COMPANY, INC., a Nevada corporation; RYAN BOWEN, an individual; IX GLOBAL, LLC, a Utah limited liability company; JOSEPH A. MARTINEZ, an individual; BENAJMIN F. DANIELS, an individual; MARK W. SCHULER, an individual; B & B INVESTMENT GROUP, LLC (d/b/a "CORE 1 CRYPTO"), a Utah limited liability company; TRAVIS A. FLAHERTY, an individual; ALTON O. PARKER, an individual; BW HOLDINGS, LLC (d/b/a the "FAIR PROJECT"), a Utah limited liability company; BRENDAN J. STANGIS, an individual; and MATTHEW D. FRITZSCHE, an individual;<br><br> Defendants,<br><br>ARCHER DRILLING, LLC, a Wyoming limited liability company; BUSINESS FUNDING SOLUTIONS, LLC, a Utah limited liability company; BLOX LENDING, LLC, a Utah limited liability company; CALMFRITZ HOLDINGS, LLC, a Utah limited liability company; CALMES & CO, INC., a Utah corporation; FLAHERTY ENTERPRISES, LLC, an Arizona limited liability company; IX VENTURES FZCO, a United Arab Emirates company; PURDY OIL, LLC, a Nebraska limited liability company; THE GOLD COLLECTIVE LLC, a Utah limited liability company; and UIU HOLDINGS, LLC, a Delaware limited liability company,<br><br> Relief Defendants. | Case No. 2:23-cv-00482-RJS<br>Chief Judge Robert J. Shelby<br>Magistrate Judge Dustin B. Pead |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS AND RELIEF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS

                                                        **Page**

THE SUMMARY OF THE SEC'S COMPLAINT ................................................................... 2

ARGUMENT ...................................................................................................................... 4
THE SEC'S ENFORCEMENT ACTION AGAINST DEFENDANTS AND
RELIEF DEFENDANTS IS LEGALLY INSUFFICIENT AND SHOULD BE
DISMISSED ........................................................................................................................ 4

I.     The SEC's Enforcement Action against Defendants and Relief Defendants
       Cannot Stand as a Matter of Law ................................................................................ 4

II.    The SEC's Fraud Claims Are Also Legally Insufficient and Cannot Stand. ..................... 5

      A.     Rule 12(b)(6) and 9(b) Standards ................................................................. 5

      B.     The SEC's Securities Fraud Claims against Defendants ................................ 6

           (1)     The SEC fails to allege specific misrepresentations or omissions .............. 7

           (2)     The SEC fails to allege that any misrepresentations or omissions are
                   material. ................................................................................................. 9

           (3)     The SEC fails to allege individualized scienter. .................................... 111

           (4)     The SEC mischaracterizes the statements made by Defendants in
                   YouTube videos. .................................................................................... 12

CONCLUSION ................................................................................................................. 14

#12489594v2\031376\0001

#12489708v1\031376\0001

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ...................................................................................................................5

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ...................................................................................................................5

*Farlow v. Peat, Marwick, Mitchell & Co.*,
 956 F.2d 982 (10th Cir.1992) ....................................................................................................6

*Gallagher v. Shelton*,
 587 F.3d 1063 (10th Cir. 2009) .................................................................................................5

*Grossman v. Novell, Inc.*,
 120 F.3d 1112 (10th Cir.1997) ..................................................................................................9

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
 564 U.S. 135 (2011) ...................................................................................................................9

*Lawrence Nat'l Bank v. Edmonds (In re Edmonds )*,
 924 F.2d 176 (10th Cir.1991) ....................................................................................................6

*Mbaku v. Carrington Mortg. Servs., LLC*,
 735 F. App'x 533 (10th Cir. 2018) ..........................................................................................10

*Parnes v. Gateway 2000, Inc.*,
 122 F.3d 539 (8th Cir. 1997) .....................................................................................................9

*SEC v. Coinbase*,
 No. 23-cv-4738 (KPF), ECF No. 36 (S.D.N.Y. Aug. 4, 2023) ..................................................4

*SEC v. GenAudio Inc.*,
 32 F. 4th 902 (10th Cir. 2022) ...................................................................................................6

*SEC v. Smart*,
 678 F.3d 850 (10th Cir. 2012) ...................................................................................................6

*SEC v. Yuen*,
 221 F.R.D. 631 (C.D. Cal. 2004) ..........................................................................................7, 11

#12489708v1\031376\0001

*Southern Disposal, Inc., v. Texas Waste*,
    161 F.3d 1259 (10th Cir. 1998) ...................................................................................5

*TDC Lending LLC v. Priv. Cap. Grp., Inc.*,
    340 F. Supp. 3d 1218 (D. Utah 2018) ................................................................6, 7, 11

*TSC Indus., Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976) ....................................................................................................9

*In re UBS AG Sec. Litig.*,
    No. 07 Civ. 11225(RJS), 2012 WL 4471265
    (S.D.N.Y. Sept. 28, 2012) ..........................................................................................7

*West Virginia v. EPA*,
    142 S. Ct. 2587 (2022) ................................................................................................4

**Statutes**

Federal Rule of Civil Procedure 9 .................................................................................. passim

Federal Rules of Civil Procedure Rules 12 ...........................................................................1, 5, 10

Federal Rules of Civil Procedure Rules 10 .............................................................................6, 7, 9

Securities Exchange Act Section 10 ..........................................................................................4, 6, 7

Seucrities Exchange Act Section 15 ................................................................................................4

Securities Act Section 17 ............................................................................................................4, 6

**Other Authorities**

available at https://assets.thedebtbox.com/web/lite-papers/DEBT-lite-paper.pdf .......................10

available at https://www.youtube.com/watch?v=x75A6Sxh1qU ................................................12

available at https://youtu.be/GpOQZIHKCiY ............................................................................13

available at https://youtu.be/x75A6Sxh1qU ...............................................................................13

iii

Defendants Digital Licensing Inc. ("DLI"),[1] Jason R. Anderson ("Jason Anderson"), Jacob S. Anderson ("Jacob Anderson"), Schad E. Brannon ("Brannon"), and Roydon B. Nelson ("Nelson") (collectively "Defendants") and Relief Defendants Business Funding Solutions, LLC ("BFS"), Blox Lending, LLC ("Blox"), The Gold Collective LLC ("TGC"), and UIU Holdings, LLC ("UIU") (collectively "Relief Defendants"), by and through undersigned counsel, hereby submit this Memorandum of Law in Support of their Motion, pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, to dismiss the Complaint filed by the Securities and Exchange Commission ("SEC") for failure to state a claim for relief.

## MOTION TO DISMISS

The SEC's Complaint should be dismissed with prejudice for four reasons: (1) there are no "securities" transactions alleged in the Complaint; (2) the SEC has no authority to bring this action under the "major questions" doctrine; (3) the SEC violated Defendants' due process rights by instituting this enforcement action against them without first providing them "fair notice" that digital assets would be treated as "securities"; and (4) the SEC failed to meet the pleadings requirements of Federal Rule of Civil Procedure 9(b) for the securities fraud claims (the Second, Third, Fourth and Fifth Claims for Relief) in the Complaint.

The first three grounds establish that this action cannot stand as a matter of law. The three grounds are amply addressed in Defendants iX Global, LLC, Joseph A. Martinez and Travis Flaherty's Rule 12(b)(6) Motion to Dismiss (ECF No. 182) ("iX Global's Motion to Dismiss"), filed October 6, 2023. For the sake of brevity, Defendants and Relief Defendants adopt the

---

[1] The Complaint incorrectly alleges that DLI was/is doing business as "DEBT Box." Complaint ¶¶ 2, 13. DEBT Box is not a "d/b/a" entity of DLI. DEBT Box is a platform.

arguments made in iX Global's Motion to Dismiss. *See id* at 7-16 (discussing the lack of "securities" transactions in the Complaint); 16-21 (discussing how the "major questions" doctrine forecloses this enforcement action); 22-23 (discussing how the SEC violated due process by failing to provide "fair notice" for this type of an action). As to the fourth ground, which is discussed below, even if this action could have been brought by the SEC, the securities fraud claims against Defendants in the Complaint should be dismissed, as the allegations for such claims do not satisfy the "particularity" requirements of Fed. R. Civ. P. 9(b).

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

This SEC enforcement action should be dismissed with prejudice. Beyond the substantial legal questions that preclude this action, the SEC's Complaint is like Swiss cheese—full of holes. The SEC rushed to judgment in this matter. It failed to conduct a full and fair investigation of the digital assets business at issue here, and it filed this action without knowing all the facts (and while being wrong about many of the "facts" it thought it knew). That was made clear in Defendants' recent motion to dissolve the Temporary Restraining Order in this action, and it is also clear in reading the SEC's Complaint. The factual allegations in the Complaint, particularly those relating to the securities fraud claims against Defendants, are non-specific and inaccurately drawn. Indeed, the Complaint, which employs "group pleading," mischaracterizes the evidence that the SEC putatively used to prepare its pleading. Beyond the legal issues raised in iX Global's Motion to Dismiss, the SEC failed to meet the fraud pleading requirements under Rule 9(b) of the Federal Rules of Civil Procedure. Defendants and Relief Defendants' Motion to Dismiss should therefore be granted in full, and the Complaint should be dismissed with prejudice.

## THE SUMMARY OF THE SEC'S COMPLAINT

According to the SEC, since March 2021, Defendants have engaged in the offering of securities in the form of "node software licenses" sold to "investor" licensees. (Compl. ¶ 2).

Licensees purchase DEBT Box node software licenses on the iX Global website. (Compl. ¶ 46). Depending upon which type of node software license the licensees purchase, the licensees become entitled to receive one or more of eleven DEBT Box crypto assets (called "tokens"), "the value of which, according to DEBT Box, is derived from a proportional allocation of the profits DEBT Box receives from business partnerships with various independent entities engaged in the production of, amongst other things, crude oil, gold, natural gas, bauxite, real estate, and agriculture." (Compl. ¶ 47). DEBT Box's "marketing materials" describe eleven different crypto assets and the value they purportedly derive from the purported Debt Box business partnerships. (Compl. ¶ 48).

In addition, as of June 2023, certain of the Defendants partnered to promote a new node licensing venture similar to DEBT Box called the FAIR Project, which would be a "synthetic software crypto mining project that is supported by the medical and the pharmaceutical industry by tokenizing new innovative drugs as they are introduced to the market." (Compl. ¶ 58).

The SEC alleges that the Defendants offered and sold "investment contracts" and, thus, securities, when they offered and sold the various DEBT Box software licenses and the FAIR Project's node software licenses. (Compl. ¶¶ 60, 63). The SEC further alleges that the Defendants acted as unregistered securities brokers by selling node software licenses. (Compl. ¶¶ 90-91).

The SEC also alleges that certain Defendants made misrepresentations to investors in connection with the sale of the licenses. The SEC alleges that certain Defendants made misrepresentations regarding the manner in which the Debt Box crypto assets were allegedly "mined" (Compl. ¶¶ 65-67), regarding the operational and revenue-generating status of Debt Box's oil drilling operations (Compl. ¶¶ 68-72), regarding Debt Box's proprietary "satellite-scanning" technology (Compl. ¶¶ 73-79, 88), and regarding the operations and revenues of Lazy Magnolia, the Debt Box partner that operated a Louisiana brewery and bottling company (Compl. ¶¶ 80-82).

3

The Complaint asserts seven claims. The first claim under Section 5(a) and(c) of the Securities Act. (Compl. ¶¶ 101-04). The second is under Sections 17(a)(1) and (3) of the Securities Act. (Compl. ¶¶ 105-09). The third claim is under Section 17(a)(2) of the Securities Act. (Compl. ¶¶ 110-113). The fourth and fifth are claims under Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5(a), (b) and (c). (Compl. ¶¶ 114-121). The sixth claim is under Section 15(a)(1) of the Exchange Act (Compl. ¶¶ 122-24), and the seventh is a claim for equitable disgorgement against Relief Defendants. (Compl. ¶¶ 125-27).

## ARGUMENT

### THE SEC'S ENFORCEMENT ACTION AGAINST DEFENDANTS AND RELIEF DEFENDANTS IS LEGALLY INSUFFICIENT AND SHOULD BE DISMISSED

**I.  The SEC's Enforcement Action against Defendants and Relief Defendants Cannot Stand as a Matter of Law.**

This SEC enforcement action should never have been brought against any defendants or relief defendants for three reasons: *First*, there were no "securities" transactions alleged in the Complaint. Any alleged transactions involving "node software licenses" were not "investment contracts" (and thus not "securities") governed by the federal securities laws. *Second*, this enforcement action involving digital assets falls outside the SEC's delegated authority. The "major questions" doctrine forecloses this action, "in deference to Congress' prerogative to decide how to regulate 'a significant portion of the American economy [the multi-trillion-dollar digital assets industry].'" Memorandum of Law in Support of Coinbase's Motion for Judgment on the Pleadings in *SEC v. Coinbase*, No. 23-cv-4738 (KPF), ECF No. 36 (S.D.N.Y. Aug. 4, 2023) at 21 (quoting *West Virginia v. EPA*, 142 S. Ct. 2587, 2608-09 (2022)) (Coinbase's memorandum is attached hereto as Ex. 1). *Third*, the SEC violated due process by failing to provide "fair notice" before bringing this type of digital assets enforcement action. That is, the SEC failed to provide

"fair notice" that the type of alleged conduct involving digital assets in the Complaint would be forbidden by, or would violate, the federal securities laws.

On October 6, 2023, Defendants iX Global, LLC, Joseph A. Martinez and Travis Flaherty filed their Rule 12(b)(6) Motion to Dismiss (ECF No. 182). In Defendants and Relief Defendants' view, iX Global's Motion sufficiently addresses the foregoing contentions warranting dismissal of this action. Accordingly, for the sake of brevity, Defendants and Relief Defendants adopt the arguments made in iX Global's Motion to Dismiss, and respectfully join iX Global defendants' request for dismissal of this action. *See* iX Global's Motion to Dismiss at 7-16 (discussing the "securities"/"investment contracts" issue); 16-21 (discussing the "major questions" doctrine issue); 22-23 (discussing the due process/fair notice issue).

## II.     The SEC's Fraud Claims Are Also Legally Insufficient and Cannot Stand.

Next, even if this action could have been brought by the SEC in the first instance, the securities fraud claims against Defendants in the Complaint should be dismissed as a matter of law, as the allegations for such claims do not satisfy the "particularity" requirements of Rule 9(b).

### A.     Rule 12(b)(6) and 9(b) Standards

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is warranted when a complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To put it another way, a court must determine "whether it is plausible that the plaintiff is entitled to relief." *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009). In so doing, the court "need not accept conclusory allegations without supporting factual averments." *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).

Where a complaint alleges fraud, like here, it is subject to a stricter pleading standard under Rule 9(b). A plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The purpose of Rule 9(b) is "to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based ..." *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir.1992) (internal quotation marks and citation omitted). And, as this Court explained, to satisfy the "particularity" requirement under Rule 9(b), a plaintiff must "set forth [in a complaint] the who, what, when, where and how of the alleged fraud" and describe "the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *TDC Lending LLC v. Priv. Cap. Grp., Inc.*, 340 F. Supp. 3d 1218, 1227 (D. Utah 2018). *See also Lawrence Nat'l Bank v. Edmonds (In re Edmonds )*, 924 F.2d 176, 180 (10th Cir.1991) (setting the same standard).

      B.      The SEC's Securities Fraud Claims against Defendants

The Complaint alleges that DLI, Jason Anderson, Jacob Anderson, Brannon, and Nelson engaged in a "fraudulent securities offering" and made misrepresentations in connect with the sales of "node software licenses." Compl. ¶¶ 2-3. As discussed above, there are four securities fraud claims in the Complaint against DLI, Jason Anderson, Jacob Anderson, Brannon, and Nelson: the Second, Third, Fourth and Fifth Claims for Relief, in violations of Section 17(a) of the Securities Act and Section 10(b) of the Securities Exchange Act and Rule 10b-5 thereunder. Compl. ¶¶ 105-121.

For the fraud claims under Section 17(a) and Section 10(b), the SEC must allege that a defendant (1) made a misrepresentation or omission (2) of material fact, (3) with scienter, (4) in connection with the offer, purchase or sale of securities, and (5) by means of interstate commerce. *SEC v. GenAudio Inc.*, 32 F. 4th 902, 921 (10th Cir. 2022). "The primary difference between § 17(a) and § 10(b) lies in the element of scienter. " *SEC v. Smart*, 678 F.3d 850, 856–57 (10th Cir.

6

2012). Section 10(b) (as well as Rule 10b-5) requires that the SEC establish at least recklessness, whereas it need only demonstrate negligence to establish a violation of Section 17(a)(2) and (3). *See id*.

In this case, the SEC failed to allege sufficiently the first three elements against any of the Defendants. Instead, the SEC engages in disfavored "group pleading" by lumping various defendants, including co-defendants such as Defendant James A. Franklin, together, and fails to plead fraud with particularity as required by Rule 9(b); that is, the SEC fails to "set forth the who, what, when, where and how of the alleged fraud." In addition, the SEC mischaracterizes truthful statements made by Defendants in YouTube videos in an effort to transmute them into alleged misstatements.

        **(1)    The SEC fails to allege specific misrepresentations or omissions.**

As this Court explained, the pleading requirements under Rule 9(b) include that a plaintiff must set forth the "contents of the false representation" and the "the identity of the party making the false statements." *TDC Lending*, 340 F. Supp. 3d at 1227. "Group pleading, in contrast, allows a plaintiff to group defendants together without distinguishing the bases for each defendant's culpability." *Id*. A complaint alleging violations of the federal securities laws must not merely rely upon the "group pleading doctrine" to "circumvent the general pleading rule that fraudulent statements must be linked directly to the party accused of the fraudulent intent." *See In re UBS AG Sec. Litig.*, No. 07 Civ. 11225(RJS), 2012 WL 4471265, at *9-11 (S.D.N.Y. Sept. 28, 2012). Group pleading is thus disfavored in SEC cases. *See, e.g., SEC v. Yuen*, 221 F.R.D. 631, 636 (C.D. Cal. 2004) (explaining that "[e]ven though the PSLRA's [Private Securities Litigation Reform Act's] heightened pleading requirements do not apply to actions brought by the SEC, this Court will not allow the SEC to abuse the group pleading doctrine by asserting non-specific claims.").

7

The SEC has engaged in group pleading in this case. In the "Misrepresentations" section of the Complaint (Compl. ¶¶ 64-89), the SEC employs "group pleading" numerous times, lumping together, among others, DEBT Box, Jason Anderson, Jacob Anderson, Brannon, and Nelson, as well as Franklin, and the SEC fails to identify the contents of the false representations and identify which of the parties made the alleged false statements at issue.

The first subsection of the "Misrepresentations" section, entitled "Misrepresentations Concerning the Node Software Licenses" (Compl. ¶¶ 65-67), illustrates the SEC's group pleading. In Paragraph 65, the SEC collectively alleges that "DEBT Box, Jason Anderson, Jake Anderson, Brannon, and Nelson" made misrepresentations as to the "node software's mining capabilities." Compl. ¶ 65. However, the SEC identifies just two alleged misstatements, one involving Jacob and Jason Anderson in an August 22, 2022 YouTube video in which they purportedly represented that the DEBT Box crypto assets could only be generated through mining, and another involving "DEBT Box," which allegedly repeated the same claims that had been made by Messrs. Jason and Jacob Anderson, in a separate May 6, 2022 YouTube video. *See* Compl. ¶ 65. The SEC does not specifically identify the contents of the false representations for Brannon and Nelson.

Next, the subsection entitled "Misrepresentations Concerning Lazy Magnolia and Fictitious Contracts" (¶¶ 80-82) is even worse. The SEC alleges that "DEBT Box and the members of the DEBT Council have claimed that Lazy Magnolia secured 'multi-million-dollar' bottling contracts, including with retailers such as '7-11, Aldis, Food Lion, Sam's Club and more' that are currently generating over '12 million dollars a month in revenue.'" Compl. ¶ 80. But the SEC fails to provide any specific allegations to determine which individual(s) made such alleged misstatements. Moreover, the other alleged misstatement that the SEC provides in paragraph 80 is no better: while the SEC collectively alleges that "[a]s recently as January 15, 2023, Jason

8

Anderson, Jake Anderson, Brannon, Nelson, and Bowen continued to claim that its bottling partners are generating millions in monthly revenue, and that DEBT Box's share of these would be proportionally allocated amongst BEV token holders," the SEC fails to answer the natural follow-up question, "how" did they collectively continue to make such a claim? *Id*. The Complaint has not satisfied Rule 9(b).

Beyond the Rule 9(b) frailties, the Complaint fails to allege how Jason Anderson, Jacob Anderson, Brannon, and Nelson could be held liable for statements attributable to "DEBT Box." Under *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011), the Supreme Court held that for purposes of Rule 10b–5 liability, only the maker of a statement who is the "person or entity with ultimate authority over the statement, including its content and whether and how to communicate it," may be liable. While the Complaint alleges that Jason Anderson, Jacob Anderson, Brannon, and Nelson "exercise[d] control over DEBT Box," Compl. ¶¶ 14-17, the SEC fails to identify whether Jason Anderson, Jacob Anderson, Brannon, or Nelson had the "ultimate authority" over any "DEBT Box" statement (or video), including its content and whether and how to communicate it.

### (2) The SEC fails to allege that any misrepresentations or omissions are material.

A statement or omission is only material if a reasonable investor would consider it important in determining whether to buy or sell stock" and if it would have "significantly altered the 'total mix' of information available to current and potential investors." *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119 (10th Cir.1997) (citing and quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)). "Where a reasonable investor could not have been swayed by an alleged misrepresentation, however, a court may determine, as a matter of law, that the alleged misrepresentation is immaterial." *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997).

9

Here, the SEC fails to allege materiality as to certain representations. For example, as to the "Misrepresentations Concerning Lazy Magnolia and Fictitious Contracts," the SEC does not even allege that any of the putative representations relating to Lazy Magnolia (bottling contracts) are material. *See* Compl. ¶¶ 80-82. The best that the SEC can muster is to make an inferential (and unsupported) claim elsewhere in the Complaint that "[i]nvestors reasonably understood that BEV crypto asset holders would share in the profits of that [Lazy Magnolia's] 'multi-million dollar contract,'" Compl. ¶ 50, although the SEC does not even claim that such statement was made in any "marketing materials" for the BEV crypto asset. This is insufficient to allege materiality.

The Complaint also fails to allege the materiality of DEBT Box's representations about how a node software license would allow a license holder to mine the digital assets. *See* Compl. ¶ 66. *First*, DEBT token, which is the central support and utility token for DEBT ecosystem, expressly disclosed in its Lite Paper,[2] which describes how the mining process worked for the node software license, that any mining was based on a "*synthetic* mining algorithm." *See* DEBT Token Lite Paper (under the "Tokenomics" section, the following disclosure is made: "[e]ach annual cycle, half of the tokens in the EGI [Ecosystem Growth Initiative] are mined to license holders based on a *synthetic* mining algorithm that functions like other proof of work algorithms, without excessive energy and hardware costs.") (emphasis supplied) (available at https://assets.thedebtbox.com/web/lite-papers/DEBT-lite-paper.pdf). *Second*, even if no disclosure had been made, the Complaint lacks any allegations as to whether a license holder (or a "reasonable investor") would consider it to be material whether the DEBT Box's mining process

---

[2] For this motion under Fed. R. Civ. P. 12(b)(6), the Court may consider the well-pleaded allegations in the Complaint, documents incorporated into the Complaint by reference (such as the Lite Papers and YouTube videos, and matters of which a court may take judicial notice. *Mbaku v. Carrington Mortg. Servs., LLC*, 735 F. App'x 533, 536 (10th Cir. 2018) (unpublished) (citation omitted).

was performed through a "proof of work consensus mechanism" or through a synthetic mining algorithm (that is, through a "BEP-20 token created through the execution of a smart contract on the BNB Chain"). Compl. ¶¶ 65-66. But the SEC's inability to allege such materiality is not surprising; after all, what really mattered to a reasonable license holder is that she received the rewards of running a software license on her computer--the tokens--and not what the inner workings of a token-mining process was.

### (3) The SEC fails to allege individualized scienter.

This Court has explained that "group pleading is no longer sufficient to allege scienter for securities fraud." *TDC Lending*, 340 F. Supp. 3d at 1227. Though that ruling was made in the context of the PSLRA, there is little reason that the Court should not apply its ruling for SEC actions as well. *See SEC*, 221 F.R.D. at 636 (admonishing the use of "group pleading" by SEC). Certainly, the prohibition should apply here, as this Court will need to make individualized determinations of any alleged culpability of any specific Defendant, and, if any of the Defendants are found culpable, any potential remedies for each of them.

Here, consistent with the manner in which the SEC pled the other elements of the securities fraud claims in the Complaint, virtually every allegation supporting the securities fraud claims rests on Defendants' collective scienter. For example, in Paragraph 67 of the Complaint, which relates to the discussion of the scienter element in the alleged "Misrepresentations Concerning the Node Software Licenses" section, the SEC alleges as follows:

> Jason Anderson, Jake Anderson, Brannon, and Nelson knew or were reckless in not knowing that the node software licenses did not mine DEBT Box crypto assets. As members of the DEBT Council, Jason Anderson, Jake Anderson, Brannon, and Nelson were heavily involved in the marketing of DEBT Box's offering of node software licenses and the development of the DEBT Box ecosystem. Jason Anderson, Jake Anderson, Brannon, and Nelson told investors that they were the creators of the DEBT Box node software licenses-DEBT Box's sole business throughout the relevant time

11

period-and they were aware that the node software license software did not work in the way they represented to investors.

Compl. ¶80. Every single allegation in the paragraph is a collective one—an example of group pleading. There is no individualized allegation of each Defendant's specific role, each Defendant's contribution, if any, regarding the alleged misrepresentations, or each Defendant's level of scienter, based on what each did or did not do.

Similarly, for each of the Projects—the "oil drilling operations" (Compl. ¶¶ 68-72), the "proprietary "satellite-scanning" technology" (id. at ¶¶ 73-79), and the "bottling contracts"/Lazy Magnolia (id. at ¶¶ 80-82), the SEC relies upon collective scienter. *See* Compl. ¶ 71 (lumping the "DEBT Council members" together with Defendant Franklin); ¶ 79 (same); ¶ 82 (again lumping the "DEBT Council members" together).

In short, the SEC has failed to sufficiently allege individualized scienter against any Defendant.

### (4)  The SEC mischaracterizes the statements made by Defendants in YouTube videos.

Next, the SEC mischaracterizes the statements made in YouTube videos by Defendants to make them appear as if they were misstatements. Three examples will illustrate the SEC's consistent inaccuracies. *First*, in Paragraph 68e of the Complaint, the SEC alleges that Jason Anderson stated on January 14, 2023 that "from January 1, 2022 through March 31, 2022, DEBT Box obtained '34.7 million dollars' in profits from its oil partnerships." This is false. At time stamp 14:40 of the video (available at https://www.youtube.com/watch?v=x75A6Sxh1qU), Jason Anderson stated that *$34.7 million dollars in token were burned*. There was no discussion of profits.

*Second*, in Paragraph 68g of the Complaint, the SEC alleges that "[i]n a July 2023 YouTube video, Nelson claimed that DEBT Box's oil wells were producing "100 barrels

12

a day." This allegation is misleading, as it is taken out of context. At time stamp 6:00 of the YouTube video (available at https://youtu.be/GpOQZIHKCiY), Jacob Anderson asked Nelson about the region known as "the oil belt," and what others have found in the area. Nelson spoke of a newer well, in the area, that produces 100 barrels per day. Nelson never made a statement claiming that DEBT Box owned this well.

*Finally*, the SEC's allegation in Paragraph 74 is even worse. The SEC alleges that "in an October 26, 2022 YouTube video, Jason Anderson represented that DEBT Box had successfully used this [scanning] technology to locate oil reserves in Africa since 2019." The SEC's allegation is false: the YouTube video (available at https://youtu.be/x75A6Sxh1qU), at time stamp 9:40, provides that Jason Anderson was speaking about locating *gold*, not oil reserves:

> JASON ANDERSON: Sure. The scanning technology has actually been out a lot longer than that. We've been scanning West Africa now for a little over three years, and in that process, we've actually made a name for ourselves in Africa. We work directly with the small mining commission there. We've been licensed directly with the Ghanaian government; they own all the rights for Ghana to scan the projects to basically minimize the earth disruption for these small mining associations that basically go out to small miners for individual concessions. *This is in the gold industry, just so you're aware*. It basically, not only identifies, it's on a vibration frequency level but it basically will identify *the silver, Palladium, gold, and other elements*. It does it by satellite. It costs a lot of money to rent satellites. It costs a lot of money to do the scans, but at the end of the day, we've been able to, time and time again, get to the underlying assets with such accuracy and provability that we physically are licensed with the Ghanaian government right now.

In short, these mischaracterizations further support the Complaint's dismissal.

13

## CONCLUSION

For the foregoing reasons, Defendants and Relief Defendants respectfully request that the Court grant their motion to dismiss the Complaint in its entirety, with prejudice.

Respectfully submitted,

**KUNZLER BEAN & ADAMSON, PC**
Matthew R. Lewis
Taylor J. Smith


**MORRISON COHEN LLP**

*/s/ David E. Ross*
Jason P. Gottlieb (admitted pro hac vice)
David E. Ross (admitted pro hac vice)
Jeffrey D. Brooks (admitted pro hac vice)

Alexander R. Yarm (admitted pro hac vice)

*Attorneys for Defendants Digital Licensing Inc., Jason R. Anderson, Jacob S. Anderson, Schad E. Brannon, Roydon B. Nelson, and Relief Defendants Business Funding Solutions, LLC; Blox Lending, LLC; The Gold Collective LLC; and UIU Holdings, LLC*