IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | **ORDER TO SHOW CAUSE** |
| Plaintiff, | Case No. 2:23-cv-00482-RJS-DBP |
| v. | Chief Judge Robert J. Shelby |
| DIGITAL LICENSING INC. dba DEBT BOX, a Wyoming corporation, et al., | Chief Magistrate Judge Dustin B. Pead |
| Defendants/Relief Defendants. | |

In July 2023, the Securities and Exchange Commission requested an ex parte temporary restraining order.[1]  After an ex parte hearing, the court issued a TRO that, among other things, froze Defendants' and Relief Defendants' assets.[2]

Several Defendants and Relief Defendants filed Motions to Dissolve, and the court held a hearing and dissolved the TRO, concluding the TRO was improvidently issued because the Commission had not shown irreparable harm.[3]  During the hearing, the court highlighted several of the Commission's representations supporting the TRO Application the court believed were false or misleading.[4]  The court also stated it may issue an order to show cause concerning those representations.[5]  It does so now.  For the reasons provided below, the Commission is ordered to show cause why the court should not impose sanctions.

---

[1] ECF 3, *TRO Application*.

[2] ECF 9, *First TRO*.

[3] ECF 187, *Oct. 6, 2023 Minute Order*; ECF 189, *Motion to Dissolve Hearing Transcript*; *see also* ECF 214, *Memorandum Decision & Order*.

[4] *Motion to Dissolve Hearing Transcript* at 12–27.

[5] *Id.* at 12.

## PROCEDURAL HISTORY

The relevant facts and procedural history are outlined below.  A more complete recitation is in the court's recent Order explaining why it dissolved the TRO.[6]

**The Commission Files a Sealed Complaint**

On July 26, 2023, the Commission filed a sealed Complaint, naming eighteen Defendants and ten Relief Defendants.[7]  The Commission alleges Defendants participated in "an ongoing, sprawling, fraudulent securities offering through which [they] have defrauded thousands of investors of at least $49 million."[8]

Relevant here are Defendants Digital Licensing Inc. dba DEBT Box (DEBT Box), Jacob Anderson, and iX Global LLC.  The Commission alleges DEBT Box sold node software licenses that enabled purchasers to receive DEBT Box crypto assets.[9]  It alleges Anderson is a member of the "DEBT Council" and "exercises control of DEBT Box" along with other Defendants.[10]  iX Global is allegedly "a multi-level marketing company that has partnered with DEBT Box to market DEBT Box's crypto asset[s]."[11]

**The Commission Requests an Ex Parte TRO**

With its Complaint, the Commission filed an ex parte Application for Entry of Temporary Restraining Order (TRO Application).[12]  The TRO Application included an Attorney

---

[6] *Memorandum Decision & Order* at 2–13.

[7] ECF 1, *Complaint* ¶¶ 13–40.  The Complaint is no longer sealed.  *See* ECF 14, *Order Unsealing Case*.

[8] *Complaint* ¶ 1.

[9] *Id.* ¶¶ 2, 46–47.

[10] *Id.* ¶¶ 13, 15.

[11] *Id.* ¶ 21.

[12] *TRO Application* (filed July 26, 2023).

Certification,[13] which must state "any efforts made to give notice and the reasons why it should not be required."[14]  The Certification was signed by Commission attorney Michael Welsh.[15]

In the Certification, Welsh explained his position as Trial Counsel in the Commission's Salt Lake Regional Office.[16]  He stated his belief that "on at least seven occasions in the last ten years, the Commission" obtained ex parte relief from the United States District Court for the District of Utah.[17]  He then avers, "In certain of those cases, including in ones in which the temporary restraining order and asset freeze were granted ex parte, one or more defendants violated the temporary restraining order, preliminary injunction, and/or asset freeze."[18]  In the court's view, these statements were meant to convey that the court should trust the Commission and take its request seriously.

The Certification further explains, "Evidence obtained by the Commission, and set forth in the Commission's [TRO Application] indicates that Defendants are currently in the process of attempting to relocate assets and investor funds overseas, where at least Defendant Jacob Anderson has contended that those assets will be outside the reach of U.S. regulators."[19]  The next sentence states, "For example, bank records obtained by the Commission . . . show that on June 26, 2023, Defendant iX Global, LLC—the multi-level-marketing entity through which the Defendants' 'node licenses' are primarily promoted—began closing its bank accounts in the

---

[13] ECF 3-2, *Rule 65(b)(1)(B) Attorney Certification*.

[14] Fed. R. Civ. P. 65(b)(1)(B).

[15] *Rule 65(b)(1)(B) Attorney Certification* at 4.

[16] *Id.* ¶ 2.

[17] *Id.* ¶ 3; *see also id.* ¶ 3 n.1 (citing cases).

[18] *Id.* ¶ 3 (emphasis omitted).

[19] *Id.* ¶ 4.

United States, and removed over $720,000 in putative investor funds from those accounts."[20]

These statements implied the iX Global account closures were an example of Defendants'

contemporaneous attempts "to relocate assets and investor funds overseas."[21]

The TRO Application also indicated Defendants were contemporaneously moving assets

and funds overseas.  For example, the Application's second paragraph states,

> In June, Defendants began to liquidate investor funds and move operations
> overseas.  On June 26, 2023, Defendant iX Global . . . closed its main accounts with
> Bank of America and cashed out over $720,000 in putative investor funds.
> Meanwhile, DEBT Box's principals claim DEBT Box is in the process of moving
> its operations to the United Arab Emirates for the express purpose of evading the
> federal securities laws.  For instance, in a June 14, 2023, promotional video posted
> on YouTube, Defendant Jacob Anderson claimed Defendants "have moved all of
> [DEBT Box's] operations to Abu Dhabi," so as to "be under the jurisdictional
> control of Abu Dhabi, not the SEC."  Defendants have also taken action to block
> SEC investigative staff from viewing their social media sites, and appear to have
> recently deleted a website containing training materials for the scheme's promotors
> [sic].[22]

Similarly, the Application included a section titled "Defendants' Attempts to Liquidate and

Relocate Assets."[23]  It identifies the June 26 iX Global account closures and quotes the June 14,

2023 YouTube video.[24]  It then explains that Relief Defendant IX Ventures FZCO, a United

Arab Emirates company, "has over $2 million in a UAE bank account, at least $1.35 million of

which are funds investors paid to Defendants to purchase node licenses."[25]

---

[20] *Id.* ¶ 6.  The Certification does not have a paragraph 5.  *Id.* at 3.

[21] *See id.* ¶ 4.

[22] *TRO Application* at 10 (quoting iX Global, *The Future of DEBT & L1 Blockchain!!!*, YouTube (June 14, 2023), https://www.youtube.com/watch?v=bvP78-I-Jv0 at 47:25–48:10 (*June 14, 2023 YouTube Video*)).  Anderson's exact comments were "we have moved all of the operations currently to Abu Dhabi" and "we're going to be under the jurisdictional, you know, control of Abu Dhabi, not the SEC."  *June 14, 2023 YouTube Video* at 47:25–48:10.  There is no evidence before the court suggesting Defendants were aware of the Commission's investigation and taking steps to obstruct it.

[23] *TRO Application* at 20–21.

[24] *Id.*

[25] *Id.* at 21.

Notably, the Commission argued in its Application that the court should apply a relaxed legal standard when the Commission requests a TRO.[26]  A movant typically must show a substantial likelihood of prevailing on the merits, irreparable harm unless the TRO issues, that the balance of harms weighs in its favor, and that the TRO is in the public interest.[27]  But the Commission argued it was entitled to a TRO if it showed only "a likelihood of prevailing on the merits and a reasonable likelihood that the wrong will be repeated."[28]  Because it relied on a relaxed standard, the Commission did not argue there would be irreparable harm without a TRO, that the balance of harms weighed in its favor, or that a TRO was in the public's interest.[29]

**The Court Issues an Ex Parte TRO**

The case was assigned to the undersigned on July 27,[30] and there was ex parte hearing on July 28.[31]  At the hearing, the court explained it did not believe Tenth Circuit authority permitted courts to issue TROs under a relaxed standard.[32]  The court stated it was prepared to deny the TRO Application without prejudice because the Commission did not argue all four prongs necessary for a TRO.[33]  The court also explained it believed the Commission was requesting a disfavored injunction, meaning the Commission had a heavier burden.[34]

Welsh, representing the Commission, contended that although it had not argued three of

---

[26] *Id.*

[27] *See Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016).

[28] *TRO Application* at 21 (quoting *SEC v. Traffic Monsoon, LLC*, 245 F. Supp. 3d 1275, 1296 (D. Utah 2017)).

[29] *Id.* at 22–31.

[30] ECF 7, *July 27, 2023 Case Reassignment*.

[31] ECF 11, *July 28, 2023 Minute Entry*; ECF 111, *TRO Hearing Transcript*.

[32] *TRO Hearing Transcript* at 4–7 (quoting *Diné Citizens*, 839 F.3d at 1282 ("[A]ny modified test which relaxes one of the prongs for preliminary relief and thus deviates from the standard test is impermissible.")).

[33] *Id.*; *see also id.* at 11.

[34] *Id.* at 7–8; *see also Colorado v. EPA*, 989 F.3d 874, 883–84 (10th Cir. 2021) (explaining disfavored injunctions).

the four standard TRO prongs identified by the court, information relevant to each was in its

filings.[35]  He then began explaining how information provided by the Commission satisfied each

prong.[36]  For example, he stated, "But to the irreparable harm, I would submit, Your Honor, that

from [the] briefings that we pointed out Defendants are moving assets overseas.  They have said

in videos that the reason they are doing this is to avoid SEC jurisdiction."[37]

      The court took a recess to consider the Commission's arguments and upon returning

explained it would allow the Commission to argue the missing TRO prongs orally, rather than

requiring it prepare and submit a new application.[38]  Welsh then argued the missing prongs.[39]

Concerning irreparable harm, he stated,

> Just as we were on break I was reminded by investigative staff with respect to the
> investigation which remains ongoing that even in the last 48 hours defendants have
> closed additional bank accounts, and I believe the number, I don't have it in front
> of me, was around 33 bank accounts have been closed.[40]

The court understood this to mean Defendants had closed 33 bank accounts in the last 48 hours.

Coupled with the Commission's allegation that Defendants had "taken action to block SEC

investigative staff from viewing [Defendants'] social media sites"[41] (thus suggesting Defendants

were aware of the Commission's ongoing investigation), this was in the court's view the most

important evidence of immediate, irreparable harm unless the TRO and asset freeze issued.

      After hearing the Commission's arguments, the court concluded it had shown it was

---

[35] *TRO Hearing Transcript* at 9.

[36] *Id.* at 9–11.

[37] *Id.* at 9.

[38] *Id.* at 15–17.

[39] *Id.* at 20–23.

[40] *Id.* at 20.

[41] *TRO Application* at 10.

entitled to its requested relief.[42]   The court thus issued a TRO, which, among other things, froze

Defendants' and Relief Defendants' assets and required them to repatriate funds.[43]   The court

also appointed a Receiver to manage DEBT Box "and its subsidiaries and affiliates."[44]

**Defendants Move to Dissolve**

The TRO expired after ten days, and the court renewed it several times without

objection.[45]   In September, two groups of Defendants and Relief Defendants moved to dissolve

the TRO.[46]   The court will refer to the first group as the DEBT Council Defendants[47] and the

second group as the iX Global Defendants.[48]   Below is a synopsis of the pertinent portions of

each group's Motion and the Commission's respective Opposition.

**DEBT Council Defendants.**   In their Motion to Dissolve, the DEBT Council Defendants

argued the Commission "made two sweeping claims of exigency" in support of its ex parte TRO

Application, neither of which were true.[49]

First, the DEBT Council Defendants challenged Welsh's representation that Defendants

were "attempting to relocate assets and investor funds overseas."[50]   They quoted Welsh's

statement from the hearing about account closures in the "last 48 hours" and contended this

---

[42] *TRO Hearing Transcript* at 24–25.

[43] *First TRO* at 12, 15–16.

[44] ECF 10, *Temporary Receivership Order* at 3.

[45] ECF 33, *Second TRO*; ECF 78, *Third TRO*; ECF 121, *Fourth TRO*.

[46] ECF 132, *DEBT Council Defendants' Motion to Dissolve*; ECF 145, *iX Global Defendants' Motion to Dissolve*. Defendant Matthew Fritzsche also moved to dissolve, but he incorporated other Defendants' arguments, so the court will not explain his Motion separately.  *See* ECF 159, *Fritzsche Motion to Dissolve*.

[47] This group includes Defendants Jason Anderson, Jacob Anderson, Schad Brannon, Roydon Nelson, and Relief Defendants Business Funding Solutions LLC, Blox Lending LLC, The Gold Collective LLC, and UIU Holdings LLC.  *DEBT Council Defendants' Motion to Dissolve* at 6.

[48] This group includes Defendants iX Global, Joseph Martinez, and Travis Flaherty.  *iX Global Defendants' Motion to Dissolve* at 2.

[49] *DEBT Council Defendants' Motion to Dissolve* at 15.

[50] *Id.* (quoting *Rule 65(b)(1)(B) Attorney Certification* ¶ 4).

statement was "baseless" because DEBT Box and the DEBT Council Defendants did not have any account closures in July 2023.[51]  They provided documents showing the closed accounts belonging to them or DEBT Box—thirteen accounts total—closed by January 2023.[52]  Nine of those accounts were closed by banks (not Defendants), including the accounts closed in January 2023.[53]  As to the other four accounts, it is unclear who initiated the closures, but they occurred in August 2021 and January 2022.[54]

Second, the DEBT Council Defendants argued the Commission's description of the June 14, 2023 YouTube video was misleading.[55]  They believed the Commission's description lacked context, like Anderson's statements were approximately three minutes of a more than one-hour discussion about blockchains.[56]  Also, Anderson's statements were in response to a listener question about the "SEC's squeeze on crypto and how this affects DEBT Box," and the main thrust of his response was that DEBT Box decided to move to Abu Dhabi because it wanted regulatory clarity it feels the Commission has not provided.[57]  The DEBT Council Defendants also stated DEBT Box moved its operations to UAE in May 2022, more than a year before the Commission requested the TRO.[58]  In support, they provided a "Certificate of Corporate Resolution" showing all DEBT Box shares transferred to a UAE company in May 2022.[59]

---

[51] *Id.*

[52] *Compare* ECF 168-1 at 8, *Second Zaki Declaration: Exhibit A* (spreadsheet showing the twenty-nine bank accounts subpoenaed by the Commission, twenty-four of which were closed), *with* ECF 132-3, *DEBT Council Defendants' Motion to Dissolve: Exhibit 3* (*Bank Closure Documents* showing closed accounts owned by Blox Lending, DEBT Box (DLI), The Gold Collective, and UIU Holdings were all closed by January 2023).

[53] *Bank Closure Documents* at 2–3, 12–16.

[54] *Id.* at 4–7.

[55] *DEBT Council Defendants' Motion to Dissolve* at 16–18.

[56] *Id.* at 16–17.

[57] *Id.* at 17; *see also June 14, 2023 YouTube Video*.

[58] *DEBT Council Defendants' Motion to Dissolve* at 17–18.

[59] ECF 132-5, *DEBT Council Defendants' Motion to Dissolve: Exhibit 5.*

In Opposition, the Commission maintained "Defendants made significant efforts to move investor funds outside of the [c]ourt's jurisdiction in the months leading up to the [Commission's] filing."[60]  It stated it had provided evidence the DEBT Council Defendants were "transferring investor funds to unreachable overseas accounts."[61]  It then criticized the DEBT Council Defendants for not addressing this evidence: "[The DEBT Council Defendants] ignore this evidence and instead cling to two lines from the TRO Hearing to claim that the [Commission] failed to establish irreparable harm.  As set forth below, these arguments are entirely without merit and misstate the record."[62]  The Commission then responded to the two categories of evidence identified by the DEBT Council Defendants.[63]

First, the Commission tacitly acknowledged there was no evidence DEBT Box or the DEBT Council Defendants closed accounts in July 2023.[64]  It stated, "As set forth in the TRO [Application], on July 7, 2023, the [Commission] became aware of several accounts controlled by Defendants that were closed, including four accounts controlled by Relief Defendant Gold Collective; three accounts controlled by Defendant iX Global; and two accounts controlled by [DEBT Box]."[65]  The court notes none of these accounts closed in July 2023, and all were closed by banks, not Defendants.[66]

The Commission then stated, "Further, mere days before the TRO Hearing—consistent with counsel's representation to the [c]ourt—the [Commission] learned that a substantial portion

---

[60] ECF 168, *Opposition to DEBT Council Defendants* at 7.

[61] *Id.* at 15.

[62] *Id.*

[63] *Id.* at 15–16.

[64] *Id.* at 15.

[65] *Id.* (citing *Second Zaki Declaration: Exhibit A*).

[66] *Bank Closure Documents*; ECF 145-3, *Martinez Declaration: Exhibit B* (letter from Bank of America stating it initiated the iX Global account closures in June 2023).

of the funds held in the bank accounts controlled by Defendants, including one controlled by [DEBT Box], had been substantially drained of assets."[67]   The court understands this statement to be referencing counsel's representation at the ex parte TRO hearing that Defendants had closed accounts "in the last 48 hours," given the Commission's earlier reference to "two lines from the TRO Hearing."[68]   However, at no point in its Opposition did the Commission acknowledge Welsh's statement that "in the last 48 hours Defendants have closed additional bank accounts."[69]   Nor did it provide evidence to support that statement.[70]

Second, the Commission argued DEBT Box's move to Abu Dhabi was ongoing and had not finished in May 2022.[71]   In support, it provided evidence DEBT Box has one open bank account in the United States and has an office in Utah.[72]   It also cited a $35,000 wire from DEBT Box to Defendant Schad Brannon on June 16, 2023, that had the memo line "Set up office in UAE."[73]   The Commission further argued that regardless of when DEBT Box began its move overseas, "the fact that Defendants are continuing to transfer assets overseas shows a likelihood of dissipation."[74]   The Commission did not explain what assets Defendants were "continuing to transfer" overseas.[75]

---

[67] *Opposition to DEBT Council Defendants* at 15.

[68] *See id.* ("In their Motion, the [DEBT Council] Defendants ignore this evidence and instead cling to two lines from the TRO Hearing to claim that the SEC failed to establish irreparable harm. *As set forth below*, these arguments are entirely without merit and misstate the record." (emphasis added)).

[69] *See id.*

[70] *See id.*

[71] *Id.* at 15–16.

[72] *Id.* at 16.

[73] *Id.*  There is no indication the $35,000 was sent overseas.  *See id.* (citing *Second Zaki Declaration: Exhibit B*).

[74] *Id.*

[75] *See id.*

**iX Global Defendants.**  In their Motion to Dissolve, the iX Global Defendants likewise argued the Commission obtained the TRO with "materially misleading information."[76]  As explained, the Commission's filings frequently cited iX Global accounts that closed on June 26, 2023.[77]  The iX Global Defendants explained the bank closed those accounts without input from iX Global.[78]  They also cited an Exhibit from the Commission's TRO Application showing the $720,000 from the closed accounts was deposited into a Mountain America Credit Union account (i.e., not sent overseas).[79]

In response, the Commission acknowledged the iX Global Defendants did not close the accounts but faulted them for not providing "any evidence" the funds "were preserved."[80]  The Commission did not provide evidence iX Global moved the $720,000 overseas after depositing it into the Mountain America Credit Union account.[81]  Nor did it acknowledge that when it requested the TRO, it had reason to know iX Global deposited the $720,000 into a domestic account.[82]

**The Court Dissolves the TRO**

On October 6, 2023, the court held a hearing on the Motions to Dissolve.[83]  The court began by outlining several of the Commission's representations made in support of the ex parte

---

[76] *iX Global Defendants' Motion to Dissolve* at 3.

[77] *See Complaint* ¶ 6; *TRO Application* at 10, 20; *Rule 65(b)(1)(B) Attorney Certification* ¶ 6.

[78] *iX Global Defendants' Motion to Dissolve* at 5 (citing ECF 145-1, *Martinez Declaration* ¶ 17); *see also Martinez Declaration: Exhibit B* at 2 (Bank of America letter stating it decided to close the accounts).

[79] *iX Global Defendants' Motion to Dissolve* at 5 (citing ECF 3-10, *First Zaki Declaration: Exhibit 9*).

[80] ECF 169, *Opposition to iX Global Defendants* at 10.

[81] *See id.*

[82] *See id.*

[83] ECF 187, *Oct. 6, 2023 Minute Order*; ECF 189, *Motion to Dissolve Hearing Transcript*.

TRO Application that the court believed were either false or misleading.[84]

The court first quoted the paragraph from Welsh's Attorney Certification stating the Commission had evidence indicating "Defendants are currently in the process of attempting to relocate assets and investor funds overseas, where at least Jacob Anderson has contended that those assets will be outside the reach of U.S. regulators."[85]  The court explained it did not believe there was evidence before it showing that at the time the Commission sought the TRO, Defendants were "currently in the process of attempting to relocate assets and investor funds overseas."[86]  It acknowledged the $35,000 wire transfer from DEBT Box to Brannon with the memo line "Set up office in UAE," but that transfer was almost six weeks before the Commission filed its TRO Application.[87]  There is also no evidence those funds went overseas. The court further noted that in the June 14, 2023 YouTube video, Anderson did not mention funds or assets being "outside the reach of U.S. regulators"—he said DEBT Box would not be under the Commission's jurisdiction.[88]  Relatedly, the court was concerned that even though the Commission correctly quoted Anderson, it did not provide context for his statements.[89]

Welsh responded, pointing out that iX Global transferred $1.35 million overseas to IX Venture FZCO.[90]  But he also agreed the most recent transfer to IX Venture FZCO was in January 2023—eight months before the Commission sought the TRO.[91]  The court asked if the

---

[84] *See Motion to Dissolve Hearing Transcript* at 11–27.

[85] *Id.* at 15 (quoting *Rule 65(b)(1)(B) Attorney Certification* ¶ 4).

[86] *Id.* (quoting *Rule 65(b)(1)(B) Attorney Certification* ¶ 4).

[87] *Id.* at 15–16.

[88] *Id.* at 16; *see also June 14, 2023 YouTube Video*.

[89] *Motion to Dissolve Hearing Transcript* at 20–22.

[90] *Id.* at 32.

[91] *Id.* at 32–33.  The spreadsheet prepared by the Commission shows four transfers from iX Global to IX Venture FZCO, totaling $1.35 million.  *See First Zaki Declaration: Exhibit 5* at 187.  The last transfer was in December 2022, not January 2023.  *Id.*  Regardless, the transfers were not in July 2023.

Commission was "aware of any direct transfers of monies that [the Commission] contend[s] are investor funds from the United States to UAE after January of this year."[92]  Welsh confirmed the Commission was not aware of transfers to UAE after January 2023.[93]

Welsh also confirmed the Commission did not know the reason for the account closures.[94]  He explained, "[O]nce we started looking into the transfer of funds and the accounts belonging to these companies, seeing a lot of them being closed at different times and then seeing a video saying moving operations and then seeing it transfer funds to a UAE entity, that was the basis for us saying that there is certainly an emergency . . . ."[95]

Next, the court discussed the iX Global account closures.[96]  It explained that Welsh's Attorney Certification strongly implied those closures were an example of Defendants' attempts to "relocate assets and investor funds overseas."[97]  However, as explained, those accounts were not closed by iX Global and the funds were deposited into a domestic account.  The court assumed the Commission did not know the bank closed the accounts, and the Commission later confirmed it had not known the reason for the closures.[98]  Nonetheless, the Commission had incorrectly stated iX Global closed the accounts,[99] and it had reason to know the funds were not sent overseas.[100]

---

[92] *Motion to Dissolve Hearing Transcript* at 33.

[93] *Id.*

[94] *Id.* at 34.

[95] *Id.*  Again, the court notes the Commission has not provided evidence funds were transferred overseas after December 2022—almost six months before Anderson's comments in the June 14, 2023 YouTube video.  *See First Zaki Declaration: Exhibit 5.*

[96] *Motion to Dissolve Hearing Transcript* at 17–18.

[97] *Id.*

[98] *Id.* at 17, 34.

[99] *See, e.g.*, *Complaint* ¶ 6; *Rule 65(b)(1)(B) Attorney Certification* ¶ 6; *TRO Application* at 10, 20.

[100] *See First Zaki Declaration: Exhibit 9.*

Finally, the court addressed Welsh's statement at the TRO hearing concerning account closures "in the last 48 hours."[101]  Welsh had stated, "[E]ven in the last 48 hours Defendants have closed additional bank accounts, and I believe the number, I don't have it in front of me, was around 33 bank accounts have been closed."[102]  The court acknowledged Welsh may have meant 33 bank accounts had closed in total, not all in the last 48 hours.[103]  But in the context of the hearing, Welsh's statement conveyed 33 bank accounts had closed in the past 48 hours.  And regardless, there was no evidence that any bank accounts closed in the 48 hours preceding the ex parte hearing.[104]

The court was further troubled by Welsh's apparent misrepresentation because another attorney from the Commission was on-screen at the ex parte TRO hearing, and there were two investigative staff off-screen.[105]  Yet nobody clarified or corrected Welsh's statement.[106]

The court was also concerned by the Commission's failure to address the misrepresentation in later filings.[107]  In their Motion to Dissolve, the DEBT Council Defendants quoted Welsh's statement and said it was false.[108]  In its Opposition, the Commission did not directly acknowledge the statement, but instead criticized the DEBT Council Defendants for "cling[ing] to two lines from the TRO Hearing to claim that the [Commission] failed to establish

---

[101] *Motion to Dissolve Hearing Transcript* at 23 (quoting *TRO Hearing Transcript* at 20).

[102] *TRO Hearing Transcript* at 20.

[103] *Motion to Dissolve Hearing Transcript* at 23.  At the Motion to Dissolve hearing, Welsh clarified he had meant 24 accounts, not 33.  *Motion to Dissolve Hearing Transcript* at 31.  The court has no reason to doubt that, but regardless, it is concerned because those accounts were not closed in the 48 hours before the ex parte TRO hearing.

[104] *Id.* at 23–24.

[105] *Id.* at 24; *TRO Hearing Transcript* at 3.  The TRO hearing was held via Zoom.  *TRO Hearing Transcript* at 3.

[106] *Motion to Dissolve Hearing Transcript* at 24; *TRO Hearing Transcript* at 20.

[107] *Motion to Dissolve Hearing Transcript* at 24–27.

[108] *DEBT Council Defendants' Motion to Dissolve* at 15–16.

irreparable harm."[109]  The Commission then stated it would address "these arguments" "below."[110]

In the next paragraph, the Commission stated, "Further, mere days before the TRO Hearing—consistent with counsel's representation to the [c]ourt—the [Commission] learned that a substantial portion of the funds held in two bank accounts controlled by Defendants, including one controlled by [DEBT Box], had been substantially drained of assets."[111]  This plainly mischaracterizes Welsh's statement at the ex parte hearing—he explicitly said "in the last 48 hours Defendants have closed additional bank accounts."[112]  He did not say two bank accounts "had been substantially drained of assets."[113]  Accordingly, the court was concerned the Commission mischaracterized Welsh's statement and then doubled down on its argument, rather than acknowledging the error.[114]

In response to this concern, Welsh confirmed bank accounts did not close in the 48 hours before the TRO hearing.[115]  He explained, "What we saw was when checking the numbers when reaching out to the bank from prior submissions after the application was submitted we noticed withdrawals in the accounts that were substantial of 75 percent in one and 50 percent in another."[116]  He stated he did not intend to mislead the court and he wished he had clarified.[117]

After hearing from the Commission, the court concluded the TRO was improvidently

---

[109] *Opposition to DEBT Council Defendants* at 15.

[110] *Id.*

[111] *Id.*

[112] *TRO Hearing Transcript* at 20.

[113] *See Opposition to DEBT Council Defendants* at 15.

[114] *Motion to Dissolve Hearing Transcript* at 24–27.

[115] *Id.* at 31.

[116] *Id.* at 31–32.

[117] *Id.* at 31.

issued because even considering new evidence, the Commission had not shown a likelihood of irreparable harm.[118]  It thus dissolved the TRO and asked the Receiver and Defendants to work on a plan to wind down the Receivership.[119]

## LEGAL STANDARDS

Under Rule 11 of the Federal Rules of Civil Procedure, courts may impose "disciplinary sanctions to check abuses in the signing of pleadings."[120]  For example, Rule 11 "emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable."[121]  In relevant part, Rule 11(b) states,

> (b) Representations to the Court.  By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> . . . .
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

A court may order a party to show cause why specific conduct has not violated Rule 11(b).[122]  After "notice and a reasonable opportunity to respond," the court may impose appropriate sanctions against a party responsible for violating Rule 11(b).[123]

Federal courts also have an inherent power to sanction conduct that abuses the judicial process.[124]  This inherent power includes the ability to enter orders protecting the integrity of

---

[118] *Id.* at 46–47.

[119] *Id.* at 39, 43–44, 47.

[120] Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment.

[121] *Id.* advisory committee's note to 1993 amendment.

[122] *Id.* R. 11(c)(3).

[123] *Id.* R. 11(c)(1).

[124] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).

court proceedings.[125]  "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"[126]

Courts should ordinarily rely on the Federal Rules of Civil Procedure or a statute rather than their inherent power.[127]  "But if in the informed discretion of the court, neither [a] statute nor the Rules are up to the task, the court may safely rely on its inherent power."[128]

## DISCUSSION

After carefully reviewing the Commission's filings and statements at the ex parte TRO hearing, the court is concerned the Commission made materially false and misleading representations that violated Rule 11(b) and undermined the integrity of the proceedings.  The context is crucial—the representations were made by a federal agency seeking an ex parte TRO and while later seeking to preserve the TRO.

TROs are extraordinary relief, and the TRO obtained here was no exception.  Among other things, it froze "all monies and assets . . . in all accounts" held by Defendants and Relief Defendants, and it required those parties to repatriate assets.[129]  It was also the basis of the Temporary Receivership Order, which gave the Receiver "full power over all funds, assets, collateral, premises . . . choses in action, books, records, papers and other property belonging to" DEBT Box, its affiliates, and its subsidiaries.[130]  Given the extraordinary power conferred by the TRO, the court is mindful of how it was obtained.

---

[125] *Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1255 (10th Cir. 2015).

[126] *Chambers*, 501 U.S. at 43 (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)).

[127] *Id.* at 50.

[128] *Id.*

[129] *First TRO* at 12, 16–17.

[130] *Temporary Receivership Order* at 3.

For these reasons, the court ORDERS the Commission to show cause why the court should not impose sanctions.  The Commission's Response should address the following matters:

1. Paragraph 4 of the Rule 65(b)(1)(B) Attorney Certification, which states, "Evidence obtained by the Commission . . . indicates that Defendants are currently in the process of attempting to relocate assets and investor funds overseas, where at least Defendant Jacob Anderson has contended that those assets will be outside the reach of U.S. regulators." [131]

    a. When making this statement, what factual support did counsel possess and rely on?

2. The following statement in the TRO Application: "Defendants have also taken action to block SEC investigative staff from viewing their social media sites, and appear to have recently deleted a website containing training materials for the scheme's promotors [sic]."[132]

    a. When the Commission filed its TRO Application, had its investigation been covert, as Welsh represented at the TRO hearing?[133]

    b. If the investigation had been covert, what factual support did counsel possess and rely on when representing Defendants had "taken action to block SEC investigative staff from viewing their social media sites"?

3. Welsh's statement at the TRO hearing that "even in the last 48 hours Defendants have closed additional bank accounts, and I believe the number, I don't have it in front of me, was around 33 bank accounts have been closed."[134]

    a. When making this statement, what factual support did counsel possess and rely on?

    b. When did counsel become aware this statement was incorrect?

---

[131] *Rule 65(b)(1)(B) Attorney Certification* ¶ 4.

[132] *TRO Application* at 10.

[133] *See TRO Hearing Transcript* at 10, 22.

[134] *Id.* at 20.  Rule 11 "applies only to assertions contained in papers filed with or submitted to the court," so it may not apply to this statement.  *See* Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment.  That is why the court has also cited its inherent authority to sanction conduct that abuses the judicial process.

4. The following statement from the Commission's Opposition to the DEBT Council Defendants' Motion to Dissolve: "And while the DLI Defendants now lean on the technicality that certain corporate documents show attempts to move DLI's business interests overseas in 2022, those documents don't match the facts on the ground, which reveal that the DLI Defendants made significant efforts to move investor funds outside of the Court's jurisdiction in the months leading up to the SEC's filing."[135]

    a. When making this statement, what factual support did counsel possess and rely on?

5. The following statement from the Commission's Opposition to the DEBT Council Defendants' Motion to Dissolve: "Further, mere days before the TRO Hearing—consistent with counsel's representation to the Court—the SEC learned that a substantial portion of the funds held in two bank accounts controlled by Defendants, including one controlled by DLI, had been substantially drained of assets."[136]

    a. What statement was the Commission referencing when it stated "consistent with counsel's representation to the Court"?

The Commission's Response to this Order must be filed within 14 days.

      SO ORDERED this 30th day of November 2023.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[135] *Opposition to DEBT Council Defendants* at 7. The Commission uses "DLI" for DEBT Box and "DLI Defendants" for DEBT Council Defendants.

[136] *Id.* at 15.