Matthew R. Lewis (7919)
Taylor J. Smith (17537)
**KUNZLER BEAN & ADAMSON, PC**
50 W. Broadway, 10th Floor
Salt Lake City, Utah 84101
Telephone: (801) 994-4646
mlewis@kba.law
tsmith@kba.law

Jason P. Gottlieb (admitted *pro hac vice*)
David E. Ross (admitted *pro hac vice*)
Jeffrey D. Brooks (admitted *pro hac vice*)
Alexander R. Yarm (admitted *pro hac vice*)
**MORRISON COHEN LLP**
909 Third Avenue, 27th Floor
New York, New York 10022
Telephone: (212) 735-8600
jgottlieb@morrisoncohen.com
dross@morrisoncohen.com
ayarm@morrisoncohen.com

*Attorneys for Defendants Digital Licensing Inc., Jason R. Anderson, Jacob S. Anderson, Schad E. Brannon, Roydon B. Nelson, and Relief Defendants Business Funding Solutions, LLC; Blox Lending, LLC; The Gold Collective LLC; and UIU Holdings, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>DIGITAL LICENSING INC. (d/b/a "DEBT Box"), a Wyoming corporation; JASON R. ANDERSON, an individual; JACOB S. ANDERSON, an individual; SCHAD E. BRANNON, an individual; ROYDON B. NELSON, an individual; JAMES E. FRANKLIN, an individual; WESTERN OIL EXPLORATION COMPANY, INC., a Nevada corporation; RYAN BOWEN, an individual; IX | **DEFENDANTS DIGITAL LICENSING INC., JASON R. ANDERSON, JACOB S. ANDERSON, SCHAD E. BRANNON, AND ROYDON B. NELSON AND RELIEF DEFENDANTS BUSINESS FUNDING SOLUTIONS, LLC, BLOX LENDING, LLC, THE GOLD COLLECTIVE LLC, AND UIU HOLDINGS, LLC'S REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12 (b)(6)**<br>**ORAL ARGUMENT REQUESTED**<br>Case No. 2:23-cv-00482-RJS |

GLOBAL, LLC, a Utah limited liability
company; JOSEPH A. MARTINEZ, an
individual; BENAJMIN F. DANIELS, an
individual; MARK W. SCHULER, an
individual; B & B INVESTMENT GROUP,
LLC (d/b/a "CORE 1 CRYPTO"), a Utah
limited liability company; TRAVIS A.
FLAHERTY, an individual; ALTON O.
PARKER, an individual; BW HOLDINGS,
LLC (d/b/a the "FAIR PROJECT"), a Utah
limited liability company; BRENDAN J.
STANGIS, an individual; and MATTHEW D.
FRITZSCHE, an individual;

     Defendants,

ARCHER DRILLING, LLC, a Wyoming
limited liability company; BUSINESS
FUNDING SOLUTIONS, LLC, a Utah limited
liability company; BLOX LENDING, LLC, a
Utah limited liability company; CALMFRITZ
HOLDINGS, LLC, a Utah limited liability
company; CALMES & CO, INC., a Utah
corporation; FLAHERTY ENTERPRISES,
LLC, an Arizona limited liability company; IX
VENTURES FZCO, a United Arab Emirates
company; PURDY OIL, LLC, a Nebraska
limited liability company; THE GOLD
COLLECTIVE LLC, a Utah limited liability
company; and UIU HOLDINGS, LLC, a
Delaware limited liability company,

     Relief Defendants.

Chief Judge Robert J. Shelby
Magistrate Judge Dustin B. Pead

**REPLY IN FURTHER SUPPORT OF DEFENDANTS AND RELIEF
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ................................................................................................................... 2

I.     The Rule 9(b) Requirements Mandate Dismissal of the SEC's Fraud
Claims. ................................................................................................................. 2

II.    The SEC's Arguments in Its Opposition Are Without Merit. ........................... 3

      A.    The SEC Mischaracterizes the State of Law as to Crypto Assets
and Reinvents and Amends the Factual Allegations in the Complaint.................. 3

      B.    The SEC Misstates the Law on "Scheme Liability" and
"Group Pleading" and Have Not Sufficiently Pled the
Fraud Claims in the Complaint. ................................................... 5

            1.    The SEC's Scheme Liability Claims Are Not Particularized. ................... 5

            2.    The SEC's Use of Group Pleading Is Improper............................. 7

            3.    The Elements of the SEC's Fraud Claims Are Not Particularized. ............ 8

      C.    The SEC Continues to Mischaracterize Defendants' YouTube Statements......... 11

            1.    The January 14, 2023 YouTube video ...................................... 11

            2.    The July 2023 YouTube video................................................ 12

            3.    The October 26, 2022 YouTube video ...................................... 12

      CONCLUSION.................................................................................... 13

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ATSI Comms., Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)........................................................................................7

*Farlow v. Peat, Marwick, Mitchell & Co.*,
    956 F.2d 982 (10th Cir.1992) ...................................................................................2

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011)...................................................................................................9

*Katyle v. Penn National Games, Inc.*,
    637 F.3d 462 (4th Cir. 2011) .....................................................................................2

*In re Parmalat Sec. Litig.*,
    414 F. Supp. 2d 428 (S.D.N.Y. 2006).......................................................................7

*Public Pension Fund Grp. v. KH Pharm. Co.*,
    679 F.3d 972 (8th Cir. 2012) .....................................................................................6

*Schwartz v. Celestial Seasonings, Inc.*,
    124 F.3d 1246 (10th Cir. 1997) ...............................................................................11

*ScripsAmerica, Inc. v. Ironridge Global LLC*,
    119 F. Supp. 3d 1213 (C.D. Cal. 2015) .....................................................................7

*SEC v. Arnold*,
    Civ. No. 03-CV-0328-REB-OES, 2007 WL 2786428
    (D. Colo. Sept. 24, 2007) ........................................................................................11

*SEC v. Brady*,
    No. 3:05-CV-1416-D, 2006 WL 1310320 (N.D. Tex. May 12, 2006)......................8

*SEC v. Garber*,
    959 F. Supp. 2d 374 (S.D.N.Y. 2013).......................................................................6

*SEC v. Gordon*,
    No. 09-CV-0061-CVE-FHM, 2009 WL 1652464 (N.D. Okl. June 11, 2009) .........7

*SEC v. Kelly*,
    817 F.Supp.2d 340 (S.D.N.Y. 2011).......................................................................6, 9

i

*SEC v. Kik Interactive Inc.*,
    492 F. Supp. 3d 169 (S.D.N.Y. 2020)......................................................................................3

*SEC v. LBRY, Inc.*,
    639 F. Supp. 3d 211 (D.N.H. 2022)........................................................................................3

*SEC v. Leslie*,
    No. C 07-3444, 2008 WL 3876169 (N.D. Cal. Aug. 19, 2008)..............................................11

*SEC v. Nacchio*,
    438 F. Supp. 2d 1266 (D. Colo. 2006)....................................................................................11

*SEC v. Penn*,
    225 F. Supp. 3d 225 (S.D.N.Y. 2016)......................................................................................6

*SEC v. Pocklington*,
    No. 18-701JGB, 2018 WL 6843663 (C.D. Cal. Sept. 10, 2018)............................................9

*SEC v. Ripple Labs, Inc.*,
    No. 20 Civ. 10832 (AT), 2023 WL 4507900 (S.D.N.Y. July 13, 2023) ..................................3

*SEC v. Ripple Labs, Inc.*,
    No. 20-cv-10832 (S.D.N.Y.) (ECF No. 893; filed Aug. 18, 2023) ........................................4

*SEC v. Sells*,
    No. C 11-4941 CW, 2012 WL 3242551 (N.D. Cal. Aug. 10, 2012) .......................................9

*SEC v. Straub*,
    921 F. Supp. 2d 244 (S.D.N.Y. 2013)......................................................................................8

*SEC v. Telegram Grp. Inc.*,
    448 F. Supp. 3d 352 (S.D.N.Y. 2020)......................................................................................3

*SEC v. Terraform Labs PTE Ltd.*,
    No. 23-cv-1346, 2023 WL 4858299 (S.D.N.Y. July 31, 2023)...............................................3

*SEC v. Yuen*,
    221 F.R.D. 631 (C.D. Cal. 2004)..............................................................................................8

*TDC Lending LLC v. Priv. Cap. Grp., Inc.*,
    340 F. Supp. 3d 1218 (D. Utah 2018)..................................................................................8, 11

*In re Urcarco Sec. Litig.*,
    148 F.R.D. 561 (N.D. Tex. 1993) ..........................................................................................11

**Statutes**

28 U.S.C. § 1292(b) .................................................................................................................4

#12607122v2\031376\0001

PSLRA [Private Securities Litigation Reform Act of 1995] ...................................................8, 11

Fed. R. Civ. P. 5(c) .........................................................................................................................7

Fed. R. Civ. P. 9(b) .............................................................................................................. *passim*

Fed. R. Civ. P. 10(b) .......................................................................................................................5

Fed. R. Civ. P. 12(b)(6)...............................................................................................................1, 2

Fed. R. Civ. P. 15(a)(1)(B) ............................................................................................................1

Fed. R. Civ. P. 17(a) .......................................................................................................................5

 **Other Authorities**

available at https://assets.thedebtbox.com/insider/podcasts/season-1/full/debtbox-
    podcast-season1-episode3.mp4 ...........................................................................................12

available at https://www.youtube.com/watch?v=x75A6Sxh1qU ...................................................12

available at https://youtu.be/x75A6Sxh1qU .................................................................................13

DEBT Box's Lite Papers such as the XPLR Lite Paper
    (https://assets.thedebtbox.com/web/lite-papers/XPLR-lite-paper.pdf).....................................5

*www.sec.gov/spotlight/cybersecurity-enforcement-actions* ...........................................................4

Defendants Digital Licensing Inc., Jason R. Anderson, Jacob S. Anderson, Schad E. Brannon, and Roydon B. Nelson and Relief Defendants Business Funding Solutions, LLC, Blox Lending, LLC, The Gold Collective, and UIU Holdings, LLC (collectively "Defendants") respectfully submit this reply in further support of their motion, pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), to dismiss with prejudice the SEC's Complaint.

## PRELIMINARY STATEMENT[1]

This Court has now confirmed what Defendants had said:  the SEC got this case wrong. Badly wrong.

Those words no longer just apply to the SEC's ill-fated effort to procure an *ex parte* TRO, an asset freeze, and a receiver here.  As discussed in Defendants' opening Memorandum, the SEC also got the Complaint badly wrong.  This is not a fraud case.

But what is even more remarkable is that the SEC continues to flout this Court's admonitions, first delivered at the October 6, 2023 TRO dissolution hearing (and recently restated in the Court's November 30, 2023 Order to Show Cause), to tell the truth.  The SEC easily could have, in response to this motion to dismiss and as a matter of course, filed an amended complaint, to attempt to correct its deficiencies, under Fed. R. Civ. P. 15(a)(1)(B).  Instead, in its Opposition ("Opp.") (ECF No. 206), the SEC purposefully chose to "double-down" on its fatally flawed pleading: the SEC misrepresents the state of law regarding crypto assets in its "Preliminary

---

[1] As discussed in Defendants' opening Memorandum, there are additional, independent grounds for dismissal that iX Global's Motion to Dismiss has argued:  that there are no "securities" transactions alleged in the Complaint; that the SEC has no authority to bring this action under the "major questions" doctrine; and that the SEC violated Defendants' due process rights by instituting this enforcement action against them without first providing them "fair notice" that digital assets would be treated as "securities."  Mem. at 1-2.  For the sake of brevity, Defendants have previously adopted those arguments in iX Global's Motion to Dismiss, and now adopt the arguments set forth in iX Global's reply.

Statement"; spends more than 18 pages in its Opposition, in the "Summary of the Allegations" and "Argument" sections, to reinvent and amend the factual allegations to attempt to satisfy Rule 9(b)— misstating its *own* allegations in the Complaint; and falsely accuses Defendants of mischaracterizing YouTube videos that are plain to see.

The SEC should not be allowed to continue to spin a false narrative to avoid dismissal. However liberal the SEC may imagine that the Rule 12(b)(6) standard to be, courts "owe no allegiance to unwarranted inferences, unreasonable conclusions, or arguments drawn from those facts." *Katyle v. Penn National Games, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011) (cleaned up).  As shown below, the SEC's Opposition is full of such inferences, conclusions and arguments.  The Complaint should be dismissed with prejudice.

## ARGUMENT

### I.      The Rule 9(b) Requirements Mandate Dismissal of the SEC's Fraud Claims.

The SEC alleges that Defendants made misrepresentations in connection with the offering of "securities."  *See* Mem. at 2-3.  Not only are such allegations false, but they also fail to meet the basic pleading standards under Rule 9(b).

As shown in the opening Memorandum, the SEC has failed to satisfy the "particularity" requirement under Rule 9(b).  *See* Mem. at 5-13.  The Complaint does not set forth the "who, what, when, where and how of the alleged fraud" and describe "the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." Mem. at 5-12 (explaining that Rule 9(b), beyond affording "defendant fair notice of the plaintiff's claim and the factual ground upon which it is based," "also safeguards defendant's reputation and goodwill from improvident charges of wrongdoing." *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir.1992) (cleaned up)).  Further, the SEC engages in disfavored "group pleading" by lumping together various defendants, including co-defendants such as James A.

2

Franklin, and fails to link directly which of the defendants made which (if any) alleged material misrepresentations with scienter (or negligence). *Id.* at 6-12. Finally, the SEC mischaracterizes statements made in YouTube videos by Defendants to make them appear as if they were misstatements—drawing unwarranted inferences, unreasonable conclusions, or arguments from such mischaracterizations. *Id.* at 12-13.

## II.    The SEC's Arguments in Its Opposition Are Without Merit.

### A.    The SEC Mischaracterizes the State of Law as to Crypto Assets and Reinvents and Amends the Factual Allegations in the Complaint.

Despite this Court's October 6, 2023 admonition to the SEC for making materially false and highly misleading statements, 10/6/2023 TRO Dissolution Hearing Tr. at 23-26 (attached hereto as Ex. 1), the SEC persists in making more of them here. Starting in its Preliminary Statement, the SEC claims that

> courts applying *Howey* have ruled favorably on allegations that schemes involving crypto assets or mining software constituted investment contracts, including in the over ***one hundred*** enforcement actions applying *Howey* to crypto asset related offerings filed by the SEC ***before*** Defendants first offered Node Licenses to investors [March 2021]."

Opp. at 2 (emphases in original). This is patently false.

Courts have not applied *Howey* in more than 100 enforcement actions involving crypto assets before March 2021. Approximately five cases have applied *Howey* to crypto assets in SEC enforcement matters.[2] That is why, as recently as August 18, 2023 (more than three weeks *after* this action was filed), the SEC in another crypto asset matter sought more clarity as to the application of *Howey* through its (now unsuccessful) request for interlocutory appeal. *See* SEC's

---

[2] *See SEC v. Terraform Labs PTE Ltd.*, No. 23-cv-1346, 2023 WL 4858299 (S.D.N.Y. July 31, 2023); *SEC v. Ripple Labs, Inc.*, No. 20 Civ. 10832 (AT), 2023 WL 4507900 (S.D.N.Y. July 13, 2023); *SEC v. LBRY, Inc.*, 639 F. Supp. 3d 211 (D.N.H. 2022); *SEC v. Kik Interactive Inc.*, 492 F. Supp. 3d 169 (S.D.N.Y. 2020); *SEC v. Telegram Grp. Inc.*, 448 F. Supp. 3d 352 (S.D.N.Y. 2020).

3

Mem. in Its Motion to Certify Interlocutory Appeal Under 28 U.S.C. § 1292(b) at 1 (arguing that "[i]mmediate appeal of these rulings [regarding the application of *Howey*] is warranted under 28 U.S.C. § 1292(b) because they involve controlling questions of law as to which *there are substantial grounds for difference of opinion*") in *SEC v. Ripple Labs, Inc.*, No. 20-cv-10832 (S.D.N.Y.) (ECF No. 893; filed Aug. 18, 2023) (emphasis supplied) (attached hereto as Ex. 2). The SEC's assertion of "over one hundred enforcement actions applying *Howey*" refers not to actions filed in court, as the SEC misleadingly asserts, but to the number of crypto and cyber enforcement actions the SEC brought, the vast majority of them settling on a neither-admit-nor-deny basis, in the SEC's "administrative proceedings" before any litigation) (*see www.sec.gov/spotlight/cybersecurity-enforcement-actions*).

But that is just the tip of the iceberg. As shown in the attached table comparing the SEC's "factual" allegations against its own Complaint allegations (Ex. 3 attached hereto), the SEC makes no fewer than 23 false, misleading, or otherwise incorrect statements in an eight-page "Summary of Allegations" ("SOA") section. For example, on page 6 (SOA, Point IV, A), the SEC claims that:

> DEBT Box and its controlling members (i.e., Defendants Jason Anderson, Jake Anderson, Brannon, and Nelson (*id*. ¶ 13)) repeatedly represented to investors that the DEBT Box node licenses "mined" DEBT Box's crypto assets through a process *akin to mining for bitcoin* (i.e., through a "proof of work" consensus mechanism) … *Id*. [Compl.] ¶¶ 45, 65. (Emphasis supplied)

The SEC's Complaint does not say that, however. Paragraphs 45 and 65 of the Complaint do not state or suggest that Defendants "repeatedly represented to investors that the DEBT Box node licenses 'mined' DEBT Box's crypto assets through a process *akin to mining for bitcoin*." *See* Compl. ¶¶ 45, 65 (emphasis supplied). The Complaint lacks any mention of the node license mining process having similarity with bitcoin mining, and, in fact, DEBT Box's Lite Papers such as the XPLR Lite Paper (https://assets.thedebtbox.com/web/lite-papers/XPLR-lite-paper.pdf)

expressly state that the DEBT Box blockchain ecosystem created a "*synthetic* proof of work (sPOW) structure." XPLR Lite Paper (the Rewards section) (emphasis supplied).

Next, on page 7 (SOA, Point IV, B), the SEC claims that "[a]nd in August 2022, Jason Anderson falsely claimed that its beverage distribution partner was generating 'over $12 million a month in revenue' from its rainwater bottling business. *Id*. [Compl. ¶ 80]." This is false too; there is no such specific or particularized allegation in the Complaint. Paragraph 80 does not allege any August 2022 statement of Jason Anderson. *See* Compl. ¶ 80.

Similarly, on page 7-8 (SOA, Point IV, C), the SEC claims that,

> [f]or example, DEBT Box's marketing materials claimed that their technology was capable of scanning the earth "through the frequencies" to determine exactly where gold, oil, or indeed any "mineral on the periodic table" was located, and "pinpoint gold, for example, or aluminum or silver, or natural gas within six centimeters in the ground." *Id*. [Compl.] ¶ 74.

This, again, is false. The actual allegations in the Complaint are not so specific or particularized. *See* Compl. ¶ 74. So, Paragraph 74 does not speak of "DEBT Box's marketing materials"; does not speak of "frequencies"; and does not speak of "pinpoint[ing] gold, for example, or aluminum or silver, or natural gas within six centimeters in the ground." *See id*.

## B. The SEC Misstates the Law on "Scheme Liability" and "Group Pleading" and Have Not Sufficiently Pled the Fraud Claims in the Complaint.

The SEC's principal arguments are that the Rule 9(b) particularity standard should be relaxed for the fraud claims in this case and that the elements of its Rule 17(a) and Section 10(b)/Rule 10b-5 claims in the Complaint have met the particularity standard. Opp. at 23-35.

### 1. The SEC's Scheme Liability Claims Are Not Particularized.

The SEC initially argues that Defendants have not challenged the "scheme liability" claims (the Second and Fourth Claims). Opp. at 24. Next, the SEC argues that it has met the relaxed Rule 9(b) standard. *Id*. at 24-26. The SEC's arguments fail for at least four reasons.

5

*First*, in the opening Memorandum, Defendants sought dismissal of all the securities fraud claims—not just the misrepresentation claims.  *See* Mem. at 6.  *Second*, despite the SEC's label, this is not a "scheme liability" case. The Complaint adverts to the word "scheme" numerous times, but fails to specify what it is here.  *See* Compl. ¶¶ 83-89.  The SEC's late formulation of the alleged fraudulent scheme in its Opposition—"a scheme to defraud the investors who purchased the Node Licenses by participating in a course of conduct to conceal the truth about facts central to investment," Opp. at 25—reveals that the SEC is trying to shoehorn a misrepresentation case into be a scheme liability case.  *See SEC v. Kelly*, 817 F.Supp.2d 340, 344 (S.D.N.Y. 2011) (distinguishing misstatement and "scheme liability"). But "[c]onduct that is deceptive only because of a subsequent material misstatement may be actionable under Section 10b–5(b) but cannot be shoehorned into a claim for scheme liability under Section 10b–5(a) and (c)."  *SEC v. Penn*, 225 F. Supp. 3d 225, 235 (S.D.N.Y. 2016) (citing *SEC v. Garber*, 959 F. Supp. 2d 374, 381, n.47 (S.D.N.Y. 2013)). Here, the alleged "core misconduct" are putative misstatements, not any independent manipulative or deceptive act.  *Garber*, 959 F. Supp. 2d at 381, n.47.

*Third*, for Rule 9(b) purposes, the distinctions between a misrepresentation claim under Section 17(a)(2) or Section 10(b)/Rule 10b-5(b) (the Third and Fifth Claims) and a scheme liability claim under Section 17(a)(1) and (3) or Section 10(b)/Rule 10b-5(a) and (c) (the Second and Fifth Claims) are not meaningful because the particularity requirements apply in either case.  *See Public Pension Fund Grp. v. KH Pharm. Co.*, 679 F.3d 972, 986 (8th Cir. 2012) (affirming dismissal of scheme liability claims under Rule 9(b) standards); *In re Parmalat Sec. Litig.*, 414 F. Supp. 2d 428, 432 (S.D.N.Y. 2006) (noting that claims under Rule 10b–5(a) and (c) must be pleaded with specificity under Rule 9(b)).  Thus, the Rule 9(b) arguments for the misrepresentation claims apply with equal force to the "scheme liability" claims.

6

*Finally*, the SEC's claim (Opp. at 25) that "Rule 9(b) is 'relaxed' for fraudulent or manipulative scheme claims as those here" is wrong.  Some courts have ruled that the Rule 9(b) requirements may be "relaxed" for a limited and different species of claims:  market manipulation claims. *See* Opp. at 25 (citing *ATSI Comms., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 102 (2d Cir. 2007) (providing leniency because facts are solely within the defendant's knowledge in a market manipulation claim); *ScripsAmerica, Inc. v. Ironridge Global LLC*, 119 F. Supp. 3d 1213, 1239 (C.D. Cal. 2015) (involving a manipulation claim); *SEC v. Gordon*, No. 09-CV-0061-CVE-FHM, 2009 WL 1652464, at *4 (N.D. Okl. June 11, 2009) (same)).  But even in a market manipulation claim, a plaintiff must allege something similar to the "who, what, when, where and how of the alleged fraud" for a misrepresentation claim; that is, in a manipulation claim, a plaintiff "must specify *what* manipulative acts were performed, *which* defendants performed them, *when* the manipulative acts were performed and *what* effect the scheme had on the securities at issue." *Gordon*, 2009 WL 1652464, at *4 (emphasis supplied; cleaned up).

Here, the SEC engages in group pleading, lumping together various defendants together for allegedly committing "deceptive acts," and provides no notice of which defendant(s) performed which of the manipulative or deceptive acts on what date; nor are there any allegations of what effect (if any) the scheme had on the "securities" at issue.  *See* Compl. ¶¶ 83-89 (applying "group pleading" in allegations relating to "scheme liability").

## 2.     The SEC's Use of Group Pleading Is Improper.

Group pleading is pervasive throughout the SEC's Complaint.  *See* Mem. at 6-12.  The SEC, however, expends a footnote in its Opposition (footnote 9 at 27) to attempt to defend the disfavored pleading practice.  The SEC's use of group pleading cannot be sustained.

*First*, the group pleading doctrine applies for statements in "prospectuses, registration statements, annual reports, press releases, or other group-published information" that are "the

collective work of those individuals with direct involvement in the day-to-day affairs of the company.'" *SEC v. Yuen*, 221 F.R.D. 631, 635 (C.D. Cal. 2004).  Here, the SEC does not even attempt to point to anything resembling such documents or information in the Complaint's allegations—as there are none.

Rather, the SEC drops a footnote proclaiming that group pleading is "recognized" in the Ninth and Tenth Circuits, even though *Yuen* admonished the SEC for group pleading, *see Yuen*, 221 F.R.D. at 636, and this Court in *TDC Lending LLC v. Priv. Cap. Grp., Inc.*, 340 F. Supp. 3d 1218 (D. Utah 2018), in the PSLRA [Private Securities Litigation Reform Act of 1995] context, concluded that "group pleading is no longer sufficient to allege scienter for securities fraud." *Id.* at 1227.  *See also SEC v. Brady*, No. 3:05-CV-1416-D, 2006 WL 1310320, at *4, n.4 (N.D. Tex. May 12, 2006) (rejecting "SEC's improper group pleading" by "setting aside allegations that amount to improper group pleading"); *SEC v. Straub*, 921 F. Supp. 2d 244, 266 (S.D.N.Y. 2013) (explaining in an SEC case that "a complaint must not merely rely on the so-called 'group pleading doctrine' to 'circumvent the general pleading rule that fraudulent statements must be linked directly to the party accused of the fraudulent intent.'").  Indeed, another district court within the Ninth Circuit explained in 2012 that "Rule 9(b) does not allow allegations about multiple defendants to be lumped together; when suing more than one defendant the allegations must inform each defendant separately of the allegations that surround his or her alleged participation in the fraud." *SEC v. Sells*, No. C 11-4941 CW, 2012 WL 3242551, at *9 (N.D. Cal. Aug. 10, 2012).

### 3.      The Elements of the SEC's Fraud Claims Are Not Particularized.

The SEC argues that it has sufficiently pled the elements of its misrepresentation claims under Section 17(a) and Section 10(b)/Rule 10b-5.  The SEC has not.

**Misrepresentation allegations**:   In the opening Memorandum (at 7-9), Defendants showed how the SEC employed group pleading and failed to comply with the pleading principles

under *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011).  In its Opposition, the SEC (1) barely addresses group pleading (as discussed above); (2) dismissively drops, in a footnote, the attribution issue under *Janus*; and (3) incorrectly argues that "examples" of "specific misstatements" indicate that there is no group pleading defect.  *See* Opp. at 27-28.

As to the *Janus* issue, the SEC again misstates the law.  *First*, contrary to the SEC's suggestion (Opp. at 28 n.10), whether *Janus* applies to Section 17(a) is still not settled.  There appears to be no Tenth Circuit precedent, and at least one court in the Southern District of New York has applied *Janus* to a Section 17(a)(2) claim.  *See SEC v. Kelly*, 817 F. Supp. 2d at 345. *Second*, the SEC's reliance upon *SEC v. Pocklington*, No. 18-701JGB (SPx), 2018 WL 6843663, at *14-15 (C.D. Cal. Sept. 10, 2018), is misplaced.  Contrary to the SEC's claim, merely being "corporate officers who are jointly involved in day-to-day operations and who exercise power and control," Opp. at 28, is not enough for *Janus*:  "the key inquiry here is whether the SEC alleged that [defendants] *each had sufficient control and involvement over* [the company] and *the misrepresentations*."  *Pocklington*, 2018 WL 6843663, at *14 (emphases supplied).  DEBT Box's alleged misrepresentations cannot be attributed to Jason and Jacob Anderson, Brannon and Nelson under *Janus* because there are no allegations that each had sufficient control and involvement over each of the alleged misrepresentations in this case.

To be sure, the SEC outlines (at 27-28) several "examples" of "specific misstatements" of Defendants.  But even if accepting *arguendo* these examples as true for purposes of a motion to dismiss, they do not cure the group pleading defect; they only show that a subset of Defendants made a particular statement and do not justify the use of group pleading for *all* Defendants for that statement.  To further illustrate, Paragraph 65 uses group pleading to lump together all five

9

Defendants for allegedly making misrepresentations, but the paragraph links specific misrepresentations for just three:  DEBT Box and Jason and Jacob Anderson.  *See* Compl. ¶ 65.

**Materiality allegations**: The opening Memorandum provided that the Complaint lacks materiality allegations as to several alleged misrepresentations. Mem. at 9-11. In response, the SEC makes one principal argument:  that DEBT Box's representations about how a node software license would allow a license holder to "mine" the digital assets was material.  *See* Opp. at 32. According to the SEC, the mining misrepresentations "go to the heart of the investment" because they "concerned the method by which the investments would generate returns for investors, and the profits investors could expect from the enterprise."  *Id*. at 32.

The SEC is wrong.  *First*, the SEC's latest grandiose formulation of materiality is not in the Complaint.  There is no allegation of how disclosure of the mining process "would generate returns for investors" or "the profits investors could expect from the enterprise."  *Second*, and in any event, as discussed in the opening Memorandum (at 10), DEBT Box *did* disclose its mining process in its Lite Papers:  that any mining was based on a "*synthetic* mining algorithm."  Mem. at 10 (emphasis in original).

**Scienter allegations**:  The opening Memorandum discussed how the SEC relied upon group pleading to allege non-individualized scienter. Mem. at 11-12. In response, the SEC essentially claims that non-individualized scienter is sufficient because scienter can be averred generally under Rule 9(b) and because this Court's ruling in *TDC Lending*, prohibiting group pleading for scienter, arose in the context of the PSLRA.  Opp. at 33-35.

The SEC misapprehends Rule 9(b). While "[m]alice, intent, knowledge, and other conditions of mind of *a person* may be averred generally," Fed. R. Civ. P. 9(b) (emphasis supplied), "general allegations[] which lump *all* defendants together [and which] fail[] to segregate

the alleged wrongdoing of one from those of another do not meet the requirements of Rule 9(b)." *In re Urcarco Sec. Litig.*, 148 F.R.D. 561, 569 (N.D. Tex. 1993) (emphasis supplied). Thus, under Rule 9(b), scienter of several individual defendants also cannot be lumped together, and alleged generally--without some further elaboration--for that collective group of defendants. Indeed, none of the cases cited by the SEC addressing general averment of an individual's scienter dealt with just group pleading. *See* Opp. at 33 (citing *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997); *SEC v. Nacchio*, 438 F. Supp. 2d 1266, 1282 (D. Colo. 2006); *SEC v. Arnold*, Civ. No. 03-CV-0328-REB-OES, 2007 WL 2786428, at *3 (D. Colo. Sept. 24, 2007); *SEC v. Leslie*, No. C 07-3444, 2008 WL 3876169, at *6 (N.D. Cal. Aug. 19, 2008)). Finally, while *TDC Lending* arose in the PSLRA context, the underlying teaching resonates here too: that a plaintiff cannot "group defendants together without distinguishing the bases for each defendant's culpability." *TDC Lending*, 340 F. Supp. 3d at 1227.

### C.     The SEC Continues to Mischaracterize Defendants' YouTube Statements.

The opening Memorandum discussed how the SEC "mischaracterizes the statements made in YouTube videos by Defendants to make them appear as if they were misstatements." Mem. at 12. Caught out, the SEC initially acknowledges its errors, but in the next breath, attempts to amend its allegations. *See* Opp. at 28-30.

### 1.     The January 14, 2023 YouTube video

The January 14, 2023 video is the underlying evidence for Paragraph 68e of the Complaint. The SEC does not dispute that. *See* Opp. at 29. And as shown in the opening Memorandum, the video does not provide the factual support for the allegation that "from January 1, 2022 through March 31, 2022, DEBT Box obtained '34.7 million dollars' in profits from its oil partnerships." Mem. at 12. At time stamp 14:40 to 14:55 of the video (available at

11

https://www.youtube.com/watch?v=x75A6Sxh1qU), Jason Anderson stated that $34.7 million dollars in token were brought in the ecosystem and burned.  There was no discussion of profits.

The SEC now claims that what the Complaint actually meant was something about DEBT Box "not hav[ing] any agreements to share in the profits of operational oil wells."  Opp. at 29.  Not even close.  The SEC's new argument is false and misleading.

### 2.     The July 2023 YouTube video

The July 2023 video is the underlying evidence for Paragraph 68g of the Complaint.  Again, the SEC does not dispute that.  *See* Opp. at 29.  That paragraph alleges that "[i]n a July 2023 YouTube video, Nelson claimed that DEBT Box's oil wells were producing "100 barrels a day." Mem. at 12-13. As shown in the opening Memorandum, Nelson never claimed in the video (at 7:06-7:17 time stamp of video; available at https://assets.thedebtbox.com/insider/podcasts/season-1/full/debtbox-podcast-season1-episode3.mp4) that the described oil wells were owned or belonged to DEBT Box.  *See id.*

In response, the SEC now claims that "*Brannon* implied that those wells were controlled by DEBT Box."  Opp. at 29 (emphasis supplied).  The SEC is wrong—Brannon was not on the video and no one "implied" that those wells were "controlled" by DEBT Box.  *See* July 2023 video at 6:35-7:43 time stamp. The SEC again claims that what the Complaint actually meant was something about DEBT Box "not hav[ing] any agreements with operational oil wells."  Opp. at 30. Again, not even close. This claim is also false and misleading.

### 3.     The October 26, 2022 YouTube video

The October 26, 2022 video is the underlying evidence for Paragraph 74 of the Complaint. Again, the SEC does not dispute that.  *See* Opp. at 30. The SEC alleges that "in an October 26, 2022 YouTube video, Jason Anderson represented that DEBT Box had successfully used this [scanning] technology to locate oil reserves in Africa since 2019." Compl. ¶ 74.  As shown in the

opening Memorandum (at 13), the SEC's allegation is false: the YouTube video (available at https://youtu.be/x75A6Sxh1qU), at around 9:40 time stamp, provides that Jason Anderson was speaking about locating *gold*, not oil reserves.

In response, the SEC claims that while Defendants are correct that the earlier discussion was about gold, Jason Anderson later "proceeded to discuss the use of the technology in connection with oil." Opp. at 30. The later discussion (at 11:18-12:43 time stamp), however, is a separate discussion about how within the past *one year* (2021), the technology has also been used for oil exploration in Nevada, Nebraska and three wells in Ghana. It has nothing to do with how "DEBT Box had successfully used this [scanning] technology *to locate oil reserves in Africa since 2019*." Compl. ¶ 74 (emphasis supplied). This claim is also false and misleading.

## CONCLUSION

For the foregoing reasons, as well as the reasons set forth in the opening Memorandum, Defendants respectfully request that the Court grant their motion to dismiss the Complaint in its entirety, with prejudice.

Respectfully submitted,

**KUNZLER BEAN & ADAMSON, PC**
Matthew R. Lewis
Taylor J. Smith

**MORRISON COHEN LLP**

*/s/ David E. Ross*
Jason P. Gottlieb (admitted pro hac vice)
David E. Ross (admitted pro hac vice)
Jeffrey D. Brooks (admitted pro hac vice)
Alexander R. Yarm (admitted pro hac vice)

*Attorneys for Defendants Digital Licensing Inc.,
Jason R. Anderson, Jacob S. Anderson, Schad E.
Brannon, Roydon B. Nelson, and Relief Defendants
Business Funding Solutions, LLC; Blox Lending,*

13

*LLC; The Gold Collective LLC; and UIU Holdings, LLC*

14