# Exhibit 2

Elizabeth McFadden (D.C. Bar No. 436076)
mcfaddene@sec.gov
Melinda Hardy (D.C. Bar No. 431906)
hardym@sec.gov
Michael S. Bailey (D.C. Bar No. 983676)
baileym@sec.gov
Office of the General Counsel
Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
Telephone:  (202) 551-5100

*Attorneys for Plaintiff Securities and Exchange Commission*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DIGITAL LICENSING INC. (d/b/a "DEBT Box"), a Wyoming corporation; JASON R. ANDERSON, an individual; JACOB S. ANDERSON, an individual; SCHAD E. BRANNON, an individual; ROYDON B. NELSON, an individual; JAMES E. FRANKLIN, an individual; WESTERN OIL EXPLORATION COMPANY, INC., a Nevada corporation; RYAN BOWEN, an individual; IX GLOBAL, LLC, a Utah limited liability company; JOSEPH A. MARTINEZ, an individual; BENJAMIN F. DANIELS, an individual; MARK W. SCHULER, an individual; B & B INVESTMENT GROUP, LLC (d/b/a "CORE 1 CRYPTO"), a Utah limited liability company; TRAVIS A. FLAHERTY, an individual; ALTON O. PARKER, an individual; BW HOLDINGS, LLC (d/b/a the "FAIR PROJECT"), a Utah | **DECLARATION OF LAURIE E. ABBOTT IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S RESPONSE TO THE COURT'S NOVEMBER 30, 2023 ORDER TO SHOW CAUSE**<br><br><br>Case No. 2:23-cv-00482-RJS<br><br><br>Chief Judge Robert J. Shelby |

limited liability company; BRENDAN J. STANGIS, an individual; and MATTHEW D. FRITZSCHE, an individual;

        Defendants,

ARCHER DRILLING, LLC, a Wyoming limited liability company; BUSINESS FUNDING SOLUTIONS, LLC, a Utah limited liability company; BLOX LENDING, LLC, a Utah limited liability company; CALMFRITZ HOLDINGS, LLC, a Utah limited liability company; CALMES & CO, INC., a Utah corporation; FLAHERTY ENTERPRISES, LLC, an Arizona limited liability company; IX VENTURES FZCO, a United Arab Emirates company; PURDY OIL, LLC, a Nebraska limited liability company; THE GOLD COLLECTIVE LLC, a Utah limited liability company; and UIU HOLDINGS, LLC, a Delaware limited liability company,

        Relief Defendants.

I, Laurie E. Abbott, make the following declaration, in accordance with the provisions of 28 U.S.C. § 1746:

1.      I am currently employed by the U.S. Securities and Exchange Commission ("SEC") in its Salt Lake Regional Office ("SLRO") as an investigative staff attorney. I began working for the SEC in February 2016 as an attorney in the SEC's Division of Corporation Finance. I began working for the SLRO as an investigative staff attorney in May 2017. I am the SLRO's liaison for the Crypto Asset and Cyber Unit. As an investigative staff attorney, I am responsible for investigating potential violations of federal securities laws and supporting the SEC's litigation of securities law actions in federal court.

2. In this matter, I supported Joseph Watkins, who served as the lead investigative staff attorney on the investigation that led to this matter. I had recently worked on an SEC investigation involving a token-mining scheme that was similar to the token-mining scheme at issue in this case (*see SEC v. Green United*, No. 23-cv-159 (D. Utah))*,* so I had experience in a similar investigation. But, because of other assignments, I did not have time to be the lead investigative staff attorney in this matter.

3. When SEC staff investigates an ongoing fraud where defendants are continuing to raise investor funds, we aim to bring the case as quickly as possible to stop the fraud and prevent additional investors from being harmed. To protect against dissipation of assets, staff often conducts such investigations on a "covert" basis to avoid alerting defendants to the existence of the investigation. This means we do not subpoena individual defendants or others, including financial institutions, who might have relevant information for documents or testimony if we believe doing so would alert the defendants to the Commission's investigation. Although we will subpoena banks for records of accounts of entities, we do not subpoena banks for records of accounts of individuals because banks have an obligation to notify individual customers when the federal government issues subpoenas for their account records. Notwithstanding our efforts to remain covert, defendants sometimes learn about these investigations. When this happens, we aim to expedite our case to prevent more investor harm and dissipation of assets.

4. At approximately the end of June or the beginning of July 2023, Mr. Watkins told me he discovered a YouTube video in which Defendant Jacob Anderson acknowledged that Digital Licensing Inc. ("DEBT Box") was moving its operations overseas. We also learned around this timeframe that certain of Defendants' bank accounts had closed and that there had been dissipation of investor funds. I made an inference around this timeframe that since DEBT

3

Box said they were moving their operations overseas and accounts were closing, they were moving their assets internationally.  This inference was further supported by my understanding that, other than their liquid assets, the operations that Commission staff were aware of at the time—a brewery in Mississippi, oil wells in Nevada and Nebraska, and alleged land in Ghana—could not be relocated.

5. Approximately two days before the July 28, 2023 hearing on the SEC's Motion for a Temporary Restraining Order ("TRO"), Tracy Combs, the SLRO Regional Director, asked staff to contact banks to obtain current bank balances.  I made some of those calls along with Mr. Watkins and Mitchell Davidson, an SEC accountant assigned to the case.  During these calls, the banks informed us that certain of Defendants' accounts had been closed.  We did not realize at the time that the closed accounts identified by the banks on these calls were the same accounts we had previously known were closed.  We also learned during these calls that, sometime in July 2023, certain of Defendants' accounts at Mountain America Credit Union ("MACU") had been substantially drained of investor funds.

6. I was present at the July 28, 2023 TRO hearing.  During the Court's break, I told the litigation team, consisting of Michael Welsh and Casey Fronk, that for the past two days we had been calling banks and finding out about closed accounts.

7. When the hearing resumed, and Mr. Welsh made the statement concerning accounts being closed in the last 48 hours, I immediately recognized this was not what I said or meant to convey to Mr. Welsh during the break.  I meant that we had *learned* in the last two days that accounts were closed, not that the closures themselves had occurred during that period.  I also knew that the MACU accounts had been substantially drained of assets sometime in July 2023, but I do not recall sharing this information with Mr. Welsh or Mr. Fronk during the break.

4

As an investigative attorney, I am not always present in court when the SEC is litigating its cases and have never observed a TRO hearing. I did not think I could interrupt and correct the record. I did not raise the inaccuracy with Mr. Welsh at the time because I believed the most significant evidence that the SLRO team had presented of irreparable harm was that the alleged fraud was ongoing, and new investors were being harmed. I therefore did not view the statement as significant to our argument in favor of a TRO. I now understand the Court considered this an important piece of information relating to irreparable harm.

8. It was never my intent to mislead the Court and I apologize for not recognizing earlier that this was a critical statement that should have been clarified as soon as possible.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 20th day of December 2023 in Salt Lake City, Utah.

_____
Laurie E. Abbott