Romaine C. Marshall (9654)
Jose A. Abarca (12762)
Jonathan E. Schmalfeld (admitted *pro hac vice*)
POLSINELLI PC
2825 E Cottonwood Pkwy, Suite 500
Salt Lake City, UT  84121
Telephone: (801) 999-3504
rmarshall@polsinelli.com
jabarca@polsinelli.com
jschmalfeld@polsinelli.com

*Attorneys for Defendants iX Global, LLC, Joseph A. Martinez, and Travis Flaherty*

# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>           Plaintiff,<br><br>vs.<br><br>DIGITAL LICENSING INC. dba DEBT Box, a Wyoming corporation, et al.,<br><br>           Defendants/Relief Defendants. | **DEFENDANTS IX GLOBAL, LLC, JOSEPH A. MARTINEZ, AND TRAVIS FLAHERTY'S REPLY TO THE SEC'S RESPONSE TO THE COURT'S NOVEMBER 30, 2023 ORDER TO SHOW CAUSE**<br><br>Case No. 2:23-cv-00482-RJS-DBP<br>Chief Judge Robert J. Shelby<br>Magistrate Judge Dustin B. Pead |

Pursuant to the Court's Order dated December 26, 2023 (Dkt. No. 241), Defendants iX Global, LLC, Joseph A. Martinez, and Travis Flaherty ("iX Global Defendants"), through counsel of record, hereby submit this Reply to Plaintiff Securities and Exchange Commission's ("SEC") Response to the Court's November 30, 2023 Order to Show Cause ("OSC").  Dkt. No. 233.

## INTRODUCTION

The Court has lamented how the Honorable Dee Benson intoned "prosecutorial discretion is the single greatest unchecked power in our Democratic system of government." Another venerable jurist intoned similarly, in another applicable way. The Honorable J. Thomas Greene in *Legacies of Solo Practitioners and Country Lawyers,* under the subheading Judges are Sole Practitioners, stated "I have concluded, with respect to core values and ethical standards which govern judicial decision making, that in many important ways all lawyers and judges in many important ways are well on the way to becoming solo practitioners."

Indeed, the iX Global Defendants did not need to utter a word in support of their Motion to Dissolve the TRO at the hearing on October 6, 2023. There, the Court dissolved the TRO and the Receivership for reasons more fully explained in its order on November 30, 2023. Dkt. No. 214. Here now, as was the case then, restraint by the iX Global Defendants is appropriate given the narrow purpose of the instant proceeding, which is, for the SEC to show why the Court should not impose sanctions. Dkt. No 215 at 17-19. Therefore, this reply is limited to addressing those portions of the SEC's Response that demonstrate why sanctions are still necessary.

From the beginning of this case – indeed because of how it began! – thousands of lives have been devastated. iX Global has had to terminate contracts and cancel expansion plans that are unrelated to the subject matter of this case. Parties and non-parties alike still cannot reopen improperly frozen bank accounts. The SEC sought and obtained an *ex parte* TRO and bragged about it being "Emergency Relief" through a damaging press release that it still has not taken down. Rather than taking full responsibility for its actions, the SEC continues to make excuses and, in the process, present even more incorrect and materially misleading information.

The iX Global Defendants respectfully submit that the SEC has had ample opportunities to change course to minimize harms incurred and has rejected these opportunities. Unfortunately, the SEC's actions in this case are just one of many recent instances in which the SEC was found to have operated arbitrarily, capriciously, and without evidentiary support. This stance was explained six months ago by former SEC Chair, Jay Clayton, when he aptly summarized how far the SEC has strayed from its Congressional mandate:

> What you're hearing from the leaders of the regulatory organizations is if we're not losing cases, if we're not being pushed back on by the courts, we're not doing enough.
>
> Think about that for a second. That is a fundamental shift on how we as Americans, view the role of the government. I don't want to be in a place, where the government is going to bring cases they think they are going to lose. Imagine you are the person who is the subject of that case?...
>
> This is an ethos now that unless we're losing we're not bringing enough cases. That may be fine for private litigants against each other, but when you have the power of the state, you're supposed to only bring cases and only pass rules that you think are going to pass judicial muster.

Jay Clayton, "The Dealmaking Environment," *Squawk Box*, CNBC, June 26, 2023, *available at* https://www.cnbc.com/video/2023/06/26/former-sec-chair-jay-clayton-remarkable-markets-are-stable-after-wagners-rebellion-in-russia.html (quote at 3:16) (last accessed January 12, 2024).

The SEC has repeatedly demonstrated, in this case and elsewhere, that public censure alone will not deter the type of conduct it deeply regrets only afterwards when, as here, it is confronted by the "core values and ethical standards which govern judicial decision making," as noted above. To further assist the Court if it decides to impose sanctions, the iX Global Defendants respectfully request that they be authorized to submit supplemental information in support of the harms suffered (which are extensive and would sadly, easily surpass the twenty-page limit for this filing).

**ARGUMENT**

I.  **Applicable Sanctions Standards**

   A.  **Rule 11**

Under Rule 11 of the Federal Rules of Civil Procedure, attorneys must certify in submissions to courts that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11. "An attorney who signs the paper without such a substantiated belief 'shall' be penalized by 'an appropriate sanction.'" *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447 (1990). Oral statements that later advocate untenable contentions made in previously-filed papers are sanctionable under Rule 11. *See* Fed. R. Civ. P. 11 Advisory Committee Notes, 1993 Amendment, Subdivision (a).[1]

If there is a suspected or alleged violation of Rule 11, courts may impose Rule 11 sanctions on their own initiative. *See* Fed. R. Civ. P. 11(c). "Such a sanction may, but need not, include payment of the other parties' expenses." *Cooter & Gell*, 496 U.S. at 393. Importantly, the Equal Access to Justice Act "waives sovereign immunity as to Rule 11 sanctions, including attorney's fees, against the United States." *Adamson v. Bowen*, 855 F.2d 668, 672 (10th Cir. 1988). First, courts assess the objective reasonableness of attorney conduct and then "whether a reasonable attorney admitted to practice before the district court would file such a document." *Collins v. Daniels*, 916 F.3d 1302, 1319 (10th Cir. 2019) (brackets and citations omitted). Then courts determine a suitable sanction. *Id.*

---

[1] "[A] litigant's obligations with respect to the contents of ... papers are not measured solely as of the time they are filed with or submitted to the court but include reaffirming to the court and advocating positions contained in those [papers] after learning that they cease to have any merit."

4

### B. Inherent Authority

"Federal courts have the inherent power to manage their own proceedings and to control the conduct of those who appear before them." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 33, 111 S.Ct. 2123 (1991). "The government, as a party to a lawsuit, is subject to the same ethical and procedural rules as a private litigant, and risks the same sanctions if it fails to abide by these rules." *F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566, 594-95 (5th Cir. 2008). The following factors relate to whether dismissal is an appropriate sanction:

> (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.

*Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992) (internal citations and quotation marks omitted). This list is not exhaustive, nor are the factors necessarily equally balanced. *See Archibeque v. Atchison, Topeka, and Santa Fe Railway Co.*, 70 F.3d 1172, 1174 (10th Cir. 1995).

## II. The SEC's Troubling Actions in this Case

### A. Timeline of Events

To assist the Court in reaching its determination regarding the OSC, the iX Global Defendants attach as Exhibit A, a timeline. The timeline shows that all throughout the SEC's investigation it knew or could have known that Defendant Joseph Martinez is a decorated veteran with deep ties to his community. Ex. A ¶ 1. The SEC began a covert investigation on this decorated veteran and his business, iX Global, in March 2023. *Id.* ¶ 2. Through that investigation, the SEC learned that certain Bank of America accounts controlled by Mr. Martinez were closed

and the funds in those accounts were deposited in another U.S. banking institution.[2] *Id.* ¶ 4. The SEC also had an accountant examine the activities of those accounts prior to closure. *Id.* ¶ 5. The accountant prepared a detailed spreadsheet which showed amounts transferred in those accounts. *Id.* There is nothing in that spreadsheet or anywhere else in the submitted evidence to support an inference or claim that any of the iX Global Defendants were in the process of moving funds overseas in the months leading up to the SEC's *ex parte* TRO application. Instead, those payments showed regular payments to U.S. businesses and individuals as one would expect in the ordinary course of business and even payments to the federal government for taxes. *Id.*

Nevertheless, the SEC proceeded to submit to the Court over 300 pages of memorandum and attachments and requested the Court issue an *ex parte* TRO against the iX Global Defendants using in some parts outright false, and in other parts materially misleading, evidence. *Id.* ¶ 6. The Court, having no ability to deeply review more than 300 pages of documents submitted on one day's notice, relied on SEC's false and misleading claims, and issued the requested *ex parte* TRO. *Id.* ¶¶ 6, 7. The SEC froze the iX Global Defendants' bank accounts, many of which remain inaccessible or were closed due to the SEC's actions. The SEC also issued a press release stating the iX Global Defendants were participants in a "Crypto Asset Fraud Scheme" and "obtained a

---

[2] While the SEC may state it did not know the bank, and not Joseph Martinez, closed those accounts, the agency does not explain how it is reasonable to infer that every bank closure is initiated by the banking customer. Especially in light of the well-documented fact that, due to federal pressure, financial institutions have begun mass closing the accounts of digital asset businesses. *See* David H. Thompson, *et al.*, "Operation Choke Point 2.0," Cooper & Kirk, PLLC (March 2023), *available at* https://www.cooperkirk.com/wp-content/uploads/2023/03/Operation-Choke-Point-2.0.pdf.

The SEC also fails to explain the reasonableness of its inference despite knowing the amounts were deposited in another U.S. financial institution.

temporary asset freeze, restraining order, and other emergency relief… in connection with a fraudulent scheme to sell crypto asset securities…" Stunningly, this press release is still posted, without reference to the Court's orders dissolving the TRO and Receivership.[3]

The SEC issued expedited discovery requests to the iX Global Defendants, which the iX Global Defendants were forced to comply with or risk being held in contempt by this Court. Ex. A. ¶ 8. The records produced by the iX Global Defendants in response to the SEC's discovery requests further confirmed there were no attempts to move funds overseas to avoid the SEC's jurisdiction. *Id.* ¶ 10. Despite that information, and despite no longer having any reasonable basis to claim ignorance or mistake as to the knowingly false and uncorrected statements made to the Court, the SEC vehemently resisted all attempts by the iX Global Defendants to remove the improper TRO in place. *Id.* ¶ 11.

The SEC, including its attorneys and staff across various levels of seniority and experience and across various offices, was given ample opportunities to correct what it now claims to be innocent mistakes. At every opportunity, rather than correcting those mistakes the SEC doubled down and projected its own known fraud upon this Court by further accusing various Defendants in this action of fraud. Even when confronted by this Court in the most serious way possible as to the scale of the SEC's misconduct, the SEC has taken no substantive corrective action. It has not requested to amend its Complaint to remove the knowingly false accusations. It has not issued a retraction or update to its announcement regarding the TRO.

---

[3] *SEC Obtains Emergency Relief to Halt Utah-Based Company's Crypto Asset Fraud Scheme Involving 18 Defendants*, SEC (Aug. 3, 2023) *available at* https://www.sec.gov/news/press-release/2023-146 (last accessed Jan. 12, 2024).

### B. The SEC's Continued Abuses

Even in its Response to the OSC, presented by a new group of SEC attorneys, the SEC cannot help but present facts devoid of necessary factual context. For example, the SEC's Response states that "[c]ertain Defendants were depleting assets in their U.S. bank accounts" and "as of May 30, 2023, the balances of accounts associated with iX Global…decreased by over $49 million, leaving an ending balance of approximately $763,000." Dkt. No. 233 at 9.

What the Response fails to state is that those are expenses over a two-year period, made in the ordinary course of business, made in large part to U.S. citizens and businesses including to the IRS to pay taxes on funds received. Dkt. No. 3-10, Exhibit 5. Most of those transactions also appear to have occurred before October of 2022—a period which the SEC alleges "DEBT Box managed its own marketing and sales of node software licenses" before announcing a partnership with the iX Global Defendants "in or around October 2022." *See* Dkt. No. 1, ¶¶ 91-92. The fact that the SEC is continuing to claim that payments to the IRS in January 2023 is evidence that "Defendants are *currently* in the process of attempting to relocate assets and investor funds overseas" (emphasis added) is troubling.

The SEC further claims that "[b]ased on [SEC attorney] Welsh's prior experience representing crypto companies while in private practice, Welsh believed that the video's reference to "operations" meant assets and investor funds…none of which require physical facilities." While it is unclear what "crypto companies" Welsh represented in private practice, the statement that companies in the digital asset space do not have physical offices is simply not a reasonable

statement by anybody who understands either companies or digital assets.[4] This is in line with Welsh previously stating that an injunction was necessary due to the involvement of digital assets and the difficulty of tracking digital assets. *See* Ex. A ¶¶ 7, 14. But digital asset transactions occur on an immutable public ledger and can be traced by any individual access to the internet. *Id.* ¶ 6.

Further, the video which the SEC claims Defendant Jacob Anderson stated he was moving assets overseas so "those assets will be outside the reach of U.S. regulators" is not something SEC attorney Michael Welsh can state he personally viewed before certifying its contents. *See* Dkt. No. 233-3, ¶ 6. Again, it would be simple enough for the SEC to admit Mr. Welsh signed his Certification without watching that video and, having now watched the video, admit that statement was a mistake. Instead, the SEC continues to insist that "counsel's interpretation of the video at the time informed his view that Defendants were in the process of moving assets and investor funds overseas" despite counsel admitting he does not even know if he personally watched the video at the time. *Cf.* Dkt. No. 233 at 10 and Dkt. No. 233-3, ¶ 6.

In the SEC's Response to the OSC, the SEC's first paragraph states "[t]he Commission cannot let its zeal to stop ongoing fraud interfere with its duty to be accurate and candid." Ignoring the SEC's backhanded attempt to use its OSC Response to continue to accuse certain defendants of fraud,[5] the SEC seeks to excuse its conduct as mere prosecutorial zeal taken slightly too far.

---

[4] Ozone Networks, Inc., d/b/a OpeaSea, a leading non-fungible token marketplace, has offices in New York City. Coinbase, Inc., BAM Management US Holdings Inc., Genesis Global Capital, LLC, Payward Inc., and Ripple Labs, Inc. are all digital asset companies which the SEC is currently litigating against, all of which have physical facilities.

[5] It is worth noting again that the iX Global Defendants are not accused of fraud, and are instead accused of merely failing to register the sale of software, something which has never been registered as a security and which no such "investment contract" registration is or was available at the time. *See* Dkt. Nos. 182 and 219.

Combined with the SEC's insistence on trying to explain away mistakes even when faced with evidence of its own misconduct, the SEC demonstrates through new counsel that they simply might not get it either. The SEC's actions effect not only the people and companies it brings enforcement actions against, but their friends, family, employees, vendors, and countless others.

### III. The SEC's Actions Against Digital Assets Generally

In this case, the SEC began its investigation in March 2023 and determined that a vast majority of the parties named in this action were U.S. citizens or U.S. business entities. The SEC failed to abide by its own Enforcement Manual or follow the Wells Notice process,[6] and instead sought an *ex parte* TRO using what the SEC itself has admitted was false or materially misleading information.

If this was an isolated instance, perhaps it could be chalked up as the rogue actions of an overzealous regional office which the SEC can be trusted to repair through more oversight from headquarters. *See* Dkt. No. 233 at 20. But the primary accounting used to support the SEC's false and misleading claims was prepared by an agency official located at the SEC's headquarters,[7] and the SEC has been found to have acted arbitrary, capriciously, or without faithful allegiance to the law by other courts in the past year and a half. For example:

---

[6] *See* Securities and Exchange Commission Division of Enforcement, *Enforcement Manual*, November 28, 2017, available at https://www.sec.gov/divisions/enforce/enforcementmanual.pdf (last accessed Jan. 10, 2024).

[7] *See* Decl. of SEC Accountant Karaz S. Zaki, stating "I am a Certified Public Accountant employed within the Division of Enforcement in the Commission's Home Office in Washington, D.C. I have worked within the Commission's Division of Enforcement since June 2000." Dkt. No. 3-10, ¶ 4.

10

- In July 2022, a Southern District of New York court found that the SEC demonstrated "hypocrisy" by making inconsistent arguments to the Court and not acting out of a "faithful allegiance to the law."[8]

- In June 2023, the Third Circuit Court of Appeals found that that the SEC defaulted on its duty to respond in good faith to a petition for crypto rulemaking.[9]

- Also in June 2023, counsel for the SEC admitted that, despite the SEC claiming it required a preliminary injunction to prevent cryptocurrency exchange from moving funds offshore "currently the assets are not going offshore…. the current funding is that we are – the current accounts, we're not seeing any flows of money outside of the United States."[10]

- In August 2023, the D.C. Circuit Court of Appeals found that the SEC's "inconsistent treatment of similar products is arbitrary and capricious."[11]

- In October 2023, the Fifth Circuit Court of Appeals found the SEC acted "arbitrarily and capriciously" after ignoring the Court's deadline to correct deficiencies in its stock buyback rules.[12]

The conduct in this case is not a one-off instance which can be fixed by some training and additional oversight over the Salt Lake City Regional office. This is a systemic culture of abusive practices which has taken place across offices, which the agency has shown no intention to correct

---

[8] Opinion & Order, *SEC v. Ripple Labs, Inc*., Case No. 1:20-cv-10832-AT-SN, Dkt. No. 531, at 6-7 (S.D.N.Y. July 12, 2022).

[9] Order, *In re: Coinbase Inc*., Case No. 23-1779, Dkt. No. 28 (3rd Cir. June 6, 2023).

[10] Motion for an Order Directing Counsel for Plaintiff SEC to Comply with Applicable Rules of Conduct, *SEC v. Binance*, Case No. No. 1:23-cv-01599 (ABJ), Dkt. No. 74 at 6-7 (D.D.C. June 21, 2023) (quoting hearing transcript).

[11] *Grayscale Investments, LLC v. SEC,* Case No. 22-1142 (D.C. Cir. August 29, 2023).

[12] *Chamber of Com. of the USA v. SEC*, Case No. 23-60255 (5th Cir. October 31, 2023).

and instead seemingly encourages its actions from the directives of its highest officials. As SEC Commissioner Peirce recently stated:

> [O]ur arbitrary and capricious treatment of applications in [digital assets] will continue to harm our reputation far beyond crypto. Diminished trust from the public will inhibit our ability to regulate the markets effectively. This saga will taint future interactions between the industry and our staff and will dampen the rich, informative dialogue that best protects investors.[13]

Chair Gensler has stated to Congress that he cannot prejudge any particular digital asset as an investment contract,[14] while stating to talk shows "I would suggest a majority of these tokens are actually securities under securities laws."[15] The SEC has denied rulemaking for the digital asset industry through a notice and comment procedure,[16] and is an agency which believes if it is not losing cases then it is not bringing enough cases.[17] As former SEC Chair Jay Clayton stated,

---

[13] Peirce, Hester, Commissioner, *Out, Damned Spot! Out, I Say!: Statement on Omnibus Approval Order for List and Trade Bitcoin-Based Commodity-Based Trust Shares and Trust Units*, (Jan. 10, 2024) *available at* https://www.sec.gov/news/statement/peirce-statement-spot-bitcoin-011023 (last accessed January 10, 2024)

[14] Oversight of the Securities and Exchange Commission, H. Financial Service Committee, 118th Cong. (2023); relevant testimony *available at* https://x.com/WatcherGuru/status/1648376479892357120?s=20 (last accessed January 10, 2024).

[15] Gensler, Gary, "SEC Chair Gensler on bitcoin ETF approval: The underlying asset is highly speculative and volatile," Squawk Box, CNBC, January 12, 2024, *available at* https://www.cnbc.com/video/2024/01/12/sec-chair-gensler-on-bitcoin-etf-approval-the-underlying-asset-is-highly-speculative-and-volatile.html (last accessed January 12, 2024).

[16] Countryman, Venessa, *Re: Petition for Rulemaking, File No. 4-789*, SEC, December 15, 2023, *available at* https://www.sec.gov/files/rules/petitions/2023/4-789-letter-secretary-grewal-121523.pdf (last accessed January 10, 2024).

[17] Jay Clayton, "The Dealmaking Environment," *Squawk Box*, CNBC, June 26, 2023, *available at* https://www.cnbc.com/video/2023/06/26/former-sec-chair-jay-clayton-remarkable-markets-are-stable-after-wagners-rebellion-in-russia.html (last accessed January 12, 2024).

who would want to form a business in a country where you could face financial ruin in defense litigation costs alone[18] on the whims of a regulator which does not even believe its cases all have merit?

Whether sanctions are issued under Rule 11 or under this Court's inherent power, those sanctions must be of such a measure as to "deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons." Fed. R. Civ. P. 11, Advisory Committee Notes, 1993 Amendment, Subdivisions (b) and (c); *Farmer v. Banco Popular of North America*, 791 F.3d 1246, 1259 (10th Cir. 2015) ("award [under inherent sanction powers] must be the minimum amount reasonably necessary to deter the undesirable behavior."). It is therefore proper for the Court to consider the conduct of the SEC outside of this Court, which show repeated public censure by other courts has been insufficient to-date in deterring repeated misconduct.

## IV.     Appropriate Sanctions

### A.     Non-Monetary Sanctions

Under both Rule 11 and this Court's inherent authority, the more severe the actions the more severe the sanctions should be. Here, the SEC used "the single greatest unchecked power in our Democratic system of government" to obtain an *ex parte* injunction against a decorated military veteran and his company using knowingly false and materially misleading evidence. When confronted and given repeated opportunities to correct its mistakes, the SEC refused and

---

[18] Answer, *SEC v. LBRY, Inc.*, Case No. 1:21-cv-00260, Dkt. No. 13, ¶ 24 (D. N.H. June 7, 2021) ("Even as LBRY cooperated with the investigation and complied with subpoenas, SEC staff—knowing that LBRY did not have extensive resources to defend itself—threatened to seek even more voluminous materials through administrative subpoenas in order to bankrupt the company.").

13

instead continued to proceed undeterred and unchanged and continued to present to this Court false and materially misleading evidence.

Under these facts, the most severe sanctions, including but not limited to dismissal with prejudice, are appropriate. *See King v. Fleming*, 899 F.3d 1140, 1150 (10th Cir. 2018) (noting that though the *Ehrenhaus* factors originated outside of Rule 11, they provide a "roadmap to use in considering a dismissal-with-prejudice sanction."). The actual prejudice caused to the iX Global Defendants is high. The iX Global Defendants, accused of failing to register certain software sales with the SEC which have never been registered before, have had their names publicly dragged based on lies perpetuated by the SEC in Court which the iX Global Defendants were not provided an opportunity to respond to before the SEC obtained its improvidently granted TRO and the agency released its announcement of the same. This has caused an untold disruption in iX Global Defendants business and personal lives, even unrelated to the business at issue, which severely limited their abilities put their efforts towards the litigation at hand.

There is also no higher interference with the judicial process than abusing the *ex parte* TRO procedure using false statements in order to gain an advantage in the critical early stages of litigation. Make no mistake, if this was simply about preventing the dissipation of assets overseas, the SEC had ample opportunities to correct its mistakes. The SEC's conduct after the Motions to Dissolve the TRO were filed, when there was no excuse as to innocently mistaking evidence or statements, betray the agency's true motives in obtaining and seeking to extend the TRO which was issued in this case. As to the third factor, the above facts demonstrate that the SEC is culpable across many actions involving digital assets and in this action specifically the misconduct was perpetrated by attorneys and SEC staff across various level of seniority and various locations.

For the fourth factor, at the initial TRO hearing the Court stated in no uncertain terms to the SEC that the *ex parte* TRO process "is a profound and extraordinary invocation of the power of the federal judiciary. It affects citizens in a direct way without any notice or opportunity to be heard." TRO Hearing Transcript, *SEC v. Digital Licensing, Inc.*, Case No. 2:23-cv-00482, at 12:8-12 (D.Utah July 28, 2023). The Court further warned that it would likely issue an Order to Show Cause when the Court dissolved the TRO. Despite both those warnings, the SEC took no remedial actions until nearly a half year after the TRO was improvidently issued. The Court has given the SEC ample opportunity to self-correct, and the SEC availed itself to none of those opportunities.

Finally, the SEC has demonstrated repeatedly that nothing short of an extremely remedy will prevent further similar conduct by this same litigant. The SEC has demonstrated a repeated practice of acting arbitrarily and capriciously in matters involving digital assets as noted above, and despite multiple public censures from courts and its own Commissioners regarding these practices, the SEC has continued even in its Response to the OSC. Without the most severe sanctions, the SEC will continue to cross legal lines against the next digital asset litigant it faces undeterred and unchanged. More innocent individuals will continue to be harmed, and the SEC will continue to shrug off that harm as "zealous prosecution" towards an industry that a supposedly impartial administrative agency has expressed disdain. Should this Court have any doubts as to one or all *Ehrenhaus* factors being met, the Court should hold an evidentiary hearing in which the iX Global Defendants can examine the officials involved in the conduct at issue and for the Court to assess the level of culpability in the actions of those agency officials.

Should this Court determine, for now, that dismissal with prejudice is not warranted under the *Ehrenhaus* factors, a dismissal without prejudice would be appropriate. The SEC has

enforcement guidelines for a reason, and its failure to abide by them has resulted in the conduct currently before the Court. The Court should dismiss this case without prejudice and order the SEC to simply abide by its own guidelines prior to refiling. If the SEC conducts a full and fair investigation, abides by the Wells Notice procedure, and still believes this is an appropriate case to bring against some or all defendants it is free to do so—this time free of false and misleading evidence.[19]

Additionally, the SEC issued a strong public statement when the Court issued the *ex parte* TRO. The SEC should now be required to issue an equally strong public statement admitting that the *ex parte* TRO was obtained using false and materially misleading allegations and has since been dissolved. The SEC's statement should be approved by the Court and take accountability for submitting false and misleading evidence in this matter and apologize to the affected individuals and public at large for the SEC's actions.

### B.  Monetary Sanctions

In addition to the non-monetary sanctions above, the SEC should be required to reimburse the substantial business losses incurred by the iX Global Defendants as a direct result of the SEC's improper actions. These harms have been so severe that if the Court decides to impose monetary sanctions, it should also consider appointing an examiner or special master to assist it with understanding the full extent of these losses. A short list of these harms include:

- The loss of members, owners, and employees from the iX Global platform which included products and offerings separate from the node software licenses.

---

[19] The SEC should, at minimum, be required to file an Amended Complaint anyways due to the current Complaint containing knowingly false allegations. The SEC would in no way be prejudiced by being forced to properly investigate its claims prior to filing that new Complaint.

- The loss of value to iX Global's goodwill including its brand, and customer and member bases, which are domestic and international.

- The loss of value in iX Global's business lines that are unrelated to the node software licenses.

- The loss of existing and potential contract relationships and investment opportunities.

- The iX Global Defendants have had to terminate contracts and cancel expansion plans.

In addition, the iX Global Defendants have incurred substantial costs to defend themselves in this case, and other cases that have arisen because of the SEC's improper actions, including the negative publicity associated with the TRO which has led to not only the termination of some contractual relationships but also the exploitation of others.

The iX Global Defendants have also had to wade through the hassles, frustration, and uncertainty caused by the SEC's improper actions, such as the inability to reopen improperly frozen bank accounts and ongoing negative publicity even *after* the Court deemed the TRO to have been improvidently granted.

## CONCLUSION

For all the foregoing reasons, the iX Global Defendants respectfully request that the Court impose the full panoply of sanctions available to it against the SEC, both non-monetary and monetary, and that it permit the iX Global Defendants to submit supplemental information in support of the harms they have suffered.

Dated: January 12, 2024

          POLSINELLI PC

          /s/ *Romaine C. Marshall*
          Romaine C. Marshall
          Jose A. Abarca
          Jonathan E. Schmalfeld

          *Attorneys for Defendants iX Global, LLC, Joseph A. Martinez, Travis Flaherty, and Flaherty Enterprises, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of January 2024, the foregoing document was served *via* CM/ECF to all counsel of record.

*/s/ Kaitlin Morgan*