Adam L. Grundvig (12106)
KESLER & RUST
68 South Main Street, Suite 200
Salt Lake City, Utah 84101
Telephone: (801) 532-8000
agrundvig@keslerrust.com
*Attorneys for Matthew Fritzsche*

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, NORTHERN DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　Plaintiff,<br>v.<br><br>DIGITAL LICENSING INC. (d/b/a "DEBT Box"), a Wyoming corporation; JASON R. ANDERSON, an individual; JACOB S. ANDERSON, an individual; SCHAD E. BRANNON, an individual; ROYDON B. NELSON, an individual; JAMES E. FRANKLIN, an individual; WESTERN OIL EXPLORATION COMPANY, INC., a Nevada corporation; RYAN B OWEN, an individual; IX GLOBAL, LLC, a Utah limited liability company; JOSEPH A. MARTINEZ, an individual; BENJAMIN F. DANIELS, an individual; MARK W. SCHULER, an individual; B & B INVESTMENT GROUP, LLC (d/b/a "CORE 1 CRYPTO"), a Utah limited liability company; TRAVIS A. FLAHERTY, an individual; ALTON 0. PARKER, an individual; BW HOLDINGS, LLC (d/b/a the "FAIR PROJECT"), a Utah limited liability company; BRENDAN J. STANGIS, an individual; and MATTHEW D. FRITZSCHE, an individual;<br><br>　　　　　Defendants. | **MATTHEW FRITZSCHE'S PETITION FOR ATTORNEY'S FEES PURSUANT TO THIS COURT'S MARCH 18, 2024 MEMORANDUM DECISION AND ORDER**<br><br>Chief Judge Robert J. Shelby<br><br>Case No. 2:23-cv-00482-RJS-DBP<br><br>Magistrate Judge Dustin B. Pead |

| | |
|---|---|
| ARCHER DRILLING, LLC, a Wyoming limited liability company; BUSINESS FUNDING SOLUTIONS, LLC, a Utah limited liability company; BLOX LENDING, LLC, a Utah limited liability company; CALMFRITZ HOLDING, LLC, a Utah limited liability company; CALMES & CO, INC., a Utah corporation; FLAHERTY ENTERPRISES, LLC, an Arizona limited liability company; IX VENTURES FZCO, a United Arab Emirates company; PURDY OIL, LLC, a Nebraska limited liability company; THE GOLD COLLECTIVE LLC, a Utah limited liability company; and UIU HOLDINGS, LLC, a Delaware limited liability company, | |
| Relief Defendants. | |

Pursuant to this Court's March 18, 2024 Memorandum Decision and Order, defendant Matthew Fritzsche moves this Court for attorney's fees[1] arising from the Securities and Exchange Commission (the "SEC")'s application for and attainment of a temporary restraining order and the associated appointment of a receiver.

## RELIEF REQUESTED AND GROUNDS THEREFOR

Fritzsche asks this Court to award him $24,022.50 against the SEC for attorney's fees he incurred "arising from" its temporary restraining order—including the freeze of his assets and expedited discovery—and the appointment of a receiver. Courts in the Tenth Circuit interpret the term "arising from" expansively, requiring only some causal connection to the subject matter (e.g., injuries suffered, activities triggering an arbitration provision). In asking this Court to

---

[1] Fritzsche incurred no costs recoverable under 28 U.S.C. § 1920, therefore, he requests only attorney's fees. *See* Dkt. 275 at 77 n.417 (this Court instructing parties to include only such costs in their fees and costs requests).

2

award him $24,022.50 in attorney's fees against the SEC, Fritzsche relies upon this Court's language in the memorandum decision and order and Tenth Circuit decisions interpreting "arising from" and similar language.[2]

In addition to rooting his attorney's fee request in Tenth Circuit "arising from" decisions, Fritzsche tethers his request to the Tenth Circuit's 2008 *Hamilton v. Boise Cascade Express* decision, which grants this Court discretion whether to provide him straight fee or a lodestar-limited recovery. That is, Fritzsche justifies his fee request under both approaches.

Therefore, this Court should grant Fritzsche's request as submitted.

## STATEMENT OF FACTS

1. On July 28, 2023, this Court entered a "Temporary Restraining Order and Orders: (1) Freezing Assets; (2) Requiring Accountings; (3) Prohibiting the Destruction of Documents; and (4) Granting Expedited Discovery; (5) Repatriating Assets" (the "TRO"). *See* Dkt. # 9.

2. The SEC's "Complaint, the TRO Application and supporting memorandum of points and authorities, the supporting declarations and exhibits, and the other evidence and argument presented to the Court" supplied the bases for this Court's entry of the TRO. *Id.* at 2.

3. Among other things, the TRO:

    a. "[T]emporarily restrained and enjoined" Fritzsche as a named defendant "from, directly or indirectly, transferring, assigning, selling, hypothecating, changing, wasting, dissipating, converting, concealing, encumbering, or otherwise disposing of, in any manner, any . . . real or personal property . . . of any one of the

---

[2] Subject to this Court's directive to exclude "all work attributable to the pending Motions to Dismiss . . ., as well as Defendants' Replies to the Commission's Response to the Order to Show Cause." Dkt. 275.

3

        Defendants or Relief Defendants, or their subsidiaries or affiliates, owned by, controlled by, managed by or in the possession or custody of any of them . . . ." *Id.* at 8;

b. Placed "an immediate freeze" upon "all monies and assets . . . in all accounts at any bank [etc.], all certificates of deposit, and other funds or assets, held in the name of, for the benefit of, or over which account authority is held by" Matthew Fritzsche. *Id.* at 12;

c. Ordered Fritzsche to, "within five days of the issuance of this Order . . . prepare and deliver to the [SEC] a detailed and complete schedule of all of [his] assets . . . ." *Id.* at 13-14.

d. Ordered Fritzsche to respond to the SEC's "discovery concerning Defendants and their assets and activities" "within 5 . . . days of service" rather than according to "the time periods, notice provisions, and other requirements of Rules 26, 30, 33, 34, 36, and 45 of the Federal Rules of Civil Procedure and the corresponding Local Rules of this Court . . . ." *Id.* at 15.

    4.    On July 28, 2023, this Court entered a "Temporary Receivership Order," which, among other things, appointed a "temporary receiver of Defendant Digital Licensing Inc." and "ordered . . . any person who . . . holds, possesses, or controls any [passwords] pertaining in any manner to any assets of any of the Defendants" to "provide counsel for the SEC and the receiver with continuing access to all such [passwords]." Dkt. 10 at 3, 5-6.

4

5. The SEC's "Complaint, the Temporary Receivership Application and supporting memorandum of points and authorities, and the other evidence and argument presented to the Court" supplied the bases for this Court's entry of the receivership order. *Id.* at 2.

6. On August 2, 2023, Fritzsche engaged the undersigned counsel to represent him in this lawsuit. *See* Declaration of Adam L. Grundvig ("Grundvig Decl.") ¶ 3.

7. The Exhibit 1 attached to the Declaration of Adam L. Grundvig is a modified version of a billing record prepared using commercial software. The record is modified to include only TRO- and receivership-related fees and to exclude fees incurred respecting "the pending Motions to Dismiss" and his reply "to the Commission's Response to the Order to Show Cause." *See* Grundvig Decl. ¶ 7; Dkt. 275 at 77-78.[3]

## ARGUMENT

**I. This Court should approve Fritzsche's request for an $24,022.50 attorney's fees award against the SEC because his request includes fees "arising from" the TRO and appointment of the receiver and excludes fees this Court expressly prohibited.**

Fritzsche's attorney's fee request is reasonable under this Court's memorandum decision and order and applicable law. In its memorandum decision and order, this Court unequivocally identified "bad faith conduct" by the SEC and accordingly sanctioned it in a to-be-determined amount equal to attorneys' fees and costs "arising from" TRO and receiver activities. *See* Dkt. 275 at 43-72 (summarizing the SEC's misconduct); *id.* at 74 (describing the misconduct as "bad

---

[3] Exhibit 1 includes fees Fritzsche incurred preparing this petition. *See* Grundvig Decl. ¶ 4; *Cummins v. Campbell*, 44 F.3d 847, 855 (10th Cir. 1994) ("[t]he Tenth Circuit generally allows recovery of fees for an attorney's work in seeking attorney's fees"); *Glass v. Pfeffer*, 849 F.2d 1261, 1266 n.3 (10th Cir. 1988) ("It is obviously fair to grant a fee for time spent litigating the fee issue, . . . if the fee petitioner is successful and his claim as to a reasonable fee is vindicated, since it is the adversary who made the additional work necessary").

faith"); *id.* at 77 (ordering the defendants and the receiver "to submit . . . a petition for fees setting forth in detail all attorneys' fees and legal costs arising from the TRO and appointment of the Receiver").

Though this Court did not define the "arising from" term, language in its memorandum decision and order denotes an intent to interpret the term broadly. For example, when justifying the reasonableness of "assess[ing] . . . fees and costs to only those arising from the TRO and Receiver," this Court stated such "expenses are directly ***traceable*** to the [SEC]'s misconduct . . . ." *See id.* at 75 (emphasis added). Elsewhere, the Court reasoned that because the SEC's "bad faith is inextricable from the abusive conduct," the "appropriate" sanction included "attorneys' fees and costs for ***all*** expenses ***resulting from*** that conduct . . . ." *Id.* at 77 (emphasis added). Where this Court summarized the SEC's bad faith conduct as "seeking, obtaining, and defending the ex parte TRO, asset freeze, and appointment of a receiver," it follows that defendants should include attorney's fees and costs "traceable" to or "resulting from" that conduct in their fees request.

Tenth Circuit decisions also support an expansive reading of the "arising from" term. In *Dodson Int'l Parts, Inc. v. Williams Int'l Co. LLC*, the Tenth Circuit analyzed "arising from or in connection with" language in an arbitration clause about a party's performance of maintenance. En route to affirming the district court's order compelling arbitration, the *Dodson* court relied upon earlier decisions in which "[c]ourts . . . interpreted language such as 'arising from or in connection with' quite expansively." 12 F.4th 1212, 1220 (10th Cir. 2021) (citing *Williams v. Imhoff*, 203 F.3d 758, 765 (10th Cir. 2000) (broadly construing the "arising out of" term in an arbitration clause "to mean 'originating from,' 'growing out of,' or 'flowing from'"); *Fed. Ins.*

6

*Co. v. Tri-State Ins. Co.*, 157 F.3d 800, 804 (10th Cir. 1998) (broadly reading the phrase "arising out of" in an insurance contract as "'originating from" or "growing out of" or "flowing from" or "done in connection with" injuries suffered")). Based on this authority, the *Dodson* court concluded a dispute "arising from or in connection with maintenance performed by [a party]" is a dispute with "some causal connection to—that it originated from,[4] grew out of, or flowed from—such maintenance." 12 F.4th at 1220.

Consistent with the foregoing, Fritzsche's fee request includes fees that are traceable to, resulted from, originated from, grew out of, and flowed from the SEC "seeking, obtaining, and defending the ex parte TRO, asset freeze, and appointment of a receiver." *See* Grundvig Decl.,¶ 4. Consistent with this Court's memorandum decision and order, Fritzsche's fee request does not include fees attributable to the pending motions to dismiss or defendants' replies to the SEC's response to the order to show cause. Consequently, where Fritzsche's fee request complies with applicable authority, this Court should grant it as submitted, subject to Fritzsche's demonstration his request satisfies straight fee and lodestar-limited recovery approaches.

**II.    This Court should approve Fritzsche's request for an $24,022.50 attorney's fees award against the SEC because his request satisfies straight fee and lodestar-limited recovery approaches.**

Fritzsche's fee request is reasonable whether assessed under straight fee or lodestar methodologies. In addition to ordering defendants to submit requests for fees and costs "arising from" the SEC's bad faith misconduct, this Court advised it would "evaluat[e] those requests in

---

[4] *Accord In re B & L Oil Co.*, 834 F.2d 156, 159 (10th Cir. 1987) (interpreting the statutory language "arising from" as "originat[ing] from").

accordance with methodologies approved by the Tenth Circuit." See Dkt. 275 at 76, 76 n.414 (citing *Hamilton v. Boise Cascade Exp.*, 519 F.3d 1197 (10th Cir. 2008)).

In *Hamilton*, a sanctioned attorney challenged the district court's methodology for determining the sanction amount.[5] See 519 F.3d at 1199. The sanctioned attorney advocated for application of the "lodestar method, which would limit the amount recoverable to the prevailing rate charged by local counsel." *Id.* at 1206. The district court rejected this method in favor of a "straight fee recovery," which compensated actual fees and costs incurred relating to the improper motion for which the attorney was sanctioned. See *id.* at 1207. Ultimately, the Tenth Circuit held "that the choice belongs to the district court, in the exercise of its discretion, which method to apply in a given case." *Id.*

The Tenth Circuit also helpfully identified characteristics of both approaches. For example, the straight fee approach would "require a court [both] to lop off hours unreasonably incurred" and reject as unreasonable fees associated with "bringing in expensive out-of-town hired guns to respond to a frivolously multiplicative motion . . .." See *id.* (suggesting in that case "the lodestar method would be the better exercise of discretion"). On the other hand, the straight fee approach would be the better exercise of discretion if the lodestar approach would revictimize an innocent party. "[A] a party who has already been the victim of vexatious and dilatory tactics should not heedlessly be revictimized by requiring him to introduce evidence to establish the prevailing local rate for a certain type of litigation." *Id.*; *see also id.* (a party who

---

[5] Which equaled the attorney's fees needlessly incurred by the attorney's opponents, as proven by affidavit. See *id.* at 1199, 1207.

chose appropriate counsel at his expense "should not be obliged to procure new, cheaper lawyers just to deal with a filing that is, after all, sanctionable.").

Based on the foregoing authority and the facts of this case, this Court should exercise its discretion and apply the straight fee approach to Fritzsche's fee request. As previously established, Fritzsche's fee request compliantly 1) includes fees that are traceable to, resulted from, originated from, grew out of, and flowed from the SEC's bad faith, sanctionable conduct, and 2) excludes fees attributable to the pending motions to dismiss or defendants' replies to the SEC's response to the order to show cause. *See* Grundvig Decl. ¶¶ 4-5. Also, the included fees are from Fritsche's local counsel with whom he has had a multiple-year relationship, not an "expensive out-of-town hired gun" engaged unnecessarily. *See id.* There is no basis to reduce Fritzsche's fee request based on his counsel's actual hourly rates where Fritzsche in fact has incurred fees at those rates.

Plus, Fritzsche is the victim here. The SEC, not Fritzsche, engaged in sanctionable, bad faith conduct. Such conduct forced Fritzsche to needlessly incur fees in response. Applying the lodestar formula would further victimize him by requiring evidence[6] of the prevailing rate charged by local counsel, and, if his counsel's rate were cut in accordance with that evidence, imposing a fiction that Fritzsche hired a cheaper lawyer than his actual lawyer just to deal with conduct that is sanctionable. *See* 519 F.3d at 1207. Applying the straight fee approach to Fritzsche's fee request avoids this additional harm and perfectly harmonizes with this Court's rationales for imposing sanctions on the SEC in the first place.

---

[6] Potentially expert evidence, which would cost Fritzsche more money.

9

Nevertheless, because this Court alerted Fritzsche to the possibility it could apply the lodestar approach, his fee request includes lodestar-related evidence through his counsel, such as the rates charged by local counsel and how his counsel's rate is at the low end of the range. Thus, even under the lodestar approach, Fritzsche's fee request is appropriate.

## CONCLUSION

This Court should grant Fritzsche's fee request as submitted because it (1) complies with this Court's March 18, 2024 Memorandum Decision and Order (including language indicating the intended scope of Fritzsche's permissible fee request), and (2) Tenth Circuit caselaw (a) interpreting "arising from" and similar language, and (b) discussing straight fee and lodestar-limited attorney fee award methodologies.

Dated this 17th day of April 2024.

KESLER & RUST

/s/ Adam L. Grundvig

Adam L. Grundvig
*Attorneys for Matthew Fritzsche*

## CERTIFICATE OF SERVICE

I certify that I caused to be delivered through CM/ECF filing a true and correct copy of the foregoing **MATTHEW FRITZSCHE'S PETITION FOR ATTORNEY'S FEES PURSUANT TO THIS COURT'S MARCH 18, 2024 MEMORANDUM DECISION AND ORDER** on April 17, 2024 to all counsel of record.

/s/ Cindee Elmer