Jason A. McNeill (9711)
mcneill@mvmlegal.com
Eric K. Schnibbe (8463)
schnibbe@mvmlegal.com
**MCNEILL | VON MAACK**
236 South 300 East
Salt Lake City, Utah 84111
Telephone: 801.823.6464

Jessica B. Magee (*admitted pro hac vice*)
jessica.magee@hklaw.com
Andrew W. Balthazor (*admitted pro hac vice*)
andrew.balthazor@hklaw.com
**HOLLAND & KNIGHT**
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone: 214.969.1700

Attorneys for Josias N. Dewey, Court-Appointed
Temporary Receiver

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | **RECEIVER'S FIRST AND FINAL APPLICATION FOR FEES** |
| **Plaintiff,** | **(REDACTED VERSION)** |
| v. | |
| DIGITAL LICENSING INC. (d/b/a "DEBT Box"), a Wyoming corporation; JASON R. ANDERSON, an individual; JACOB S. ANDERSON, an individual; SCHAD E. BRANNON, an individual; ROYDON B. NELSON, an individual; JAMES E. FRANKLIN, an individual; WESTERN OIL EXPLORATION COMPANY, INC., a Nevada corporation; RYAN BOWEN, an individual; IX GLOBAL, LLC, a Utah limited liability company; JOSEPH A. MARTINEZ, an individual; BENJAMIN F. DANIELS, an individual; MARK W. SCHULER, an individual; B & B INVESTMENT GROUP, LLC (d/b/a "CORE 1 CRYPTO"), a Utah limited liability company; TRAVIS A. FLAHERTY, an individual; ALTON O. PARKER, an individual; BW HOLDINGS, LLC (d/b/a the "FAIR PROJECT"), a Utah limited liability company; BRENDAN J. STANGIS, an individual; and MATTHEW D. FRITZSCHE, an individual, | **Case No. 2:23-cv-00482-RJS**<br>**Judge Robert J. Shelby**<br>**Magistrate Judge Dustin B. Pead** |

**Defendants,**

**ARCHER DRILLING, LLC, a Wyoming limited liability company; BUSINESS FUNDING SOLUTIONS, LLC, a Utah limited liability company; BLOX LENDING, LLC, a Utah limited liability company; CALMFRITZ HOLDINGS, LLC, a Utah limited liability company; CALMES & CO, INC., a Utah corporation; FLAHERTY ENTERPRISES, LLC, an Arizona limited liability company; IX VENTURES FZCO, a United Arab Emirates company; PURDY OIL, LLC, a Nebraska limited liability company; THE GOLD COLLECTIVE LLC, a Utah limited liability company; and UIU HOLDINGS, LLC, a Delaware limited liability company,**

     **Relief Defendants.**

## <u>TABLE OF CONTENTS</u>

RECEIVER'S FIRST AND FINAL APPLICATION FOR FEES ................................................. 1

I.  SUMMARY OF THIS APPLICATION FOR PAYMENT OF FEES AND
    COSTS ...................................................................................................................... 1

II. BACKGROUND, RELEVANT PROCEDURAL HISTORY, AND
    RECEIVERSHIP TEAM FEES ............................................................................... 3

III. STANDARDIZED FUND ACCOUNTING REPORT ............................................. 6

    A.  Financial Assets. ........................................................................................... 6

    B.  Expenses. ....................................................................................................... 7

IV. SUMMARY OF SERVICES RENDERED DURING THE APPLICATION
    PERIOD .................................................................................................................... 7

V.  POINTS AND AUTHORITIES IN SUPPORT OF FEE APPLICATION .............. 9

    A.  Reasonableness of Rates .............................................................................. 10

        (i)  General Framework for Assessing Hourly Rates ........................... 10

        (ii) Reasonableness of Rates in Receiverships .................................... 13

    B.  Reasonableness of Hours Expended ............................................................ 16

CONCLUSION ................................................................................................................... 20

CERTIFICATE OF SERVICE .......................................................................................... 22

<u>**RECEIVER'S FIRST AND FINAL APPLICATION FOR FEES**</u>

In accordance with this Court's Temporary Receivership Order (ECF No. 10, "<u>Receiver Order</u>") and March 18, 2024 Memorandum Decision and Order (ECF No. 275, "<u>Fee Payment Order</u>"), and Rule 66 of the Federal Rules of Civil Procedure, Josias N. Dewey, the Court Appointed Temporary Receiver (the "<u>Receiver</u>") of Digital Licensing, Inc. and its subsidiaries and affiliates, respectfully requests that the Court enter the *Proposed Order*, substantially in the form attached hereto as **Exhibit B**, granting this "<u>Application</u>" on a final basis (1) approving the Receivership Team's (defined *infra*) fees and costs; and (2) ordering the United States Securities and Exchange Commission ("<u>Commission</u>") to pay the fees and costs in full pursuant to the Court's Fee Payment Order.  In support thereof, the Receiver respectfully states as follows:

I.  **SUMMARY OF THIS APPLICATION FOR PAYMENT OF FEES AND COSTS**

1.  The Receiver applies for payment of $731,141.10 in total professional fees, and $15,800.76 in costs, for a total of $746,941.86 (the "<u>Fees</u>"), incurred to administer the receivership between July 28, 2023 and October 6, 2023 (the "<u>Application Period</u>") [1].  This amount reflects:

    a.  The work required to initiate and conduct a receivership, especially in early stages and covering multiple entities (including identifying affiliates and subsidiaries).

    b.  The Receiver and H&K's determination to discount and reduce rates and costs from the outset of the appointment for the benefit of the Receivership Estate (defined *infra*) and its potential claimants, including through

        i.  an agreed and Court-approved fee cap of $200,000 covering the first thirty days of the Receivership (the "<u>Fee Cap</u>"),

---

[1] The Order Appointing Receiver was entered on July 28, 2023.  The Transition Order was entered on October 6, 2023.

ii. voluntarily extending H&K's Fee Cap from August 27, 2023 (the thirtieth day after the Receiver Order) through August 31, 2023 for the benefit of the Receivership Estate and its potential claimants, such that all H&K fees and expenses incurred between August 28, 2023 and August 31, 2023 (an amount equal to $45,420) were not billed to the Receivership Estate (*see* **Ex. E**),

iii. front-end discounts to Mr. Dewey and H&K's standard hourly rates by between 17% to 33%, where Mr. Dewey's discounted rate per hour was set at $750, partners at $750 per hour; and associates at $450 per hour ("H&K's Discounted Hourly Rates") (*see* ECF No. 4, Plaintiff Securities and Exchange Commission's *Ex Parte* Application for Appointment of Temporary Receiver at 4 and Ex. 3 pg. 8, hereinafter "Receiver Recommendation");

iv. but ultimately charging effective hourly rates of $530.85 per Receiver hour, $375.26 per H&K partner hour, and $211.77 per H&K associate hour ("H&K's Effective Hourly Rates")[2] after voluntarily reducing fees during the Application Period by $567,210 (or approximately 55%).[3] **Ex. C-1** at 2–3.

v. not billing for travel time, despite the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange

---

[2] H&K's Effective Hourly Rates reflect an additional 29% to 52% reduction to H&K's Discounted Hourly Rates. **Ex. C-1**, at 3.

[3] Of this amount, $123,445.00 was already subject to the Fee Cap (including as voluntarily extended), and the remaining $443,765.00 is attributable to discretionary discounts provided for the benefit of the Receivership Estate and its potential claimants. **Ex. C-1**, at 2.

Commission ("SEC Billing Instructions") allowing for professionals to bill 50% of their regular rates for long distance travel. *See* Receiver Recommendation at 3–4.

c.  Similarly, BDO provided a 25% discount to its standard hourly rates, did not bill for travel time (an amount equal to $25,698.50), and discounted its final bill by an additional 30% (or $113,284.67). *See* **Ex. F-2**.

d.  The Receivership Team as a whole voluntarily and proactively made the determination not to assess fees and costs after October 6, 2023, instead opting to incur at their own expense the time and cost associated with carrying out the Transition Order.[4]

## II.   BACKGROUND, RELEVANT PROCEDURAL HISTORY, AND RECEIVERSHIP TEAM FEES

2.     On July 28, 2023, the Court appointed Mr. Dewey as Receiver for Digital Licensing, Inc. and its subsidiaries and affiliates (collectively "DLI" or the "Receivership Estate"). *See generally* Receiver Order § II.  The Court authorized the Receiver "to choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the receiver deems advisable and necessary in the performance of duties and responsibilities under the authority granted by this Order, including but not limited to, the law firm which the receiver is a partner[.]"  *Id.* § II.F.

3.     The Receiver engaged H&K as his lead legal counsel; BDO USA, P.C. ("BDO") as forensic accountants, data analysts, and blockchain specialists; McNeill Von Maack, LLC ("MVM") as local Utah counsel; and Becky McGee as an attorney with oil and gas expertise— each as necessary parties to perform the duties and responsibilities under the authority granted by

---

[4] Altogether Section I.1.(a–d) is collectively referred to as the "Receivership Team's Discounts".

the Receiver Order (H&K, BDO, MVM, and Ms. McGee collectively referred to as "<u>Retained</u>

<u>Professionals</u>", and together with the Receiver, the "<u>Receivership Team</u>").  *See id.*

4.     Pursuant to the Receiver Order, the Receivership Team conducted extensive

investigation and asset recovery efforts on behalf of the Receivership Estate.  These efforts were

detailed in various status reports and other filings expressly incorporated by reference herein.  *See*

*infra* Section IV.

5.     On October 6, 2023, the Court concluded that the TRO was improvidently issued

and dissolved it, terminated the receivership, and ordered the Defendants and Receiver to phase

out the receivership during a transition period (*see* ECF No. 187, the "<u>Transition Order</u>").

6.     Originally, the Receiver Order required DLI to pay "the costs, fees and expenses of

the receiver incurred in connection with the performance of his duties described in this Order,

including the costs and expenses of those persons who may be engaged or employed by the receiver

to assist him in carryout out his duties and obligations."  Receiver Order § VIII.

7.     On March 18, 2024, the Court ordered the Commission to pay the "attorneys' fees

and costs for all expenses arising from the TRO and appointment of the Receiver—to include

payment of all the Receiver's costs and fees."  Fee Payment Order at 74–75.  The Court further

ordered the Receiver to submit a petition setting forth all attorneys' fees and legal costs arising

from the TRO and appointment of the Receiver, which information is set forth in this Application

seeking payment of Fees in the total amount of **$746,941.86**, attributable to each Receivership

Team member as follows:

- $456,337.16 in fees and reimbursable expenses for the Receiver and H&K[5];

---

[5] Because the Receiver is a partner at H&K, his time is reflected in H&K's billing statements attached hereto as **Exhibit E** and is not separately invoiced.

| Receiver and H&K | Invoice 33277453 (Fee Cap Invoice)[6] | Invoice 33277452 (No Fee Cap) | Total[7] |
|---|---|---|---|
| Total Fees Incurred | $632,990.00 | $381,795.00 | $1,014,785.00 |
| *- Discretionary Discounts* | ($309,545.00) | ($134,220.00) | ($443,765.00) |
| *- Fee Cap Discount* | ($123,445.00) | $ N/A | ($123,445.00) |
| **Total Fee Request** | **$200,000.00** | **$247,575.00** | **$447,575.00** |
| **% Discount** | **68.40%** | **35.15%** | **55.89%** |
| | | | |
| + Total Expenses | $7,678.51 | $1,083.65 | $8,762.16 |
| **Total Application Request** | **$207,678.51** | **$248,658.65** | **$456,337.16** |

- $264,330.90 in fees and reimbursable expenses for BDO;

| BDO | Totals |
|---|---|
| Total Fees Incurred | $368,828.00 |
| Total Expenses | $8,787.57 |
| Sub Total | $377,615.57 |
| *- 30% Discretionary Discount* | $(113,284.67) |
| | |
| **Total Application Request** | **$264,330.90** |

- $18,689.80 in fees and reimbursable expenses for MVM; and

| MVM | Totals |
|---|---|
| Total Fees Incurred | $17,802.50 |
| Total Expenses | $887.30 |
| | |
| **Total Application Request** | **$18,689.80** |

- $7,584.00 in fees for Ms. McGee, which is net of an approximately 19% reduction in her standard hourly rates.  *See* B. McGee Decl., ¶5.

8.     In support of this Application, the Receiver has concurrently filed declarations on behalf of the Retained Professionals, including the Declaration of Jessica B. Magee ("J. Magee Decl."), the Declaration of Jesse M. Daves ("BDO Decl."), the Declaration of Jason A. McNeill

---

[6] Because the Receiver and H&K agreed to cap their fees for the first 30 days of the receivership (which Fee Cap was voluntarily extended through August 31, 2023), **Exhibit E** includes two invoices—Invoice 33277453 (which includes the Fee Cap, and referred to herein as "Fee Cap Invoice") and Invoice 33277452 (which is not subject to the Fee Cap).

[7] These reductions do not include the 17% to 33% discount off the Receiver and H&K's standard hourly rates (*see supra* ¶1).

("J. McNeill Decl."), and the Declaration of Ms. McGee ("B. McGee Decl.", and altogether the "Professionals' Declarations"), which substantiate the reasonableness and necessity of the fees and costs identified herein[8].

## III.   STANDARDIZED FUND ACCOUNTING REPORT

9.     As required by the SEC Billing Instructions, the Receiver submits a Standardized Fund Accounting Report ("SFAR")[9] for the Application Period, attached hereto as **Exhibit A**.

A.   *Financial Assets.*

10.    The SFAR report sets forth all of the fiat and digital assets collected and custodied by the Receivership Team since the Receiver Order.  In accordance with the Court's Transition Order and corresponding feedback and directions from Defendants' counsel, Morrison Cohen LLP ("Morrison Cohen"), all fiat assets were returned to DLI's bank account held at Mountain America Credit Union, and all digital assets that were once under the Receiver's control[10], have since been returned to wallet addresses identified by Morrison Cohen and controlled by the "Morrison Cohen Defendants"[11].

---

[8] A "Exhibits Table of Contents" is also submitted together with this Application, explaining each of the various Exhibits attached hereto.

[9] In the SFAR instructions, the Commission states that the SFAR "should be prepared for the reporting period on a cash basis which is a comprehensive basis of accounting other than generally accepted accounting principles."  SEC Billing Instructions, Ex. A at 2.  The Receiver did not use funds of the Receivership Estate to pay for its expenses; instead, the Receivership Team advanced such costs and expenses for the benefit of the Receivership Estate.  Accordingly, the SFAR sets forth the funds received and disbursed from the Receivership Estate during the Application Period.

[10] The Morrison Cohen Defendants previously sent a quantity of a digital asset to an address not under the Receiver's control and without prior notice. The Receivership Team and Morrison Cohen have communicated about this matter, and the Receivership Team awaits direction from Morrison Cohen regarding next steps for facilitating a recovery.  *See* SFAR.

[11] The Morrison Cohen Defendants are defined by Morrison Cohen as Defendants Digital Licensing, Inc., Jason R. Anderson, Jacob S. Anderson, Schad E. Brannon, Roydon B. Nelson; and Relief Defendants Business Funding Solutions, LLC, Blox Lending, LLC, The Gold Collective LLC, and UIU Holdings, LLC. *See* ECF No. 203, Defendants' Second Status Report Regarding Transition.

*B.   Expenses.*

11.     Costs and expenses for the Receivership Estate were advanced by the Receivership Team as set forth in attached **Exhibit F**.

**IV.     SUMMARY OF SERVICES RENDERED DURING THE APPLICATION PERIOD**

12.     The Receiver filed several Status Reports outlining the Receivership Team's work following entry of the Receiver Order, including Temporary Receiver's First Status Report (ECF No. 139), Temporary Receiver's Interim Status Report (ECF No. 161), Temporary Receiver's Status Report Regarding Transition, Wind Down, and Conclusion of the Receivership (ECF No. 198), and Temporary Receiver's Second Status Report Regarding Transition, Wind Down, and Conclusion of the Receivership (ECF No. 202) (altogether the "Receiver's Status Reports").

13.     The Receiver submitted two declarations summarizing the Receivership Team's investigative efforts and findings, including Receiver Josias N. Dewey's Declaration in Support of SEC's Motion to Clarify Temporary Receivership Order (ECF No. 125, Ex. A); Receiver Josias N. Dewey's Second Declaration in Support of Receiver's Motion to Clarify Temporary Receivership Order (ECF No. 144, Ex. A) (altogether the "Receiver's Declarations").

14.     The Receiver's Status Reports and Receiver's Declarations provide the most detailed account of the Receivership Team's work and are incorporated herein by reference.  In sum, the Receiver and his lead counsel H&K engaged in the following activities during the Application Period:

    a.  Investigated and analyzed the nature of DLI's business operations, including speaking with more than 20 relevant individuals;

    b.  Analyzed financial transactions from 28 bank accounts and payment processors;

    c.  Analyzed and traced a myriad of digital asset transactions across scores of digital wallets;

    d.  Spoke or attempted to speak with counsel for various Defendants and Relief Defendants;

    e.   Conducted public records research to identify assets of the Receivership Estate;

    f.   Secured or attempted to secure DLI's books and records;

    g.   Secured or attempted to secure DLI's assets in their varying forms and locations;

    h.   Marshaled relevant information, records, and assets belonging to the Receivership Estate;

    i.   Selected professionals and negotiated terms of engagement for BDO, MVM, and Becky McGee;

    j.   Planned strategy for seizing and securing assets of receivership and identifying operating businesses;

    k.   In accordance with 28 U.S.C. §754, filed notices in the United States District Court for multiple states based on the discovery of real property located within such districts according to local rule requirements;

    l.   Analyzed the structure of the receivership entities and properties, including: review of organizational documents, title and ownership documents, as well as other documents; interview insiders, employees, and others;

    m.   Investigated and analyzed DLI's license sale structure;

    n.   Identified and monitored ongoing and threatened litigation against DLI assets and related entities;

    o.   Facilitated the transfer of cash from DLI's bank to a consolidated bank account controlled by the Receiver;

    p.   Developed an investor questionnaire and submission process for individuals to submit potential claim details and transaction information;

    q.   Reviewed and analyzed investor documents;

    r.   Developed website and drafted content, including frequently asked questions and responses, overview of the receivership process, and important case updates;

    s.   Attended court hearings;

    t.   Responded to, and filed, motions and participated in Court proceedings, including:

        i.   Receiver's Status Reports;

        ii.   Receiver's Declarations;

        iii.   Motion for Contempt and for Sanctions (ECF No. 138);

        iv.   Motion to Clarify Receivership Order (ECF No. 144) and Reply to same (ECF No. 185); and

     v.  Temporary Receiver's Response to Motion to Dissolve TRO and Modify Temporary Receivership Order (ECF No. 166).

15.    To inform H&K's legal advice to the Receiver, BDO engaged in the following activities during the Application Period (*see* BDO Decl., ¶6):

    a.  Collected and preserved data;

    b.  Reviewed and analyzed documentation relating to fiat and digital asset transactions;

    c.  Traced DLI cryptocurrency and other digital asset transactions; and

    d.  Traced and analyzed tracing of various DLI financial transactions.

16.    MVM provided the following services to the Receiver for the benefit of the Receivership Estate (*see* J. McNeill Decl., ¶19):

    a.  Served as local Utah counsel for the Receiver reviewing drafts, facilitating their filing, and ensuring compliance with local rules;

    b.  Provided support to H&K in the rendering of legal services and advice to the Receiver;

    c.  Monitored and reviewed docket activity;

    d.  Attended scheduling conferences and hearings.

17.    Becky McGee provided the following specialized knowledge and expertise to support both the Receiver and H&K (*see* B. McGee Decl., ¶3):

    a.  Attorney with expertise in the oil and gas industry;

    b.  Previously served as a court appointed receiver in another SEC enforcement action;

    c.  Provided advice relating to potential oil and gas assets of the Receivership Estate and related assets.

## V.   POINTS AND AUTHORITIES IN SUPPORT OF FEE APPLICATION

18.    In its Fee Payment Order, the Court directed the Receiver to submit a fee request to be evaluated in accordance with methodologies approved by the Tenth Circuit. Fee Payment Order at 76 (citing *Hamilton v. Boise Cascade Exp.*, 519 F.3d 1197, 1205–08 (10th Cir. 2008)).

19.     In this Circuit, a party seeking an award of attorney's fees must establish the reasonableness of (A) the hourly rate and (B) hours expended.  *See Lippoldt v. Cole*, 468 F.3d 1204, 1222 (10th Cir. 2006).  First, this section will cover (A) the reasonableness of the hourly rates under (i) the legal framework generally applicable to most fee applications and (ii) the standards applied in the receivership context, which the Receiver contends is the more appropriate approach here; second, (B) it will address the reasonableness of the hours expended.

A.   *Reasonableness of Rates*

(i)     *General Framework for Assessing Hourly Rates*

20.     In *Hamilton*, the Tenth Circuit explained that, in determining the reasonableness of a fee request, the district court is permitted to consider a "straight fee" request or apply the "lodestar" method.  *See id.* at 1206–07 (holding that the district court may exercise its discretion in determining whether to award a "straight fee recovery or a lodestar-limited recovery").

21.     In a straight fee request, a court uses the attorney's rate contained in the fee request and may limit the overall request to "fees reasonably incurred."  *See id*. at 1207.  Conversely, the lodestar method looks to "the prevailing market rates in the relevant community." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). "[A] district judge may turn to her own knowledge of prevailing market rates as well as other indicia of a reasonable market rate." *Bee v. Greaves*, 910 F.2d 686, 689 n. 4 (10th Cir. 1990) (citation omitted).

22.     Notably, in *Hamilton*, the district court rejected the lodestar method in favor of awarding the actual fees incurred, and the Tenth Circuit affirmed.  *Hamilton*, 519 F.3d at 1207. The Tenth Circuit acknowledged that the lodestar method may be appropriate in civil rights cases "where it is sensible to encourage litigations at the outset to select reasonably priced counsel." *Id.* However,  the straight fee recovery method appears favored where the party requesting fees had

already chosen its counsel "at what he ordinarily anticipates will be his own expense" and not that

of the sanctioned party. *See id.*; *see B. Willis, C.P.A., Inc. v. BNSF Ry. Co.*, No. 04-CV-163-TCK-

TLW, 2012 WL 13186045, at *11 (N.D. Okla. Mar. 14, 2012), *report and recommendation*

*adopted*, No. 04-CV-163-TCK-TLW, 2012 WL 13186128 (N.D. Okla. Mar. 30, 2012), *aff'd sub*

*nom. B. Willis, C.P.A., Inc. v. Pub. Serv. Co. of Oklahoma*, 511 Fed. Appx. 753 (10th Cir. 2013)

(accepting, as reasonable, the hourly rates charged by counsel because, by the time the actionable

conduct was sanctioned, the blameless party "had already chosen its counsel at what it anticipated

would be its own expense").

23.    Much like the circumstances in *Hamilton* and *B. Willis*, the Receivership Team was

engaged to work on this matter in accordance with the terms of the Receiver Order and before the

Commission's conduct was sanctioned.  Namely, the Commission identified the Receiver and

H&K as "qualified receiver candidates." *See* Receiver Recommendation at 3.  In their proposal,

H&K agreed to reduce standard hourly rates by 17% to 33%, and the Receiver by 25% (or $750

per hour)—which the Commission stated "is reasonable particularly in view of his substantial

experience and relevant expertise." *Id.* at 4.

24.    Moreover, the Commission determined that the Receiver and H&K have

specialized experience with, *inter alia*, digital assets, blockchain, federal equity receiverships, and

securities litigation.  *See id.*  In sum, the Commission already evaluated H&K's Discounted Hourly

Rates against competing proposals and found them reasonable, yet following the Receivership

Team's Discounts, these rates were further reduced by an additional 29% to 52%.  *See supra* ¶1.

This is precisely the situation that favors applying the stated rates over those prevailing in the local

market.  *See, e.g., Lippoldt*, 468 F.3d at 1224–25 (explaining trial court may stray from prevailing

market rate where litigation is unusual and requires special skills); *Hamilton*, 519 F.3d at 1207

(explaining that "a party who has already been the victim of vexatious and dilatory tactics should not heedlessly be revictimized by requiring him to introduce evidence to establish the prevailing local rate for a certain type of litigation").

25.     Even if the Court wishes to consider prevailing market rates in the Salt Lake City area, the Court should still find that the Receivership Team's rates are reasonable.  Namely, (i) after applying the Receivership Team's Discounts, H&K's Effective Hourly Rates are $375.26 per partner hour and $211.77 per associate hour (*see* **Ex. C-1**); the Receiver's local Salt Lake City counsel, MVM, charged attorney rates between $435–$455 per hour (*see* **Ex. F-3**); and the Receiver's oil and gas attorney, Becky McGee, charged an hourly rate of $320.00 (*see* **Ex. F-4**)— each of which fall squarely within the prevailing rates charged within the Salt Lake legal market. *See, e.g.*, *Waas v. Red Ledges Land Dev., Inc.*, No. 2:20-CV-00580-TC-DBP, 2022 WL 35717, at *4 (D. Utah Jan. 3, 2022) (finding an affidavit submitted by a former President of the Utah State Bar "persuasive", who confirms that the hourly rates charged by partners at prominent Salt Lake City firms in 2021 are between $600 and $795 per hour); *Robert v. Red Lodges Land Dev., Inc.*, No. 2:20-CV-580 TC, 2021 WL 5179218, at *3–4 (D. Utah Nov. 8, 2021) (holding that in 2021, hourly rates of $650 per hour were reasonable for a real property contract dispute); *Gulbransen v. Colvin*, No. 2:12-CV-107 TS, 2015 WL 1896559, at *2 (D. Utah Apr. 27, 2015) (awarding attorneys' fees in a case involving disability insurance benefits, with an effective hourly rate of $862.88 in 2015); *Brown v. Colvin*, No. 2:16-CV-00758-DBP, 2021 WL 124324, at *2 (D. Utah Jan. 13, 2021) (awarding attorneys' fees in another case involving disability insurance benefits, with an effective hourly rate of $711.38 in 2021).

26.     Under this general framework for assessing reasonable rates, the Court should find that the Receivership Team's stated rates are reasonable as requested.

(ii)     *Reasonableness of Rates in Receiverships*

27.     The reasonableness of the Receivership Team's stated rates is further supported under the traditional analysis applied in the receivership context—which seems to disfavor the lodestar approach. *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998) ("The court's own extensive research has uncovered no case holding that receivership fee calculations require use of the lodestar method[, and i]n this court's view, rigid application of the lodestar method is not required in receivership cases.")

28.     This position has also been adopted by the Tenth Circuit. Namely, *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983) is one of the major cases establishing use of a lodestar method. In assessing the fees requested by a receiver's foreign counsel, the Northern District of Oklahoma "looked to *Ramos* for guidance in determining the reasonableness of the fees requested but, recognized that this case involved a receivership and was not an award to a prevailing party, it never required strict adherence to *Ramos*." *F.T.C. v. Skybiz.com, Inc.*, No. 01-CV-396-K(E) (N.D. Okla. Jul. 15, 2003), ECF No. 1070 at 5. Accordingly, rather than applying the lodestar method, the district court reviewed the "sufficient supporting documentation" submitted by the receiver and his counsel, and utilized its "discretion" and "equitable powers related to receiverships" to assess their reasonableness and award payment. *See id.* The Tenth Circuit affirmed. *F.T.C. v. Skybiz.com, Inc.*, 102 Fed. Appx. 649, 652 (10th Cir. 2004) ("The district court appears to have properly distinguished *Ramos*, and plaintiffs again cite no case law to the contrary."); *see also Nephew v. City of Aurora*, 766 F.2d 1464, 1465–67 (10th Cir. 1985) (departing from the rigid lodestar analysis in *Ramos* to consider the equity of the plaintiffs' claim); *but see CFTC v. Trimble*, No. CIV-09-154-D, 2009 WL 2592063, at *1 (W.D. Okla. Aug. 19, 2009) (partially applying the lodestar analysis in comparing the receiver's attorneys' rates to those charged in the community).

29.     This treatment of receiverships is reinforced in the bankruptcy context—the two of which are similar in form and practice.  *See In re Miniscribe Corporation*, 309 F.3d 1234, 1243, (10th Cir. 2002) (noting that a receiver is the non-bankruptcy counterpart of a trustee in bankruptcy).  A bankruptcy court's decision on the reasonableness of requested fees, particularly the reasonableness of hourly billing rates, falls within the court's discretion. *In re Twiford Enterprises, Inc.*, No. BAP WY-19-037, 2020 WL 6075691, at *8 (B.A.P. 10th Cir. Oct. 15, 2020) (citing *Lippoldt*, 468 F.3d at 1224–25) (explaining trial court may stray from prevailing market rate  where litigation is unusual and requires special skills).  The Tenth Circuit explained that a reasonable rate that is "the prevailing market rate in the relevant community", oftentimes, "may be one other than the community in which the court sits because courts are reluctant to deprive bankruptcy participants their choice of counsel." *In re Twiford*, 2020 WL 6075691, at *8; *see also In re Pan Am. Gen. Hosp., LLC*, 385 B.R. 855, 874 (Bankr. W.D. Tex. 2008) ("Courts should exercise some care before denying a given player their chosen choice of counsel based solely on the location (and billing rate) of the lawyer, and imposing local rates can have just that effect."). For this reason, a judge "may consider his or her own knowledge of prevailing market rates as well as ***other indicia of a reasonable market rate***." *Lippoldt*, 468 F.3d at 1225 (internal citations omitted) (emphasis added).

30.     Like bankruptcy, "[a] primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *SEC v. Mgmt. Sols., Inc.*, No. 2:11-CV-01165-BSJ, 2016 WL 4821275, at *3 (D. Utah Sept. 9, 2016) (citing *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986)). "It is generally recognized 'that the district court has broad powers and wide discretion to determine…relief in an equity receivership." *Id.* (citing *SEC v. Vescor Capital Corp.*, 599 F.3d 1189, 1194 (10th Cir. 2010)). That broad

authority arises out of the fact that "[a] district judge supervising an equity receivership faces a myriad of complicated problems in dealing with the various parties and issues involved in administering the receivership." *Id.* (citing *Hardy*, 803 F.2d at 1038). This "extremely broad" discretion "included awards of receivership fees, including attorneys' fees." *SEC v. Wang*, No. CV 13-7553 JAK (SS), 2015 WL 12656904, at *3 (C.D Cal., Feb. 17, 2017), *citing In re San Vincente Medical Partners Ltd.*, 962 F.2d 1402, 1409 (9th Cir. 1992) ("The award of receivership fees in an SEC action is analogous to the award of receivership fees in bankruptcy proceedings, and we review the district court's award for an abuse of discretion.").

31.     The indicia of reasonableness here is that the Commission solicited and vetted candidates, selected the Receiver and H&K as the best suited team for this matter, and represented to the Court that the Receiver's fees—and those of his proposed lead counsel—were reasonable. *See* Receiver Recommendation at 3.  Notably, H&K's Discounted Hourly Rates are less than the rates H&K has charged, and been paid for with court approval, in similar receiverships.  *See* J. Magee Decl., ¶¶ 6–9.  Moreover, H&K's Effective Hourly Rates are also less than those requested, and approved by the court, in a comparable receivership involving digital assets. *See id.* ¶¶ 10–11.

32.     Similarly, BDO performed complex financial analysis and blockchain tracing to aid H&K in providing legal advice to the Receiver in order for him to carry out his obligations under the Receiver Order.  After applying the Receivership Team's Discounts (*see supra* Section I), BDO's final bill resulted in a request of $264,330.90 for the 70 days of this receivership—an amount substantially less than similar service providers in prior Utah receiverships.  *See SEC v. Management Solutions et al,* 2:11-cv-01165-BSJ (Dec. 15, 2011 D. Utah), ECF Nos. 305, 361 (granting the receiver's first fee application in full, including $1.2 million for a forensic accountant performing services over the first 79 days of the receivership); *SEC v. American Pension Services*

*et al*, 2:14-cv-00309-RJS (Apr. 24, 2014 D. Utah), ECF Nos. 93, 100 (granting the receiver's first fee application in full, including about $350,000 for a forensic accountant performing services over the first 66 days of the receivership).

33.     The Receivership Team faithfully and vigorously carried out its duties to the Receivership Estate from the time of its inception through the moment of its conclusion. Compensation—albeit reflecting the Receivership Team's agreed and voluntary discounts described above—is both the equitable and just resolution to this matter.  *See S.E.C. v. Elliott*, 953 F.2d 1560, 1576 (11th Cir. 1992) ("[I]f a receiver reasonably and diligently discharged his duties, he is entitled to compensation.").

## B. *Reasonableness of Hours Expended*

34.     To assess the reasonableness of a party's claimed hours, the Tenth Circuit considers: (a) whether the hours are supported by adequate billing records; (b) whether the attorney has exercised billing judgment; and (c) whether the hours expended on each task are reasonable. *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998).

35.     As for the first, "the party must submit 'meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks.'"  *United Phosphorus*, 205 F.3d at 1233–34 (internal citation omitted).  Such detailed time records are submitted as Exhibits to this Application, each of which strives to meet the optimal balance between providing sufficient detail to conform with the SEC Billing Instructions while protecting attorney-client privilege/work-product protections.  *See* **Exs. E, F-1, F-2, F-3, F-4.**

36.     Next, a court must ensure that the attorney for the party seeking fees has exercised proper "billing judgment."  *Case*, 157 F.3d at 1250.  "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended.  Hours that an attorney would

not properly bill to his or her client cannot reasonably be billed to the adverse party, making certain time presumptively unreasonable." *Id.*

37.     H&K spent a substantial amount of non-billable time reviewing more than 1,600 time entries for their team—removing and/or reducing fees where they deemed appropriate, ensuring they complied with the SEC Billing Instructions (and thereby billable to the Receivership Estate, or the client in this case), and encouraging the other Retained Professionals to do the same. These efforts resulted in the Receivership Team's Discounts discussed herein.  *See supra* ¶1. Further, in a similar receivership involving digital assets, the law firm billed more hours, incurred greater fees, and provided less discounts than H&K over a similar period of time; nevertheless, the court granted the firm's fee application in full.  *See* Magee Decl. ¶¶10–11.

38.     This Court has also considered the allocation of work between associates and partners in assessing adequate billing judgment.  *See John Bean Techs. Corp. v. B GSE Group, LLC*, No. 1:17-CV-00142-RJS, 2023 WL 6164322, at *20 (D. Utah Sept. 21, 2023) (finding it excessive that 75% of the work was performed by senior partners and explaining that there are more complex situations which require experienced partners, but the associates should shoulder much of the work).  Here, despite the intricate complexities of the matter, H&K's invoices indicate that the partner/associate split was roughly 35/65 for all work performed on the matter, and 36/64 after applying the Receivership Team's Discounts.  *See* **Ex. C-1** at 3.  Pursuant to the foregoing, the Court should find that these efforts fulfill the proper billing judgment threshold.

39.     Lastly, courts in the Tenth Circuit have applied variations of the following six factors for determining the reasonableness of the number of hours expended: (1) whether the tasks being billed would normally be billed to a paying client, (2) the number of hours spent on each task, (3) the complexity of the case, (4) the number of reasonable strategies pursued, (5) the

responses necessitated by the maneuvering of the other side, and (6) potential duplication of services by multiple lawyers. *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) (quoting *Ramos*, 713 F.2d at 554); *see Utah Physicians for a Healthy Env't, Inc. v. Diesel Power Gear*, LLC, 2:17-CV-00032-RJS, 2021 WL 254268, at *3 (D. Utah Jan. 26, 2021) (citing *Case*, 157 F.3d at 1250) (considering factors (3) through (6) above); *see also John Bean Techs.*, 2023 WL 6164322, at *23 (considering twelve additional and similar *Johnson* factors)[12].  Judges are to evaluate these factors "much as a senior partner in a private firm would review the reports of subordinate attorneys when billing clients whose fee arrangement requires a detailed report of hours expended and work done." *Ramos*, 713 F.2d at 555.  However, the court "need not identify and justify every hour allowed or disallowed, as doing so would run counter to the Supreme Court's warning that a 'request for attorney's [sic] fees should not result in a second major litigation.' " *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

40.     With respect to the forgoing factors, (1) the tasks billed would normally be billed to the Receivership Estate as they include only those tasks allowable under the SEC Billing Instructions; (2) the hours spent on each activity are explained in the Receivership Team's detailed time entries (*see* **Exs. C–F**); (3) by the Commission's own admission, the Receiver and H&K were

---

[12] *See also Martin v. SGT, Inc.*, No. 2:19-CV-00289-RJS, 2023 WL 3585326, at *15 (D. Utah May 22, 2023) (noting that courts typically consider twelve factors from *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), but explaining that courts more often consider the *Johnson* factors when awarding compensatory attorneys' fees under a fee-shifting statute and there is disagreement amongst Utah's sister courts as to whether this additional analysis is required in a punitive sanction scenario).  Unable to find a receivership case where a court within the Tenth Circuit applied the *Johnson* factors, they were not specifically applied herein.  Nevertheless, the Receiver contends that the detailed information provided with this Application is also sufficient to satisfy the *Johnson* factors, and if the Court deems it necessary, the Receiver respectfully requests leave to file supplemental briefing on this point.

the best suited candidates for this matter due to their specialized experience with, *inter alia*, digital assets, blockchain, federal equity receiverships, and securities litigation (*see* Receiver Recommendation at 3); (4) the Receivership Team engaged in various efforts to understand Defendants' complex business structure, identify subsidiaries and affiliates, and secure and analyze assets of the Receivership Estate (*see supra* Section IV); (5) the Receivership Team also undertook efforts and expenditures in an effort to secure cooperation and compliance  with the Court's Receiver Order and the powers conferred to the Receiver thereby (*see* ECF No. 138, Receiver's Motion for Contempt and for Sanctions) and to respond to Defendants' motions; and (6) on its own initiative, the Receivership Team made adjustments to avoid potential duplication of efforts, including substantial write-offs for internal meetings and removing fees for support staff (such as paralegals and e-discovery professionals) and additional attorney support (*see* **Exs. C-1, F-2**).

41.     Notably, in the context of receiverships, this court has awarded attorneys fees and costs to receivers without considering the various factors identified herein.  *See, e.g.*, *Walsh v. Paragon Contractors Corp.*, 2:06-CV-700-TC, 2022 WL 1747772, at *3 (D. Utah May 31, 2022) (imposing a contempt sanction against an individual, assessing whether the receiver properly traced his requested fees and costs to the contemnor, and ordering that the receiver's fees and costs be paid in full); *Am. Pension Services, Inc.*, 2017 WL 11676806, at *1 (reviewing the receiver's application and seemingly utilizing its discretion to determine that "the fees and expenses requested for the Application Period are reasonable, necessary, and beneficial"); *Mgmt. Sols., Inc.*, 2018 WL 11412940, at *1 (same).

42.     While these Utah cases do not provide a substantive explanation or framework for this finding of reasonableness, other courts within the Tenth Circuit have made this assessment by

looking to the language of the order appointing the receiver. *See, e.g.*, *Trimble*, 2009 WL 2592063, at *1 (explaining that the court's order limited attorney fees and costs to services that "were beneficial to the estate or necessary to its administration" and the reasonableness of such requests would be guided by this limitation). Here, the Receiver Order limited the fees to the Fee Cap and those "incurred in connection with the performance of [the Receiver's] duties described in this Order." Receiver Order at § VIII. The Retained Professionals used their best efforts in providing such assistance to the Receiver, discounted their fees to those they felt both met these requirements and were reasonable, and provided several Exhibits in support of the same.

43.     Accordingly, either pursuant to the various factors discussed above or the broad discretion afforded to courts overseeing equity receiverships, the Court should find that the hours expended on this matter—net of the Receivership Team's Discounts—are reasonable under the circumstances and should be allowed in full.

## CONCLUSION

For the reasons set forth herein, the Receiver respectfully requests that Court enter the *Proposed Order*, substantially in the form attached hereto as **Exhibit B**, granting this Application in full on a final basis and granting any other relief that it deems just and proper.

DATED this 17th day of April, 2024.

MCNEILL | VON MAACK

/s/ Jason A. McNeill
Jason A. McNeill
Eric K. Schnibbe

HOLLAND & KNIGHT

Jessica B. Magee
Andrew W. Balthazor

*Attorneys for Josias N. Dewey, Court-Appointed Temporary Receiver*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I am employed by the law firm of MCNEILL VON MAACK and that

pursuant to Rule 5(b), Federal Rules of Civil Procedure, a true and correct copy of the foregoing

**RECEIVER'S FIRST AND FINAL APPLICATION FOR FEES (REDACTED VERSION)**

was delivered to counsel of record this 17th day of April, 2024, by filing of the same through the

Court's CM/ECF System.

[  ]    Hand Delivery

[  ]    Depositing the same in the U.S. Mail, postage prepaid

[  ]    Electronic Mail

[X]    Submission to the U.S. District Court Electronic Case Filing System


                                    /s/ Camille Coley
                                    _____