# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | **MEMORANDUM DECISION AND ORDER** |
| Plaintiff, | Case No. 2:23-cv-00482-RJS-DBP |
| v. | Chief District Judge Robert J. Shelby |
| DIGITAL LICENSING INC. (d/b/a "DEBT Box"), a Wyoming corporation; JASON R. ANDERSON, an individual; JACOB S. ANDERSON, an individual; SCHAD E. BRANNON, an individual; ROYDON B. NELSON, an individual; JAMES E. FRANKLIN, an individual; WESTERN OIL EXPLORATION COMPANY, INC., a Nevada corporation; RYAN BOWEN, an individual; IX GLOBAL, LLC, a Utah limited liability company; JOSEPH A. MARTINEZ, an individual; BENAJMIN F. DANIELS, an individual; MARK W. SCHULER, an individual; B & B INVESTMENT GROUP, LLC (d/b/a "CORE 1 CRYPTO"), a Utah limited liability company; TRAVIS A. FLAHERTY, an individual; ALTON O. PARKER, an individual; BW HOLDINGS, LLC (d/b/a the "FAIR PROJECT"), a Utah limited liability company; BRENDAN J. STANGIS, an individual; and MATTHEW D. FRITZSCHE, an individual; | Chief Magistrate Judge Dustin B. Pead |
| Defendants, | |
| ARCHER DRILLING, LLC, a Wyoming limited liability company; BUSINESS FUNDING SOLUTIONS, LLC, a Utah limited liability company; BLOX LENDING, LLC, a Utah limited liability company; CALMFRITZ HOLDINGS, LLC, a Utah | |

| limited liability company; CALMES & CO, INC., a Utah corporation; FLAHERTY ENTERPRISES, LLC, an Arizona limited liability company; IX VENTURES FZCO, a United Arab Emirates company; PURDY OIL, LLC, a Nebraska limited liability company; THE GOLD COLLECTIVE LLC, a Utah limited liability company; and UIU HOLDINGS, LLC, a Delaware limited liability company, | |
|---|---|
| Relief Defendants. | |

Before the court are Defendants, Relief Defendants, and Receiver's Petitions for attorney fees and costs,[1] pursuant to the court's Sanctions Order[2] imposing against Plaintiff Securities and Exchange Commission a sanction of attorney fees and costs for all expenses arising from the emergency *ex parte* relief improvidently entered in this action. For the reasons explained below, the Petitions are GRANTED in part and DENIED in part.

---

[1] Dkt. 287, *Franklin, Purdy Oil, Wester Oil Exploration Company Petition for Reimbursement of Fees* (*Franklin Petition*); Dkt. 288, *Defendants Calmes & Co, Inc. and Calmfritz Holdings, LLC's Petition for Costs and Fees* (*Calmes Petition*); Dkt. 289, *Matthew Fritzsche's Petition for Attorney's Fees Pursuant to This Court's March 18, 2024 Memorandum Decision and Order* (*Fritzsche Petition*); Dkt. 290, *Defendants iX Global, LLC, Joseph A. Martinez, and Travis Flaherty's Petition for Fees and Costs* (*iX Global Petition*); Dkt. 291, *Petition for Attorneys Fees and Costs for Defendants Benjamin F. Daniels, Mark W. Schuler, Alton O. Parker, B&B Investment Group, LLC, and BW Holdings LLC* (*FAIR Project Petition*); Dkt. 292 [REDACTED] and 294 [SEALED], *Defendants Digital Licensing Inc. (D/B/A/ "DEBT Box"), Jason R. Anderson, Jacob S. Anderson, Schad E. Brannon, and Roydon B. Nelson and Relief Defendants Business Funding Solutions, LLC, Blox Lending, LLC, The Gold Collective LLC, and UIU Holdings, LLC's Motion for Attorneys' Fees for Kunzler Bean & Adamson* (*DEBT Box Local Counsel Petition*); Dkt. 295 [REDACTED] and 298 [SEALED], *DEBT Box Petition*; Dkt. 296, *Petition for Attorneys Fees and Costs for Defendant Brendan J. Stangis* (*Stangis Petition*); Dkt. 299 [REDACTED] and 301 [SEALED], *Receiver's First and Final Application for Fees* (*Receiver's Application*).

[2] Dkt. 275, *Memorandum Decision and Order* (*Sanctions Order*).

## BACKGROUND[3]

On July 26, 2023, the Commission filed a Complaint[4] against Defendants and Relief Defendants alleging various violations of federal securities laws.[5]  Simultaneously, the Commission filed an *ex parte* application for a temporary restraining order (TRO), an asset freeze, and the appointment of a Receiver.[6]  Following a hearing, the court issued the requested TRO, froze Defendants' assets, and appointed a Receiver.[7]  In September, Defendants filed a motion to dissolve the TRO, arguing, among other things, the Commission made misrepresentations to the court in seeking the *ex parte* relief.[8]

At a hearing on October 6, 2023, the court dissolved the TRO and receivership while noting its concerns about representations the Commission made in obtaining and defending the relief.[9]  In November, the court ordered the Commission to show cause why sanctions should not be imposed for its conduct.[10]  The Commission responded in December.[11]  On March 18, 2024, the court found the Commission engaged in bad faith conduct in obtaining and defending the TRO and imposed a sanction against the Commission of all attorney fees and costs arising from the improvidently entered *ex parte* relief.[12]  The court directed Defendants, Relief Defendants,

---

[3] The court only briefly summarizes relevant portions of the proceedings in this case.  A more comprehensive background can be found in the court's Sanctions Order.  *See* Dkt. 275.

[4] Dkt. 1, *Complaint*.

[5] There are two primary groups of Defendants and Relief Defendants in this action: the DEBT Box Defendants and the iX Global Defendants.  Unless greater specificity is required, the court will refer to either the DEBT Box Defendants, the iX Global Defendants, or, as appropriate, simply Defendants.

[6] Dkt. 3, *Motion for Temporary Restraining Order*.

[7] Dkt. 9; Dkt. 10.

[8] *See e.g.,* Dkt. 132, *DEBT Box Defendants' Motion to Dissolve*.

[9] Dkt. 187, *Minute Order* for hearing on motions to dissolve.

[10] Dkt. 215, *Order to Show Cause*.

[11] Dkt. 233, *Commission's Response to Order to Show Cause*.

[12] *Sanctions Order* at 79.

and the Receiver to submit fee petitions specifically delineating expenses arising from the TRO and Receiver.[13]

The parties have done so, the Commission has responded,[14] and the Petitions are ripe for review.

## LEGAL STANDARD

To "protect[] the integrity of its proceedings,"[15] the court possesses the inherent power to "impose attorney-fee sanctions upon a party for bad-faith misconduct."[16]  The Tenth Circuit instructs that when a court exercises this authority and "sanctions a recalcitrant party for [its] abuse of process by an award of fees and costs," it must consider several factors to ensure the sanction is appropriate.[17]  First, "the amount of fees and costs awarded must be reasonable."[18] Second, "the award must be the minimum amount reasonably necessary to deter the undesirable behavior."[19]  And third, "the offender's ability to pay must be considered."[20]  In its previous Sanctions Order, the court already addressed the second and third factors.[21]  Concerning the first factor, the court determined that "in limiting the assessment of fees and costs to only those

---

[13] *Id.* at 77.

[14] Dkt. 309, *Plaintiff Securities and Exchange Commission's Consolidated Response to Defendants', Relief Defendants', and the Receiver's Petitions for Attorneys' Fees and Costs* (*Commission's Response*).

[15] *Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1255 (10th Cir. 2015) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 58 (1991)).

[16] *Id.*

[17] *Id.* at 1259 (citing *White v. Gen. Motors Corp.*, 908 F.2d 675, 683–85 (10th Cir. 1990)).

[18] *Id.* (citing *White*, 908 F.2d at 684).

[19] *Id.* (citing *White*, 908 F.2d at 684–85).

[20] *Id.* (citing *White*, 908 F.2d at 685).

[21] *Sanctions Order* at 75–77.

arising from the TRO and Receiver, the sanction is reasonable."[22]  In this Order, the court ensures the final amount of fees requested by Defendants and the Receiver is reasonable.

Parties seeking attorney fees must submit "meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks."[23]  "Where the documentation of hours is inadequate, the [] court may reduce the award accordingly."[24]  Further, when "a party's attorneys do not exercise proper billing judgment, the court is obligated to exclude unreasonable hours from the fee request."[25]  For example, the court should exclude "hours that are excessive, redundant, or otherwise unnecessary."[26]  Following that initial review, the court may "adjust the fee award up or down based on the degree of success obtained by the prevailing party."[27]

## ANALYSIS

The court now evaluates the reasonableness of Defendants' and Receiver's requested fees.  It will first determine which method of recovery is appropriate in this case before turning to each of the respective Petitions.

---

[22] *Id.* at 75.

[23] *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998).

[24] *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

[25] *John Bean Techs. Corp. v. B GSE Grp., LLC*, No. 1:17-cv-00142-RJS, 2023 WL 6164322, at *19 (D. Utah Sept. 21, 2023) (citation omitted).

[26] *Hensley*, 461 U.S. at 434.

[27] *Gardner v. Long*, No. 2:18-cv-00509-RJS, 2022 WL 2528329, at *3 (D. Utah July 7, 2022) (citing *Hensley*, 461 U.S. at 434–36 (considering factors such as "did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award")).

### A.  Straight Fee Recovery is Appropriate

In the Tenth Circuit, courts use one of two methods to ensure requested attorney fees and costs are reasonable: a lodestar limited recovery or straight fee recovery.[28]  "[T]he choice belongs to the district court, in the exercise of its discretion, which method to apply in a given case."[29]

The lodestar method "limit[s] the amount recoverable to the prevailing rate charged by local counsel."[30]  "The lodestar calculation is the product of the number of attorney hours 'reasonably expended' and a 'reasonable hourly rate,'" as determined by the local market.[31]  A lodestar calculation may generally be presumed to represent a reasonable fee award.[32]

Straight fee recovery focuses on attorney fees actually incurred, without adjustment based on local market rates.[33]  Although courts most often employ the lodestar method, straight fee recovery may be appropriate where attorney fees are awarded as a sanction for an opposing party's misconduct.  For example, in the parallel context of an attorney fee sanction under 28 U.S.C. § 1927,[34] the Tenth Circuit in *Hamilton v. Boise Cascade Express* affirmed the use of straight fee recovery because "a party who has already been the victim of vexatious and dilatory tactics should not heedlessly be revictimized by requiring him to introduce evidence to establish

---

[28] *Hamilton v. Boise Cascade Exp.*, 519 F.3d 1197, 1206–07 (10th Cir. 2008).

[29] *Id.* at 1207.

[30] *Id.* at 1206.

[31] *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1988) (quoting *Hensley*, 461 U.S. at 433).

[32] *See id.*

[33] *See Hamilton*, 519 F.3d at 1207.

[34] Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

the prevailing local rate for a certain type of litigation."[35]  This is particularly applicable in

litigation of complex matters because a party who "has already chosen his counsel—at what he

ordinarily anticipates will be his own expense . . . should not be obliged to procure new, cheaper

lawyers just to deal with a filing that is, after all, sanctionable."[36]

Here, some Defendants assess the reasonableness of their requested fees using both

methods, but Defendants generally contend straight fee recovery is warranted in this case.[37]

Although the Commission does not expressly argue straight fee recovery would be inappropriate,

its Response evaluates the Petitions using the lodestar method.[38]

Considering the circumstances giving rise to this sanction, the court determines straight

fee recovery is the proper method for evaluating the reasonableness of the requested fees.  Akin

to the attorney fee sanction under § 1927 in *Hamilton*, the sanction here is the result of bad faith

conduct on the part of certain Commission attorneys.  Defendants have already been the victim

of this misconduct and they should not be "revictimized" by being required to establish the

prevailing local rates for this type of litigation.[39]  Moreover, at the outset of this litigation,

Defendants selected the counsel of their choice at what they anticipated to be their own

expense.[40]  They did not, for example, unreasonably "bring[] in expensive out-of-town hired

guns to respond to a frivolous[]" motion.[41]  Facing an enterprise-threatening Commission

---

[35] *Hamilton*, 519 F.3d at 1207.

[36] *Id.* (distinguishing "the typical § 1927 situation" from civil rights cases "where it is sensible to encourage litigants at the outset to select reasonably priced counsel").

[37] *See e.g.*, Dkt. 295-1, *Declaration of Richard Hong in Support of the DEBT Box Defendants' Application for Attorneys' Fees for Morrison Cohen LLP* (*Hong Declaration*) ¶¶ 16–17.

[38] *Commission's Response* at 1.

[39] *Hamilton*, 519 F.3d at 1207.

[40] *Id.*

[41] *Id.*

enforcement action involving novel and complex issues of federal securities law, they hired

counsel they determined to be well-suited for the challenge.  They should not now be penalized

for that choice.

Accordingly, the court determines straight fee recovery is the appropriate method for

considering the reasonableness of the requested fees.[42]

## B.  James Franklin, Purdy Oil, LLC, and Western Oil Exploration Company[43]

Proceeding pro se, Defendants Franklin, Purdy Oil, and Western Oil Exploration

Company submit a Petition for reimbursement of fees and costs.[44]  Although pro se, Franklin

requests attorney fees for assistance he has received from apparently unlicensed counsel who

have not made an appearance in this case.[45]  Franklin submits several invoices with his Petition,

none of which specifically describe or delineate work arising from the TRO.  Nor is the total

amount of fees Franklin requests clear to the court, though one exhibit includes a line for

"Isolated Legal fees to prepare defense regarding TRO" in the amount of $29,788.17.[46]

Franklin's Petition is inadequate and does not permit the court to conclude hours were

reasonably expended or related to the TRO.

Franklin is required to submit "meticulous, contemporaneous time records that reveal, for

each lawyer for whom fees are sought, all hours for which compensation is requested and how

---

[42] The court observes that, even under a lodestar analysis, counsel in this matter largely billed at rates that would be reasonable in the Salt Lake City market.  *See John Bean Techs. Corp. v. B GSE Grp., LLC*, 1:17-cv-00142-RJS, 2023 WL 6164322, at *25 n.312 (D. Utah Sept. 21, 2023) (citing cases determining rates of up to $695 per hour were reasonable in the local market based on the complexity of the case and the skill, reputation, and experience of counsel).

[43] Franklin is President of Western Oil; both are Defendants in this case.  Purdy Oil is a Relief Defendant of which Franklin is a co-owner.  Franklin submits his Petition on behalf of all three.

[44] *Franklin Petition*.

[45] *Id.* at 2.

[46] Dkt. 287-2, *Franklin Exhibit B*.

those hours were allotted to specific tasks."[47]  Franklin's Petition does not do this.  The invoices included do not specify the time billed was related to the TRO or Receiver.  Some entries request fees from June 2023, before the Commission even filed its Complaint and TRO Application.[48]  Further, Franklin seeks costs that are not recoverable under 28 U.S.C § 1920.  For example, he requests costs for the use of an electronic document review platform[49] and Westlaw research charges.[50]  The court further observes that, while Franklin requests at least $29,788.17 in attorney fees, neither Franklin, Purdy Oil, nor Western Oil have submitted any filings in this case prior to the present Petition.  The requested fees far exceed what would be reasonable based on these Defendants' limited involvement in the case.

The court cannot conclude the fees Franklin requests arise from the TRO and Receiver, nor that the hours purportedly spent on these issues were reasonably expended.  Franklin's Petition is denied.

### C.  Calmes & Co, Inc. and Calmfritz Holdings, LLC

Paul T. Moxley, counsel for Relief Defendants Calmes & Co, Inc. and Calmfritz Holdings, LLC, requests attorney fees "directly related to the TRO and the Receiver in the amount of $8,443.25."[51]  Moxley, from the Salt Lake City-based law firm of Cohne Kinghorn, P.C., submitted detailed records of the time he and attorney Kathryn Tunacik spent on this matter, clearly delineating expenses related to the TRO and Receiver.[52]  Moxley's billing rate

---

[47] *Case*, 157 F.3d at 1250.

[48] *See* Dkt. 287-3, *Franklin Exhibit C*.

[49] Dkt. 287-1, *Franklin Exhibit A.*

[50] *Franklin Exhibit C.*

[51] *Calmes Petition* at 2.  Moxley asserts they should be awarded the total amount of attorney fees and costs for this case, $15,916.50.  *Id.*  This is beyond the scope of the sanction the court deemed appropriate.  The court only considers fees arising from the TRO and Receiver.

[52] Dkt. 288, *Calmes Exhibit B.*

was $500.00 per hour.[53]  Tunacik's rate was $325.00 per hour in 2023 and $340.00 per hour in 2024.[54]  Moxley and Tunacik spent a combined total of 22.73 hours on matters related to the TRO and Receiver.[55]

The Commission raises only one objection to the Calmes Petition.[56]  An entry on January 12, 2024 requests $204.00 for .6 hours spent reviewing additional briefing received concerning the Order to Show Cause.[57]  The court's Sanctions Order expressly excluded any fees related to Defendants' replies to the Commission's response to the Order to Show Cause.[58]  The court agrees these fees are outside the scope of the sanction and are not recoverable.  Otherwise, the court determines the fees requested all arise from the TRO and Receiver, and the hours expended were reasonable.

Accordingly, the Calmes Petition is granted with a deduction of $204.00 from the requested amount.  The Commission is ordered to pay Relief Defendants Calmes & Co, Inc. and Calmfritz Holdings, LLC attorney fees in the amount of $8,239.25.

### D.  Matthew Fritzsche

Adam L. Grundvig, counsel for Defendant Matthew Fritzsche, requests an award of $24,022.50 for attorney fees arising from the TRO and Receiver.[59]  Grundvig, based in Salt Lake City, billed 36.80 hours at a rate of $375 per hour and 23.70 hours at a rate of $425 per hour.[60]  A

---

[53] Dkt. 288, *Exhibit A: Moxley Declaration* at 4.

[54] *Id.*

[55] *Calmes Exhibit B* at 2.

[56] *Commission's Response* at 7.

[57] *Calmes Exhibit B* at 1.

[58] *Sanctions Order* at 78.

[59] *Fritzsche Petition* at 2.

[60] Dkt. 289-1, *Grundvig Declaration* at 4.

law clerk working for Grundvig billed 1.0 hours at a rate of $150 per hour.  Grundivg provides a detailed accounting of the time spent on the matter, including specific descriptions demonstrating the nature of the work for each entry.[61]

The Commission argues several entries are beyond the scope of those covered by the sanction and the court agrees.[62]  The following entries request fees for work related to either Defendants' replies to the Commission's response to the Order to Show Cause or the Commission's motion to dismiss and are not recoverable:

- 12/22/2023: $375 for "Correspondence with friendly counsel about SEC response to Order to show cause, reviewed response, reviewed and responded to client emails about same."

- 1/4/2024: $425 for "Reviewed iX Global parties' draft response to SEC's Order to show cause for incorporation purposes, preparation of notes, partial preparation of reply to order to show cause."

- 1/8/2024: $425 for "Continued to work on Order to show cause Response incorporation filings."

- 1/9/2024: $1,020 for "Reviewed friendly counsel draft response to SEC response to Order to show cause; continued preparation of client declaration and client's response, preparation of correspondence to client regarding effort."

- 1/10/2024: $467.50 for "Reviewed and responded to emails from Matt, preparation of revisions to his declaration, reviewed correspondence from friendly counsel about response to Order to show cause tactics."

- 1/11/2024: $722.50 for "Conferences (email, text, telephone) with Matt about his declaration and response to SEC's response to Order to show cause."

- 1/12/2024: $85 for "Reviewed correspondence from friendly counsel about today's TRO-related order to show cause filings."

- 1/16/2024: $127.50 for "Reviewed and responded to correspondence about joinder in Order to show cause response and SEC surreply."

---

[61] Dkt. 289-1, *Exhibit 1: Grundvig Log*.

[62] *Commission's Response* at 6–7.

- 1/30/2024: $467.50 for "Teleconferences with Matt about SEC's intent to dismiss the complaint without prejudice; reviewed and responded to email correspondence from non-fraud counsel about same."

- 1/31/2024: $425 for "Reviewed and responded to correspondence from client about response to SEC dismissal without prejudice proposal; Telephone conference with opposing counsel regarding same; reviewed MTD filed by SEC."

- 2/2/2024: $127.50 for "Telephone conference with Matt about SEC's motion to dismiss."

- 2/14/2024: $340 for "Reviewed Debt Box Defendants' opposition to SEC's motion to dismiss without prejudice; preparation of client's opposition."[63]

Those exceptions aside, the remainder of the fees requested are related to the TRO and Receiver, and the hours expended are reasonable. The Fritzsche Petition for attorney fees is granted with the deductions noted above. The Commission is ordered to pay Defendant Fritzsche attorney fees in the amount of $19,015.00.

### E. iX Global Defendants[64]

The iX Global Defendants request attorney fees and costs of $252,315.50 for expenses arising from the TRO and Receiver.[65] The iX Global Defendants are represented by Salt Lake City-based attorneys from the law firm Polsinelli, P.C., as well as Polsinelli attorneys located in St. Louis and Nashville.[66] Romaine Marshall billed at $650 per hour, 15% below his standard rate.[67] Jose Abarca billed at $605 per hour, 15% below his standard rate.[68] Jonathan Schmalfeld billed at $515 per hour, 20% below his standard rate.[69] And Mazianio S. Reliford III billed at

---

[63] *Grundvig Log* at 3–4.

[64] The iX Global Defendants include individual Defendants Joseph A. Martinez and Travis Flaherty.

[65] *iX Global Petition* at 3.

[66] *Id.* at 4.

[67] Dkt. 290-2, *Exhibit B: Marshall Declaration*.

[68] Dkt. 290-3, *Exhibit C: Abarca Declaration*.

[69] Dkt. 290-4, *Exhibit D: Schmalfeld Declaration*.

$605 per hour, 20% below his standard rate.[70]  Counsel spent a combined total of 415.6 hours working on matters related to the TRO and Receiver.[71]

As agreed upon prior to any of the issues concerning the TRO came to light, the attorneys "billed on this matter at a reduction from their otherwise applicable national rates" and the iX Global Defendants largely paid their legal bills before the court signaled its intent to issue the Order to Show Cause.[72]  Counsel submitted detailed billing entries for the fees they seek, including "a reduction of time for billing entries which contained time for multiple aspects of representation and a complete reduction of time to zero in some billing entries which were closely related to TRO related legal services, but which did not specify as such in the entry narratives."[73]

The Commission raises no objections to the iX Global Petition and the court determines the requested fees are reasonable.  Counsel submits meticulous records of the time spent on the matter, clearly delineating fees related to the TRO and Receiver.  Indeed, the fee request errs on the side of under-inclusiveness, excluding fees that may have overlapped with other matters related to the case but for which the time entries do not allow isolation of the TRO-specific work. In view of the iX Global Defendants' role as one of the primary groups of Defendants in this case and the complexity of the issues, the hours expended by counsel were reasonable.

The iX Global Petition is granted.  The Commission is ordered to pay the iX Global Defendants attorney fees and costs in the amount of $252,315.50.

---

[70] Dkt. 290-5, *Exhibit E: Reliford Declaration*.

[71] Dkt. 290-1, *Exhibit A: Bills and Billing Entries*.

[72] *iX Global Petition* at 4.

[73] *Id.* at 5; *Exhibit A: Bills and Billing Entries*.

## F.   FAIR Project Defendants[74]

The FAIR Project Defendants request attorney fees in the amount of $169,070.00 for work related to the TRO and Receiver.[75]  The FAIR Project Defendants are represented by attorneys from the Salt Lake City-based law firm of Clyde Snow & Sessions.[76]  Thomas A. Brady and Keith M. Woodwell billed at a rate of $650 per hour.[77]  Katherine E. Pepin billed at a rate of $350 per hour.[78]  And paralegal Blake Bucholz supported the representation, billing at a rate of $225 per hour.[79]  Counsel submitted detailed billing entries that, subject to the exceptions discussed below, account for the time spent on issues arising from the TRO and Receiver.[80]

The Commission notes some of the FAIR Project Defendants' entries do not relate to the TRO and Receiver.[81]  The court agrees the following entries do not fall within the scope of the sanction and the fees are not recoverable:

- 10/5/2023: $280 for "Review briefing on IX Global's Motion to Dismiss."

- 11/2/2023: $1,625 for "Meet with Dr. Parker and family to discuss facts and allegations of case and potential outcomes.  Internal consult with T. Brady."

- 11/2/2023: $1,105 for "Prep meeting with K. Woodwell.  (.2)  Meeting with B. Parker and family to discuss case history, status, strategy, and other matters.  (1.3)  Reviewed SEC response to Memorandum in Opposition in Green case.  (.4)."

- 11/7/2023: $130 for "Email exchange with counsel for Green United on passing of Judge Jenkins and impact on case.  Email exchange with clients."

---

[74] The FAIR Project Defendants include Defendants Benjamin F. Daniels, Mark W. Schuler, Alton O. Parker, B&B Investment Group, and BW Holdings LLC.

[75] *FAIR Project Petition* at 2.

[76] Dkt. 291-1, *Brady Affidavit*.

[77] *Id.* at 3.

[78] *Id.*

[79] *Id.* at 4.

[80] Dkt. 291-1, *FAIR Project Statement of Account* at 5–18.

[81] *Commission's Response* at 6–8.

- 11/8/2023: $650 for "Text exchanges and call with B. Daniels regarding case status.  (.3)  Call with counsel for Green regarding case status and new judge. (.5) Reviewed pleadings from SEC.  (.2)."

- 11/14/2023: $260 for "Reviewed media request and consult with K. Woodwell regarding the same and other matters.  (.2)  Communication with clients regarding updates.  Reviewed pleadings.  (.2)  Review SEC's motion for alternative service and related exhibits."

- 11/15/2023: $195 for "Reviewed SEC motion for alternative service and exhibits."

- 11/22/2023: $195 for "Review DLI motion for extension to reply to motion to dismiss."

- 11/22/2023: $130 for "Reviewed communication from counsel for non-fraud defendants and magistrate order on alternative service to Franklin."
- 12/5/2023: $910 for "Reviewed Reply Memo from DLI defendants citing additional misrepresentations by the SEC.  (.8)  Consults with K. Woodwell and K. Pepin regarding strategy and fall out.  (.4)  Communication with clients.  (.2)."

- 12/29/2023: $260 for "Conference call with clients, K. Woodwell, and K. Pepin discussing strategy and plan to document damages.  (.4)."

- 1/2/2024: $260 for "Email exchange with Buck on listing of RXT token.  Email exchange with non-fraud counsel regarding strategy for memo and inclusion of declarations from clients."

- 1/2/2024: $390 for "Consult with K. Woodwell and K. Pepin regarding Reply deadline.  (.2)  Communications with B. Parker regarding RXT token offering. (.2)  Reviewed correspondence from coordinating counsel.  (.2)."

- 1/3/2024: $1,040 for "Email exchange with non-fraud defendants on strategy for response to SEC sanctions.  Conference with Dr. Parker and T. Brady to discuss strategy for continued operation of the FAIR Project.  Consult with T. Brady. Research for SEC sanctions memo."

- 1/4/2024: $735 for "Review and revise Reply to SEC Response to Order to Show Cause and supporting declarations."

- 1/4/2024: $390 for "Email exchanges with clients.  Review draft testimony of Dr. Parker.  Consult with T. Brady.  Email exchange with counsel for non-fraud defendants on memo and declarations in support of sanctions against the SEC."

- 1/4/2024: $975 for "Communications with B. Parker regarding solicitations.  (.2) Consult with K. Woodwell.  (.2)  Reviewed and edited draft response to OSC along with Exhibits.  (1.1)."

- 1/5/2024: $260 for "Email exchange with Dr. Parker on testimonial.  Review draft memo and declaration from iX Global counsel."

- 1/5/2024: $195 for "Reviewed material for declaration by B. Parker. Communication with client."

- 1/8/2024: $70 for "Conference with T. Brady and K. Woodwell to discuss declarations and Reply to Commission's Response to Order to Show Cause."

- 1/8/2024: $130 for "Consult with T. Brady; email clients."

- 1/8/2024: $260 for "Status meeting with K. Woodwell and K. Pepin.  (.2) Communications with clients regarding damage statements and other matters. (.2)."

- 1/9/2024: $1,625 for "Email exchanges with clients.  Review or [sic] damages claims from clients; work on declarations.  Consult with T. Brady.  Review and revisions to non-fraud defendants response to the SEC memo on sanctions.  Email with counsel for non-fraud defendants.  Consult with T. Brady."

- 1/9/2024: $585 for "Call with B. Daniels regarding Declaration of damages and soliciting.  (.2) Call with K. Woodwell discussing Reply Memo and Declarations. (.2)  Communications with coordinating counsel regarding strategy and Reply Memo.  (.3)  Reviewed revised declaration from B. Parker. (.2)."

- 1/10/2024: $585 for "Review details on damages from clients and work on declarations.  Consult with T. Brady on strategy for sanctions and client activity on new deals going forward.  Email exchanges with non-fraud defendants.  Draft language for sanctions memo; consult with K. Pepin on joinders and declarations."

- 1/10/2024: $130 for "Consult with K. Woodwell on Reply Memo.  (.2)."

- 1/11/2024: $280 for "Review testimony from client and draft declarations to support harm caused by TRO."

- 1/12/2024: $1,040 for "Email exchange with SEC and defense counsel on joint status report due to court on Jan. 17th.  Review damages evidence from Dr. Parker; email exchange with Dr. Parker on strategy for sanctions.  Review joinder in sanctions memo.  Email exchange with other defense counsel on final drafts of sanctions memos.  Review filed memos from DLI defendants and iX Global defendants."

- 1/12/2024: $260 for "Reviewed final draft of joinder.  (.2)  Communications with coordinating counsel on strategy and timing.  (.2)."

- 1/24/2024: $195 for "Text exchanges with B. Beach regarding FOIA request. Reviewed request."

- 3/21/2024: $195 for "Emails exchange with SEC counsel; review letter on discovery misrepresentations.  Internal consult on discovery."

- 3/26/2024: $105 for "Review Ryan Bowen's Stipulated Motion to Dismiss without Prejudice."

- 3/26/2024: $260 for "Email exchanges with defense counsel on stipulated dismissal of Ryan Bowen; review and approve stipulated motion.  Consult with K. Pepin."[82]

The above entries either relate to work expressly excluded by the court's Sanctions Order, appear to pertain to other matters, or do not include enough detail for the court to determine the fees fall within the parameters of the sanction.[83]  The remainder of the fees the FAIR Project Petition requests are related to the TRO and Receiver, and the hours expended are reasonable.  The FAIR Project Petition for attorney fees is granted with the deductions noted above.  The Commission is ordered to pay attorney fees to the FAIR Project Defendants in the amount of $153,365.00.

## G.  DEBT Box Defendants (Local Counsel)[84]

The DEBT Box Defendants' local counsel requests attorney fees in the amount of $34,259.50 for fees arising from the TRO and Receiver.[85]  Salt Lake City-based attorneys

---

[82] *Fair Project Statement of Account* at 5–18.

[83] *Case*, 157 F.3d at 1250 ("A district court is justified in reducing the reasonable number of hours if the attorney's time records are 'sloppy and imprecise' and fail to document adequately how he or she utilized large blocks of time.") (citation omitted).

[84] The DEBT Box Defendants include Defendants Jason R. Anderson, Jacob S. Anderson, Schad E. Brannon, and Roydon B. Nelson, and Relief Defendants Business Funding Solutions, LLC, Blox Lending, LLC, The Gold Collective, LLC, and UIU Holdings, LLC.

[85] *DEBT Box Local Counsel Petition* at 3.

Matthew R. Lewis and Taylor J. Smith, from the law firm of Kunzler Bean & Adamson, P.C., serve as local counsel for the DEBT Box Defendants.[86]  Lewis billed at a rate of $590 per hour and Smith billed at $250 per hour.[87]  Paralegal Kiersten Slade supported counsels' efforts and billed at a rate of $195 per hour.[88]  The total request for fees includes 54.1 hours spent by Lewis on matters related to the TRO and Receiver, 6.9 hours by Smith, and 2.5 hours by Slade.[89]

The Commission raises no objections to the Petition.  Counsel submitted meticulous records detailing the work associated with their fee request.[90]  Based upon the court's review, the requested fees all arise from the TRO and Receiver.  Further, the hours expended on the matter were reasonable, particularly in consideration of the lead role the DEBT Box Defendants have played in this litigation.

The DEBT Box Defendants' local counsels' Petition is granted.  The Commission is ordered to pay counsels' fees in the amount of $34,259.50.

### H.  DEBT Box Defendants (Lead Counsel)

Lead counsel for the DEBT Box Defendants requests $565,497.50 in attorney fees for work arising from the TRO and Receiver.[91]  Attorneys from the New York-based law firm of Morrison Cohen LLP represent the DEBT Box Defendants in this case.[92]  Richard Hong, a partner at the firm with over 25 years of experience in related litigation, including 17 years at the

---

[86] Dkt. 292-1, *Lewis Declaration*.

[87] *Id.* at 3.

[88] *Id.*

[89] *Id.* at 4.

[90] Dkt. 294-2, *Exhibit 1*: *DEBT Box Local Counsel Entries*.

[91] *DEBT Box Petition* at 3.

[92] *Id.*

Commission's Division of Enforcement, billed at a rate of $950 per hour.[93]  Jason P. Gottlieb,

chair of the firm's Digital Assets Department and White Collar and Regulatory Enforcement

practice group, billed at a rate of $1,200 per hour.[94]  David E. Ross and Jeffrey D. Brooks, both

partners at the firm with over 20 years of experience in related litigation, billed at a rate of $825

per hour.[95]  And Alexander R. Yarm, an associate with over seven years of litigation experience,

billed at a rate of $610 per hour.[96]  These rates were agreed upon and paid by the DEBT Box

Defendants prior to the court's Sanctions Order.[97]

    In support of their Petition, counsel submitted voluminous and meticulous records

documenting their time spent on the matter and specifically delineating work arising from the

TRO and Receiver.[98]  Erring on the side of under-inclusiveness, counsel did not include any

requests for costs and omitted all fees incurred after the October 2023 dissolution of the TRO,

even if the fees were related to the TRO and Receiver.[99]  In total, Morrison Cohen attorneys

spent 707.7 hours performing tasks associated with the TRO and Receiver.[100]

    The Commission does not raise any specific objections to the entries but does note the

allocation of work between partners and associates may be disproportionately high.[101]

According to the Commission, Morrison Cohen's entries reflect approximately 62% of the total

---

[93] Dkt. 295-1, *Hong Declaration* at 2.

[94] *Id.* at 3–4.

[95] *Id.* at 4.

[96] *Id.* at 4–5.

[97] *Id.* at 7.

[98] Dkt. 298, *Exhibit 1: Morrison Cohen Entries*.

[99] *Hong Declaration* at 6.

[100] *Id.*

[101] *Commission's Response* at 5–6.

time was billed by partners.[102]  In view of the unique circumstances of this case, the court determines this allocation is not unreasonable and does not warrant a downward adjustment in the fee award.

This case involved complex and novel issues concerning the application of federal securities law to the burgeoning digital asset industry.  The DEBT Box Defendants, anticipating they would be paying their own attorney fees, reasonably selected counsel they determined were well-suited to the challenges posed by this litigation.  Given the complexity of the case and the urgency of issues pertaining to the TRO and Receiver, it is not unreasonable that partners with decades of experience in securities litigation and regulatory enforcement actions shouldered a large share of the burden.  Furthermore, counsel for the DEBT Box Defendants have played a lead role in this case and were instrumental in bringing to light the problematic issues surrounding the TRO.[103]  The allocation of work between partners and associates does not reflect a lack of billing judgment and is not unreasonable in this case.

Morrison Cohen's records provide a detailed, even conservative, accounting of the time spent on issues arising from the TRO and Receiver.  The court determines the fees requested are appropriate and the hours expended were reasonable.  The Commission is ordered to pay the DEBT Box Defendants' lead counsel, Morrison Cohen, attorney fees in the amount of $565,497.50.

---

[102] *Id.* at 6.

[103] *See Hensley*, 461 U.S. at 434 (holding consideration of "results obtained" by counsel is an "important factor" in determining reasonable attorney fees).

### I.   Brendan J. Stangis

Defendant Brendan J. Stangis requests attorney fees in the amount of $42,839.50 for fees arising from the TRO and Receiver.[104]  Stangis is represented by Salt Lake City-based attorney Brent R. Baker.[105]  Baker billed at a rate of $590 per hour.[106]  The Commission raises no objections to Stangis' Petition.  Counsel submitted meticulous records detailing a total of 74 hours spent on matters related to the TRO and Receiver.[107]  With one exception, the court determines the requested fees are appropriate and the hours expended were reasonable.  The court excludes the $649 fee from the entry on October 25, 2023: "Review case cited by SEC issued by Honorable Bruce S. Jenkins in pending Utah Crypto case."[108]  From the description, the court cannot conclude this work was related to the TRO.

Accordingly, the Stangis Petition is granted with the deduction noted above.  The Commission is ordered to pay Defendant Stangis attorney fees in the amount of $42,190.50.

### J.   Receiver

Josias N. Dewey, a partner at the law firm of Holland & Knight and the court appointed Receiver in this case, submits an Application for fees and costs incurred to administer the receivership from July 28, 2023 to October 6, 2023.[109]  The Receiver requests $731,141.10 in professional fees and $15,800.76 in costs, for a total of $746,941.86.[110]  Pursuant to the court's order appointing Dewey, the Receiver engaged attorneys from Holland & Knight as lead legal

---

[104] *Stangis Petition* at 2.

[105] Dkt. 302, *Baker Declaration (Amended)*.

[106] *Id.* at 2.

[107] Dkt. 296-1, *Exhibit A: Stangis Fee Entries*.

[108] *Id.* at 7.

[109] *Receiver's Application* at 1.

[110] *Id.*

counsel; forensic accountants, data analysts, and blockchain specialists from BDO USA, P.C.; attorneys from the Utah-based law firm of McNeil Von Maack, LLC as local counsel; and Becky McGee as an attorney with oil and gas expertise.[111]  The requested fees are attributable to members of the receivership team as follows: $456,337.16 to Receiver and Holland & Knight; $264,330.90 to BDO; $18,689.80 to McNeil Von Maack; and $7,584 to Becky McGee.[112]

The Commission raises no objection to the Receiver's requested fees and, in recommending this Receiver's appointment, has previously agreed the Receiver's rates are reasonable in view of his experience and expertise.[113]  The court agrees and finds the Receiver's requested fees are reasonable.  The Receiver submitted meticulous records and declarations documenting the nature of the work and the time spent by each member of the receivership team on this matter.  The Receiver's extensive work in this case is further outlined in various Status Reports.[114]

As previously agreed, the Receiver and his team billed at a substantial discount to their standard rates, and, in their Application, further discounted their rates and excluded fees that would likely be recoverable.[115]  For example, the Receiver capped fees for the first several weeks of the receivership period at $200,000.[116]  At the outset, Dewey and the other Holland & Knight attorneys discounted their standard rates by between 17% and 33%, with partners billing at $750

---

[111] *Id.* at 3.

[112] *Id.* at 4–5.

[113] *Id.* at 11 (citing Dkt. 4, *Plaintiff Securities and Exchange Commission's Ex Parte Application for Appointment of a Temporary Receiver* at 3).

[114] Dkt. 139, *Temporary Receiver's First Status Report*; Dkt. 161, *Temporary Receiver's Interim Status Report*; Dkt. 198, *Temporary Receiver's Status Report Regarding Transition, Wind Down, and Conclusion of the Receivership*; Dkt. 202, *Temporary Receiver's Second Status Report Regarding Transition, Wind Down, and Conclusion of the Receivership*.

[115] *Receiver's Application* at 1–2.

[116] *Id.*

per hour and associates at $450 per hour.[117]  In the end, after the Receiver and other attorneys voluntarily further reduced their fees, their Application reflects an effective hourly rate of $530.85 per hour, $357.26 per partner hour and $211.77 per associate hour.[118]  Further, though recoverable under the terms of the Commission's receiver billing instructions, the Receiver did not bill for travel time.[119]  The accounting firm BDO initially discounted its standard hourly rate by 25%, did not bill for travel time, and discounted its final bill by an additional 30%.[120]  Lastly, all members of the receivership team voluntarily excluded fees incurred after the court dissolved the TRO on October 6, 2023, "instead opting to incur at their own expense the time and cost associated with carrying out the Transition Order."[121]

The court determines the Receiver exercised billing judgment in the fees requested, even excluding many fees that were likely recoverable.  Given the complexity and urgency of the work during the receivership period, the hours expended were reasonable.  The Receiver's Application is granted.  The Commission is ordered to pay the Receiver's fees and costs in the amount of $746,941.86.

## CONCLUSION

For the reasons explained, Defendant Franklin's Fee Petition is DENIED.[122]  The other Defendants' Fee Petitions[123] and the Receiver's Application for Fees and Costs[124] are

---

[117] *Id.* at 2.

[118] *Id.*  The effective hourly rate reflects an additional 29% to 52% reduction from Holland & Knight's already discounted rate.  *Id.* n.2.

[119] *Id.* at 2–3.

[120] *Id.* at 3.

[121] *Id.*

[122] Dkt. 287.

[123] Dkt. 288; Dkt. 289; Dkt. 290; Dkt. 291; Dkt. 292; Dkt. 295; Dkt. 296.

[124] Dkt. 299.

GRANTED subject to the deductions discussed above.  The Commission is ORDERED to pay

the following attorney fees and costs:

- $8,239.25 to Relief Defendants Calmes & Co, Inc. and Calmfritz Holdings, LLC

- $19,015.00 to Defendant Matthew D. Fritzsche

- $252,315.50 to the iX Global Defendants

- $153,365.00 to the FAIR Project Defendants

- $34,259.50 to the DEBT Box Defendants' Local Counsel (Kunzler Bean & Adamson, P.C.)

- $565,497.50 to the DEBT Box Defendants' Lead Counsel (Morrison Cohen)

- $42,190.50 to Defendant Brendan J. Stangis

- $746,941.86 to the Receiver

SO ORDERED this 28th day of May 2024.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge